UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC.,<br>U.S. GLOBAL FOREST, INC. and<br>INTERGLOBAL FOREST, LLC,<br>　　　　Plaintiff and Consolidated Plaintiffs,<br><br>and<br><br>LB WOOD CAMBODIA CO., LTD. and<br>CAMBODIAN HAPPY HOME WOOD<br>PRODUCTS CO., LTD.,<br>　　　　Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br>　　　　Defendant,<br><br>and<br><br>COALITION FOR FAIR TRADE IN<br>HARDWOOD PLYWOOD,<br>　　　　Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **PUBLIC VERSION**<br><br>    Consol. Court 20-03914 |

**PLAINTIFF-INTERVENORS LB WOOD CAMBODIA CO., LTD. AND
CAMBODIAN HAPPY HOME WOOD PRODUCTS CO., LTD. RULE 56.2
MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT
<u>UPON THE AGENCY RECORD</u>**

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
DeKieffer & Horgan, PLLC
Suite 410
1090 Vermont Ave, N.W.
Washington, D.C. 20005
*Counsel to Plaintiff-Intervenors*

Dated: August 25, 2021

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   RULE 56.2 STATEMENT ......................................................... 2

    A.    Administrative Determinations Subject to Appeal.............. 2

    B.    Issues Presented ...................................................... 3

III.  STANDARD OF REVIEW .......................................................... 4

IV.   SUMMARY OF ARGUMENT ..................................................... 5

V.    ARGUMENT .......................................................................... 6

    A.    TRLED's Imposition of Interim Measures Violates
        Plaintiff-Intervenors' Procedural Due Process Rights ........ 6

        1.  Facts Relied Upon By TRLED in Imposing
            Interim Measures ............................................. 6

        2.  TRLED's Interim Measures are Invalid Because
            They Lacked the Minimal Protections of
            Procedural Due Process and Did Not Support A
            Reasonable Suspicion of Evasion ..................... 8

        3.  Plaintiff-Intervenors Have No Administrative
            Remedies for Periodic Review of Their Exports to
            the U.S. ............................................................ 18

    B.    TRLED's Final Determination Is Unreasonable and
        Arbitrary ............................................................... 22

        1.  TRLED's Determination of Evasion Is Arbitrary
            and Based On An Incomplete and Inaccurate
            Agency Record ................................................. 25

            a.  TRLED Did Not Issue Supplemental
                Questionnaires Regarding Perceived

i

Deficiencies in Plaintiff-Intervenors'
Responses and Records .................................... 26

b. TRLED Based Its Determination on
Flawed Information and Confidential
Information That It Never Disclosed to
Plaintiff-Intervenors. ......................................... 34

C. ORR's Administrative Review in EAPA Inv. 7321 ............ 37

1. ORR's Mis-Handling of Plaintiff-Intervenors'
Review Requests ............................................. 39

2. ORR Failed to Conduct a De Novo Review of
TRLED's Final Determination ...................................... 41

VI. CONCLUSION AND PRAYER FOR RELIEF .......................... 45

# TABLE OF AUTHORITIES

## CASES

*Bowe-Passat v. United States*, 17 C.I.T. 335 (1993). ...............................30

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974) ..........................................................................4

*Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ...........................................................4

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ...............................................................................44

*Connecticut v. Doehr*, 501 U.S. 1 (1991) ...................................................12

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .....................27

*Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014). ................................................................................11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ...........................................................32, 40

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ...........45

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)..........45

## STATUTES

5 U.S.C. § 555(b)....................................................................................13

19 U.S.C. § 1517(a)(6)(A)(i)......................................................................1

19 U.S.C. § 1517(f)(1) ............................................................................39

19 U.S.C. § 1517(g)(2) ..............................................................................4

19 U.S.C. § 1675(a)(1)(A) ........................................................ 18-19, 21

19 U.S.C. § 1675(a)(1)(B) ........................................................ 18-19, 21

19 U.S.C. § 1677f-1(c)(1) ..................................................................19

19 U.S.C. § 1677f-1(e)(1) ..................................................................19

## REGULATIONS

19 CFR § 165.1 .................................................................................39

19 CFR § 165.25(a) ...........................................................................40

19 CFR § 165.41(a) ...........................................................................40

## ADMINISTRATIVE DECISIONS

*Aluminum Extrusions from China: Preliminary Results of
Antidumping Duty Administrative Review*, 2019-2020, 86 FR
43168 (Dep't Commerce Aug. 6, 2021) ....................................................20

*Certain Hardwood Plywood Products from the People's Republic
of China: Amended Final Determination of Sales at Less Than
Fair Value and Antidumping Duty Order*, 83 FR 504 (Dep't
Commerce Jan. 4, 2018) ...................................................................3, 15

*Certain Hardwood Plywood Products from the People's Republic
of China*, *Countervailing Duty Order*, 83 FR 513 (Dep't
Commerce Jan. 4, 2018) ......................................................................3

*Oil Country Tubular Goods from China*: Preliminary
Affirmative Determinations of Circumvention, 86 FR 43627
(Dep't Commerce Aug. 10, 2021) .........................................................20

# GLOSSARY TERMS

American Pacific Plywood, Inc. (Plaintiff) ...................................... APPI

Cambodian Happy Home Wood Products Co., Ltd. (Plaintiff-Intervenor) ............................................................................... HH

Enforce and Protect Act .................................................... EAPA

Generalized System of Preferences .................................................... GSP

InterGlobal Forest, LLC. (Consolidated Plaintiff) ........................... IGF

LB Wood Cambodia Co., Ltd. (Plaintiff-Intervenor) ......................... LB

Office of Trade, Regulations & Rulings ........................................... ORR

Request for Information ................................................................. RFI

Trade Remedy Law Enforcement Directorate........................... TRLED

U.S. Customs and Border Protection ................................................CBP

U.S. Global Forest, Inc (Consolidated Plaintiff)............................. USG

## I.   INTRODUCTION

Plaintiff-Intervenors LB Wood Cambodia Co., Ltd. ("LB") and Cambodian Happy Home Wood Products Co., Ltd. ("HH") are Cambodian Manufacturers of hardwood plywood.  LB and HH were interested parties to the consolidated EAPA Investigation 7321, conducted by U.S. Customs and Border Protection ("CBP") under 19 U.S.C. § 1517 of the Enforce and Protect Act ("EAPA").  As foreign manufacturers, producers, and exporters of hardwood plywood, LB and HH are interested parties in accordance with 19 U.S.C. § 1517(a)(6)(A)(i).

LB sold and exported plywood to Plaintiff American Pacific Plywood, Inc. ("APPI") and Consolidated Plaintiff InterGlobal Forest, LLC. ("IGF"); HH sold and exported plywood to Consolidated Plaintiff U.S. Global Forest, Inc. ("USG") (hereinafter, the U.S. importers are collectively referred to as the "Plaintiffs").

Plaintiff-Intervenors agree with and adopt the factual background and arguments set forth in Plaintiffs' Rule 56.2 brief, Section II.[1]  *See*

---

[1] Plaintiff-Intervenors clarify that on p.7 of Plaintiffs' moving brief, the discussion on Cambodian suppliers' raw material purchases of veneers versus quantity of finished plywood ultimately shipped to Plaintiffs relates only to LB and not HH.

Plaintiff and Consolidated Plaintiffs Rule 56.2 Memorandum In

Support of Motion for Judgment Upon the Agency Record, at 6-10 (Aug.

5, 2021) ("Plaintiffs' Br.") **ECF No. 48**.

## II.    RULE 56.2 STATEMENT

Pursuant to Rule 56.2(c)(1), Plaintiff-Intervenors hereby state the

administrative decision subject to appeal and the issues of law

presented:

### A. Administrative Determinations Subject to Appeal

1. CBP's Trade Remedy Law Enforcement Directorate ("TRLED"),

    Notice of Initiation of Investigation and Interim Measures –

    EAPA Cons. Case 7321 (October 1, 2019); not published in the

    Federal Register; available at

    https://www.cbp.gov/document/guidance/eapa-cons-

    investigation-number-7321-interglobal-forest-llc-american-

    pacific; **Appx01020-01029** ("Interim Measures Notice").

2. TRLED, Notice of Determination as to Evasion (June 29, 2020);

    not published in the Federal Register; available at

    https://www.cbp.gov/document/guidance/eapa-cons-

investigation-number-7321-interglobal-forest-llc-american-pacific, **Appx01034-01050** ("TRLED Determination").

3. CBP's Office of Trade, Regulations & Rulings ("ORR"), Ltr. re: EAPA Case Number 7321; *Certain Hardwood Plywood from the People's Republic of China: Antidumping Duty Order*, 83 FR 504 (January 4, 2018) and *Certain Hardwood Plywood from the People's Republic of China: Countervailing Duty Order*, 83 FR 513 (January 4, 2018); U.S. Global Forest, Inc., Interglobal Forest LLC, and American Pacific Plywood, Inc.; 19 U.S.C. §1517; Administrative Review Decision (Nov. 5, 2020); (not published in the Federal Register; not available on CBP website); **Appx01052-01074** ("ORR Decision").

## B. Issues Presented

1. <u>Issue One</u>: Whether CBP's imposition of interim measures without any notification to Plaintiff-Intervenors violates Plaintiff-Intervenors' procedural due process rights and whether the interim measures were justified by record evidence.

2. <u>Issue Two</u>: Whether CBP's non-disclosure of confidential data and information upon which TRLED justified its imposition of

interim measures and final determination and upon which ORR

justified its administrative review decision violated Plaintiff-

Intervenors' procedural due process rights under 5 U.S.C. §555.

3.   Issue Three: Whether TRLED's final determination in EAPA

Inv. 7321 and ORR's administrative review decision relying on

discredited trade information and undisclosed documents which

speculated without any substantive foundation that the plywood in

question was transshipped from China through Plaintiff-Intervenors'

plants are arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law.

## III.   STANDARD OF REVIEW

This Court reviews whether CBP complied with all procedures

and whether any "determination, finding, or conclusion is arbitrary,

capricious, and abuse of discretion, or otherwise not in accordance with

law." *See* 19 U.S.C. §1517(g)(2).  Federal courts have recognized that

the standard of review for international trade cases also encompasses

the standards established under the APA, 5 U.S.C. §706(2)(A).

*Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d

1367, 1377 (Fed. Cir. 2012) (citation omitted).

Plaintiff-Intervenors endorse and incorporate the comprehensive discussion on the standard of review set forth in Plaintiffs' brief. *See* Plaintiffs' Br. at 13-15.

## IV.   SUMMARY OF ARGUMENT

In EAPA Inv. 7321, TRLED imposed interim measures based on unreliable trade data and confidential records from unrelated proceedings.  Plaintiff-Intervenors suffered irreparable harm from TRLED's failure to provide timely notice or an opportunity for Plaintiff-Intervenors to rebut and defend against the allegations.

Throughout the investigation, Plaintiff-Intervenors lacked access to the confidential record, which further prevented Plaintiff-Intervenors from developing a complete record.  Moreover, when TRLED and ORR did not understand Plaintiff-Intervenors' books and records, they drew unreasonable inferences and speculated that Plaintiff-Intervenors were involved in transshipment of goods, without seeking clarifications.  For those reasons, TRLED's and ORR's determinations are arbitrary and should be declared null and void.

## V.   ARGUMENT

### A. TRLED's Imposition of Interim Measures Violates Plaintiff-Intervenors' Procedural Due Process Rights.

#### 1.  Facts Relied Upon By TRLED in Imposing Interim Measures

Plaintiff-Intervenors agree with and adopt Plaintiffs' statement of facts and arguments relating to CBP's imposition of interim measures. *See* Plaintiffs' R.56.2 Br. at 20-27, 65-73.

It is worth emphasizing that the "Other Record Evidence" added to the record by TRLED on September 12-13, and 16, 2019 that remained undisclosed to Plaintiffs throughout the EAPA investigation remained undisclosed to Plaintiff-Intervenors as well.  *See Interim Measures Notice*, **Appx01027-01028**; *see also*, TRLED, Memo to File re: June 6, 2018 Site Visit (Sept. 12, 2019), **Appx07018-07038** ("June 2018 Site Visits"); TRLED, Memo to File re: [



] (Sept. 13, 2019) ("Sept. 13, 2019 Memo"), **Appx07040-07131**; and TRLED, Memo to File re: [

] (Sept. 16, 2019) ("Sept. 16, 2019 Memo"), **Appx07133-07176**.

CBP's June 6, 2018 site visits were conducted in connection with a GSP audit of HH.  As discussed in Plaintiffs' brief, the record does not include information to confirm that CBP followed its regulatory requirements of pre-notice and communication with HH and certainly violated its obligations to LB with respect that visit.  *See* Plaintiffs' Br. at 54.  The actual context in which the documents contained in the three September 2019 memoranda were created remained unclear throughout EAPA Inv 7321.  In its Interim Measures Notice, TRLED claimed that the documents were related to a GSP review of Cambodian *plywood*; in its final determination, TRLED claimed that the documents were created in a review of whether certain Cambodian *engineered wood flooring* was subject to the antidumping and countervailing duties on Multilayered Wood Flooring from China; in the administrative review decision, ORR claimed that the visit was conducted as part of a [                    ] but did not specify the product concerned.  *See* Interim Measures Notice at 8, **Appx01027**; TRLED Determination at 12, **Appx01045**; ORR Decision at 16, **Appx01067**.

Moreover, to clarify, the documents included in CBP's Sept. 13 & 16, 2019 Memoranda - CBP's Customs Form 28 ("CF-28"), importer's

response and related correspondence, and Customs Form 29 ("CF-29") -
were issued to third-party importers, not named in EAPA Inv. 7321, for
their own specific entries of [                    ] from HH.  The third-party
importers are unaffiliated U.S. customers of HH.  Although certain
documents included in the third-party importers' CF-28 responses
originated from HH, those documents were provided from HH to the
importers, who then submitted them to CBP directly in their own CF-28
responses.  Therefore, from the public versions disclosed by TRLED
during the investigation, HH was completely unable to discern or begin
to suspect what the underlying documents were, even though some
included documents are, in principle, HH's own records.  Needless to
say, LB had absolutely no idea what was included in the Sept. 13 & 16,
2019 Memoranda, as it was not privy to any of those documents or
associated with the underlying events at all.

> **2. TRLED's Interim Measures are Invalid Because They
> Lacked the Minimal Protections of Procedural Due
> Process and Did Not Support A Reasonable Suspicion of
> Evasion.**

Plaintiff-Intervenors submit that TRLED's interim measures

imposed in EAPA Inv. 7321 are invalid for reasons set forth in

Plaintiffs' brief. *See* Plaintiff's R56.2 Br. at 27-64. Plaintiff-Intervenors have, however, somewhat different legitimate interests that were violated by CBP's actions in conducting the EAPA Investigation. *See id*, at 44-48.

Although the EAPA allegation was filed against the Plaintiffs and not Plaintiff-Intervenors, the Coalition for Fair Trade of Hardwood Plywood ("Coalition") alleged that the Plaintiffs transshipped Chinese-origin hardwood plywood *through* LB and HH specifically. *See* Coalition, Revised Allegation re: IGF at 10-13 (**Appx01483-01486)**, APPI at 10-11 (**Appx01610-01611)**, and USG at 10-12 (**Appx01681-01683)** (May 1 & 10, 2019).

On October 1, 2019, TRLED informed Plaintiffs that, during its secret investigations, TRLED had developed a record giving rise to a "reasonable suspicion" of evasion of the Orders by the Plaintiffs and consolidated the three initiated EAPA investigations into EAPA Inv. 7321. Interim Measures Notice, **Appx01020 & Appx01028-01029**. Also, on October 1, 2019, TRLED notified Plaintiffs that it had imposed interim measures on them, including requiring cash deposits from Plaintiffs of 194.53% *ad valorem* on unliquidated entries (of hardwood

plywood shipments exported to the U.S. by Plaintiff-Intervenors). *See id.*, **Appx01021 & Appx01026-01028.** In short, under this regulatory scheme and certainly in EAPA Inv. 7321, Plaintiff-Intervenors were the transshippers and Plaintiffs imported the transshipments.

Unlike Plaintiffs in this case, TRLED did not even notify Plaintiff-Intervenors of the imposition of interim measures, despite the fact that TRLED, in its Interim Measures Notice, discussed LB's and HH's operations in depth and publicly referred to LB and HH as Plaintiffs' trading partners in Cambodia and the foreign parties that allegedly facilitated the transshipment of Chinese plywood through Cambodia. *See id*, **Appx01024-01028.** Plaintiff-Intervenors were not made aware of EAPA Inv. 7321 at all until they were alerted by Plaintiffs, at which time Plaintiffs also notified Plaintiff-Intervenors that their shipments on the water had to be sent back and all outstanding Purchase Orders had to be canceled due to CBP's demand for cash deposits of almost 200% on such shipments.

TRLED's imposition of interim measures was an affirmative action that affected Plaintiff-Intervenors' legal rights. Plaintiff-Intervenors were unable to receive compensation for the shipments that

were on the water.  CBP's demand of cash deposits at such an excessive amount caused Plaintiff-Intervenors to lose their major customers and potential new customers.  Plaintiff-Intervenors had no opportunity to renegotiate contracts with their upstream raw material suppliers. Plaintiff-Intervenors faced (and still face) potential lawsuits from the U.S. importers for damages because the U.S. importers ordered hardwood plywood produced in Cambodia, which is not subject to AD/CVD duties.  The imposition of interim measures cost Plaintiff-Intervenors' their reputation, goodwill, and freedom to take advantage of business opportunities, which caused irreparable harm to Plaintiff-Intervenors. *See Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1327 (Ct. Int'l Trade 2014).  It is unreasonable for CBP to inflict such irreparable harm on Plaintiff-Intervenors without notice at all, and no opportunity to defend against the allegations prior to their imposition.

Under normal AD and CVD proceedings that EAPA was enacted to enforce, the U.S. Department of Commerce's ("Commerce") and U.S. International Trade Commission's public notifications on petitions and investigation initiations enable implicated foreign producers and exporters to actively protect their interests in the subject merchandise

by reducing or cancelling shipments that might be subject to AD and CVD preliminary measures. *See* Plaintiffs' Br. at 54-57. In EAPA Inv. 7321, however, CBP provided Plaintiff-Intervenors – the foreign producers and exporters of the alleged covered merchandise – no notice or an opportunity to defend their production operations before they were forced to fundamentally alter their business operations and to have their products subject to almost 200% cash deposits rate from one day to another.

As discussed in Plaintiffs' brief, although private citizens and corporations have no vested right to engage in international trade, CBP is nevertheless bound by the fundamental notion of fairness and minimum dictates of due process, as set forth in U.S. jurisprudence and in the APA. Notice prior to adverse action is at the heart of fairness, and "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights…[And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Connecticut v. Doehr*, 501 U.S. 1, 16 (1991) (citation omitted); *see* Plaintiffs' Br. at 27-44 (discussing Plaintiffs' right to notice and counsel's effective

representation before CBP imposes adverse actions).  As with Plaintiffs,
TRLED gave Plaintiff-Intervenors no opportunity to retain counsel and
effectively defend against the interim measures or the underlying secret
information cited by TRLED in its Interim Measures Notice.  In agency
proceedings, all interested parties including Plaintiff-Intervenors here
have the right to be heard for "presentation, adjustment, or
determination of an issue, request, or controversy in a proceeding."  5
U.S.C. §555(b).

   Plaintiff-Intervenors agree with Plaintiffs that there is no
legitimate reason for CBP to withhold confidential information that was
used against interested parties in EAPA Inv. 7321 and not establish an
Administrative Protective Order ("APO").  *See* Plaintiffs' Br. at 48-58.
Public versions of the documents, or even public summaries of
confidential information, are woefully insufficient to ensure effective
rebuttal and defense against the highly technical and specific hidden
allegations and agency findings, as minimum procedural due process
would require.  *See id.* at 59-64.

   To illustrate the absurdity of defending an EAPA allegation
without access to actual confidential information, in the Interim

13

Measures Notice, TRLED claimed that the fact that "the [

] of Happy Home states that Happy Home '[

]'" supports its suspicion that the plywood exported by HH is

not of Cambodian-origin.  *See* Interim Measures Notice at 8, **Appx01027**

(*citing* Sept. 16, 2019 Memo at 36).   Page 36 of the September 16, 2019

Memo is an affidavit from HH's [                          ] but submitted by

[

].  *See* Sept. 16, 2021

Memo at 25-26, 36-38, **Appx07157-07158, Appx07168-07170.**[2]

Without seeing the confidential information, Plaintiff-Intervenors

never had the chance to point out that CBP's quote in the Interim

Measures Notice was incomplete and inaccurate.  As can be seen now

---

[2] CF-28 responses filed by importers to CBP are treated as confidential information
based on CBP's long-standing practice. As such, documents contained within
TRLED's Sept 16, 2019 Memo are business confidential information of another
importer that would never have been disclosed to Plaintiff-Intervenors or Plaintiffs
absent an APO.

from the confidential record, the [                    ] of HH stated

explicitly that HH "[


]" *Id.*, **Appx07168** (emphasis supplied).  TRLED selectively

quoted half of the sentence and claimed that HH admitted that it

[                                    ] in the Interim Measures Notice, which

was then repeated in TRLED's Determination and again in ORR's

Decision.  *See* Interim Measures Notice at 8, **Appx01027**; TRLED

Determination at 12, **Appx01045**; ORR Decision at 17, **Appx01068**.

TRLED arbitrarily quoted, out of context, half of a sentence and

provided no opportunity for HH to review or rebut the inference.  The

AD and CVD Orders on Hardwood Plywood from China expressly

exclude "multilayered wood flooring."  *See e.g.*, AD Order, 83 FR 504,

512-513, Appendix - Scope, exclusion (3).  If HH used the [


]

and [


], HH could

not have "transshipped" the same [

] to Plaintiffs in this case.

TRLED selectively quoted half of HH's sentence that fit into its pretextual narrative of transshipment and disregarded the other half of the sentence.  That went unnoticed throughout the EAPA investigation because counsel had no access to the bracketed information in TRLED's Interim Measures Notice or the underlying Sept. 16 Memo.  Placing such secret information onto the record of EAPA Inv. 7321 is extremely prejudicial to begin with, not to mention that TRLED never questioned HH regarding its *wood flooring production* as part of a diligent investigation of the allegation on appeal.

In any event, TRLED's Sept. 13&16, 2019 Memos should be disregarded in their entirety.  Plaintiff-Intervenors had no opportunity to review such documents or rebut them.  Further, the documents were created in the context of a GSP review of wood flooring entries that were produced and shipped to the U.S. in [                    ] and have no relation whatsoever to the hardwood plywood imported by Plaintiffs that are subject to EAPA Inv. 7321 or this period of investigation ("POI").

In sum, TRLED failed to provide Plaintiff-Intervenors (any) notice of the initiation of an EAPA investigation or the imposition of interim measures against the hardwood plywood exported by Plaintiff-Intervenors.  TRLED also failed to provide Plaintiff-Intervenors an opportunity to defend themselves before inflicting harsh and irreparable harm to their businesses by imposing interim measures. TRLED failed to establish an APO and disclose confidential information used to support TRLED's "reasonable suspicion" that Plaintiff-Intervenors were transshipping Chinese-origin hardwood plywood through Cambodia and to the U.S. Plaintiff-Intervenors were provided no procedural due process rights to be heard and respond to the allegations against them, which further prevented Plaintiff-Intervenors from developing a complete and accurate record of issues considered by TRLED prior to the imposition of interim measures and prior to making a final determination, and, later by ORR, prior to making its administrative review decision.

Lastly, TRLED's reasonable suspicion of evasion is unsubstantiated because it is based on discredited country-wide trade data and CBP's internal email exchanges with conclusory statements

that something was typical or atypical of plywood produced in Cambodia, with no corroborating evidence.  Secret documents created in proceedings completely unrelated to EAPA Inv. 7321 to which Plaintiff-Intervenors and their legal representatives had no access during the EAPA investigation cannot be a reasonable basis for the EAPA investigation's determinations, including the initiation itself.  *See* Plaintiffs' Br. at 65-73.

The procedural failure in this case involves actions that contravene inarguably well-established parameters for governmental action.  This is not simply a mistake in process that requires a remand.  The actions of the government reveal failure after failure of essential process that led to profound harm.

### 3.  Plaintiff-Intervenors Have No Administrative Remedies for Periodic Review of Their Exports to the U.S.

The EAPA statute was enacted to enforce AD and CVD orders that the U.S. Department of Commerce ("Commerce") imposes upon specific merchandise exported by specific foreign exporters/producers from specific countries.  Commerce is obligated to review and determine the amount of AD and CVD duties every year.  19 U.S.C.

§§1675(a)(1)(A)&(B).  In Commerce's administrative reviews, the foreign producer and exporter are always respondents with full participatory rights.  *See* 19 U.S.C. §1677f-1(c)(1)&(e)(1) (Commerce must determine the individual weighted average AD and CVD rates "*for each known exporter and producer of the subject merchandise.*" {Emphasis added.}  That circumstance compels CBP to afford the same protections to Plaintiff-Intervenors, including that CBP conducts its EAPA investigations fairly (notice before action; notice and opportunity to correct discrepancies, the right to submit argument or request internal review, etc).

CBP's EAPA statute and regulations, moreover, do not provide a segue for foreign producers and exporters from CBP's evasion determination to Commerce's administrative reviews.  This is problematic where, as here, TRLED's and ORR's finding of evasion is based solely on a *theory* of commingling, with not one specific entry of covered merchandise identified as a product of China.

CBP's claims that it cannot know whether Plaintiff-Intervenors exported Chinese or Cambodian merchandise to the U.S. should be resolved by allowing a certification procedure upon entry of the

merchandise into the U.S.  Commerce often uses such procedures in circumvention cases.  *See, e.g., Oil Country Tubular Goods from China*: Preliminary Affirmative Determinations of Circumvention, 86 FR 43627, 43628 (Dep't Commerce Aug. 10, 2021) (exporters are permitted to certify that their exports do not meet the criteria to be included under the existent AD/CVD orders).

Commerce theoretically allows a foreign exporter implicated in AD and CVD proceedings by CBP's evasion finding to participate in an administrative review. *See Aluminum Extrusions from China: Preliminary Results of Antidumping Duty Administrative Review*, 2019-2020, 86 FR 43168 (Dep't Commerce Aug. 6, 2021) and accompanying Decision Memorandum (July 30, 2021) ("Extrusions Memo").  The mandatory respondent, Kingtom, is an exporter of aluminum extrusions located in the Dominican Republic.  CBP found that the U.S. importers of Kingtom's merchandise evaded the AD/CVD orders.  Extrusions Memo at 4.  In its review, Commerce collected a vast amount of information from Kingtom on the company's production and sales, but Commerce refused to consider that information because CBP had already found evasion of Kingtom's entries for the relevant time

period.  *Id.* at 4-6, 12 & 13.  Kingtom was also unable to name a Chinese manufacturer of the covered merchandise because Kingtom stated that itself produced all of the subject merchandise in the Dominican Republic.  *Id.* at 12&15.  Commerce therefore considered Kingtom's statements "contradictory in law and fact" because Kingtom could not have shipped subject merchandise to the U.S. and at the same time have no shipments of subject merchandise.  *Id.* at 12.

Plaintiff-Intervenors' situation is similar:  In order to participate in Commerce's review, Plaintiff-Intervenors must have had sales of subject merchandise (i.e., covered merchandise produced in China) to the U.S.  Yet, Plaintiff-Intervenors will never be able to participate in an administrative review at Commerce because they had no shipments of Chinese plywood to the U.S.  Even though Commerce claims that the EAPA law and AD/CVD law are meant to be implemented and enforced "in tandem," in fact, neither provides an administrative remedy for the 200% AD/CVD duties that CBP has imposed upon Plaintiff-Intervenors' shipments.  This kafkaesque outcome violates Commerce's statute requiring periodic reviews of AD/CVD orders. 19 U.S.C. §§1675(a)(1)(A)&(B).

In conclusion, because the agencies do not have a workable means for exporters found to have evaded the AD/CVD orders to gain review of the alleged offending shipments/entries or revise deposit rates, the measures should be vacated, and the agencies should be ordered to develop such measures before continuing to enforce the EAPA statute.

## B. TRLED's Final Determination Is Unreasonable and Arbitrary.

Plaintiff-Intervenors adopt the statement of facts set forth in Plaintiffs' brief concerning the events after TRLED notified the parties of interim measures on October 1, 2019 to the date that TRLED announced its final determination on June 29, 2020.  *See* Plaintiffs' Br. at 74-80.

By way of a brief background of the facts specific to Plaintiff-Intervenors, on October 4, 2019, TRLED issued a "Request for Information" ("RFI") to each Plaintiff-Intervenor, to which Plaintiff-Intervenors timely responded by the extended deadline.  *See* TRLED, RFI to Happy Home (Oct. 4, 2019), **Appx07178-07186**; TRLED, RFI to LB Wood (Oct. 4, 2019), **Appx44623-44631**; HH, RFI Questionnaire Response (Nov. 8, 2019), **Appx20368-26617** ("HH Qre Rsp."); LB, RFI Questionnaire Response (Nov. 8, 2019), **Appx26619-30901** ("LB Qre

Rsp.").  HH and LB each collected, translated, and submitted over 4,000 pages of documents that included raw material purchase records, production records, and sales records, as well as their internal company records from employees' payroll records to financial records—all within 35 days.

TRLED issued one round of supplemental Requests for Information to Plaintiff-Intervenors.  *See* TRLED, Supplemental RFI to Happy Home (Nov. 21, 2019), **Appx31130-31135**; TRLED, Supplemental RFI to LB Wood (Nov. 22, 2019), **Appx31159-31165**; HH, Supplemental Questionnaire Response (Dec. 16, 2019), **Appx31396-32983** ("HH Supp. Rsp."); LB, Supplemental Questionnaire Response, (Dec. 16, 2019), **Appx33178-44421**("LB Supp. Rsp.").  HH submitted over 1,500 pages of documents and LB submitted over 10,000 pages of documents in their supplemental RFI responses.

Plaintiff-Intervenors prepared comprehensive responses anticipating that TRLED would verify the accuracy of their responses through on-site audits in Cambodia.  TRLED initially scheduled verification at Plaintiff-Intervenors' plants in February 2020.  On January 31 and February 3, 2020, counsel to Plaintiff-Intervenors

notified TRLED via email of the novel Coronavirus outbreak ("COVID-19") related travel restrictions.  *See* TRLED, Memorandum re: Adding Information to the Administrative Record of EAPA Cons. Case 7321 - Emails from Legal Counsel (Feb. 10, 2020), **Appx44380-44382**.  On February 11, 2020, TRLED postponed the verification and extended the Written Arguments Deadline.  *See* TRLED Memorandum re: Extension of Written Arguments (Feb. 11, 2020), **Appx45131**.  TRLED ultimately cancelled verification altogether due to COVID-associated travel restrictions.

Notably, from the time that Plaintiff-Intervenors' Supplemental Questionnaire Responses were submitted in December 2019 to the time when Plaintiffs and Plaintiff-Intervenors jointly filed their written argument on May 14, 2020 (**Appx44395-44401**), TRLED elected to not issue further supplemental questionnaires or seek clarification with respect to the perceived deficiencies in Plaintiff-Intervenors' statements and records via written or other means.  Indeed, Plaintiff-Intervenors first learned that TRLED had doubts over their company records when TRLED's final determination was released on June 29, 2020.  Surely, this manner of administration of the EAPA statute deprived Plaintiff-

Intervenors the right to be heard and honored the APA only in the breach thereof.

### 1. TRLED's Determination of Evasion Is Arbitrary and Based On An Incomplete and Inaccurate Agency Record.

As discussed in Plaintiffs' brief, TRLED never developed a record that rose to the level of "substantial evidence" because much of the information TRLED relied upon in its final determination was kept secret from Plaintiff-Intervenors and Plaintiffs throughout the investigation. *See* Plaintiffs' Br. at 80-85. There was no timely opportunity for Plaintiff-Intervenors or Plaintiffs to submit rebuttal evidence that "fairly detracts" from the perceived discrepancies that fit into TRLED's pre-determined narrative of evasion. *Id.* TRLED, in the final determination, speculated without specific evidence, that Plaintiff-Intervenors "likely" commingled Chinese plywood with their own plywood manufactured in Cambodia. *See* TRLED Determination, **Appx01040, Appx01045, Appx01048, Appx01050**; Plaintiffs' Br. at 85-89. Speculation, however, cannot amount to "substantial evidence." *See* Plaintiffs' Br. at 81-83 (discussing the substantial evidence standard). Indeed, the best TRLED could do after a year-long

investigation was to offer pure speculation in the place any of hard evidence of transshipment in these commercial combinations (exporter-importer) subject of the investigation.

Plaintiff-Intervenors concur with the arguments advanced in Plaintiffs' Brief in rebutting CBP Agent's observations and conclusions drawn from the June 6, 2018 Site Visits and TRLED's rejection of the production capacity calculation provided by Plaintiff-Intervenors. *See id.* at 85-98. Plaintiff-Intervenors highlight with specific examples that TRLED's determination that Plaintiff-Intervenors' Records are unreliable or that Plaintiff-Intervenors likely commingled Chinese-plywood with plywood produced in Cambodia are arbitrary conclusions. In particular, TRLED never sought clarification from Plaintiff-Intervenors, which should have occurred as part of a fair and diligent investigation.

> a. TRLED Did Not Issue Supplemental Questionnaires Regarding Perceived Deficiencies in Plaintiff-Intervenors' Responses and Records.

TRLED administered the investigation and made the final determination without observing basic notions of fairness. TRLED drew unreasonable and adverse conclusions in instances where it did

not fully understand Plaintiff-Intervenors' records but never sought clarification from Plaintiff-Intervenors.  When TRLED had doubts or concerns with respect to Plaintiff-Intervenors' questionnaire responses and/or documents, TRLED was obligated to issue further supplemental questionnaires and provide Plaintiff-Intervenors an opportunity to clarify, correct, and explain their responses.  Plaintiff-Intervenors placed voluminous information onto the record in response to TRLED's questionnaires to substantiate that they produced hardwood plywood onsite in Cambodia.  Plaintiff-Intervenors are unable to foresee or predict from and among those 1000s of pages whether TRLED would have any doubts or concerns over any particular piece of evidence submitted if such doubts were not communicated to Plaintiff-Intervenors.  It was incumbent upon TRLED to announce the discrepancies between TRLED's limited observations and to seek clarifications from Plaintiff-Intervenors to avoid arbitrary decision-making.

The standard of arbitrary, capricious, or an abuse of discretion of agency action "is not so much a particular set of substantive commands but rather it is a *process*, a process of learning through reasoned

27

argument, that is the antithesis of the 'arbitrary.'" *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 548 (2009) (citation omitted).  TRLED could not have "learn[ed] through reasoned argument" if it never provided the opportunity for Plaintiff-Intervenors to present reasoned arguments.

For instance, TRLED perceived inconsistencies over LB's record statements and documentation.  Particularly, LB stated that its owner [          ] produces plywood but was not involved in the sale or production of LB Wood's plywood production, but LB stated elsewhere in the same questionnaire response that [          ] provided LB Wood with machinery, raw materials, and some management personnel, and LB's Account Payable Ledger indicated that LB purchased veneers from [          ].  *See* TRLED Determination at 7, **Appx01040**.  If TRLED had inquired into this "inconsistency," LB would have explained that its statement that [          ] provided raw materials was in response to the question requesting LB to explain "any business relationships ***your company had or has*** with the owners of the companies."  *See* LB Qre Rsp. at 5-6, **Appx30891-30892**.  Because the question was posed in present and past tense, LB interpreted the question to cover not only the POI but from the date that it was established, so LB truthfully

explained that [              ] provided LB raw materials as part of the
owner's investment to enable LB's initial development and production
of plywood. *See id.*

The Period of Investigation ("POI") listed on TRLED's
questionnaire is "June 5, 2018 onward", and therefore, without
specification like using past tense in the question, LB presumed that
TRLED was inquiring into events during the POI, which is what LB
meant when it responded that [              ] was not involved in the
production and sales of subject merchandise.  *See id.* at 7, **Appx30893**.
Moreover, LB's statement is fully corroborated by the accounts payable
details that show LB purchased veneers from [              ] only from
January to April of 2018, i.e., prior to the POI and within the first six
months of its operations.  Indeed, there is no discrepancy in LB's
statements and records; the so-called discrepancy is easily explained if
TRLED had only raised the issue prior to making an affirmative
determination, based in-part on that issue.  This Court has admonished
trade agencies for using a predatory "gotcha" policy for not asking
questions or not providing parties an opportunity to explain, as it "does
not promote cooperation or accuracy or reasonable disclosure by

cooperation parties." *Bowe-Passat v. United States*, 17 C.I.T. 335, 343 (1993).

Similarly, TRLED questioned HH's claim that it produced plywood from individual veneers because HH's raw material purchase packages included [                    ] of "other plywood" that were used in HH's multilayered wood flooring production.  *See* TRLED Determination, **Appx01048**.[3]  TRLED used HH's mere [

          ] to support the theory that HH commingled Chinese plywood with plywood produced in Cambodia.  HH had translated in those purchase packages that those were "flooring core."  HH could not know, however, that TRLED had doubts about whether the material was actually flooring core used in wood flooring production.  If TRLED had issued a supplemental questionnaire regarding those transactions, HH could have easily explained that although flooring core purchased in the relevant transactions can be sold as plywood **in theory**, it was

---

[3] HH clarifies that this is not ORR's new allegation against HH as stated in Plaintiffs' moving brief.  *See* Plaintiffs' Br. at 126-126.  Plaintiffs indeed discussed this issue in its argument against TRLED's Final Determination.  *Id.* at 115-116. Nonetheless, counsel to HH had no idea to what TRLED or ORR was referring because the discussion was heavily bracketed, until counsel had access to the confidential records under JPO in this litigation.

**impossible** that HH commingled the imported flooring core with the plywood it produced and sold to USG, as documented below.

TRLED noticed that several other documents included in the relevant purchase packages such as Cambodian Customs declaration forms and invoices indicated that HH imported plywood, but TRLED neglected to consider an important aspect of the problem: that each Cambodian Customs declaration form and commercial documents listed the sizes of the imported flooring core, which were all 1220x1220(mm). *See* HH Qre Rsp. at Exhibit 11, **Appx25581-25587, Appx21772-21775, Appx22199-22202, Appx25728-25731, Appx25739-25742, Appx26295-26298, Appx26531-26534**. All the plywood HH exported to the U.S. was at about 1220x2400(mm), regardless of thickness, as listed in HH's Exhibit 1 summary page and supported by the underlying individual sales packages. *See id*, Exhibit 1, **Appx20443-20451**. HH would never produce, and no customer would ever buy, a piece of plywood at 1220x2400 made with two pieces of 1220x1220 plywood glued side-by-side because such finished plywood cannot hold weight. The center would easily break and render the merchandise unusable. TRLED was wrong in claiming that there was no indication that the imported

31

plywood was flooring core aside from the translation of the contract's Chinese characters of the commercial invoice.  TRLED Determination, **Appx01048**.  It would have been impossible for HH to incorporate the imported "flooring core" plywood into the 1220x2440 plywood sold to the U.S.  Agency action that fails to consider an important aspect of the problem is arbitrary and capricious.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted).

There are many other perceived discrepancies in TRLED's final determination that are not discrepancies at all, such as the proposition that LB's payroll records cannot be reconciled to the company's financial documents, LB's consumption of veneers did not match the veneers it purchased, LB's purchases of raw materials does not tie to production runs, USG's payment to HH's Chinese affiliates, USG's payroll records cannot be reconciled to the company's financial documents, USG's payments to HH does not reconcile with CBP entry data, and entry-specific issues with a few shipments to each of the Plaintiffs.[4] *See e.g.*,

---

[4] Plaintiff-Intervenors do not brief each of these issues because the Court has not decided to conduct a trial *de novo* and Plaintiff-Intervenors cannot practically do so within the current word limit.

TRLED Determination at 5-17, **Appx01038-01050**.  All of these issues

that TRLED discussed in its determination could have been resolved if

TRLED had timely informed the parties of its concerns; but TRLED did

no such thing.

TRLED administered the investigation in a prejudicial and

pretextual manner and failed to seek clarification when it did not

understand Plaintiff-Intervenors' books and records.  Moreover, after

TRLED made its final determination, Plaintiff-Intervenors only had

access to the public version of the determination, and thus Plaintiff-

Intervenors had to guess, based on the bracket size and the citation, the

content of TRLED's references and then address perceived

discrepancies in requests for review before the ORR.  A process in which

parties to an agency investigation need to guess how and why the

agency made its decision and what evidence forms the basis of the

agency's decision is inherently unreasonable and unfair—the very

definition of arbitrary agency action.

b. TRLED Based Its Determination on Flawed Information and Confidential Information That It Never Disclosed to Plaintiff-Intervenors.

Plaintiffs and Plaintiff-Intervenors demonstrated in their joint written arguments filed before TRLED why the country-wide trade data on the record are flawed, as summarized in Plaintiff's brief. *See* Plaintiff's R56.2 Br. at 111-115. Apart from all the irreconcilable aspects already mentioned, Plaintiff-Intervenors highlight another inconsistency that further renders the country-wide export and import data on the record unreliable.[5]

TRLED claimed in the final determination that HH exported [     ] plywood to the U.S. in 2016 and 2017 than Cambodia [                    ], and concluded thus HH likely commingled Chinese plywood with plywood HH produced in Cambodia. *See* TRLED Determination at 15-16, **Appx01048-01049**. The data used in TRLED's comparison came from the 2017 Forestry Yearbook and CBP's entry data. *See id.* at Footnote 133 (*citing* "September 6, memorandum" and TRLED Memorandum, Adding Information to the Administrative

---

[5] This was not discussed in any filings before the agency because counsel lacked access to the business confidential information.

Record of EAPA Cons. Case 7321, 2017 Forestry Yearbook (Jan. 9, 2020) ("2017 FAOStat YB"), **Appx44693**).  The "September 6, memorandum" is nowhere to be found on the administrative record. Because TRLED refers to it in Footnote 134 as "CBP entry data," Plaintiff-Intervenors suspect that the HH total plywood export figures come from the January 6, 2020 Memo.[6]  *See* TRLED, Memorandum re: Entries from Happy Home and LB (Jan. 6, 2020) ("Jan. 6 CBP Data"), **Appx44365-44377**.

In the final determination, TRLED maintained that the 2017 FAOStat YB is a reliable source after Plaintiffs and Plaintiff-Intervenors pointed out in the written argument that this data does not reconcile with other country-wide data on the record.  It has now become clear, by reviewing the confidential version of TRLED's final determination, that the 2017 FAOStat YB data also has irreconcilable differences with CBP data.  Based on the 2017 FAOStat YB, Cambodia exported a total of 4,000 m3 of plywood to the <u>entire world</u> in 2017.  *See* 2017 FAOStat YB at 222, **Appx44933**; *see also*, Respondents' Written

---

[6] Plaintiff-Intervenors' suspicion is unconfirmed to this day because the data included in the Jan. 6, 2020 Memo is *illegible*.

Arguments at 6, **Appx44396**.  The CBP data placed on the record by TRLED purportedly shows that HH alone exported [          ] m3 from Cambodia to the U.S. in 2017.  CBP knew that the Cambodian FAOStat YB data was deeply flawed and unusable, based on CBP's own entry data, but pressed ahead nonetheless.

To be sure, CBP's entry data often contain mistakes due to human error in filling out 7501 Entry Summary forms.  Counsel has no way of verifying the HH 2017 export figures until CBP refiles a legible copy of its Jan. 6 memo and puts all the underlying entry packages onto the administrative record.  CBP's HH's 2017 [          ] m3 export quantity is unsupported by HH's own sales records, which are <u>not</u> on the EAPA Inv. 7321 administrative record because TRLED never asked HH to submit pre-POI U.S. sales data.

In essence, if TRLED insists that the 2017 FAOStat YB is reliable, then all data in there must carry equal weight, including the 2017 total plywood export quantity (4,000 m3) from Cambodia to the U.S. that renders CBP's entry data TRLED used in the Chart on page 16 of the final determination (**Appx01049**) inaccurate and unreliable.

TRLED cannot cherry-pick a piece of data within a source that appears to support its position and turn a blind-eye to other pieces from the same source that do not support its position.  That is, by definition, an arbitrary analysis.

Indeed, during the EAPA investigation, Plaintiff-Intervenors were deprived of an opportunity to review, provide rebuttal, clarification or corrections to other confidential record evidence, such as the information included in CBP's June 2018 Site Visits.  Due process "forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974). Plaintiff-Intervenors were afforded no procedural due process rights. The only proper remedy is for this Court to declare the investigation null and void for failure to provide Plaintiffs and Plaintiff-Intervenors the procedural due process rights due to them.  *See* Plaintiffs' Br. at 62-64.

### C. ORR's Administrative Review in EAPA Inv. 7321

After TRLED's final determination, Plaintiffs and Plaintiff-Intervenors timely requested an administrative review with ORR on

August 10, 2020, pursuant to 19 U.S.C. §1517(f).  *See* USG, Request for

Administrative Review (August 10, 2020), **Appx44456-44457** ("USG/HH

Rev. Req."); IGF and APPI Request for Administrative Review (Aug. 10,

2020), **Appx44461-44497** ("APPI/IGF Rev. Req."); and LB Request for

Review (Aug. 10, 2020), **Appx44499-44539** ("LB Rev. Req.").  ORR

acknowledged receipt of the review requests and supporting briefs filed

by Plaintiff-Intervenors, but stated:

> Although {Plaintiff-Intervenors} are considered interested
> parties as per 19 CFR § 165.1, LB Wood and Happy Home
> are not considered parties to the investigation. Only parties
> to the investigation are entitled to file a request for review.
> *See*, 19 CFR §165.41(a). Accordingly, LB Wood's and Happy
> Home's requests are not proper requests and are not
> considered for purposes of this administrative review
> determination.  However, facts already on the record and
> related to these entities have been considered.

*See* ORR Decision at 2, **Appx01053**.

ORR did not explicitly reject the review requests filed by Plaintiff-

Intervenors, yet ORR clearly did <u>not</u> consider the arguments advanced

in Plaintiff-Intervenors' review requests.  ORR erred in its handling of

Plaintiff-Intervenors' review requests.  Moreover, ORR's decision is

arbitrary and capricious because it rests upon an incomplete record and

inaccurate information.

### 1. ORR's Mis-Handling of Plaintiff-Intervenors' Review Requests

ORR cited its own regulation as the basis for not considering Plaintiff-Intervenors' Review Requests. *See id.,* **Appx01053**. However, CBP's EAPA regulation, 19 CFR Part 165, is only an interpretive rule that the Court should afford little deference to, for the lack of notice-and-comment procedure. *See* Plaintiffs' Br. at 35-40. As such, ORR cannot rely on the interpretive rule to reject substantive arguments made in Plaintiff-Intervenors' review requests, when the EAPA statute does not prohibit foreign producers/exporters from filing review requests. *See* 19 U.S.C. §1517(f)(1) (specifically authorizing U.S. importers and the alleger to request an administrative review).

Further, Plaintiff-Intervenors filed their review request in part relying on TRLED's treatment of the joint written arguments filed by Plaintiffs and Plaintiff-Intervenors. The term "party/parties to an investigation" is unilaterally created and defined by CBP in 19 C.F.R. §165.1 to include only the EAPA alleger and the U.S. importer who allegedly engaged in evasion at entry. *See* 19 CFR § 165.1. CBP's regulations that specify requirements of filing written arguments before

TRLED and requirements of filing administrative review request before ORR both use this term.  *Compare* 19 CFR § 165.25(a) *with* 19 CFR § 165.41(a).  Plaintiffs and Plaintiff-Intervenors jointly filed their written arguments, which was acknowledged and accepted by TRLED just a few months before ORR took issue with Plaintiff-Intervenors' review requests.  CBP's position with respect to who has rights to file briefs obviously changed, but CBP failed to timely notify Plaintiff-Intervenors, or the public, for that matter.  It is arbitrary and capricious for an agency to change policy without any reasonable justification, let alone not even announcing the policy change, as CBP did here.  *See Motor Vehicle Mfrs.*, 463 U.S. at 40-43 (1983) (holding that the agency must articulate a satisfactory explanation for a change in practice).

Moreover, even if ORR had justifications to not consider Plaintiff-Intervenors' review requests, ORR should have timely notified Plaintiffs and Plaintiff-Intervenors so that Plaintiffs could take other corrective measures, such as withdrawing their review requests and filing new review requests incorporating arguments made in Plaintiff-Intervenors' review requests.  As discussed in Plaintiffs' Rule 56.2 briefs and above, CBP placed culpability squarely at the feet of Plaintiff-Intervenors in

claiming that they had motive and opportunity to transship Chinese plywood, and much of TRLED's final determination is based on perceived inconsistencies in Plaintiff-Intervenors' statements and documents. *See* Plaintiffs' Br. at 118-120. Plaintiffs cannot be expected to stand as surrogates to defend the exporters' books and records by proxy. In addition, it is not necessarily the case that parties to an EAPA investigation are all represented by the same counsel, and, without an APO, even counsel have no access to other parties' confidential records and record deficiencies perceived by the agency. CBP's muzzling of the true target of the investigation thus renders its administrative procedure the stuff of farce.

### 2. ORR Failed to Conduct a De Novo Review of TRLED's Final Determination.

Following the mishandling of Plaintiff-Intervenors' request for review briefs, ORR also failed to review TRLED's final determination *de novo*. Much of ORR's decision affirming TRLED's final determination involved merely reciting the facts that TRLED cited. ORR may not have even reviewed the underlying record and certainly did not seek any clarifications from Plaintiff-Intervenors after it learned from the

review requests that the perceived inconsistencies could be easily addressed.

For instance, LB explained that it purchased certain veneers from its parent company [            ] at the beginning of its operations outside of the POI, which does not contradict the statement that [            ] was not involved in LB's sales and production of plywood during the POI.  *See* LB Rev. Req at 22-23, **Appx44527-44528**.  ORR completely ignored this statement, maintaining that "statements that [                                              ] and statements that [

                                              ] cannot both be accurate." ORR Decision at 15, **Appx01066**.  Surely, they can both be accurate because circumstances change over time.

Another example is that in IGF's and APPI's Review Request counsel cited all the photographs placed on the record by the importers that show LB had functioning production equipment, without knowing what machine was, in CBP Agent's view, "broken up into multiple pieces" and "covered in thick layer of dust."  APPI/IGF Rev. Req. at 16-

17, **Appx44483-44484**.  IGF and APPI also expressed concern that the record is devoid of any evidence that the CBP Agent had the requisite expertise to assess plywood machine capacity or even understand how the equipment operated.  *Id.* at 17-19, **Appx44484-44486**.  ORR did not discuss or compare any of the photographs cited in the parties' review requests to the photographs CBP received from its Agent concerning the June 6, 2018 visit.  *See* ORR Decision at 15-16, **Appx01066-01067**.

With respect to USG and HH, ORR continued to rely on the undisclosed Sept. 13 & 16, 2019 Memos, to which HH and USG had no access.  **Appx01068**.  For instance, ORR repeated the selectively quoted HH statement regarding HH's imports of a limited amount of [

] used in its wood flooring production in CF-28 responses filed by the third-party importer that is completely unrelated to EAPA Inv. 7321.  *Id.*  Likewise, ORR completely ignored USG's and HH's concerns over the CBP Agent's expertise.  *See* USG/HH Rev. Req. at 16-17, **Appx44445-44446**; ORR Decision at 17-18, **Appx01068-01069**.

The fact that ORR failed to conduct the required *de novo* review of TRLED's final determination is evident also from the fact that ORR

even carried on incorrect record cites from TRLED's final determination of the "September 6 Memorandum".  *See* ORR Decision at 18, Footnote 58, **Appx01069**.  ORR recited TRLED's analysis that "Happy Home exported [       ] plywood to the United States in 2016 and 2017 than Cambodia [                                        ][58]" *See* **Appx01069**.  If ORR had actually reviewed the records instead of repeating what TRLED claimed, it would not have cited to the same non-existent "September 6 memorandum".

Moreover, ORR's Decision was not based on substantial evidence for the same reason that TRLED's final determination was not.  The record remained fatally incomplete because it lacks Plaintiff-Intervenors' responses to the so-called evidence that was withheld from them.  That is, for all practical purposes, not a record at all.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) (after-the-fact explanations even in the form of affidavits do not constitute a record that can support agency action).

Like the TRLED Determination, the ORR Decision was also based on "isolated tidbits of data which suggest a result contrary to the clear

weight of the evidence." *See USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  Much of the "isolated tidbits of data" and CBP's incorrect analysis of Plaintiff-Intervenors' documents were kept from counsel during the entire investigation.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Agency records developed in secrecy cannot withstand judicial review.

## VI.   CONCLUSION AND PRAYER FOR RELIEF

EAPA Inv. 7321 is a case that is marred by procedural deficiencies.  Further, no reasonable connection exists between the record facts and the conclusions that TRLED and ORR reached.

The Court should find that the procedural infirmities infecting CBP's EAPA interpretive rules require CBP's corrective action to establish investigation procedures that do not violate the parties' rights to notice and opportunity to be heard.  For EAPA Inv. 7321, however, CBP has no means to correct those defects, and therefore, the Court

should order CBP to withdraw its determinations in this case and remove its enforcement measures against Plaintiffs.

Should the Court be unable to detect any due process violations or deficiencies in CBP's EAPA regulations, Plaintiff-Intervenors request that the Court find that CBP's determinations were arbitrary and capricious. Moreover, because CBP did not consider the whole record, the determinations necessarily could not be based on substantial evidence.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
DEKIEFFER & HORGAN, PLLC
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff-Intervenors*

Date: August 25, 2021

*Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

46

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (14 point Century font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **7,998** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
DEKIEFFER & HORGAN, PLLC
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff-Intervenors*

1