UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————

| | | |
|---|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*, | : : : | |
| Plaintiffs, | : : | Consol. Ct. No. 20-03914 |
| and | : : | |
| LB WOOD CAMBODIA CO., LTD., *et ano.*, | : : | Before: M. Miller Baker, Judge |
| Plaintiff-Intervenors, | : : | |
| v. | : : | **PUBLIC** |
| UNITED STATES, | : : | **VERSION** |
| Defendant, | : : | |
| and | : : | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | : : : | |
| Defendant-Intervenor. | : : | |

————————————————————

DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' AND PLAINTIFF-INTERVENORS'
<u>MOTIONS FOR JUDGMENT ON THE AGENCY RECORD</u>

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge International
Trade Field Office

OF COUNSEL:
JENNIFER PETELLE
Attorney
U.S. Customs and
Border Protection
Office of the Chief Counsel

CLAUDIA BURKE
Assistant Director

HARDEEP K. JOSAN
Trial Attorney
 U.S. Dept. of Justice
Civil Division
Commercial Litigation
Branch
26 Federal Plaza, Rm.346
New York, New York l0278
December 10, 2021
Tel. No. 212-264-9230 or 9245

Attorneys for Defendant

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ............................................. 3

I.      Administrative Determination Under Review ............................. 3

II.     Issue Presented For Review ....................................................... 3

STATEMENT OF FACTS ................................................................... 3

I.      Enforce And Protect Act ........................................................... 3

II.     The Investigation ...................................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 12

ARGUMENT ...................................................................................... 13

I.      Standard Of Review ................................................................. 13

II.     CBP Lawfully Imposed Interim Measures ................................. 15

III.    Substantial Evidence Supports CBP's Evasion
        Determination ........................................................................... 30

        A.     LB Wood ......................................................................... 31

        B.     Happy Home ..................................................................... 35

        C.     Plaintiffs' And Plaintiff-Intervenors' Arguments
               Lack Merit ...................................................................... 39

IV.     Plaintiff-Intervenors' Remaining Arguments Should
        Be Dismissed ............................................................................ 45

CONCLUSION ........................................................................ 46

## TABLE OF AUTHORITIES

### Cases

*A Classic Time v. United States*,
   123 F.3d 1475 (Fed. Cir. 1997) ............................................ 18

*Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v.
   United States*,
   751 F.2d 1239 (Fed. Cir. 1985) ............................................ 17

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
   419 U.S. 281 (1974) ............................................................ 45

*Diamond Tools Tech. LLC v. United States*,
   Slip Op. 2021-151, LEXIS 155 (Ct. Intl. Trade, 2021) ............... *passim*

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) ............................................ 14

*FPC v. Transcon. Gas Pipe Line Corp.*,
   423 U.S. 326 (1976) ............................................................ 14

*Gilda Indus., Inc. v. United States*,
   446 F.3d 1271 (Fed. Cir. 2006) ............................................ 18

*Int'l Custom Prods., Inc. v. United States*,
   791 F.3d 1329 (Fed. Cir. 2015) ............................................ 18

*Laizhou Auto Brake Equip. Co. v. United States*,
   477 F. Supp. 2d 1298 ......................................................... 46

*Micron Tech., Inc. v. United States*,
   117 F.3d 1386 (Fed. Cir. 1997) ....................................... 29, 30

*MidContinent Nail Corp. v. United States*,
   949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) ......................... 29

*Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs and Border Prot.,*
  637 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ................................ 44, 45

*Norwegian Nitrogen Prods. v. United States,*
  288 U.S. 294 (1933) ............................................................. 18

*PSC VSMPO-Avisma Corp. v. United States,*
  688 F.3d 751 (Fed. Cir. 2012) ............................................... 14

*Royal Brush Mfg., Inc. v. United States,*
  483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) ............................ 17, 24 25

*SKF USA Inc. v. United States,*
  263 F.3d 1369 (Fed. Cir. 2001) ............................................. 14

*Star Fruits S.N.C. v. United States,*
  393 F.3d 1277 (Fed. Cir. 2005) ............................................. 13

*Sumecht NA, Inc. v. United States,*
  331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018)
  *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) ..................................... 20

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) ............................................................. 18

*Vinson v. Washington Gas Light Co.,*
  321 U.S. 489 (1994) ............................................................. 46

*WelCom Prods., Inc. v. United States,*
  865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ............................ 13

*Wheatland Tube Co. v. United States,*
  161 F.3d 1365 (Fed. Cir. 1998) .......................................... 13, 31

## Statutes

19 U.S.C. § 1504(c) .................................................................. 5, 26

19 U.S.C. § 1509 ......................................................................... 29

19 U.S.C. § 1517 ................................................................. *passim*

19 U.S.C. § 1517(b)(1) .................................................................. 5

19 U.S.C. § 1517(c) ..................................................................... 28

19 U.S.C. § 1517(c)(1)(A) .............................................................. 7

19 U.S.C. § 1517(c)(1)(B) .............................................................. 6

19 U.S.C. § 1517(c)(2) ............................................... *6, 15, 29 40*

19 U.S.C. § 1517(e) ................................................... 5, 15, 18, 23

19 U.S.C. § 1517(e)(2) ........................................................... 20, 22

19 U.S.C. § 1517(f) .............................................................. 7, 28, 46

19 U.S.C. § 1517(g) .................................................................... 46

19 U.S.C. § 1517(g)(1) .................................................................. 7

19 U.S.C. § 1517(g)(2) ................................................................. 13

19 U.S.C. § 1677f(c)(1)(A) ........................................................... 24

## Regulations

19 C.F.R. § 165 .................................................................... 15, 26

19 C.F.R. § 165.15(d) .................................................................... 5

19 C.F.R. § 165.21 ........................................................................6

19 C.F.R. § 165.22 ........................................................................7

19 C.F.R. § 165.23 ...................................................................6, 28

19 C.F.R. § 165.24(b) ...................................................................9

19 C.F.R. § 165.24(c) ...................................................................5

19 C.F.R. § 165.26 ...................................................................6, 28

19 C.F.R. § 165.4(a) ....................................................................24

19 C.F.R. § 165.41 .......................................................................28

19 C.F.R. § 351.225(l)(2)............................................................22

USCIT R. 56.2 ...............................................................................3

## Other Authorities

*Certain Hardwood Plywood Products from the People's Republic of
China*,
   83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) ...............................8

*Certain Hardwood Plywood Products from the People's Republic of
China*,
   83 Fed. Reg. 513 (Dep't of Commerce Jan. 4, 2018) ...............................8

*The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA)*
   Pub. L. No. 114-125 (2016)....................................................................3

*Trade Facilitation and Trade Enforcement Act of 2015—Overview*
   https://www.cbp.gov/sites/default/files/assets/documents/2016-
   Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%
   20of%202015%20-%20Overview.pdf.
   (Last Accessed Dec. 10, 2021) ..........................................................3, 4

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*, | : : : | |
| Plaintiffs, | : : | Consol. Ct. No. 20-03914 |
| and | : : | |
| LB WOOD CAMBODIA CO., LTD., *et ano.*, | : : | Before: M. Miller Baker, Judge |
| Plaintiff-Intervenors, | : | |
| v. | : | |
| UNITED STATES, | : : | **PUBLIC VERSION** |
| Defendant, | : : | |
| and | : : | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | : : : | |
| Defendant-Intervenor. | : : | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AND PLAINTIFF-INTERVENORS' <u>MOTIONS FOR JUDGMENT ON THE AGENCY RECORD</u>

Defendant, the United States, respectfully submits this response

in opposition to the motion for judgment upon the agency record filed by

plaintiffs American Pacific Plywood, Inc. (APPI), U.S. Global Forest,

Inc. (Global Forest), and InterGlobal Forest, LLC (IGF) (collectively,

plaintiffs), and plaintiff-intervenors LB Wood Cambodia Co., Ltd. (LB
Wood) and Cambodian Happy Home Wood Products Co., Ltd.  (Happy
Home) (collectively, plaintiff-intervenors).[1] Plaintiffs and plaintiff-
intervenors challenge several aspects of the final determination by U.S.
Customs and Border Protection (CBP), as to evasion.  Specifically,
plaintiffs argue that CBP (1) deprived plaintiffs of due process by
imposing interim measures prior to any notice and opportunity to be
heard, and prior to giving them access to confidential information; and
(2) unlawfully found that plaintiffs evaded the antidumping and
countervailing duty orders.  Plaintiff-intervenors adopt most of
plaintiffs' arguments, but also include other contentions that should not
be considered because they impermissibly enlarge the issues before the
Court in this case.

    As demonstrated below, CBP lawfully conducted its investigation,
and the affirmative evasion determination is supported by substantial
evidence and is not arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with the law.  Accordingly, we respectfully

---

[1] LB Wood supplied the imported hardwood plywood products to IGF
and APPI, whereas Happy Home supplied imported hardwood plywood
products to Global Forest.

request that the Court deny plaintiffs' and plaintiff-intervenors'

motions, and sustain CBP's evasion determination.

## STATEMENT PURSUANT TO RULE 56.2

### I.   Administrative Determination Under Review

This lawsuit challenges CBP's administrative review of the final

determination as to evasion.  Confidential Notice of Determination as to

Evasion in EAPA Case No. 7321 (Appx01052-01074) (Nov. 5, 2020)

(Final Determination).

### II.   Issue Presented For Review

Whether CBP's final determination of evasion is supported by

substantial evidence and is in accordance with law.

## STATEMENT OF FACTS

### I.   Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and

Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat.

122 (2016).  Title IV, Section 421 of TFTEA, commonly referred to as

the "Enforce and Protect Act" or "EAPA," established a new CBP

administrative procedure for investigating allegations of evasion of

antidumping and countervailing duty orders as part of the agency's

efforts to ensure a level playing field for the U.S. industry. *See generally* https://www.cbp.gov/sites/default/files/assets/documents/2016-Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.

Under EAPA, Federal agencies or interested parties—including U.S. and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; trade or business associations in a particular industry—may submit allegations to CBP that reasonably suggest that merchandise covered by an antidumping or countervailing duty order has entered the United States through evasion. Upon receiving an allegation, the statute mandates a formal investigation process and statutorily-mandated investigation timeline. CBP's regulations establish additional deadlines and procedure governing the investigation, which facilitate CBP's compliance with its statutorily-required deadlines.

Generally, the investigation of an EAPA allegation proceeds as follows. Within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests covered merchandise has been entered through evasion, CBP must initiate an

investigation.  19 U.S.C. § 1517(b)(1).  Within 90 calendar days, CBP

must make an initial determination of reasonable suspicion of evasion

*and issue interim measures*, which includes the suspension and

extension of certain unliquidated entries.  19 U.S.C. § 1517(e).  The

EAPA statute is silent as to a time frame for when CBP must provide

notice of initiation of an investigation or interim measures.[2]  However,

in accordance with its regulations, "CBP will issue notification of its

decision to initiate an investigation to all parties to the investigation no

later than 95 calendar days after the decision has been made," and "no

later than five business days after interim measures are taken."  19

C.F.R. § 165.15(d)(1); *see also* 19 C.F.R. § 165.24(c) (regarding interim

measures).

    The EAPA statute grants CBP broad discretion to determine the

scope and means of the investigation, including authority to collect and

verify any information it deems necessary to make its evasion

---

[2] With respect to suspension of liquidation, 19 U.S.C. § 1504(c) provides
that "[i]f the liquidation of any entry is suspended, the Secretary shall
by regulation require that notice of the suspension be provided, in such
manner as the Secretary considers appropriate, to the importer of
record or drawback claimant, as the case may be, and to any authorized
agent and surety of such importer of record or drawback claimant."

determination.  19 U.S.C. § 1517(c)(2).  CBP's regulations set forth requirements for the submission of factual information by parties.  19 C.F.R. § 165.23.  For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP.  *Id.*  Parties to the investigation have 200 days from the date of the initiation of the investigation to submit factual information on the record, and 230 calendar days to submit written arguments.  *Id.*; *see also* 19 C.F.R. § 165.26.  Parties to the investigation have 15-calendar days to submit responses to other parties' written arguments.  *Id.*  Interested parties who are not parties to the investigation may also provide information in response to requests by CBP.  19 C.F.R. § 165.23.

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation and properly filed information.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the initiation of the investigation, CBP is required to make a determination as to whether substantial evidence exists based on the administrative record to

conclude that antidumping/countervailing duties have been evaded.[3]  19

U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  A person determined to have

entered covered merchandise through evasion or an interested party

that filed an allegation which resulted in the initiation of an

investigation is permitted to request a review of an initial

determination, and CBP must complete the review and issue a final

administrative determination no later than 60 days after such a

request.  19 U.S.C. § 1517(f).  EAPA permits for judicial review in this

Court of CBP's final administrative determination and the original

determination as to evasion.  19 U.S.C. § 1517(g)(1).

II.    <u>The Investigation</u>

On June 26, 2019, the CBP Trade Remedy Law Enforcement

Directorate (TRLED), Office of Trade, initiated an EAPA investigation

to determine whether certain hardwood plywood products (plywood) had

been entered into the United States by means of evasion.  *See* Final

Determination at 5 (Appx01056); *see also* Appx01000-01018.

---

[3] CBP may issue notice of an extension of time of not more than 60
calendar days, provided certain requirements are met, to render its
determination.  19 U.S.C. § 1517(c)(1)(B).

The investigation was initiated in response to an allegation submitted by the Coalition for Fair Trade of Hardwood Plywood (Coalition), a business association of domestic producers of plywood, as to evasion of antidumping and countervailing duties. *See* Final Determination at 3 (Appx01054). The Coalition alleged that plaintiffs evaded antidumping and countervailing duties[4] by importing plywood into the United States that was produced in the People's Republic of China and transshipped through Cambodia. *Id.* In support of the allegation, the Coalition submitted import and export trends in China, Cambodia and the United States concerning plywood. *See* Appx01000-01018. Specifically, the Coalition claimed that since the imposition of the antidumping and countervailing duty orders on plywood from China, Chinese exports to the United States decreased while Chinese exports to Cambodia and Cambodian exports to the United States increased. *Id.*

---

[4] *See Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (antidumping duty order); *Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 513 (Dep't of Commerce Jan. 4, 2018).

On October 1, 2019, CBP issued a notice of initiation of investigation, notifying plaintiffs and the Coalition of CBP's decision to impose interim measures in accordance with 19 C.F.R. § 165.24(b) based on a reasonable suspicion that plaintiffs had entered covered merchandise into the United States through evasion. *See* Notice of Initiation of Investigation and Interim Measures in EAPA Case No. 7321 (Oct. 1, 2019) (Appx01019-01029). This was the first time plaintiffs were notified about the investigation. The period of investigation began on June 5, 2018, and lasted through the pendency of the investigation. *Id.* at 2 (Appx01021). As part of the interim measures, among other things, CBP suspended the liquidation of plaintiffs' entries entered after the initiation of the investigation (*i.e.*, June 26, 2019), extended the period for liquidation for all unliquidated entries that entered before that date, and required cash deposits for any unliquidated entries. *Id.* at 9 (Appx01028).

After initiation, CBP issued questionnaires to each plaintiff concerning certain entries of plywood. *See* Notice of Determination as to Evasion (June 29, 2020) (Initial Determination) (Appx01034-01050) at 2 (Appx01035). CBP requested documentation pertaining to the

entries and production of the merchandise.  *Id.*  CBP also added memoranda to the administrative record concerning site visits CBP conducted at LB Wood's and Happy Home's Cambodian facilities on June 6, 2018.  *Id.*

On June 29, 2020, CBP issued its notice of determination as to evasion.  *See* Initial Determination (Appx01034-01050).  CBP determined that substantial evidence demonstrates that plaintiffs imported plywood into the United States from China through Cambodia and claimed that the merchandise was Cambodian-origin.  In support of its affirmative evasion determination, CBP explained that given plaintiff-intervenors' extensive connections to ███████████ a CBP official's observations during visits at LB Wood's and Happy Home's manufacturing facilities in Cambodia, and various discrepancies and inconsistencies in the documentation provided by plaintiffs and plaintiff-intervenors, substantial evidence "exists demonstrating that, by means of material false statements or omissions," plaintiffs entered Chinese-origin plywood transshipped through Cambodia into the United States and failed to pay antidumping and countervailing duties.  *Id.* at 10, 17 (Appx01043, Appx01050).  Additionally, with respect to

Global Forest, CBP found based, in part, on trade data from the United Nations' Food and Agriculture Organization Forestry Yearbook (FAO Yearbook), that Happy Home exported ████ plywood than Cambodia produced in 2016 and 2017, thereby undermining Happy Home's claimed production capabilities. *Id.* at 15-16 (Appx01048-01049).

On November 5, 2020, CBP issued a final determination after considering all of the issues "*de novo*" based on a review of the entire administrative record. *See* Final Determination (Appx01052-01074). In the final determination, CBP found that there is "substantial evidence in the record that covered merchandise was entered by means of material false documents and statements and material omissions that resulted in the non-payment of antidumping and countervailing duties." *Id.* at 21 (Appx01072). CBP explained that "the import data, *coupled with* the evaluation of the production capabilities at the factories, discrepancies in the record evidence and unsubstantiated production quantities" support a conclusion that LB Wood and Happy Home supplied Chinese-origin plywood to plaintiffs, "which was falsely designated as made in Cambodia when imported into the United States." *Id.* (emphasis in original).

This action followed.

## SUMMARY OF THE ARGUMENT

CBP lawfully administered the investigation.  CBP acted within the confines of its authority to collect information necessary to make its evasion determination, and neither plaintiffs nor plaintiff-intervenors demonstrate otherwise.  The parties argue that they were deprived of Constitutional and/or statutory due process because CBP imposed interim measures without prior notice and an opportunity to be heard, and without first providing access to confidential information.  But that is not how Congress set up the EAPA.  Plaintiffs have received all of the process the EAPA statute provides.  In plaintiffs view, they should be treated more favorably than other entities investigated by the government.  That is contrary to the text and purpose of the EAPA statute.

Further, CBP's evasion determination is supported by substantial evidence.  Plaintiffs focus on select pieces of evidence in an attempt to undermine CBP's determination, but fail to substantiate their claims that the imported plywood was produced by LB Wood and Happy Home in Cambodia.  Indeed, substantial evidence on the record supports

CBP's determination that plaintiffs evaded antidumping and countervailing duties by importing Chinese plywood without declaring it as such on the entry documents.

## ARGUMENT

### I.   Standard Of Review

In reviewing CBP's evasion determinations, this Court determines whether CBP complied with procedures under the EAPA statute and whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."  *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C.*

*v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  "An agency

action is arbitrary when the agency offers insufficient reasons for

treating similar situations differently." *SKF USA Inc. v. United States*,

263 F.3d 1369, 1382 (Fed. Cir. 2001).

When reviewing an agency's determinations, "absent

constitutional constraints or extremely compelling circumstances," this

Court "will defer to the judgment of an agency regarding the

development of the agency record." *PSC VSMPO-Avisma Corp. v.

United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the

Court's role in reviewing Commerce's antidumping duty administrative

determinations).  "To do otherwise would 'run the risk of propelling the

courts into the domain which Congress has set aside exclusively for the

administrative agency.'" *Id.* (quoting *FPC v. Transcon. Gas Pipe Line

Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is

limited to determining whether the record is adequate to support the

administrative action." *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd.

v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order

instructing Commerce to consider extra-record information because "the

trial court's order usurps agency power, undermines Commerce's ability

to administer the statute entrusted to it, contradicts important

principles of finality, and discourages compliance").[5]

## II.   CBP Lawfully Imposed Interim Measures

The EAPA statute leaves considerable discretion to CBP in

investigating EAPA allegations.  The statute broadly authorizes CBP to

"collect such additional information as is necessary to make the

determination through such methods {CBP} considers appropriate."  19

U.S.C. § 1517(c)(2).  In addition, to protect the revenue, the statute

authorizes CBP to impose interim measures upon finding a reasonable

suspicion of evasion early on in the investigation.  19 U.S.C. § 1517(e).

CBP's regulations further define the contours of the investigation

procedures, and allow CBP considerable discretion in investigating

EAPA allegations.  19 C.F.R. part 165.  CBP acted within the confines

of its discretion and appropriately exercised its authority in imposing

interim measures.

Notably, plaintiffs do not challenge "the interim measures

provided in the EAPA statute per se," which taken by themselves "are

---

[5] Although these cases involve Commerce's antidumping/countervailing
duty proceedings, their discussion of the substantial evidence standard
of review is relevant here.

not problematic."  Pls. Br. at 30, 32.  Rather, plaintiffs challenge the

process leading up to the implementation of the interim measures on

due process grounds – whether found in the Constitution or the APA

(Pls. Br. at 10, 51) – and claim that the interim measures are invalid for

two reasons.  *See generally* Pls. Br. at 20-74.[6]  First, plaintiffs argue

that CBP erred in imposing interim measures without prior timely

notice and without "a timely opportunity to rebut and defend against

the evasion allegation and imposition of the interim measures."  Pls. Br.

at 27; *see also* Pls. br. at 28-40.  Second, plaintiffs argue that they were

deprived of due process because they were not given full access to

confidential information prior to the imposition of interim measures.

Pls. Br. at 32, 42, 59-61.[7]  As explained below, plaintiffs' Constitutional

due process claims fail because they do not identify any protected

---

[6] Although plaintiffs take issue with the evidence CBP relied upon in
imposing interim measures (Pls. Br. at 65-72), they appear to do so only
in further support of their due process claims.  *See, e.g.*, Pls. Br. at 72
("Plaintiffs' opportunity to rebut TRLED's conclusions passed years ago.
It cannot be remedied at this stage.").

[7] Because plaintiff-intervenors advance these same arguments in their
brief, we do not separately refer to their arguments in our response
here.  *See* Pl-Int. Br. at 6-18.  To the extent plaintiff-intervenors raise
additional arguments, we address those separately.

interest of which they were deprived.  In fact, the Court has recently dismissed these very arguments.  *See Diamond Tools Tech. LLC v. United States*, 2021 Ct. Intl. Trade LEXIS 155, Slip Op. 2021-151 (Oct. 29, 2021); *Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020).  Plaintiffs' APA due process claims also fail because they were afforded an opportunity to be heard throughout the EAPA investigation and prior to any final determination.

"A prerequisite for due process protection is some interest worthy of protecting." *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985).  The Court "look{s} to see if the interest is within the Constitution's protection of liberty and property." *Id.*  "A protectable interest must be more than a unilateral expectation.  Those seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations." *Id.*  Without first identifying a protected interest, plaintiffs' Constitutional due process claim fails.

With regard to CBP's imposition of interim measures without prior notice and opportunity to be heard, Congress explicitly called for

CBP to conduct "investigation{s}" and impose interim measures upon finding "reasonable suspicion" of evasion.  19 U.S.C. § 1517(e).  The statute does not provide importers with any pre-initiation right to comment on whether CBP will suspend liquidation or take other action to protect the revenue (*e.g.*, bonding or live entry requirements).  But plaintiffs lack any protected property interest in importing at a particular rate of duty or without CBP taking immediate action to protect the revenue.  A company does not have a constitutionally-protected interest in any rate of duty, an importation, or even engaging in international trade.  *See, e.g.*, *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015); *Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294, 318 (1933); *see also A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997).  As a result, plaintiffs are entitled only what the statute or regulation prescribes.  *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1283 (Fed. Cir. 2006).  And plaintiffs do not contend that either the statute or regulations require extra-statutory procedures that they urge the Court to impose.

While acknowledging that "no one has a vested right to engage in international trade," (Pls. Br. at 40), plaintiffs nonetheless seem to contend that the mere imposition of interim measures affects their legal rights and, therefore, affords them a protected interest. Pls. Br. at 44 ("TRLED's imposition of interim measures was an affirmative action that affected Plaintiffs' legal rights."); *see also* Pls. Br. at 44-48. Plaintiffs appear to claim that the "protected interest" here is "harsh and disproportionate sanctions." Pls. Br. at 29; *but see* Pls. Br. at 45 ("Protected interests include goodwill, reputation, and freedom to take advantage of business opportunities."). According to plaintiffs, "{w}ith no notice," they were: "unable to plan for TRLED's demand for cash deposits amounting to almost 200% of the value of the merchandise"; "unable to consult their banks or liquidate assets in time to meet CBP's demand for cash deposits"; "unable to negotiate with its surety the terms and conditions for single entry bonds, resulting in loss of bond coverage for their imports"; unable to "renegotiate contracts with their customers to cover the cost of importing the goods"; and were "forced to breach their contracts with both suppliers and U.S. customers by sending back ordered merchandise that was already shipped." Pls. Br.

at 44-45; *see also* Pls. Br. at 31-32.   Plaintiffs also confusingly lodge

assertions of "irreparable harm" (Pls. Br. at 45, 46) due to CBP's

imposition of interim measures retroactively to merchandise entered

prior to the initiation of the investigation.  Pls. Br. at 46-48.

However, not only is it well-established that an "allegation of

financial loss alone generally does not constitute irreparable harm if

future money damages can provide adequate corrective relief" (*Sumecht*

*NA, Inc. v. United States*, 331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018),

*aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) (citation omitted)), but the EAPA

statute *expressly authorizes* CBP to extend as interim measures the

period for liquidating entries made prior to the initiation of the

investigation.  19 U.S.C. § 1517(e)(2).  Thus, the statutorily authorized

interim measures imposed by CBP do not give rise to a protected

interest beyond what the statute contemplates.

This Court recently rejected a similar argument in *Diamond*

*Tools*.  In that case, the importer challenged CBP's imposition of

interim measures without prior notice and opportunity to be heard.

Specifically, the importer argued that "'the government must provide

procedural due process – including both notice and an opportunity to be

heard – before, not after, the government makes a determination and imposes duty measures, even interim ones.'" *Diamond Tools*, 2021 Ct. Intl. Trade LEXIS 155 at *36.   While not excluding the possibility that a protected interest may exist in the context of interim measures, the Court nevertheless held that "plaintiff has failed to demonstrate a protected interest exists." *Id.* at *36-37 (concluding that "DTT USA itself fails to state with any particularity that a legitimate property interest exists in the specific context of interim measures and the court declines to do counsel's work").  The Court explained that "{i}nterim measures are temporary" and that "{i}f Customs finds in its final determination that no evasion exists, any measures taken in the interim, such as a suspension of liquidation or collection of cash deposits, will be lifted and any additional duties or cash deposits paid will be reimbursed to the importer with interest." *Id.* at *35 (citations omitted).  The fact that the interim measures are temporary further negates plaintiffs' claims of harm.  Thus, similar to the importer in *Diamond Tools*, plaintiffs here have failed to establish any protected interest.

Plaintiffs also wrongly attempt to impose restrictions on CBP's EAPA authority by applying the rules for Department of Commerce circumvention determinations to CBP's evasion determinations. *See* Pls. Br. at 46-48. Specifically, relying on case law regarding Commerce's regulation (19 C.F.R. § 351.225(l)(2)), plaintiffs contend that CBP improperly applied the interim measures "retroactively" to merchandise entered "sixteen months" prior to the initiation of the investigation "in clear violation of the due process notice requirement . . . ." Pls. Br. at 47 (emphasis removed). However, the statute explicitly authorizes CBP to impose interim measures on entries that have entered one year prior to the initiation of the EAPA investigation. 19 U.S.C. § 1517(e)(2) (authorizing CBP to "extend the period for liquidating each unliquidated entry of such covered merchandise that entered before the date of the initiation of the investigation"). Moreover, the Court in *Diamond Tools* rejected the notion that CBP's enforcement authority under the EAPA statute is somehow limited by Commerce's circumvention proceeding. *Diamond Tools*, 2021 Ct. Intl. Trade LEXIS 155 at *41. Recognizing that "{t}he purpose of the EAPA was to empower the U.S. Government and its agencies with the tools to

identify proactively and thwart evasion at earlier stages to improve enforcement of U.S. trade laws, including by ensuring full collection of AD and CVD duties and, thereby, preventing a loss in revenue," the Court in *Diamond Tools* found that requiring CBP to be bound by Commerce's later circumvention timeline "would be contrary to the congressional intent underlying the EAPA statute and Customs' ability to exercise its statutory authority." *Id.* Imposing rules applicable to Commerce's circumvention proceedings onto CBP's EAPA investigations, as plaintiffs advocate, would similarly contravene the purpose of the EAPA.

Importantly, the EAPA statute authorizes CBP, as a law enforcement agency, to take aggressive and early action by imposing interim measures based upon a reasonable suspicion of evasion. 19 U.S.C. § 1517(e). CBP's responsibility is to protect the revenue so that, as the administrative processes continue, the Government is not left with uncollectable bills. Collecting cash deposits and suspending liquidation – both temporary measures – protect the revenue while the administrative process proceeds before CBP. And while plaintiffs may wish to have known about the impending interim measures prior to

imposition, there was no requirement under the EAPA statute for CBP to provide such notice.  In fact, notice may have very well thwarted the investigation.  Thus, plaintiffs fail to establish that their due process rights were violated because CBP imposed interim measures without prior notification.

Plaintiffs' second Constitutional due process argument (access to confidential information) similarly fails.  Plaintiffs' request to receive "full disclosure of confidential information" (Pls. Br. at 60-61) has no basis in the law.  In an EAPA investigation, interested parties "may request that CBP treat any part of the submission as business confidential information," and CBP will treat the information as such so long as certain requirements are satisfied.  19 C.F.R. § 165.4(a).  However, as plaintiffs acknowledge (*see* Pls. Br. at 34), there is no statutory authority that requires or authorizes CBP to disclose business confidential information under an administrative protective order similar to an antidumping and countervailing duty investigation or safeguards investigation.  *See* 19 U.S.C. § 1677f(c)(1)(A) (mandating the release of all business proprietary information to interested parties to the proceeding under a protective order); *see also Royal Brush*, F. Supp.

3d at 1306 ("EAPA does not require or establish a procedure for the issuance of an administrative protective order ('APO') akin to the procedure used in antidumping and countervailing duty proceedings or otherwise address Customs' management of confidential information.").

The Court has already dismissed plaintiffs' claim to have access to confidential information twice, and should do so here as well. *Diamond Tools*, 2021 Ct. Intl. Trade LEXIS 155 at *41; *Royal Brush*, 483 F. Supp. 3d at1308.  In *Royal Brush*, notwithstanding its remand to CBP to address the lack of public summaries, the Court explained:  "To be clear, the court does not hold that Royal Brush is entitled to receive business confidential information.  Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it."  Royal Brush, F. Supp. 3d at 1308; *see also Diamond Tools*, 2021 Ct. Intl. Trade LEXIS 155 at *41 ("Similarly, DTT USA has not demonstrated that due process requires that it receive access to proprietary information during the EAPA investigation.").  Like the importers in those cases, plaintiffs here fail to identify any protected property interest.  Thus, plaintiffs' complaints about CBP's failure to provide access to confidential information do not entitle them

to relief here.  Nor do plaintiffs establish that they have a due process right to a particular form of procedures.  Indeed, they do not.

Finally, plaintiffs advance two additional arguments in an attempt to establish that CBP violated their due process rights under the APA.  First, plaintiffs assert that "due to CBP's designation of its interim regulations as only interpretative, TRLED cannot rely on 19 CFR Part 165 to launch an enforcement action such as the interim measures in EAPA 7321."  Pls. Br. at 37.  However, as noted above, the EAPA statute expressly authorizes the imposition of interim measures and is silent as to when notice of such measures must be provided.[8] Thus, CBP lawfully acted pursuant to its statutory authority to impose interim measures after finding a reasonable suspicion of evasion.

Second, plaintiffs assert that "even though the EAPA statute itself contains no procedures for timely notice of interim measures or access to confidential information, TRLED and CBP are nevertheless bound by the minimum dictates of due process set forth in the APA . . . ."  Pls. Br.

---

[8] As noted *supra*, n.2, 19 U.S.C. § 1504(c) provides that notice of the suspension of liquidation of any entry must be provided to the importer of record.  CBP's actions here were consistent with the requirements of section 1504(c).

at 40-41.  Plaintiffs further contend that they were denied "effective legal representation" because CBP failed to provide them or their legal counsel "with confidential versions of the allegations against them under an APO or otherwise from the outset of CBP's investigation" (Pls. Br. at 42), thereby depriving them of an opportunity to be heard or present evidence to rebut the allegations.  Pls. Br. at 40-44.  Plaintiffs' assertion that they were unable to defend themselves because they were not given timely notice and did not have access to confidential information prior to the imposition of what they label as "sanctions" (Pls. Br. at 20, 29) and "penalties" (Pls. Br. at 30), is misleading.

The following context helps put plaintiffs' claims into perspective. Here, plaintiffs are complaining about the imposition of *temporary*, interim measures in the form of *cash deposits* (which would have been refunded had CBP found no evasion), and notice of such measures during the *initial* 95-day period of the investigation (from the time CBP accepted the Coalition's allegation to announcing the initiation of the investigation).  Importantly, as plaintiffs acknowledge, the EAPA statute is silent "on when CBP must give notice of allegations of evasion filed with the agency and CBP's decision to initiate an EAPA

investigation." Pls. Br. at 31.  Thus, plaintiffs' position that CBP
procedurally erred in not notifying them about the interim measures
prior to imposition is untenable.

Further, plaintiffs do not – and indeed cannot – claim that they
were deprived of notice and an opportunity to be heard during the
pendency of the EAPA investigation or prior to the final determination.
After CBP imposed interim measures, the EAPA regulations provided
plaintiffs with a number of opportunities to submit information and
arguments.  *See* 19 C.F.R. § 165.23 (procedures for voluntary
submission of information); 19 C.F.R. § 165.26 (procedures for
submission of written arguments).  And after CBP made an initial
determination of evasion under 19 U.S.C. § 1517(c), plaintiffs were
afforded an opportunity to request a *de novo* administrative review.  19
U.S.C. § 1517(f); 19 C.F.R. § 165.41.  Consistent with these procedures,
plaintiffs submitted written arguments to TRLED, and then again to
the Office of Trade, Regulations & Rulings in their request for
administrative review.  *See* Initial Determination at 4 (Appx01037);
Final Determination at 6, 7-12 (Appx01057, Appx01058-01063).
Clearly, the foregoing statutory and regulatory procedures provided

plaintiffs with ample notice and an opportunity to be heard.  The APA

requires no more.  In fact, to require more, would be to provide more

than what Congress intended.[9]

In sum, plaintiffs fail to identify any right to which they were

owed due process, and plaintiffs do not have a due process right to a

"particular form of procedures."  Without establishing any due process

right, the Court should decline plaintiffs' invitation to limit CBP's

discretion in investigating EAPA allegations.  *See, e.g.*, *MidContinent*

*Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1278 (Ct. Int'l Trade

2013) ("{A}gencies with statutory enforcement responsibilities . . . enjoy

broad discretion in allocating investigative and enforcement

resources."); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1394-95

---

[9] Plaintiffs also contend that CBP had no reasonable explanation for the lack of notification or for denying access to confidential documents under an APO before imposing interim measures.  *See* Pls. Br. at 48-58. As support, plaintiffs compare CBP's actions here to CBP's investigations under 19 U.S.C. § 1509, and to Commerce's and the U.S. International Trade Commissions' actions in investigations under the AD/CVD law.  Pls. Br. at 54-57.  Plaintiffs' analogy, however, is misplaced given that the EAPA statute is silent on the methods governing notice and access to confidential information, thereby leaving considerable discretion to CBP in investigating EAPA allegations.  *See* 19 U.S.C. § 1517(c)(2) (broadly authorizing CBP to "collect such additional information as is necessary to make the determination through such methods {CBP} considers appropriate").

(Fed. Cir. 1997) (explaining Commerce maintains "discretionary authority to determine the extent of investigation and information it needs").

III.   Substantial Evidence Supports CBP's Evasion Determination

In the final determination, CBP determined that plaintiffs entered Chinese plywood into the United States through evasion by listing the country of origin as Cambodia in the entry documents and by failing to pay antidumping and countervailing duties on the merchandise.  Final Determination at 22 (Appx01073).  CBP based this determination on record evidence establishing that LB Wood and Happy Home did not have the capacity or the means to produce plywood in Cambodia in the amount claimed and that their extensive connections to ██████ ██████, including the source of much of the raw materials, made it likely that they commingled Chinese plywood with Cambodian plywood. *See generally* Final Determination (Appx01052-01074).  As CBP explained, "{o}ther than the claims made by the Importers, there is insufficient evidence in the form of production records to indicate that the manufacturers had the capacity to produce the plywood in the quantities and the quality that was exported to the United States." *Id.*

14 (Appx01065).  Simply put, plaintiffs failed to substantiate their claims that the imported plywood was produced by LB Wood and Happy Home in Cambodia.  Because CBP provided a reasoned analysis supported by substantial evidence, its final evasion determination should be affirmed.  *Wheatland Tube*, 161 F.3d at 1369.

### A.    LB Wood

With respect to LB Wood, supplier to IGF and APPI, CBP relied upon the totality of the following evidence in support of the evasion determination:  (1) that LB Wood is ▮▮▮ percent owned by a ▮▮▮▮▮ company ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and "the intimate relationship between ▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (2) that "▮▮ percent by value of LB Wood's raw materials were imported from ▮▮▮▮▮▮▮▮▮▮▮▮▮ (3) that CBP was unable to tie LB Wood's production records to its raw material purchase records or otherwise substantiate LB Wood's alleged production capacity; (4) that a review of documents pertaining to LB Wood's production, sale and exportation of plywood to IGF and APPI "revealed

factual discrepancies between manufacturing dates and production records, and instances where amounts packaged and shipped were greater than amounts produced", and revealed inconsistences with LB Wood's claim that ███████████████████████████████████ ███████████████████████ and (5) that a CBP official's on-site observations at LB Wood's Cambodian facilities revealed that "the processing in Cambodia was not sufficient to manufacture the goods observed on-site and/or that could correctly be entered into the United States as products of Cambodia."  Final Determination at 14-16, 19-20 (Appx01065-01067, Appx01070-01071); *see also* Initial Determination at 5-10 (Appx01038-01043).

Specifically, the production capacity of its ███████ and production data that LB Wood provided was "rudimentary and only based on the ███████████████████ rather than on documents such as ████████████████████ ████████████ Final Determination at 15, 20 (Appx01066, Appx01071).  Thus, CBP reasonably concluded that "it is impossible to

determine ███████████████████████████████████████

████████████████████████████

    CBP was also unable to confirm LB Wood's claim that it used

███████████████████ raw materials to produce plywood in Cambodia.  *Id.*

at 19 (Appx01070).  For instance, CBP requested that LB Wood provide

███████████████████ for all purchased raw materials and a ██████████

████████████████████████ however, LB Wood responded that it did

not maintain such documentation.  *Id.*  CBP, therefore, reasonably

concluded that LB Wood's failure to maintain such documentation

prevented CBP from ascertaining whether the materials were indeed

raw materials or "whether the production allegedly occurring in

Cambodia involves a substantial transformation of the raw materials,

such that the country of origin can be considered Cambodia, and not

China."  *Id.*

    In addition to unsubstantiated production capabilities, CBP's

review of documents related to the production, sale and exportation of

plywood from LB Wood to IGF and APPI revealed certain factual

discrepancies and inconsistencies with LB Wood's statements that

casted doubt on their overall reliability.  Final Determination at 19-20

(Appx01070-01071); Initial Determination at 9-10 (Appx01042-01043).

For instance, LB Wood claimed that its owner ████████████████

████████████████████████████████████████████████

████████ Initial Determination at 7 (Appx01040).  Yet, CBP observed

emails addressed to ████████ personnel pertaining to the sale of LB

Wood's plywood to IGF and APPI.  *Id.*; *see also* Final Determination at

20 (Appx01071).

Finally, a CBP official's observations during a site visit to LB

Wood's facilities on June 6, 2018 on an unrelated matter further

buttressed CBP's conclusions as to evasion.  Final Determination at 15-

16 (Appx01066-01067); Initial Determination at 6-7 (Appx01039-01040).

For instance, CBP found that "████████████████████████████

████████████████████████████████████████████████

████████████████████████████ because the CBP official

noticed the lack of a functioning ████████████ at LB Wood's

manufacturing site.  Final Determination at 15, 21 (Appx01066,

Appx01072).  The official also observed several pallets containing ██

████████████ and "a photograph taken by CBP shows ████████

██████████████████████████████ even though CBP

had concluded that ███████████████████████████████████ at LB

Wood's Cambodian facility."  *Id.* at 15-16 (Appx01066-01067); *see also*

Initial Determination at 7 (Appx01040).  Lastly, the CBP official noted

that the "plywood seen on-site was clear of laps and voids and was a

sophisticated product that could not have been made at LB Wood's

facilities."  Final Determination at 16 (Appx01067); *see also* Initial

Determination at 6 (Appx01039) (explaining that the plywood found on-

site was made from ██████ wood, which does not grow well in

Cambodia's tropical climate; and that Cambodian factories lack the

sophistication to produce ██████ plywood that is even, without veneer

overlaps, gaps, and voids).

B.   Happy Home

With respect to Happy Home, supplier to Global Forest, CBP

relied upon the totality of the following evidence in support of the

evasion determination:  (1) that "Happy Home's top ████████████

████████ suppliers by value (████) were all located in ████████ which

undermines the conclusion that all of the plywood supplied to Global

Forest was produced in Cambodia; (2) that CBP was unable to

substantiate Happy Home's alleged production capacity; (3) that a

review of documents pertaining to Happy Home revealed Happy Home's

importation of ███████████ from ██████ into Cambodia and certain

inconsistencies that undermined their overall reliability; (4) that Happy

Home exported ██████ plywood to the United States in 2016 and 2017

than Cambodia███████████████████████ and (5) that a CBP

official's on-site observations at Happy Home's Cambodian facilities

revealed that "the processing in Cambodia did not constitute full-scale

manufacturing."  Final Determination at 16-19, 2-21 (Appx01067-

01070, Appx01071-01072); *see also* Initial Determination at 10-17

(Appx01043-01050).

Specifically, the production capacity of Happy Home's machines

and equipment were based on the production manager's experience

rather than on supporting documentation.  Final Determination at 16

(Appx01067).  Thus, CBP reasonably concluded that, given that Happy

Home's top ██████████████████ suppliers were all located in

██████ and the lack of documentation supporting production capacity,

Happy Home's claims that it had the capacity, machinery and employees to produce plywood were incredible.  *Id.* at 17 (Appx01068).

Additionally, record evidence indicated that Happy Home imported ███████████ into Cambodia.  *Id.* at 20 (Appx01071).  In particular, ███████████████ noted that Happy Home imported ████████ into Cambodia from ██████  *Id.*; *see also* Initial Determination at 15 (Appx01048).  Thus, CBP reasonably concluded that because "{t}here is no indication that the ████████ was ███████████ these documents provide support for the conclusion that "Happy Home imported completed ██████████ plywood which was likely commingled with Cambodian-origin plywood."  Final Determination at 20 (Appx01071).

Published trade data from the FAO Yearbook further supports CBP's evasion determination.  In particular, "the data shows that the plywood production in Cambodia was significantly ████ than Happy Home's total plywood exports to the United States."  *Id.* at 18 (Appx01069); *see also* Initial Determination at 15 (Appx01048).  As CBP explained, "{i}f Cambodia produced 27,000 m3 in 2017, and Happy Home, alone, claims to have exported ████████ there is clearly an

enormous unexplained discrepancy between those numbers."  Final

Determination at 18 (Appx01069).  Thus, CBP reasonably concluded

that "Happy Home's hardwood plywood exports include Chinese-made

hardwood plywood, commingled with Cambodian-made hardwood

plywood."  *Id.*

Finally, a CBP official's observations during a site visit to Happy

Home's facilities on June 6, 2018 on an unrelated matter further

buttressed CBP's conclusions as to evasion.  Final Determination at 17

(Appx01068); Initial Determination at 11 (Appx01044).  For instance,

CBP found "evidence of ████████████████████████ at Happy

Home's facility which is a ████████████████████████

████████ being loaded on trucks destined for ████████."  Final

Determination at 17-18 (Appx01068-01069).  The CBP official also

noted that the plywood seen on-site did not have veneer overlaps, gaps

and voids and was a sophisticated product that could not have been

made in Cambodia "because Happy Home did not possess the

sophisticated manufacturing capabilities to produce this type of finished

product."  *Id.* at 17 (Appx01068); *see also* Initial Determination at 11

(Appx01044).  Lastly, machinery and equipment that Happy Home

claimed to have purchased for plywood production in Cambodia was not seen on-site.  Final Determination at 20-21 (Appx01071-01072).

C.   <u>Plaintiffs' And Plaintiff-Intervenors' Arguments Lack Merit</u>

Plaintiffs and plaintiff-intervenors lodge a number of arguments claiming that CBP's evasion determination is unsupported by substantial evidence and arbitrary and capricious.  *See generally* Pls. Br. at 74-130; Pl.-Int. Br. at 22-37.  Specifically, despite the totality of the evidence relied upon by CBP, plaintiffs and plaintiff-intervenors selectively discuss a few pieces of evidence in an attempt to establish that CBP's determination is unsupported by substantial evidence. However, plaintiffs' and plaintiff-intervenors' arguments do not undermine the overwhelming evidence, as discussed above, supporting CBP's evasion determination.

First, plaintiffs argue that TRLED's analyses of the production and sales documents are flawed.  As examples, plaintiffs discuss LB Wood's and Happy Home's payroll sheets (Pls. Br. at 98-99, 105), Happy Home's reported entries (Pls. Br. at 105-106) and Global Forest's entries (Pls. Br. at 107-109).  Plaintiffs also argue that CBP erred in requiring that LB Wood and Happy Home tie their production records to their

raw material records because such a request is immaterial and not determinative of evasion. Pls. Br. at 99-102. However, it is not for plaintiffs to determine what information CBP requires for its investigation. Indeed, the statute broadly authorizes CBP to "collect such additional information as is necessary to make the determination through such methods {CBP} considers appropriate." 19 U.S.C. § 1517(c)(2). Further, as CBP reasonably explained, without the requested information, CBP could not ascertain whether the materials were indeed raw materials or "whether the production allegedly occurring in Cambodia involves a substantial transformation of the raw materials, such that the country of origin can be considered Cambodia, and not China." Final Determination at 19 (Appx01070). The burden was on plaintiffs to substantiate their claims, which they failed to do.

Second, regarding the discrepancies and inconsistences in the record, plaintiffs contend that CBP erred in finding that the CARB certification dates did not overlap with LB Wood's production dates. Pls. Br. at 102-104. For their part, plaintiff-intervenors argue that CBP erred in finding inconsistencies in LB Wood's statements regarding purchases from █████████. Pl.-Int. Br. at 28-29, 42. Plaintiffs' and

40

plaintiff-intervenors' selective discussion of these facts, however, neither supports their claim that no evasion occurred nor negates the totality of the evidence CBP relied upon.  For instance, plaintiffs' discussion of the CARB certification dates does not contradict CBP's conclusion that a review of the documents with respect to LB Wood's sales to IGF and APPI revealed discrepancies in the amounts packaged and shipped, in the bills of lading, or in the purchase orders.  Final Determination at 19 (Appx01070); Initial Determination at 9-10 (Appx01042-01043).  Similarly, plaintiff-intervenors' discussion of LB Wood's purchases from ██████████ fail to contradict record evidence indicating that IGF and APPI made payments to ██████████ for the sale of LB Wood's plywood, which is inconsistent with LB Wood's claim that ████████████████████████████████████████████

██████████   Final Determination at 15 (Appx01066); Initial Determination at 7 (Appx01040).

Third, plaintiffs and plaintiff-intervenors contend that CBP improperly relied upon the FAO Yearbook trade data to further support the evasion determination.  Pls. Br. at 111-115; Pl.-Int. Br. at 34-37. Specifically, the parties argue that other data on the record

41

demonstrates that the FAO Yearbook data are inaccurate and unreliable.  Pls. Br. at 111-115; Pl.-Int. Br. at 34-37.  However, CBP explained that the data "are the most accurate that are available" and contemporaneous because they "stem directly from government replies to questionnaires" and the period of investigation "started six months after the latest statistics posted on the FAO Yearbook."  Final Determination at 18 (Appx01069); *see also* Initial Determination at 16 (Appx01049) (explaining that "{w}hether some of its figures are identical to Chinese export statistics or United States' import statistics does not necessarily indicate unreliability but rather another data source").

Finally, plaintiffs complain about CBP's reliance on the agent's observations during site visits to LB Wood's and Happy Home's facilities in Cambodia because the visits occurred prior to the investigation and involved an unrelated matter.  Pls. Br. at 87-89, 93-96.  Plaintiffs also question the agent's experience and qualifications to

support the findings during the site visits. Pls. Br. at 87. Plaintiffs'

arguments are without merit.

As CBP explained, although the visit occurred on June 6, 2018

and was related to another matter, "the visit was sufficiently

contemporaneous and examined the same types of facts as relevant to

this EAPA investigation so as to provide reliable, relevant and

substantial evidence for purposes of the instant case." Final

Determination at 16 (Appx01067); *see also id.* at 17 Appx01068

(discussing the visit to Happy Home). Moreover, as CBP noted, because

the period of investigation covered entries beginning from June 5, 2018,

entries into the United States "would have included products allegedly

produced by and originating from LB Wood at or around the time of

CBP's site visit." *Id.* at 16 (Appx01067).

Further, the site visit was conducted by CBP's ████████████

████████ for wood products (*see* Initial Determination at 6

(Appx01039)), thereby dispelling plaintiffs' claim that the agent was

somehow unqualified to make the observations about the type of

plywood seen at the facilities. As CBP noted, the agent's position

"utilizes her subject matter expertise on wood products" and "carries

with it the ability to make authoritative pronouncements pertaining to whether wood products are in or out of scope." Initial Determination at 39 n.45 (Appx01039).

Plaintiffs also take issue with the agent's photographs and conclusions regarding the UV coating equipment and, in contrast, highlight photographs submitted by LB Wood and Happy Home of their facilities. Pls. Br. at 93-96. However, these photographs do not necessarily undermine the agent's conclusions based on the totality of the evidence observed during the site visit. Thus, CBP reasonably relied upon the agent's observations to further buttress the evasion determination.

In sum, plaintiffs' failure to substantiate their claims that the imported plywood was produced by LB Wood and Happy Home in Cambodia combined with LB Wood's and Happy Home's extensive connections to ███████████ and CBP's observations during the site visits constitute substantial evidence to support CBP's evasion determination. *Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs and Border Prot.*, 637 F. Supp. 2d 1270, 1285 (Ct. Int'l Trade 2009) ("To uphold an agency action under this standard, the court must conclude

that Customs articulated a 'rational connection between the facts found and the choice made."') (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

## IV.   Plaintiff-Intervenors' Remaining Arguments Should Be Dismissed

In addition to adopting most of plaintiffs' contentions (*see* Pl.-Int. Br. at 6, 9, 26), plaintiff-intervenors also raise other arguments. Specifically, plaintiff-intervenors' contend:  (1) that they have "somewhat different legitimate interests that were violated by CBP's actions in conducting the EAPA Investigation" (Pl.-Int. Br. at 9); (2) that they have no administrative remedies for periodic review of their exports to the United States (Pl.-Int. Br. at 18-22); and (3) that CBP erred in rejecting their administrative review requests (Pl.-Int. Br. at 39-41).[10]

---

[10] Plaintiffs also complain that CBP inappropriately rejected plaintiff-intervenors' brief.  Pls. Br. at 117-120.  Plaintiffs do not demonstrate that they have standing to raise an argument on behalf of plaintiff-intervenors regarding their ability to participate in the proceedings, nor do plaintiffs explain how this alleged limited participation rendered CBP's final determination unlawful.  Therefore, the Court should reject this argument.

First and foremost, plaintiff-intervenors' arguments should be dismissed because they impermissibly enlarge the issues raised by plaintiffs. "{A}n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1994); *see also Laizhou Auto Brake Equip. Co. v. United States*, 477 F. Supp. 2d 1298, 199-1301 (Ct. Int'l Trade 2007).

Moreover, the EAPA statute expressly provides that only the alleger and the party found to have entered covered merchandise through evasion (here, plaintiffs) may file an appeal administratively or judicially. 19 U.S.C. §§ 1517(f), (g). Thus, the Court should reject plaintiff-intervenors' attempt to circumvent the statute by raising claims on their own behalf that go beyond the claims properly raised by plaintiffs.

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiffs' and plaintiff-intervenors' motions for judgment on the agency

record, sustain CBP's evasion determination in all respects, and enter

judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:               /s/ Hardeep K. Josan
JENNIFER PETELLE          HARDEEP K. JOSAN
Attorney                  Trial Attorney
U.S. Customs and          U.S. Dept. of Justice
Border Protection         Civil Division
Office of the Chief Counsel   Commercial Litigation
                          Branch
                          26 Federal Plaza, Rm.346
                          New York, New York l0278
                          Tel. No. 212-264-9230 or 9245

December 10, 2021         Attorneys for Defendant

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Consol. Ct. No. 20-03914 |
| | : | |
| and | : | |
| | : | |
| LB WOOD CAMBODIA CO., LTD., *et ano.*, | : | Before: M. Miller Baker, Judge |
| | : | |
| Plaintiff-Intervenors, | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | : | |
| | : | |
| Defendant-Intervenor. | : | |
| | : | |

## ORDER

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's response, plaintiff's reply, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied, and it is further

ORDERED that the final determination of the U.S. Customs and Border Protection is sustained in its entirety, and it is further

ORDERED that final judgment shall enter in favor of the United States.


Dated: _____                    _____
          New York, N.Y.                                          Judge

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 8,318 words, including text, footnotes, and headings.

s/ Hardeep K. Josan
HARDEEP K. JOSAN