NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　and<br><br>LB WOOD CAMBODIA CO., LTD., *et ano.*,<br><br>　　　　　　Plaintiff-Intervenors,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　Defendant,<br><br>　　and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>　　　　　　Defendant-Intervenor. | Before: Hon. M. Miller Baker, Judge<br><br>Consol. Court No. 20-03914<br><br>NON-CONFIDENTIAL VERSION<br><br>Business Proprietary Information Removed from Pages 6-8, 10, 11, 24, 29-32, and 40-42 |

## COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD'S RESPONSE BRIEF

Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202)719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

Dated: December 30, 2021

Consol. Ct. No. 20-03914                           NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................1

II.  BACKGROUND .................................................................................2

    A.   The Enforce and Protect Act.............................................2

    B.   CBP's Investigation.............................................................4

III. SUMMARY OF ARGUMENT.........................................................12

IV.  ARGUMENT ....................................................................................13

    A.   Plaintiffs and Plaintiff-Intervenors Do Not
Persuade That CBP Violated Their Due Process
Rights...................................................................................14

    B.   CBP's Determination is Otherwise Lawful.........................20

        1.   Plaintiffs' Challenge to CBP's Finding of
"Reasonable Suspicion" is Without Merit...................21

        2.   Plaintiffs' and Plaintiff-Intervenors'
Challenge to CBP's Final Evasion
Determination is Unpersuasive ...................................26

        3.   Plaintiffs' and Plaintiff-Intervenors'
Challenge of CBP's Administrative Review
Determination is Unpersuasive ...................................35

V.   CONCLUSION..................................................................................44

Consol. Ct. No. 20-03914                         NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Acciai Speciali Terni S.P.A. v. United States*,
  24 CIT 1064, 118 F. Supp 2d. 1298 (2000).........................................39

*Diamond Tools Technology LLC v. United States*,
  No. 20-00060, slip op. 21-151 (Ct. Int'l Trade Oct. 29, 2021) ...... *passim*

*Royal Brush Manufacturing, Inc. v. United States*,
  No. 19-00198, slip op. 21-152 (Ct. Int'l Trade Oct. 29,
  2021) ................................................................................ 12, 15, 16, 30

*Royal Brush Mfg. v. United States*,
  483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) .................... 13, 14, 15, 40

*Siemens Energy, Inc. v. United States*,
  992 F. Supp. 2d 1315 (Fed. Cir. 2014).........................................13, 40

### Statutes

19 U.S.C. § 1517.......................................................................................2, 14

19 U.S.C. § 1517(a)(6)(A)(i) ...................................................................37

19 U.S.C. § 1517(b)(1)...............................................................................2

19 U.S.C. § 1517(b)(2)...............................................................................2

19 U.S.C. § 1517(c)...............................................................................3, 19

19 U.S.C. § 1517(c)(1)(A) ......................................................................3, 4

19 U.S.C. §1517(c)(1)(B) ..........................................................................3

19 U.S.C. § 1517(c)(2) ..........................................................................3, 37

19 U.S.C. § 1517(d) ................................................................................19

19 U.S.C. § 1517(e) ..............................................................3, 19, 21, 22

ii

Consol. Ct. No. 20-03914                          NON-CONFIDENTIAL VERSION

19 U.S.C. § 1517(f) .................................................................................... 3

19 U.S.C. § 1517(f)(1) ................................................................ 3, 21, 37, 38

19 U.S.C. § 1517(g)(1) ............................................................... 3, 9, 19, 36

19 U.S.C. § 1517(g)(2) ............................................................................ 3, 19

19 U.S.C. § 1675(a)(1)(A) .................................................................. 37, 38

19 U.S.C. § 1675(a)(1)(B) ......................................................................... 37

Trade Facilitation and Trade Enforcement Act of 2015,
    Pub. L. No. 114-125, 130 Stat. 122 (2016) ............................................ 2

## Regulations

19 C.F.R. § 165.4(e) ................................................................................. 15

19 C.F.R. § 165.41(a) ............................................................................... 37

NON-CONFIDENTIAL VERSION

# <u>GLOSSARY</u>

**EAPA**
　　Enforce and Protect Act


**OR&R**
　　Office of Regulations and Rulings

## I.    INTRODUCTION

On behalf of the Coalition for Fair Trade in Hardwood Plywood ("Coalition"), we respectfully submit the following response to the opening briefs of plaintiffs American Pacific Plywood, Inc. ("American Pacific"), U.S. Global Forest, Inc. ("U.S. Global"), and Interglobal Forest, LLC ("Interglobal") (collectively, "plaintiffs") and plaintiff-intervenors LB Wood Cambodia Co., Ltd. ("LB Wood") and Cambodian Happy Home Wood Products Co., Ltd. ("Happy Home") (collectively, "plaintiff-intervenors"). *See* Pl. and Consol. Pls. American Pacific Plywood, Inc., U.S. Global Forest, Inc., and Interglobal Forest, LLC Rule 56.2 Mem. in Supp. of Mot. for J. Upon the Agency R. (Aug. 5, 2021), ECF No. 48 ("Plaintiffs' Brief"); Pl.-Intervenors LB Wood Cambodia Co., Ltd. and Cambodian Happy Home Wood Products Co., Ltd. Mem. in Supp. of Mot. for J. Upon the Agency R. (Aug. 25, 2021), ECF No. 51 ("Plaintiff-Intervenors' Brief").

The Coalition adopts the arguments made in the United States' December 10, 2021 response brief. Def.'s Resp. in Opp'n to Pls.' and Pl.-Intervenors' Mots. for J. on the Agency R. (Dec. 10, 2021), ECF No. 55 ("Government's Brief"). In this brief, the Coalition provides additional

NON-CONFIDENTIAL VERSION

context and arguments to aid the Court's understanding of the issues in plaintiffs' appeal.

## II.   BACKGROUND

Below, the Coalition lays out legal and factual background pertinent to this appeal.

### A.   The Enforce and Protect Act

The Enforce and Protect Act ("EAPA") was passed as part of the Trade Facilitation and Trade Enforcement Act of 2015. *See* Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122, 155 (2016). Codified at 19 U.S.C. § 1517, the law provides a mechanism for U.S. Customs & Border Protection ("CBP") to investigate claims of evasion as to trade remedy orders. 19 U.S.C. § 1517.

EAPA permits interested parties to file allegations of evasion with CBP. *Id.* § 1517(b)(2). Upon receiving an allegation, CBP must evaluate whether it "reasonably suggests" that goods covered by a trade remedy order have been entered into the United States through evasion. *Id.* § 1517(b)(1). If CBP answers that question in the affirmative, it must initiate an investigation. *Id.* Within 90 days of initiating the investigation, CBP must determine whether there is a "reasonable

suspicion" that goods subject to order have been entered through evasion. *Id.* § 1517(e). If such a suspicion exists, CBP must take "interim measures." *Id.* No later than 360 days after initiating the investigation, CBP must make a final determination as to whether goods subject to order have been entered through evasion. *Id.* § 1517(c)(1)(A)-(B).

During its investigation, CBP may collect and verify information through questionnaires and other methods that it finds appropriate. *Id.* § 1517(c)(2). Once CBP makes a final decision, any party that filed an allegation or that was found to have entered goods covered by an AD/CVD order through evasion may file an administrative appeal. *Id.* § 1517(f)(1). After the administrative appeal is concluded, any party eligible to have filed an administrative appeal may seek judicial review of CBP's final evasion determination and administrative review determination. *Id.* § 1517(g)(1). Judicial review is limited to determining whether CBP complied with the procedures required by 19 U.S.C. §§ 1517(c) & (f) and whether CBP's determinations under these sections of the statute are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(2). In this regard, 19 U.S.C.

§ 1517(c)(1)(A) requires CBP's final determinations to be "based on substantial evidence." *Id.* § 1517(c)(1)(A).

### B.   CBP's Investigation

On April 12, 2019, the Coalition filed allegations that plaintiffs had imported into the United States plywood that was transshipped from China through Cambodia, without paying appropriate AD/CVD duties. *See, e.g.*, Letter from Wiley Rein LLP to Troy P. Riley, re: *Certain Hardwood Plywood Products from the People's Republic of China, Request for an Investigation Under the Enforce and Protect Act* (Apr. 12, 2019) at 1, Appx01076. From May 1 through May 10, 2019, the Coalition refiled the allegations with updates and amendments. *See, e.g.*, Letter from Wiley Rein LLP to Troy P. Riley, re: *Certain Hardwood Plywood Products from the People's Republic of China, Request for an Investigation Under the Enforce and Protect Act* (May 1, 2019) at 1, Appx01474 ("InterGlobal Allegation").

CBP found that the allegations "reasonably suggest{ed}" that plaintiffs had evaded the order. *See* Letter from CBP to Counsel/Representatives, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7321* (Oct. 1, 2019) at 5-7, Appx01024-01026 ("Interim

Measures Notice"). Specifically, CBP found that the allegations indicated that Cambodia had little domestic production or consumption of plywood, but that Chinese exports of plywood to Cambodia had skyrocketed while exports from Cambodia to the United States simultaneously soared. *Id.* at 6, Appx01025. Further, plaintiffs' Cambodian suppliers were all located in a special production zone meant to closely partner Chinese and Cambodian companies, and both the timing and volume of plaintiffs' imports indicated that some portion of their imports were likely of Chinese, rather than, Cambodian origin. *Id.* CBP also noted discrepancies in the way that U.S. Global and Interglobal advertised their products, as well as the fact that both companies were under investigation for importing plywood transshipped through Vietnam. *Id.*

Ninety-five days after the June 26, 2018 initiation of its investigation, CBP issued its notice of the investigation and interim measures. *Id.* at 1, Appx01020. Based on the Coalition's allegations and the record it had thus far developed, CBP determined that there was a "reasonable suspicion" of evasion. *Id.* at 9, Appx01028. CBP noted that it had issued questionnaires to the importers, and received responses from U.S. Global

Business Proprietary Information
                          Has Been Deleted

and Interglobal. *Id.* at 7, Appx01026.[1] CBP observed that while U.S. Global and Interglobal provided much of the documentation that CBP had requested, neither company provided all requested data. *Id.* at 7-8, Appx01026-01027. CBP also placed on the record documents relating to visits made to LB Wood and Happy Home's facilities in June of 2018. *Id.* at 8-9, Appx01027-01028. CBP also explained that during the June 2018 site visits, CBP took photographs that indicated that LB Wood's and Happy Home's factories lacked the sophistication needed to produce the goods seen on-site. *Id.* CBP explained that it had issued a Customs Form 29 (also known as a "notice of action") after the site visit to Happy Home, noting that the company [                                    ] there. *Id.* at 8, Appx01027. CBP also explained that in response to that notice of action, Happy Home's staff provided an affidavit stating that the company [                              ] *Id.*

CBP then continued with its investigation, collecting additional information from plaintiffs and plaintiff-intervenors. *See, e.g.*, Letter from CBP to Interested Parties, re: *Notice of Determination as to Evasion*

---

[1]   CBP issued a questionnaire to American Pacific prior to issuing its notice of initiation and interim measures, but the response was received afterwards. *See, e.g.*, Interim Measures Notice at 7, Appx01026.

Business Proprietary Information
Has Been Deleted

(June 29, 2020) at 3-4, Appx01036-01037 ("Final Evasion Determination"). On October 1, 2019, simultaneously with the issuance of the Interim Measures Notice, CBP issued requests for information to both plaintiffs and plaintiff-intervenors. *See, e.g.*, *id.* at 3, Appx01036.

LB Wood's responses indicated that the company was [

], sourced goods from [

], and was established [

]. *Id.* at 5, Appx01038. LB Wood's responses also contained inconsistencies with respect to [

]. *Id.* at 7-9, Appx01040-01042. In its review of sample sales, CBP was unable to tie production records to raw material purchase records. *Id.* at 9-10, Appx01042-01043. CBP discovered discrepancies regarding routing, dates on production and sales documents, and bill of lading dates. *Id.* CBP also noted that during its June 2018 site visit, plywood was observed on-site that appeared to be of greater quality than could be produced in the facility. *Id.* at 6-7, Appx01039-01040.

CBP likewise explained that Happy Home was [

] and sourced goods from [                        ]. *Id.* at 11,

Consol. Ct. No. 20-03914          NON-CONFIDENTIAL VERSION

Appx01044. Happy Home also "clearly indicate{d}" in communications arising out of CBP's June 2018 site visit, that it purchased Chinese-origin plywood and comingled it with goods processed in Cambodia. *Id.* at 11-12, Appx01044-01045. CBP noted that during its June 2018 site visit, plywood was observed on-site that appeared to be of greater quality than could be produced in the facility. *Id.* Further, CBP's site visit indicated that Happy Home conducted [

          ]. *Id.* In certain years, Happy Home exported [          ] plywood to the United States than [

          ]. *Id.* at 15-16, Appx01048-01049. Happy Home's responses to CBP's information requests also "contained numerous inconsistencies" regarding payments, payroll, invoice values, production records, and quantities. *Id.* at 13-15, Appx01046-01048.

CBP concluded that plaintiffs had entered covered merchandise by means of evasion, *i.e.*, that they had imported Chinese-origin plywood without paying appropriate AD/CVD duties, by reason of declaring the goods as Cambodian. *Id.* at 10, 17, Appx01043, Appx01050. Specifically, CBP found that Interglobal and American Pacific imported Chinese-

origin plywood from LB Wood, while U.S. Global imported Chinese-origin plywood from Happy Home. *Id.*

Plaintiffs subsequently requested administrative review of CBP's determination under 19 U.S.C. § 1517(g)(1). *See, e.g.*, Letter from DeKieffer & Horgan, PLLC to Office of Trade, re: *EAPA Con. Case No. 7321 – Request for Administrative Review* (Aug. 10, 2020), Appx44461-44497.[2] Plaintiffs argued that the plaintiff-intervenors had a legitimate motive and opportunity to begin producing plywood in Cambodia. *See, e.g., id.* at 10-14, Appx44477-44481. They argued that CBP inappropriately relied on confidential record information in making its decision. *Id.* at 14-18, 29, Appx44481-44485, Appx44496. They also argued that CBP's analysis of the materials provided in response to CBP's questions was flawed. *Id.* at 20-28, Appx44487-44495.

OR&R affirmed the final determination. Review Determination at 22, Appx01073. OR&R found that the record indicated that LB Wood and

---

[2]     Plaintiff-intervenors also filed requests for administrative review, but as CBP's Office of Regulations and Rulings ("OR&R") pointed out, the statute does not permit foreign producers/exporters to file such requests. *See* Letter from CBP to Interested Parties, *re: Enforce and Protect Act ("EAPA") Case Number 7321* (Nov. 5, 2020) at 2, Appx01053 ("Review Determination").

Business Proprietary Information
Has Been Deleted

Happy Home did not have the capacity or means to produce all of the plywood that plaintiffs imported as Cambodian-origin product. *Id.* at 14, Appx01065.

OR&R noted that LB Wood (which supplied Interglobal and American Pacific) did not provide CBP with credible documentation of its claimed production capabilities, and that its claims were inconsistent with CBP's observations during its June 2018 site visit. *Id.* at 15-16, Appx01066-01067. CBP also found that its site visit data relating to LB Wood was relevant and reliable. *Id.* at 16, Appx01067. While the visit was conducted as part of a [                    ], it related to LB Wood's production capabilities and was conducted immediately before the investigation period. *Id.* OR&R further observed that CBP's top-down review of several LB Wood transactions revealed unexplained and significant discrepancies. For example, amounts packaged and shipped were greater than pieces produced, and production records did not match raw material purchases. *Id.* at 19-20, Appx01070-01071. The company also did not [                                        ]. *Id.* at 19, Appx01070.

Business Proprietary Information
Has Been Deleted

With respect to Happy Home (supplier to U.S. Global), OR&R noted that while Happy Home provided information regarding its production capacity, this information was undermined by data regarding its suppliers, as well as by CBP's observations during its June 2018 site visit. *Id.* at 16-17, Appx01067-01068. That site visit resulted in CBP's finding that Happy Home's processing operations were minimal, and that its Cambodian-processed goods remained products of China. *Id.* at 17-18, Appx01068-01069. OR&R also noted that CBP's plans to verify Happy Home's responses were stymied when [

]" *Id.* at 18, Appx01069. OR&R explained that the record included [

] reflecting Happy Home's importation of [

]. *Id.* at 20, Appx01071. Happy Home had also stated to CBP that it [                                                    ]. *Id.* at 18, 20, Appx01069, Appx01071. Finally, the company exported [

] to the United States in 2017 than Cambodia itself [

]. *Id.* at 18, Appx01069.

## III.  SUMMARY OF ARGUMENT

This Court should affirm CBP's determination of evasion. As noted in the Government's Brief, plaintiffs and plaintiff-intervenors challenge CBP's determination of evasion on two principal grounds. Government's Brief at 2. First, they argue that CBP unlawfully deprived them of due process in conducting its investigation, and in implementing interim and final measures. *See, e.g.*, Plaintiffs' Brief at 27-64. Second, they argue that CBP lacked appropriate evidence to support its imposition of interim measures and final determination, and that the final and review determinations were otherwise unlawful. *Id.* at 65-130. Plaintiffs' and plaintiff-intervenors' claims in both respects are flawed.

First, the conduct of the investigation did not violate plaintiffs' and plaintiff-intervenors' due process rights. Plaintiffs and plaintiff-intervenors ask this Court to provide them with greater process than Congress deemed fit to provide. This Court has rejected similar arguments in *Royal Brush Manufacturing, Inc. v. United States*, No. 19-00198, slip op. 21-152 (Ct. Int'l Trade Oct. 29, 2021) ("*Royal Brush II*") and *Diamond Tools Technology LLC v. United States*, No. 20-00060, slip

op. 21-151 (Ct. Int'l Trade Oct. 29, 2021). There is no reason for this Court to depart from these precedents here.

Second, there is no merit to plaintiffs' and plaintiff-intervenors' claims that CBP's final determination was unsupported by substantial record evidence and otherwise unlawful. Plaintiffs and plaintiff-intervenors simply invite this Court to reweigh the evidence. Consistent with longstanding precedent regarding judicial review under the substantial evidence standard, the Court should decline this invitation. *See, e.g.*, *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1324-25 (Fed. Cir. 2014); *see also Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294, 1302 (Ct. Int'l Trade 2020) ("*Royal Brush I*") (describing the scope of judicial review under the EAPA).

## IV.  ARGUMENT

Plaintiffs and plaintiff-intervenors challenge CBP's determination of evasion on two principal grounds. First, they argue that CBP's conduct of its investigation deprived them of due process, such that the investigation's results should be held "null and void." Plaintiffs' Brief at 64; Plaintiff-Intervenors' Brief at 37. Second, they argue that CBP's determination is unsupported by substantial record evidence and is

otherwise unlawful. *See, e.g.*, Plaintiffs' Brief at 65-130. As detailed in the Government's Brief, and further explained below, neither argument is compelling.

### A.   Plaintiffs and Plaintiff-Intervenors Do Not Persuade That CBP Violated Their Due Process Rights

Plaintiffs and Plaintiff-Intervenors argue at length that CBP's conduct of the investigation violated their due process rights. *Id.* at 27-74; Plaintiff-Intervenors' Brief at 6-45. They argue that without access to confidential record materials, and specifically three memoranda that CBP placed on the record from September 12-16, 2019, they were unable to timely and appropriately defend against the imposition of interim measures. *See, e.g.*, Plaintiffs' Brief at 8-10, 26-65. They therefore argue that the interim measures, and the investigation as a whole, should be considered "null and void." *See, e.g., id.* at 64.

Plaintiffs and plaintiff-intervenors ask this Court to provide them with greater process than Congress deemed fit to provide. 19 U.S.C. § 1517 does not provide for an administrative protective order, or for disclosure of confidential materials to the participants in an investigation. *See, e.g., Royal Brush I,* 483 F. Supp. 3d at 1306. And while CBP's regulations require it to provide "a public summary" of any

business confidential information that the agency places on the record, 19 C.F.R. § 165.4(e), plaintiffs and plaintiff-intervenors do not argue that CBP failed to provide them with adequate public summaries. Instead, they argue that no amount of public summarization would have been sufficient. Plaintiffs' Brief at 59-64; Plaintiff-Intervenors' Brief at 13.

This Court has rejected such claims. In *Royal Brush I*, for example, the Court remanded an EAPA determination to CBP to provide public summarizations of certain site-visit reports and photographs on which it relied heavily in making an affirmative determination of evasion. *Royal Brush I*, 483 F. Supp. 3d at 1307-08. But the Court simultaneously observed that it was not holding that the plaintiff importer was entitled to receive confidential information. *Id.* at 1308. Further, after CBP provided revised public summaries on remand, the Court rejected the plaintiff's argument that CBP's processes continued to violate its due process rights inasmuch as CBP relied on "secret" information. *Royal Brush II*, slip op. 21-152 at 13-20.

Likewise, here, plaintiffs and plaintiff-intervenors complain of CBP's reliance on "secret" information. *See, e.g.*, Plaintiffs' Brief at 8-10; Plaintiff-Intervenors' Brief at 13, 16, 18. But as the *Royal Brush* Court

explained, CBP is not required to hand over confidential data to the parties in EAPA investigations. *Royal Brush II*, slip op. 21-152 at 13-20. Rather, it is only required to provide public summaries.

Plaintiffs and plaintiff-intervenors do not persuasively explain why the public data were insufficient, such that access to the complete confidential record—and particularly the memoranda of CBP's June 6, 2018 site visits and their outcomes—would have been "crucial to undermining CBP's final determination." *See Royal Brush II*, slip op. 21-152 at 19. CBP provided public versions of the memoranda; its public initiation and interim measures notice also described the contents of those memoranda. Interim Measures Notice (PUBLIC VERSION) at 8-9, Appx01027-01028; Memorandum to the File, re: *Adding Certain Documents to the Administrative Record* (Sept. 12, 2019) (PUBLIC VERSION), Appx07018-07038; Memorandum to the File, re: *Adding Certain Documents to the Administrative Record* (Sept. 13, 2019) (PUBLIC VERSION), Appx07040-07131 ("Sept. 13 PV Memo"); Memorandum to the File, re: *Adding Certain Documents to the Administrative Record* (Sept. 16, 2019) (PUBLIC VERSION), Appx07133-07176 ("Sept. 16 PV Memo"). The public version of the

interim measures notice described the photographs taken at CBP's June 6, 2018 site visits, as well as the visiting official's conclusion that they showed pallets of "typical Chinese products" that plaintiff-intervenors' factories lacked the sophistication to produce. Interim Measures Notice (PUBLIC VERSION) at 8-9, Appx Appx01027-01028. The interim measures notice also publicly described both the notice of action that was issued with respect to Happy Home and an affidavit that Happy Home provided with respect to that notice. *Id.* The public versions of the September 13 and 16 memoranda identified a number of documents submitted to CBP regarding two entries shipped by Happy Home, including documents that presumably came from Happy Home itself (production documents, time sheets, etc.). Sept. 13 PV Memo, Appx07040-07131; Sept. 16 PV Memo, Appx07133-07176.[3]

Further, plaintiffs and plaintiff-intervenors "ha{ve} failed to demonstrate how access to the proprietary information would have aided {them} during the administrative proceeding." *Diamond Tools*, slip op.

---

[3]     Inasmuch as the memoranda incorporated information that Happy Home provided, it appears disingenuous for plaintiffs and plaintiff-intervenors to disclaim any knowledge of what that information may have been.

21-151 at 36. Despite having only the public memoranda, plaintiffs and plaintiff-intervenors were given the opportunity—which they took advantage of—to submit data to support their view of plaintiff-intervenors' production capabilities. *See, e.g.*, Appx22977-22995 (comprising Exhibit 13 of Happy Home's questionnaire response); Appx27757-27786 (comprising Exhibits 14-16 of LB Wood's questionnaire response). They also submitted written arguments addressing CBP's assertions based on the memoranda, and detailed their assessment of the record information that they had provided regarding production capabilities. Letter from deKieffer & Horgan to U.S. Customs & Border Protection, re: *EAPA Con. Case No. 7321 – Respondents' Written Arguments* (May 14, 2020) at 3, 11-15, 18-19, Appx44393, Appx44401-44405, Appx44408-44409.

Additionally, plaintiffs' and plaintiff-intervenors' due process arguments are largely aimed at CBP's imposition of interim measures. *See, e.g.*, Plaintiffs' Brief at 27; Plaintiff-Intervenors' Brief at 6. As the Court has explained, such measures are by their nature temporary, a factor that weighs against the existence of a "protected interest," a required showing for a due process claim. *See Diamond Tools*, slip op. 21-

18

151 at 31. Moreover, while Congress provided for judicial review of CBP's final evasion and administrative review determinations, inclusive of CBP's compliance with the statutory procedures for making such determinations, Congress did not provide for judicial review of decisions to impose interim measures. 19 U.S.C. § 1517(g)(1)-(2). This Court has previously read as purposeful the lack of any reference to 19 U.S.C. § 1517(e), concerning interim measures, in the EAPA's judicial review provisions. *Diamond Tools*, slip op. 21-151 at 18-19. Because the EAPA does not allow for review of decisions to impose interim measures, but instead treats the decision to impose (or not impose) such measures as inherently "temporary," plaintiffs' and plaintiff-intervenors' process-based attack on CBP's interim measures fails. *See id.*; *see also* 19 U.S.C. §§ 1517(e) & (g)(1)-(2).[4]

In sum, as explained above and in the Government's Brief, plaintiffs and plaintiff-intervenors fail to persuade that CBP denied them due

---

[4]     Underscoring the temporary nature of CBP's decisions regarding imposition of interim measures, the EAPA does not require termination of an investigation where CBP finds no "reasonable suspicion" of evasion at the interim measures stage. 19 U.S.C. § 1517(e). Rather, the statute indicates that CBP must continue its investigation. *Id.* §§ 1517(c) & (d) (describing final determinations and effects thereof).

process in conducting the investigation. CBP provided all of the process required by the statute and its regulations. Plaintiffs and plaintiff-intervenors have not shown that CBP was required to give them access to the full confidential record at any time in the investigation, much less prior to the imposition of interim measures. Plaintiffs' and plaintiff-intervenors' arguments in this regard are inconsistent with this Court's precedent. Their arguments are also undermined by their evident ability to submit data and make arguments in support of their claims. The Coalition therefore respectfully submits that this Court should rule in favor of CBP with respect to plaintiffs' and plaintiff-intervenors' due process arguments.

## B. CBP's Determination is Otherwise Lawful

In addition to advancing their flawed due process claims, plaintiffs and plaintiff-intervenors argue that CBP's determinations in the investigation were otherwise unlawful. Plaintiffs argue that CBP lacked "reasonable suspicion" to support its imposition of interim measures. Plaintiffs' Brief at 65-74; Plaintiff-Intervenors' Brief at 17-18. Plaintiffs then argue that CBP lacked substantial evidence to support its final determination of evasion. Plaintiffs' Brief at 74-116; *see also* Plaintiff-

Intervenors' Brief at 22-37. Finally, Plaintiffs argue that OR&R improperly applied the substantial evidence standard when conducting its administrative review under 19 U.S.C. § 1517(f)(1). Plaintiffs' Brief at 117-130. But as explained below and in the Government's Brief, these claims are unpersuasive.

### 1.   Plaintiffs' Challenge to CBP's Finding of "Reasonable Suspicion" is Without Merit

Plaintiffs begin by arguing that CBP lacked sufficient evidence to determine that there was a "reasonable suspicion" that plaintiffs' had entered Chinese-origin plywood as Cambodian and thus failed to deposit applicable duties. Plaintiffs' Brief at 66-74; Plaintiff-Intervenors' Brief at 17-18. Plaintiffs argue that CBP lacked specific evidence that plaintiffs had imported such goods. Plaintiffs' Brief at 66. In addition, plaintiffs and plaintiff-intervenors claim that the data in the Coalition's allegation and the information in CBP's September 12-16, 2019 memoranda were insufficient to give rise to a "reasonable suspicion" of evasion. *Id.* at 66-74; Plaintiff-Intervenors' Brief at 17-18. These arguments are not compelling.

As an initial matter, and as discussed above, Congress did not provide for appeal of interim measures determinations. 19 U.S.C. §§ 1517(e) &

(g)(1)-(2); *see also Diamond Tools*, slip op. 21-151 at 18-19. Because the EAPA does not allow for review of decisions to impose interim measures, but instead treats the decision to impose (or not impose) such measures as inherently "temporary," plaintiffs' and plaintiff-intervenors' substantive attack on CBP's interim measures fails, for the same reasons as their procedural attack. *See Diamond Tools*, slip op. 21-151 at 18-19; *see also* 19 U.S.C. §§ 1517(e) & (g)(1)-(2).[5]

Beyond this, plaintiffs and plaintiff-intervenors do not persuade in their substantive claim. Plaintiffs argue that CBP lacked sufficient basis for determining that there was a "reasonable suspicion" that plaintiffs had evaded the order on Chinese hardwood plywood. Plaintiffs' Brief at 66-74. But they do so by claiming that each individual piece of evidence, on its own, would be insufficient to justify a determination of "reasonable suspicion." *See id.* This approach fatally fails to acknowledge that CBP's determination was based on holistic consideration of the evidence, and not on individual pieces of evidence viewed alone.

In their brief, plaintiffs provide potential alternate views of individual pieces of evidence, but do not establish that CBP's view of the evidence

---

[5]     *See* note 4, *supra.*

as a whole was unreasonable. For example, they argue that the establishment of plaintiff-intervenors' facilities in a special zone meant to facilitate China-Cambodia trade and transactions is not indicative of anything in particular. *Id.* at 67-68. But CBP reasonably viewed it, in conjunction with the other evidence that it cited, as a factor that would make it particularly easy for plaintiffs' suppliers to transship Chinese merchandise. Interim Measures Notice at 6, Appx01025. Likewise, plaintiffs argue that a shift in trade flows is not evidence of transshipment. Plaintiffs' Brief at 68-69. But CBP reasonably viewed China's sudden and substantial increase in exports of plywood to Cambodia, coupled with the sudden and substantial increase in Cambodian plywood exports to the United States as indicative of plaintiffs' suppliers transshipment of Chinese plywood. Interim Measures Notice at 2-3, 6, 9, Appx01021-01022, Appx01025, Appx01028.

Plaintiffs also fail to recognize the full spectrum of evidence upon which CBP relied. For example, they do not mention that two of the plaintiffs were already under separate investigation for evasion of the same order, by reason of the transhipment of goods through Vietnam. Interim Measures Decision at 4, Appx01023. They also fail to mention

Business Proprietary Information
Has Been Deleted

Consol. Ct. No. 20-03914      NON-CONFIDENTIAL VERSION

that the allegations contained evidence that plaintiffs had imported goods from the plaintiff-intervenors. *See, e.g., id.*[6] In this regard, the Coalition notes that the EAPA does not require any specific showing of intent to evade duties on plaintiffs' part. *See, e.g.*, Review Determination at 13, Appx01064. Rather, it only requires that plaintiffs have imported Chinese goods while declaring them as Cambodian. *Id.*

Plaintiffs and plaintiff-intervenors devote a large part of their substantive challenge of CBP's "reasonable suspicion" determination to CBP's September 12-16 memoranda and reliance on trade data. Plaintiffs' Brief at 69-74; Plaintiff-Intervenors at 17-18. But rather than truly challenge the sufficiency of the evidence contained in the memoranda, plaintiffs repeat their due process arguments. Plaintiffs' Brief at 69-74; Plaintiff-Intervenors at 17-18. Specifically, they argue that CBP could not properly rely on the memoranda because they were

---

[6]   This evidence was further supported by other evidence on the record at the time of the interim measures decision, including plaintiffs' responses to CBP's questionnaires and [

]. *See* Interim Measures Notice at 7-8, Appx01026-01027; *see also* [

]; [

]; [

].

not fully disclosed to the parties. Plaintiffs' Brief at 69-74; Plaintiff-Intervenors at 17-18. They also argue that the trade data on which CBP relied were "discredited." Plaintiff-Intervenors' Brief at 17-18.

Plaintiffs' and plaintiff-intervenors' arguments that CBP was required to provide them with complete copies of these memoranda, inclusive of all confidential information, are unavailing. *See* discussion *supra* at 14-18. CBP's reliance on the memoranda was also appropriate. It formally placed the memoranda on the record. *See, e.g., id.* at 16. Nothing more was required for CBP to take them into consideration in assessing whether to impose interim measures.

As for the trade data presented in the Coalition's allegations, CBP was not obliged to adopt either plaintiffs' or plaintiff-intervenors' view of its evidentiary weight. As CBP explained, the data at the time it imposed interim measures provided an adequate basis for CBP's "reasonable suspicion" that plaintiffs had evaded the order. Interim Measures Notice at 2-9, Appx01021-01028.

In sum, plaintiffs and plaintiff-intervenors do not persuade that CBP erred in reaching an affirmative "reasonable suspicion" determination. Crucially, Congress did not provide for appeal of interim measures

determinations. But even if it had, plaintiffs' and plaintiff-intervenors' claim would be unpersuasive. Not only are their process-related arguments flawed, they fail to confront the fact that CBP based its determination in the record as a whole at the time that it imposed interim measures. Even with respect to individual pieces of record data, plaintiffs and plaintiff-intervenors do not persuade that CBP was required to view those data in the way that plaintiffs and plaintiff-intervenors would have preferred.

### 2. Plaintiffs' and Plaintiff-Intervenors' Challenge to CBP's Final Evasion Determination is Unpersuasive

Plaintiffs and plaintiff-intervenors next challenge CBP's final evasion determination. Plaintiffs' Brief at 74-116; Plaintiffs-Intervenors' Brief at 22-37. In so doing, they again repeat their due process arguments. Plaintiffs' Brief at 80-85, 115-116; Plaintiff-Intervenors' Brief at 26-33. Plaintiffs also argue that CBP's conclusion that Plaintiffs' imported commingled Chinese and Cambodian-origin plywood is unsupported by the record. Plaintiffs' Brief at 85-98. They then take issue with CBP's analysis of plaintiff-intervenors' records. *Id.* at 98-109. They go on to argue that CBP failed to adequately consider potentially legitimate reasons for manufacturing plywood in Cambodia. *Id.* at 109-110. Finally,

plaintiffs and plaintiff-intervenors argue that the trade data on the record were flawed, and therefore unsupportive of CBP's conclusion. *Id.* at 111-115; Plaintiff-Intervenors' Brief at 34-37. These arguments are not compelling.

> a.   **Plaintiffs' and Plaintiff-Intervenors' Due Process Arguments are Not Compelling**

Plaintiffs and plaintiff-intervenors attack the substance of CBP's final evasion determination by repeating their arguments regarding due process, chiding CBP for its "clandestine" investigation and its reliance on "secret" information. Plaintiffs' Brief at 80-85, 115-116; Plaintiff-Intervenors' Brief at 26-37. As explained above, however, CBP was not required to provide access to confidential data. *See* discussion *supra* at 14-18. Similarly, CBP did not prevent plaintiffs and plaintiff-intervenors from placing timely data on the record, or from filing written arguments. *See id.* And while plaintiffs claim that the record before CBP was devoid of any evidence that they intentionally imported Chinese goods as Cambodian, Plaintiffs' Brief at 84, the EAPA does not require any specific showing of intent to evade duties on plaintiffs' part. *See, e.g.*, Review Determination at 13, Appx01064.

Plaintiff-intervenors additionally argue that due process required CBP to issue additional supplemental questionnaires with respect to "doubts or concerns" regarding the plaintiff-intervenors' original questionnaire responses. Plaintiff-Intervenors' Brief at 27; *see also id.* at 28-33 (attempting to explain away certain discrepancies). But CBP did, in fact, issue supplemental questionnaires to both LB Wood and Happy Home. *See* Letter from U.S. Customs & Border Protection to deKieffer & Horgan, PLLC, Re: *Supplemental Request for Information - Happy Home* (Nov. 21, 2019), Appx31130-31135; Letter from U.S. Customs & Border Protection to deKieffer & Horgan, PLLC, Re: *Supplemental Request for Information – LB Wood* (Nov. 21, 2019), Appx31159-31165. Further, as the Government points out, plaintiff-intervenors' arguments regarding the discrepancies in the record are unconvincing. Government's Brief at 41; *see also* discussions *infra* at 32, 41-42.

> **b.    CBP Had Sufficient Evidence to Support its Conclusion that Plaintiffs Imported Comingled Goods**

Plaintiffs next argue that CBP lacked substantial evidence upon which to conclude that they imported Chinese-origin goods as Cambodian. Plaintiffs' Brief at 85-98. However, they fail to show that

Business Proprietary Information
Has Been Deleted

Consol. Ct. No. 20-03914          NON-CONFIDENTIAL VERSION

CBP's analysis of the record was unreasonable. While they point to photographs and production-capacity information included in their questionnaire responses, *id.* at 89-92, CBP reasonably discounted this information. For example, as CBP explained, while the parties submitted certain information on the plaintiff-intervenors' production capacity, this took the form of [

], rather than any objective data regarding machine capacity, run times, etc. Final Evasion Determination at 7, 12, Appx01040, Appx01045; *see also* Attachments 2 and 3 to Plaintiffs' Brief (reproducing LB Wood's Questionnaire Response at Exhibit 14 and Happy Home's questionnaire response at Exhibit 13). And while plaintiffs attempt to explain away or discredit the observations that CBP made during the June 6, 2018 site visits, Plaintiffs' Brief at 94-98, they do not persuade that CBP was required to accept plaintiffs' alternate explanations, or that these alternate explanations indicate that the only reasonable conclusion available to CBP was that plaintiff-producers produced in Cambodia all of the plywood that they shipped to plaintiffs in the United States. *Id.*

Business Proprietary Information
Has Been Deleted

Finally, plaintiffs claim that CBP should have treated the plaintiff-intervenors' questionnaire responses as inherently accurate, stating that because plaintiff-intervenors expected to be verified, they had no incentive to dissemble. Plaintiffs' Brief at 93. But Happy Home [

] before verification could be conducted. Review Determination at 18, Appx01069. Further, CBP's past experience with verification in EAPA cases does not bear out plaintiffs' assertion that pending verification is itself a guarantor of the accuracy and completeness of pre-verification claims. *See Royal Brush II*, slip op. 21-152 at 5-6 (describing discrepancies with prior-reported data found at verification).

### c.   Plaintiffs Do Not Persuade That CBP Erred in its Analysis of Plaintiff-Intervenors' Data

Plaintiffs next complain that the record does not bear out CBP's determination that plaintiff-intervenors' data contained discrepancies regarding issues such as payroll and quantities shipped/invoiced. Plaintiffs' Brief at 98-109. They claim that although the exact nature of the discrepancies was unclear to them, they and plaintiff-intervenors nonetheless fully reconciled and/or explained all of the data that they submitted. *Id.* at 99. They argue that CBP lacks manufacturing expertise

Business Proprietary Information
Has Been Deleted

and that the plaintiff-intervenors kept their accounting records in accordance with Cambodian principles; they also speculate that discrepancies regarding reported entries reflect errors not attributable to plaintiffs or plaintiff-intervenors. *Id.* at 100-109.

These arguments do not demonstrate that CBP's determination was unsupported by substantial record evidence. CBP's determination was based on many factors, including multiple discrepancies across different aspects of the plaintiff-intervenors' reporting. As explained in the Government's Brief, plaintiffs' (and plaintiff-intervenors') arguments "selectively discuss a few pieces of evidence," and do not credibly undermine the weight of the evidence of the whole. Government's Brief at 39. Plaintiffs and plaintiff-intervenors also fail to address discrepancies that CBP found in LB Wood's reported quantities packaged/shipped, bills of lading, and purchase orders. *Id.* at 41. And their argument regarding LB Wood's relationship with its [

] simply underscores the discrepancies that CBP observed. Plaintiff-Intervenors' Brief at 28-29; Final Evasion Determination at 7, Appx01040.

Business Proprietary Information
Has Been Deleted

With respect to Happy Home, plaintiffs simply speculate that official U.S. customs data regarding the company was flawed, Plaintiffs' Brief at 105-106, and brush aside the fact that the company provided production records that were [            ] and did not bear Happy Home's name. *See id.* at 108; *see also* Final Evasion Decision at 13-15, Appx01046-01048; Letter from DeKieffer & Horgan to U.S. Customs & Border Protection, re: *EAPA Con. Case No. 7321: Happy Home Supplemental Questionnaire Response* (Dec. 16, 2019) at Exhibit SQ1-3, Appx31829-32692. Plaintiffs also ignore discrepancies in quantities declared/shipped, and the volume and value of sample shipments. Final Evasion Determination at 13-15, Appx01046-040148; *see also* discussion *infra* at 41-42 with respect to Happy Home's [                         ].

> **d.**  **Plaintiffs' Claim that CBP was Required to Assume that Plaintiff-Intervenors Cambodian Operations Were Legitimate is not Compelling**

Plaintiffs next argue that CBP exhibited unfair "nation-bias" in its determination, and failed to consider that there were legitimate reasons for plaintiff-intervenors to set up Cambodian manufacturing operations in the wake of the trade remedy orders on Chinese hardwood plywood. Plaintiffs' Brief at 109-110. But CBP did not find that plaintiff-

intervenors had no manufacturing operations at all in Cambodia. Rather, they found that the record did not show that these operations were capable of producing in Cambodia all of the plywood that they shipped from the country, and which was imported into the United States as Cambodian. Final Evasion Determination at 10, 17, Appx01043, Appx01050.

### e.   Plaintiffs' and Plaintiff-Intervenors' Attack on Trade Data is Unpersuasive

Finally, plaintiffs and plaintiff-intervenors attack CBP's reliance on trade data from the FAO Forestry Yearbook. Plaintiffs' Brief at 111-115; Plaintiff-Intervenors' Brief at 34-37. They argue that the data were inconsistent with U.S. import statistics, and with Chinese export statistics, and thus should have been discounted completely. Plaintiffs' Brief at 111-115; Plaintiff-Intervenors' Brief at 34-37. Relying on what appears to be non-record data, plaintiffs also complain that FAO Forestry Yearbook figures for Cambodia are "unofficial figures," and that the courts do not condone an agency's failure to consider "conflicting information." Plaintiffs' Brief at 113-114.

As detailed in the Government's Brief, these arguments are unavailing. Government's Brief at 41-42. CBP appropriately explained

its reliance on the FAO Forestry Yearbook Figures. *See, e.g.*, *id.* Nor did CBP simply ignore the fact that the FAO Forestry Yearbook figures vary from those presented in U.S. and Chinese import/export statistics. As CBP explained, the data in the import/export statistics and the data in the Yearbook reflect different data sources. Final Evasion Determination at 16, Appx 01049; Review Determination at 18 n.59, Appx01069; *see also* InterGlobal Allegation at Exhibits 2-4, Appx01498-01514. Indeed, they even reflect different units of measure – Chinese export statistics are presented on a kilogram basis; U.S. import statistics are on a cubic meter basis; the FAO Forestry Yearbook also reports on a cubic meter basis. InterGlobal Allegation at Exhibits 2-4, Appx01498-01514; Mem. from Toby Vandall to the File, re: *Adding Information to the Administrative Record of EAPA Cons. Case 7321* (Jan. 9, 2020), Appx44693-45129 ("2017 FAO Forestry Yearbook Data").

Beyond that, the FAO Forestry Yearbook data incorporated into the Coalition's allegations provide the only record source of Cambodia's own plywood production and consumption. InterGlobal Allegation at Ex. 2, Appx01501-01503. And despite variations in data from source to source, the data agree that Cambodia imported far more Chinese plywood than

it appeared to consume or produce. InterGlobal Allegation at Exhibits 2-4, Appx01498-01514; 2017 FAO Forestry Yearbook Data, Appx44693-45129. The Chinese export data also show that Chinese exports to Cambodia skyrocketed in 2017 and into 2018, simultaneously with the imposition of the trade remedy orders on Chinese plywood, while the U.S. import data show a corresponding increase in U.S. imports of product declared as Cambodian. InterGlobal Allegation at Exhibits 3-4, Appx01508-Appx01514.

### f. Conclusion

Plaintiffs and plaintiff-intervenors challenge is not compelling. Their process-related claims remain fatally flawed, and they do not persuade that CBP was either required to adopt their view of the record, or that it erred in supporting its findings.

### 3. Plaintiffs' and Plaintiff-Intervenors' Challenge of CBP's Administrative Review Determination is Unpersuasive

Finally, plaintiffs and plaintiff-intervenors challenge the administrative review determination issued by OR&R. Plaintiffs' Brief at 117-130; Plaintiff-Intervenors' Brief at 18-22, 37-45. They begin by arguing that in observing the statutory and regulatory limits regarding the parties that may request administrative review, CBP denied

plaintiff-intervenors' due process. Plaintiffs' Brief at 117-120; Plaintiff-Intervenors' Brief at 18-22, 39-41. They also argue that plaintiffs' administrative review requests demonstrated that CBP's final evasion determination was unsupported by the record, but that OR&R failed to adequately address their arguments. Plaintiffs' Brief at 120-123; Plaintiff-Intervenors' Brief at 41-45. In addition, plaintiffs chide OR&R for relying on information arising from the June 6, 2018 site visits and argue that OR&R's administrative review determination reflects new, unsubstantiated allegations about Happy Home. Plaintiffs' Brief at 123-124.

As the United States notes in its brief, plaintiffs do not have standing to complain of OR&R's decision not to consider plaintiff-intervenors' administrative review requests. Government's Brief at 45 n.10. Further, because plaintiff-intervenors are not parties permitted to file appeals with this Court in their own right, their arguments on this issue should not be considered, either. *See id.* at 45-46; *see also* 19 U.S.C. § 1517(g)(1).

Regardless, should the Court determine to consider these claims, it should find that plaintiffs and plaintiff-intervenors are again asking this Court to provide them with greater process than Congress itself provided.

Plaintiffs' Brief at 117-121; Plaintiff-Intervenors' Brief at 39-41. As plaintiffs appear to recognize, Plaintiffs' Brief at 117, the EAPA permits only importers that are the subject of the investigation (and the parties that filed the allegations leading to the investigation) to file requests for administrative review. 19 U.S.C. § 1517(f)(1). CBP's regulations reflect this statutory limit. 19 C.F.R. § 165.41(a); *see also* Review Determination at 2, Appx01053. While plaintiffs and plaintiff-intervenors argue that it was unfair for CBP to base its determination in part on information solicited from plaintiff-intervenors without simultaneously giving them the right to file for administrative review, this is what the statute dictates. *See* 19 U.S.C. § 1517(a)(6)(A)(i) (defining "interested parties" to include foreign producers/exporters); *id.* § 1517(c)(2) (authorizing CBP to collect information from "interested parties"); *id.* § 1517(f)(1) (limiting the parties that can file requests for administrative reviews).

No more persuasive is plaintiff-intervenors' claim that CBP's determination is violative of 19 U.S.C. § 1675(a)(1)(A)&(B). Plaintiff-Intervenors' Brief at 18-22. That statute requires the U.S. Department of Commerce ("Commerce") to conduct annual administrative reviews of antidumping and countervailing duty orders upon request from

interested parties. 19 U.S.C. § 1675(a)(1)(A)&(B). Plaintiff-Intervenors argue that because foreign producers/exporters of goods subject to antidumping and countervailing duty orders are permitted to request that Commerce conduct annual administrative reviews, CBP must likewise provide plaintiff-intervenors with the right to request administrative reviews of EAPA determinations. Putting aside the fact that Commerce's "administrative reviews" are not reasonably akin to "administrative reviews" under the EAPA, it remains that Congress did not provide foreign producers/exporters with the right to request administrative reviews of EAPA determinations. 19 U.S.C. § 1517(f)(1). And to the extent that plaintiff-intervenors argue that they will not be able to seek a review of their shipments with the U.S. Department of Commerce, this appears to be mere speculation on their part, given that they concede that similarly situated companies have participated in such reviews. Plaintiff-Intervenors' Brief at 20-21. Moreover, their remedy is clear—request and participate in a Commerce administrative review and, if they are dissatisfied with the outcome, sue Commerce.

Next, inasmuch as plaintiffs and plaintiff-intervenors argue that OR&R failed to adequately consider the arguments in plaintiffs'

administrative review requests, or the record as a whole, this is not so. Plaintiffs' Brief at 120-123; Plaintiff-Intervenors' Brief at 41-45. The administrative review determination acknowledged plaintiffs' arguments at length. Review Determination at 7-12, Appx01058-01063. Moreover, agency fact-finders, such as CBP (and, by extension, OR&R when conducting a *de novo* review) are presumed to have considered all the evidence. *See, e.g., Acciai Speciali Terni S.P.A. v. United States*, 24 CIT 1064, 1080-81, 118 F. Supp 2d. 1298, 1313-14 (2000). Essentially, plaintiffs and plaintiff-intervenors complain that OR&R did not read the record in the way that they would have preferred and, more particularly, did not agree with plaintiffs' claims. Plaintiffs' Brief at 123; Plaintiff-Intervenors' Brief at 41-45.[7]

Plaintiffs next argue that OR&R placed an "inordinate" weight on CBP's June 2018 site visits and the actions arising from them. Plaintiffs' Brief at 123-24. Plaintiffs also argue that the observations from the June 2018 site visit "alone" cannot support ORR&R's determination. *Id.* at 124.

---

[7]     Plaintiff-intervenors also repeat their argument that CBP relied on "secret" data, and provide alternative explanations for certain record evidence. Plaintiff-Intervenors' Brief at 41-45. As explained above at 15-16 and 24-25, however, such arguments are without merit.

Consol. Ct. No. 20-03914                       NON-CONFIDENTIAL VERSION

Plaintiffs are merely asking this Court to reweigh the evidence, while continuing in their refusal to acknowledge that CBP's evasion determination was premised upon multiple pieces of evidence considered in concert. The Court should decline plaintiffs' invitation. *See, e.g.*, *Siemens Energy*, 992 F. Supp. 2d at 1324-25; *see also Royal Brush I*, 483 F. Supp. 3d at 1302.

Finally, plaintiffs' complain that OR&R advanced additional grounds for finding evasion in the administrative review determination. Plaintiffs' Brief at 124-130. Specifically, they challenge OR&R's observations regarding Happy Home's purchases of [                    ], *id.* at 125-126, as well as OR&R's observations regarding the company's decision to [                              ] in advance of the company's scheduled verification. *Id.* at 126-130.

Plaintiffs' challenge to OR&R's "new claims" is at odds with their claim that OR&R failed conduct a *de novo* review. *Compare id.* at 124-130, *with id.* at 123. One natural consequence of *de novo* review is that the new fact-finder may support its conclusion differently than did the original fact-finder. Regardless, plaintiffs do not persuade that OR&R's additional findings were unsupported or inappropriate.

Business Proprietary Information
Has Been Deleted

Consol. Ct. No. 20-03914                                NON-CONFIDENTIAL VERSION

With respect to Happy Home's purchases of [                    ] OR&R

noted that Happy Home reported buying [

]. Review Determination at 20, Appx01071. However, OR&R

highlighted that certain [                              ] indicated that

Happy Home had also imported [                  ] plywood, an indication

supported by Happy Home's own statements that it [

] *Id.*

Plaintiffs complain that OR&R concluded that its purchases of [    ]

shipments of [              ] products were in fact [

] that was then shipped to the United States. Plaintiffs' Brief

at 125-26. While plaintiffs' claim is confusingly written, it appears that

they are arguing that (1) CBP found that the [

] were in fact of

finished plywood, but that (2) CBP also found that the same shipments

were of [                        ] used not to produce finished plywood,

but rather [              ]. *Id.* The difficulty for plaintiffs is that CBP

made no such finding. It found two separate things. First, CBP

recognized that Happy Home did import some [

]. Review Determination at 20, Appx01071. Second, CBP found that

Business Proprietary Information
Has Been Deleted

the record indicated that some of the [

] finished plywood [                 ]. *Id.* These two findings

are not in tension, despite plaintiffs' assertion to the contrary. Moreover,

plaintiffs ignore the fact that Happy Home had also stated to CBP that

it [                                    ]. *Id.* at 18, 20, Appx01069,

Appx01071.

Plaintiffs also complain of OR&R's observations regarding Happy

Home's decision to [                                    ] in advance of

the company's scheduled verification. Plaintiffs' Brief at 126-130. As an

initial matter, CBP also pointed to this fact in its final evasion

determination. Final Evasion Determination at 4, Appx01037. Thus, this

was not a new factual finding on OR&R's part.

More importantly, OR&R noted that [          ] contributed to CBP's

inability to corroborate Happy Home's claims regarding the volume of

plywood it produced in Cambodia. Review Determination at 18-19,

Appx01069-01070. And regardless of the reason for [          ], CBP

was ultimately unable to conduct a verification of Happy Home's data.

Plaintiffs' repetition of their unpersuasive attacks on the site visit data

do not transform OR&R's finding into a flaw in CBP's determination.

Plaintiffs' Brief at 127-130. Nor do these arguments compel a finding that OR&R failed to consider the record as a whole. Rather, OR&R reasonably found that the most credible evidence of Happy Home's production capabilities was found in the documentation arising from the site visit, particularly given that capacity information in Happy Home's questionnaire responses was based on "the production manager's experience," rather than any objective data. Review Determination at 16, Appx01067.

In conclusion, plaintiffs' and plaintiff-intervenors' challenge to OR&R's administrative review determination is without merit. They do not persuade that OR&R erred in declining to consider plaintiff-intervenors' filings; nor do they show that OR&R's decision was otherwise improper.

Consol. Ct. No. 20-03914                          NON-CONFIDENTIAL VERSION

## V.   <u>CONCLUSION</u>

For the reasons discussed above and in the Government's Brief, this

Court should affirm CBP's determination of evasion.

Respectfully submitted:

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to the Coalition for Fair
Trade in Hardwood Plywood*

Dated: December 30, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Coalition for Fair Trade in Hardwood Plywood's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 7,853 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

Coalition for Fair Trade in Hardwood Plywood
(Representative Of)

December 30, 2021
(Date)