PUBLIC VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.,* )<br><br>Plaintiffs, )<br><br>and )<br><br>LB WOOD CAMBODIA CO., LTD., et al., )<br><br>Plaintiff-Intervenors, )<br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br>and )<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, )<br><br>Defendant-Intervenor. ) | Before: Hon. M. Miller Baker, Judge<br><br>Consol. Court 20-03914<br><br>**PUBLIC VERSION**<br><br>Business Proprietary Information Removed from Pages 3-4 and 6-22 |

## PLAINTIFF INTERGLOBAL FOREST, LLC'S REPLY BRIEF

Thomas H. Cadden, Esq.
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827

***Counsel to Plaintiff InterGlobal Forest, LLC***

Dated:  January 24, 2022

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   ARGUMENT ....................................................................................3

    A.    LB Wood Did Not Lie in Its Responses to CBP's Requests for
           Information .............................................................................3

    B.    The Record Does Not Support The Conclusion That LB
           Wood Lacked the Capacity or Means to Produce the
           Plywood Which is the Subject of this Action. ...........................9

    C.    The CBP's Inordinate Reliance on the Emails of [
           ] Ignores Their Patent Shortcomings. .........................15

    D.    CBP's Bias Extends to Plaintiffs, Not Just The
           Manufacturers. . ......................................................................17

    E.    IGF is Entitled to Confront the Evidence and the Witnesses
           Against It. ...............................................................................21

III.  CONCLUSION ..............................................................................23

      CERTIFICATE OF COMPLIANCE...............................................24

## I.    INTRODUCTION

InterGlobal Forest, LLC ("IGF") submits the following reply brief (this "Reply") in response to both (i) Defendant's Response In Opposition To Plaintiffs' And Plaintiff-Intervenors' Motions For Judgment On The Agency Record (the "Opposition Brief") filed in defense of the U.S. Customs and Border Protection ("CBP") and (ii) the Coalition For Fair Trade In Hardwood Plywood's Response Brief (the "Coalition Brief").  Preliminary IGF joins in Plaintiff American Pacific Plywood, Inc.'s and Consolidated Plaintiff U.S. Global Forest, Inc.'s Reply Brief.

For the reasons which will be articulated by the other plaintiffs in this consolidated proceeding, the Opposition Brief and the Coalition Brief addressed, but have failed to refute, the legal analysis supplied in Plaintiff's And Consolidated Plaintiffs' Motion For Judgment On The Agency Record (the "Motion").

By contrast, although IGF's Reply will address such legal issues where, if, and as appropriate, this Reply focuses instead on the supposition and bias inherent in CBP's Notice of Determination as to Evasion,  Document No. 204, Appx01033-01050 and the

Administrative Review Decision,  Appx01052-01074 (the "Decision")

issued by the CBP OT (Office of Trade) - Regulations and Rulings

("RR").

As will be demonstrated below, CBP prejudges and then categorically

discards the overwhelming and detailed evidence provided by the

Plaintiffs and the Plaintiff Intervenors.  CBP persistently puts the

worst possible spin on the information which has been provided by

Plaintiff and Plaintiff-Intervenor LB Wood Cambodia, Co., Ltd. ("LB

Wood").  CBP also consistently takes statements completely out of

context and mischaracterizes and misrepresents the actual statements

in the Administrative Record in an unceasing attempt to crucify the

Plaintiff and Plaintiff-Intervenors, ascribes the worst possible motives

to the Plaintiff and Plaintiff-Intervenors, and using its own misstated

presumptions as grounds for pole-vaulting to the unsupported

conclusion that any evidence presented by the Plaintiff and Plaintiff-

Intervenors which contradicts or undermines CBP's strained

interpretations must be inherently suspect and is categorically

discredited because of its source.

## II.   ARGUMENT

### A.   LB Wood Did Not Lie In Its Responses to CBP's Requests for Information.

From the ostensibly "de novo" Decision, it appears that RR failed to discharge its duty to conduct an independent review of the record.  Had it done its job and actually read documents referenced in the June 9, 2020 Final Notice of Determination as to Evasion (the "Final Notice"),  Appx01034-01050, it would realize that the alleged "misrepresentations" which are ascribed to LB Wood as proof of its duplicity actually constitute payments.  Instead of exercising independent judgment and completing a diligent de novo review, the Decision settles for substantially cutting and pasting from the  Final Notice. *Cf.,*  Appx01065-1066 and  Appx.01038.

Both the Decision and the Final Notice assert that LB Wood has lied to CBP.  The Decision makes the damning accusation that LB Wood blatantly lied in response to Requests for Information submitted to CBP.  The Decision is at pains to note that:

"In response to CBP's RFI, LB Wood provided ownership information and confirmed that it is [      ] percent owned by

3

a [          ] company, [             ], [

]37. [             ] is an [

]38 and the

intimate business relationship between [

] and [

]. *Moreover, the statement that [*

*] produces plywood [*

*] seems*

*contradictory. More specifically, statements that [*

]39 *and*

*statements that [*

]40 *cannot both be accurate.* Furthermore, the

record shows that [     ] percent by value of LB Wood's raw

materials were imported from [

]41." [Emphasis added.]  Appx01065-66.

A close and careful reading of the actual documents referenced in Footnotes 39 and 40 demonstrates that the purported discrepancy is a fallacy which has been completely contrived and patently produced by CBP. All that would have been required to give the lie to CBP's assertion would have been for the RR to take the time to read the actual Requests for Information and read the actual response. Instead, the RR abdicates its duty to conduct a de novo review. In this instance, the RR simply parroted the CBP's conclusion and rubberstamped the Final Decision.

More particularly, footnote 39 directs the reader to: "*See*, LB Wood RFI at 7 and Exhibit 2. *See also*, June 29 Determination, Business Confidential Document 204, Page 8 of 18." RFI No. 7 and the response state:

> *Identify all suppliers*, contractors, subcontractors, lenders, exporters, distributors, resellers, and other persons *involved in the development, production, sale, and/or distribution of the merchandise under investigation* that CBP may also consider affiliated with your company. Some factors which you should consider include, for example, whether you

acquire a significant amount of a major input from only a single supplier, the length of time your company has had a relationship with a supplier, contractor, subcontractor, distributor, exporter or reseller, the exclusivity of the relationship, all business relationships your company has or had with these persons, and other business relationships your company has or had with the persons, and other relationships between your company and other person. (e.g., director/manager relationships).

*Response*:   [

].  *See,* Appx30893-

94.

Preliminarily it bears noting that this RFI does not ask anything about raw materials.  LB Wood has never attempted to hide the fact that it received most of its veneers from [              ].  Neither has it ever denied that [            ] provided seed money for forming LB Wood.

What is critical is that the question did not ask that LB Wood identify its suppliers generally or that LB Wood identify any affiliated

6

producers.  LB Wood had already disclosed its affiliates (including [

]) in its response to the preceding RFI No. 6, to which the

Decision cites at footnote 40.   Appx01066.

The Decision asserts that in response to said RFI No. 6 , LB Wood

made "statements that [

]"  Decision at page

15, Appx 01066.  In response to RFI No. 6, LB Wood provided a very

fulsome answer, but it never said any of the things which the Decision

claims that LB Wood admitted.  Rather, it states that:

> *Response: Please refer to Exhibit 2 for the affiliation chart*
>
> *including  the  affiliated  companies.  [*

].   *See*, Appx30893-94  and  the  referenced  Affiliation

Chart at Appx29303-04.

Stated succinctly, the only point made by LB Wood in response to RFIs Nos. 6 and 7 was to acknowledge directly and honestly that it had "affiliated entities" while stating with equal honesty that those related entities were not involved in the production and sales process in Cambodia.  There is no evidence to the contrary.

RFI No. 7 asked a follow up question requiring that LB Wood identify any supplier "involved in the *development, production, sale, and/or distribution of the merchandise under investigation* that CBP may also consider affiliated with your company.  LB Wood has consistently stated throughout the investigation that, while [

      ] was a related entity from which LB Wood acknowledged buying veneers, [           ] was not active in Cambodia and was not involved in the "development, production, sale, and/or distribution" of the plywood which LB Wood was manufacturing in Cambodia using Chinese veneers.

The Decision cites the foregoing RFI No. 7 as supposed proof for the proposition that LB Wood responded by asserting that, *[*

                                          *]* That is a bald-faced lie.
If the CBP and the RR had bothered to take the time to review the

record rather than remaining in the echo chamber of their own illogic, they might have avoided the temptation to ascribe such a demonstrably false factual statement to LB Wood.  Evidently, they decided that because the conclusions would sound plausible to an agency already biased against the Plaintiff-Intervenors, the agency would not bother to check the source materials.

**B. The Record Does Not Support The Conclusion That LB Wood Lacked The Capacity Or Means To Produce The Plywood Which Is The Subject Of This Action.**

The Decision asserts that, "There is substantial evidence in the record that the Cambodian manufacturers did not have the capacity or the means to produce the hardwood plywood."   This conclusion must be viewed through the lens of CBP's and RR's prejudgment that:  "The intimate business relationship between [                                                ] and [

                                                ]."

Emphasis added.  Appx01065-66.   Stripped to its bare essence, this statement is an admission by CBP that it decided early on that LB

Wood and IGF (which regularly monitored the operations of LB Wood)

were conspiring with [                    ] and that even before the restrictions

when into effect and any investigation began, LB Wood, IGF and [

            ] had constructed a Potemkin village.

     More particularly, CBP faults LB Wood for failing to account for

virtually every sheet of veneer and for failing to overcome the

insurmountable task of proving affirmatively that the plywood LB Wood

sold to IGF did not come ready-made from China.  Substantial evidence,

however, supports LB Wood.

     As to the merchandise supplied by LB Wood to Interglobal and APPI,

CBP complained that LB Wood could not provide documentation to

substantiate what products it had actually produced in Cambodia.  By

its own admission, inherently mistrustful of any and every document it

received from LB Wood, CBP elected to ignore all of the following:

1. **Production Reports.** [      ] production reports demonstrating

     what LB Wood had produced in Cambodia and sold to IGF.

     Confidential Document No. 199, at Appx44358, in LB Wood's

     response to CBP's supplemental questionnaire, LB Wood was

asked to, and did, provide production reports for all plywood produced and sold during the "period of investigation" (POI).

2. **Chart of U.S. Sales:** LB Wood provided a Summary Spreadsheet of U.S. Sales in Document No. 113 Appx26618 to Appx26632 – [



] The chart also appears in Confidential Document No. 121 beginning at Appx266661.

3. **Chart of Production Reports:** LB Wood provided Exhibit SQ1-2 in Confidential Document No. 165 Appx33177 to Appx33385 which provided a list of [      ] production reports for all plywood produced during the POI and tracking the sales set forth in Exhibit 1.

4. **Chart of Imported Raw Material Purchases:** Exhibit 12.1 in Confidential Document No. 114 Appx26633 to Appx26638 titled [

] is a chart of the imported raw material purchases by LB Wood.

5. **Chart of Domestic Raw Material Purchases:** Exhibit 12.2 in Confidential Document No. 115 Appx26639-Appx26643 is a chart of [                                        ] with a list of

the warehouse in-ticket numbers and dates. The same chart also

appears in Confidential Document No. 122 Appx27433 to

Appx27436.

**6. Chart of Warehouse In-Tickets:** When asked to provide the

receiving reports for all purchased raw materials identified in

Exhibit 12, LB Wood responded as follows:  In its Supplemental

Questionnaire Response dated December 16, 2019 (see

Appx44357-Appx44358) LB Wood said that it does not maintain

receiving reports. LB Wood uses warehouse-in tickets to record

deliveries. Please see Exhibit SQ1-1 in which LB Wood organized [

    ] warehouse-in tickets in accordance with the summary

spreadsheet submitted in Exhibit 12.  The actual warehouse in-

tickets are in Confidential Document No. 165 which is titled [

                                ].  These are individual

hand-written Warehouse In Tickets listing the ticket number,

description of the veneer material, the quantity (sheets), and the

date of receipt [                                ].  *See* Appx33177 through

Appx33385.

7. **LB Wood's Receipt Records.** LB Wood's invoices for goods ordered from China and elsewhere are in the following documents in the Appendix:

(a) Confidential Document No. 114 Appx26633 to Appx26638 titled [                                                                    ] (this entire exhibit is duplicated on the record at Appx29806 to Appx29810)

(b) Confidential Document No. 115 Appx26639 to Appx26643 titled [                                            ]

(c) Confidential Document No. 116 Appx26644 to Appx26645 titled [                                            ]

(d) Confidential Document No. 117 Appx26646 to Appx26651 titled [

        ]

(e) Confidential Document No. 118 Appx26652 to Appx26655 titled [

        ]

(f) Confidential Document No. 119 Appx26656 to Appx26657 titled [

        ]

(g) Confidential Document No. 120 Appx26658 to Appx26659 titled

[

        ]

(h) Confidential Document No. 121 Appx26660 to Appx27335 U.S.

Sale Documents – Exhibit 1 Sales summary and Sale line items

[          ]

(i) Confidential Document No. 122 Appx27336 to Appx27756

Import Purchase Line Item [                    ]

(j) Confidential Document No. 123 Appx 27787 to Appx 88368

Sale line Item [                         ]

(k) Confidential Document No. 124 Appx 28369 to Appx 28879

Sale line item [                         ]

(l) Confidential Document No. 125 Appx28880 to Appx29461 Sale

line item [              ]

(m)   Confidential Document No. 128 Appx29700 to Appx29944 –

at Appx29806-29810 Exhibit 12.1 appears again; Appx29811

begins import purchase line item [

                    ] through Appx29944.

(n) Confidential Document No. 129 Appx29945 to Appx30392

   import purchase item [

                               ]

(o) Confidential Document No. 130 Appx30393  Import purchase

   line item [                                                   ]

Although IGF's former counsel did not provide all of the photographs

which were taken at LB Wood's manufacturing facilities, the following

photographs which are already in the administrative record and have

been ignored by CBP demonstrate that that the size and scope of LB

Wood's manufacturing facilities were more than sufficient to produce all

of the plywood sold to IGF and the other plaintiffs in Cambodia:

(i)    [

                               ]

(ii)   [

]

(iii)   [




]

(iv)   [



]

(v)   [





]

(vi)   [




]

(vii)  [



                          ]

(viii) [



                    ]

(ix)   [



                    ]

(x)    [



                                    ]

(xi)   [







                                   ]

(xii)  [

]

(xiii) [

]

(xiv) [

]

(xv) [

]

## C. The CBP's Inordinate Reliance on the Emails of [

## ] Ignores Their Patent Shortcomings.

The Decision purports to assert as a proven fact that, "The record
also contains evidence demonstrating the presence of finished Chinese

plywood at the facilities of the Cambodian manufacturers." This is not a demonstrated fact. Rather, it is an illustration of the inherent risk of reasoning fallaciously by relying on abductive reasoning.   In this instance,  [                    ] admitted that "you could make birch/poplar plywood in Cambodia, but the [                        ] factories [

                  ] just aren't sophisticated enough to produce those large quantities of "perfect" birch/poplar plywood. Plus, those are temperate woods that wouldn't do well in tropical climates. The only likely possibility is that the plywood was made in China." Appx07019.

One of the express restrictive assumptions in [                ] conclusion is patently wrong. In fact, there was "Chinese quality birch wood" in the LB Wood factory on the day [     ] made [     ] site visit. The photograph [     ] provided and numbered Kh15  shows large amounts of stacked veneers ready to be transformed into plywood. Appx07036.

[     ] next assumption was untested and, hence, unproven.  [

     ] acknowledges that there were very few people at the premises of LB Wood on the day when [     ] made [     ] unscheduled visit. Engaging in sheer speculation, CBP claims that the dearth of employees

at the LB Wood location *at an unspecified time* after [              ]

had left Happy Home demonstrates that LB Wood lacked the manpower

to produce plywood.  CBP's election to pole vault to this conclusion flies

in the face of the evidence of the photographs which LB Wood

subsequently supplied showing activity at LB Wood and manufacturing

at its premises.

While [               ] may be honest in reporting that, at least as of

June 2018, [     ] had never seen a plywood factory in Cambodia which

could produce "Chinese quality" plywood, it is equally clear that [     ]

never saw the LB Wood factory in operation under the careful

supervision of Chinese managers.

## D. CBP's Bias Extends to Plaintiffs, Not Just the Manufacturers.

The Decision asserts that, "Other than the claims made by the

Importers, there is insufficient evidence in the form of production

records to indicate that the manufacturers had the capacity to produce

the plywood in the quantities and the quality that was exported to the

United States.  As discussed below, based on CBP's visit to LB Wood's

and Happy Home's facilities on June 6, 2018, the state of LB Wood's

and Happy Home's equipment, and the number of employees, coupled

with the amounts of raw materials sourced from China, make it highly

improbable to conclude that all the hardwood plywood shipped by LB

Wood and Happy Home to the United States was made in Cambodia."

The record in this case makes it clear that far from conducting an

impartial investigation, CBP demonstrated sweeping mistrust, if not

outright animus towards LB Wood, the sole supplier of plywood to IGF

and to the Plaintiffs themselves.

**E. IGF is Entitled to Confront the Evidence and the Witnesses**
   **Against It.**

For the reasons previously articulated in the prior brief, this case is

rife with procedural defects which have resulted in IGF's being deprived

of its right to due process.  Most importantly, CBP initially failed to

disclose any information whatsoever about the identity and email

statement of [                      ].  In proceedings reminiscent of the

medieval Star Chamber, CBP was making decisions which threatened

IGF's entire existence on the basis of an undisclosed email which was

rife with speculation and supposition, but woefully deficient in actual

demonstrated facts and knowledge.

Moreover, when the identity of [            ] and the substance of

[    ] claims became known, Plaintiff's former counsel did not attempt to

supplement the record by securing [      ] deposition under oath or

seeking to supplement that record so as to include testimony of a

knowledgeable expert to rebut the allegedly inherent expert deference

which CBP demanded be accorded to [            ].

In addition, IGF possessed ample additional photographic evidence of

the operations at LB Wood which would have refuted CBP's claim.

Those photographs were taken by one of IGF's employees who made

multiple trips to LB Wood over a period of approximately eighteen

months.

For reasons unexplained to IGF and its new counsel, the lawyer who

initially represented IGF (together with all of the other Plaintiffs and

the Plaintiff Intervenors) neglected to take action to require that such

additional documentation and evidence be included in the record.

Because of IGF's concern that its own unique rights and interest were

being neglected in order to present a united front, IGF elected to retain

new counsel in this matter.  IGF should have the opportunity to

supplement this record.

## III.   CONCLUSION

As noted in the initial motion, no reasonable connection exists between the record facts and the conclusions reached.  The Court should order that CBP withdraw its determinations in this case, and lift its enforcement, and if CBP intends to reopen its investigation, adopt procedures which ensure that the voices of the Plaintiffs are heard and that their evidence is given due weight.

/s/Thomas H. Cadden
Thomas H. Cadden
**Cadden & Fuller LLP**
2050 Main Street, Suite 260
Irvine, California 92614
(949) 788-0827 x 716
(949) 450-0650 fax
Email: ilazo@caddenfuller.com
*On behalf of Plaintiff InterGlobal Forest, LLC*

Consol. Ct. No. 20-03914                                    PUBLIC VERSION

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies

that this brief complies with the word limitation requirement, and the

Second Amended Scheduling Order. The word count for InterGlobal

Forest, LLC's Response Brief, as computed by Cadden & Fuller LLP's

word processing system (Microsoft Word 2019), is 3,750 words,

including text, footnotes and headings.

<u>*/s/ Thomas H. Cadden*</u>
(Signature of Attorney)

<u>Thomas H. Cadden</u>
(Name of Attorney)

<u>InterGlobal Forest, LLC</u>
(Representative of)

<u>January 24, 2021</u>
(Date)