UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., U.S. GLOBAL FOREST, INC. and INTERGLOBAL FOREST, LLC,<br>　　　　Plaintiff and Consolidate Plaintiffs,<br><br>and<br><br>LB WOOD CAMBODIA CO., LTD. and CAMBODIAN HAPPY HOME WOOD PRODUCTS CO., LTD.,<br>　　　　Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br>　　　　Defendant,<br><br>and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br>　　　　Defendant-Intervenor. | **PUBLIC VERSION**<br><br>Consol. Court 20-03914 |

**PLAINTIFF-INTERVENORS LB WOOD CAMBODIA CO., LTD. AND CAMBODIAN HAPPY HOME WOOD PRODUCTS CO., LTD.**
**REPLY BRIEF**

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave, N.W.
Washington, D.C. 20005
*Counsel to Plaintiff-Intervenors LB Wood Cambodia Co., Ltd. and Cambodian Happy Home Wood Products Co., Ltd.*

Dated: Feburary 1, 2022

Public Version

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............... 1

II.  ARGUMENT ....................................................................... 3

   A.  Defendant's and the Coalition's Arguments that
       Substantial Evidence Supports CBP's Evasion
       Determination are Without Merit ........................................ 3

       (i) LB's and HH's Respective Production
       Capacity Calculations..................................................... 3

       (ii) LB's Raw Materials Receiving Reports and
       List of Products Sold....................................................... 6

       (iii) LB's Relationship with [          ] ...................... 8

       (iv) CBP's Observations from the June 2018
       Visits to LB and HH ...................................................... 10

       (v) HH's purchases of flooring core/"other
       plywood" ........................................................................ 12

       (vi) HH's Export Quantity Versus Cambodian
       Production Found in the FAOStat Yearbook .............. 13

       (vii) LB and HH's Raw Materials Purchases Do
       Not Tie To Production Orders/Records....................... 16

       (viii) Other Perceived Discrepancies ........................... 17

   B.  The Court Should Consider Plaintiff-Intervenors'
       Remaining Arguments ....................................................... 18

III. CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................4

*Global Aluminum Distrib. LLC v. United States*, 2021 Ct. Intl. Trade LEXIS 136, Slip Op. 2021-139 (Oct. 7, 2021)...............19

*Myland Indus., Ltd. v. United States*, 31 Ct. Int'l Trade 1696 (2007) ...................................................................................17

*Shenyang Yuanda Aluminum Industry Engineering Co., v. United States*, 918 F.3d 1355 (Fed. Cir. 2019) .......................................21

*SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351 (Fed. Cir. 2020) ...................................................................................13

## STATUTES

19 U.S.C. § 1517(c)(2)........................................................ 16-17

19 U.S.C. § 1517(g)...............................................................19

19 U.S.C. §1677b(f)(1)(A) ....................................................17

Public Version

# GLOSSARY TERMS

Administrative Protective Order.......................................................... APO

American Pacific Plywood, Inc. (Plaintiff) ...................................... APPI

Cambodian Happy Home Wood Products Co., Ltd. (Plaintiff-Intervenor).......................................................................................... HH

Enforce and Protect Act ................................................................. EAPA

Generally Accepted Accounting Principles  ...................................GAAP

InterGlobal Forest, LLC. (Consolidated Plaintiff) ...........................IGF

Judicial Protective Order.....................................................................JPO

LB Wood Cambodia Co., Ltd. (Plaintiff-Intervenor) .......................... LB

Office of Trade, Regulations & Rulings ........................................... ORR

Request for Information ......................................................................RFI

Trade Remedy Law Enforcement Directorate........................... TRLED

U.S. Customs and Border Protection ..............................................CBP

U.S. Global Forest, Inc (Consolidated Plaintiff)............................. USG

## I. Introduction and Summary of Arguments

Plaintiff-Intervenors LB Wood Cambodia Co., Ltd. ("LB") and Cambodian Happy Home Wood Products Co., Ltd. ("HH") hereby reply to the response briefs of Defendant United States ("Defendant" or "United States") and Defendant-Intervenor, the Coalition for Fair Trade in Hardwood Plywood ("Defendant-Intervenor" or the "Coalition"). *See* Defendant's Response Brief (December 10, 2021) ("U.S. Rsp. Br."), ECF No. 55, and Coalition for Fair Trade in Hardwood Plywood's Response Brief (December 30, 2021) ("Coalition Rsp. Br."), ECF No. 57.

In their moving brief, Plaintiff-Intervenors argued that the Trade Remedy Law Enforcement Division's ("TRLED") imposition of interim measures, based on unreliable trade data and confidential records from unrelated proceedings, violated Plaintiff-Intervenors' procedural due process rights.  Further, throughout the investigation, Plaintiff-Intervenors' legal counsel had no access to confidential information under an Administrative Protective Order ("APO"), so Plaintiff-Intervenors were not provided an opportunity to confront the evidence used against them.  That, coupled with TRLED's failure to ask further questions or seek clarification of any purported discrepancies in their

Public Version

questionnaire responses, prevented Plaintiff-Intervenors from developing a complete administrative record and violated their rights to effective legal counsel.  Lastly, even based on the administrative record as it is, TRLED's final determination and CBP's Office of Regulations & Rulings' ("ORR") subsequent administrative review decision are not supported by record evidence and are arbitrary and capricious.

In its response brief, Defendant responded to Plaintiffs' and Plaintiff-Intervenors' procedural due process arguments together.  *See* U.S. Rsp. Br. at 15-30 & footnote 7.  Plaintiff-Intervenors agree with and adopt Plaintiffs American Pacific Plywood, Inc. ("APPI") and U.S. Global Forest, Inc.'s ("USG") reply discussion related to procedural due process.  *See* Plaintiffs APPI and USG's Reply Brief at 6-44 (Jan. 24, 2022) ("USG&APPI Reply Br."), ECF No. 64.

In this brief, Plaintiff-Intervenors provide additional arguments to demonstrate that CBP's decisions were unsupported by record evidence. Further, the Court should consider all arguments made by Plaintiff-Intervenors in their moving brief.

## II.   ARGUMENT

### A.   Defendant's and the Coalition's Arguments that Substantial Evidence Supports CBP's Evasion Determination are Without Merit.

In its response brief, Defendant discusses ORR's administrative review decisions regarding "evidence" that supposedly demonstrated that Plaintiff-Intervenors transshipped and sold Chinese hardwood plywood to Plaintiffs.  Plaintiff-Intervenors respond to each below.

### (i) LB's and HH's Respective Production Capacity Calculations

Defendant argues that CBP reasonably determined that LB's and HH's respective production capacity calculations were unreliable because they were based on the [                                    ] rather than on documents such as [

].  *See* U.S. Rsp. Br. at 32, 36-37.

It was unreasonable for CBP to accord no weight to Plaintiff-Intervenors' calculations simply because Plaintiff-Intervenors put the evidence on the record themselves.  *See* APPI&USG Reply Br. at 26-28. Plaintiff-Intervenors' capacity calculations were based on each of the critical steps of production of hardwood plywood and were accompanied

by photographs of their production facilities and machinery. *See* LB, RFI Questionnaire Response (Nov. 8, 2019) at Ex. 14, ("LB Qre Rsp."), Appx27757-27773; Happy Home, RFI Questionnaire Response (Nov. 9, 2019) at Ex. 13 ("HH Qre Rsp."), Appx22977-22995. With no evidence on the record that contradicts Plaintiff-Intervenors' proffered capacity calculations, CBP cannot summarily reject those documents and speculate that they are unreliable. *See* TRLED, Notice of Determination as to Evasion (June 29, 2020) ("TRLED Determination"), Appx01040, Appx01045; ORR, Ltr. re: EAPA Case Number 7321: Administrative Review Decision (Nov. 5, 2020) ("ORR Decision"), Appx01065-01068. "It is well established that speculation does not constitute 'substantial evidence.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009); *see also*, APPI&USG Reply Br. at 28. Indeed, under this flawed logic, CBP would discount all questionnaire responses for the very reason that they came from the respondents.

Additionally, Defendant claims that Plaintiff-Intervenors' production capacity calculation was not supported by other documents such as [                                                                ]. *See*

4

Public Version

U.S. Rsp. Br. at 32, 36-37.  However, Plaintiff-Intervenors have provided production documents for the entire period that corroborate and support their production capacity.  Additionally, there are other similar types of evidence that CBP could have requested during the investigation that would have substantiated Plaintiff-Intervenors' calculations, but CBP did not.  For instance, Plaintiff-Intervenors could have recorded short 5- to 7-minute videos with the machines running and production output and then derive the production capacity per shift/day/month, which would have supported Plaintiff-Intervenors' calculations.  Instead, CBP never informed Plaintiff-Intervenors or Plaintiffs that it had concerns over the reliability of the capacity calculations when it received those documents in Plaintiff-Intervenors' initial RFI responses filed early in the investigation, well before CBP's 200-day voluntary submission of new facts deadline.  *See* LB Qre Rsp. at 14 (Appx30900) & Exhibit 14 (Appx27757-27773); HH Qre Rsp. at 15 (Appx20441) & Exhibit 13 (Appx22976-22995).

CBP cannot fault Plaintiff-Intervenors for not providing additional documentation when it was CBP's own decision to not ask further

questions or requests additional information, which prevented Plaintiff-Intervenors from providing such additional documentation.

### (ii) LB's Raw Materials Receiving Reports and List of Products Sold

Defendant argues that because LB did not maintain receiving reports for all purchased raw materials and a full list of products it produced or sold, CBP was unable to confirm that LB used [

] raw materials to produce plywood in Cambodia.  U.S. Rsp. Br. at 33.  Defendant, however, fails to mention that LB submitted documents equivalent to raw materials receiving reports and list of products it produced or sold on the record.  Defendant also did not explain how such information proves or disproves that LB used [                    ] raw materials to produce plywood in Cambodia; LB stated from the beginning that it used [                  ] raw materials to produce plywood in Cambodia.  *See* LB Qre Rsp. at Exhibit 12.1, Summary Sheet, Appx29807-29810.

The first instance where CBP requested receiving reports for raw materials was in a Supplemental RFI, and LB responded that it "does not maintain receiving reports…[but] uses warehouse-in tickets to

record deliveries." *See* LB, Supplemental Questionnaire Response at 1-2 (Appx44357-44358) & Exhibit SQ1-1 (Appx33178-33385) (Dec. 16, 2019).  Information that would have been recorded in receiving reports (i.e., delivery date, product name, quantity, company staff who signed for the delivery) can all be found on LB's warehouse-in tickets.  *See id.*, Exhibit SQ1-1.  Neither CBP nor Defendant explained what information they intended to find on receiving reports that is not on LB's warehouse-in tickets.  CBP's selective document requirement was arbitrary, and CBP never showed it was required documentation under Cambodian Generally Accepted Accounting Principles ("GAAP").

Moreover, contrary to Defendant's claim, LB provided a list of the hardwood plywood it produced and sold.  *See* LB Qre Rsp. at 10 (Appx30896) & Exhibit 8 (Appx29517-29518).  In a supplemental questionnaire, CBP inquired why LB's list of products only differentiates plywood products by size but did not include [

] also.  *See* LB Supp. Rsp. at 5, Appx44361.  LB responded that it does not maintain a full list of products it produced or sold in the normal course of business but "[          ] in each product are identified in sales documents."  *Id.*  Indeed, CBP has the full list of LB's plywood

products because LB provided all of its U.S. sales documents.  *See* LB

Qre Rsp., Exhibit 1, Appx26661-27335 & Appx27788-29302.  LB did not

have an expansive list of products, which is part of the reason that LB

did not keep a full list of products in brochures or catalogs, and CBP can

easily ascertain the list of different plywood products (by size and by

[        ]) from LB's excel chart summarizing all of its U.S. sales,

transaction by transaction.  *See id*. at Exhibit 1, Summary Sheet.

It is not clear whether Defendant misunderstood LB's responses

and somehow did not realize that LB supplied the information at issue

for the record, or that Defendant is insisting that LB *must* record such

information on pieces of paper named "Receiving Reports" or "List of

Products," which, in and of itself, would be unreasonable and arbitrary.

### (iii) LB's Relationship with [        ]

Defendant argues that LB and its customers' questionnaire

responses contained discrepancies and inconsistencies – specifically –

LB's claim that [

                                    ] and emails addressed to

[        ] personnel pertaining to LB's sales to Plaintiff Interglobal

Forest LLC ("IGF") and APPI.  *See* U.S. Rsp. Br. at 33-34 (citing ORR

Determination at Appx01070-01071 and TRLED Determination at Appx01042-01043).  This is one of the issues addressed in LB's Review Request filed with ORR but not considered or discussed *at all* in ORR's decision.  *See* LB Request for Review at 22-23 (Aug. 10, 2020) ("LB Rev. Req."), Appx44527-44528.

In short, at times, IGF and APPI sent succinct emails to [

], at which point the production and sale of the plywood products had been completed.  *Id.*  The email does not constitute evidence that [          ] was involved in LB's production or sales of plywood.  As discussed in Plaintiff-Intervenors' brief, LB was forthcoming and provided all information CBP requested regarding its relationship with its Chinese affiliated company [          ].  *See* Plaintiff-Intervenors LB and HH Rule 56.2 Brief at 28-29 (Aug. 25. 2021) ("Pl.-Inv. R56.2 Br."), ECF No. 51.

Regarding IGF's statement in its reply brief that "LB Wood has never attempted to hide the fact that it received most of its veneers from [          ]", LB clarifies that during the POI, LB never

purchased veneers or other raw materials (or plywood) from

[            ].  *See* Plaintiff Interglobal Forest, LLC's Reply Brief at 6

(Jan. 24, 2022), ECF No. 66; LB Qre Rsp. at Exhibit 12.1, Summary

Sheet, Appx29807-29810.

### (iv) CBP's Observations from the June 2018 Visits to LB and HH

Defendant did not respond to the comparison of photographs in

Plaintiff's moving brief showing that photographs in CBP's September

12, 2019 Memo of both LB's UV line and HH's UV line contradict the

CBP Official's statements.  *See* Plaintiffs APPI, USG, IGF's Rule 56.2

Brief (Aug. 5, 2021) at 94-97 ("Pl. R.56.2 Br"), ECF No. 48; *but see*, U.S.

Rsp. Br. at 34-35 (merely repeating CBP's decisions based on the

Official's email in TRLED's September 12, 2019 Memo) & at 44 (alleging

photographs in TRLED's September 12, 2019 Memo do not "undermine

the agent's conclusions").

LB discussed at length the events that transpired at CBP's

surprise *ex parte* visit in June 2018, including that [

                    ].  *See* LB Rev. Req. at 18-19, Appx44523-44524; Pl.

R56.2 Br. at 95. Notably, CBP in its ORR decision never addressed LB's recount of events; indeed, it is yet another issue addressed in LB's Review Request filed with ORR but not considered or discussed at all.

Additionally, Defendant held onto the same conclusory statements made by the CBP Official, without support of any evidence, that LB and HH did not seem capable of producing plywood "clear of laps and voids." *See* U.S. Rsp. Br. at 33-34 & 38. Defendant does not reconcile the Official's observations that LB and HH were incapable of producing Chinese-quality, birch plywood (referred to as a "typical" Chinese plywood product) with TRLED's own finding that Plaintiff-Intervenors each purchased [      ] and [      ] of their wood raw materials from China, by value. *See id.* at 31 & 35; *see also*, TRLED, Memo to File re: June 6, 2018 Site Visit (Sept. 12, 2019), Appx07019 (CBP Official who conducted the June 2018 Visits to LB and HH unequivocally stated in her email to TRLED that "Veneers are significantly different from plywood, so, when made into plywood, a substantial transformation takes place, and where the plywood is made is the c/o.").

### (v) HH's Purchases of Flooring Core/"Other Plywood."

Defendant argues that CBP's conclusion that HH commingled Chinese-origin plywood and Cambodian-origin plywood was supported by record evidence because Cambodian customs declaration forms included in [   ] of HH's raw material purchase packages showed that HH imported "Other Plywood" into Cambodia from China.  *See* U.S. Rsp. Br. at 37.  Flooring cores are classified as plywood in terms of Customs classification, however, HH has fully explained why these purchases of flooring cores *cannot* possibly be "commingled with Cambodian-origin plywood."  *See* Pl.-Inv. R56.2 Br. at 30-32.

In short, the flooring core HH purchased from China was predestined by its size to *not* be incorporated in HH's plywood production for plywood sales to the U.S. or comingled with any Cambodian-origin plywood sold to the U.S.  *Id.* at 31 (citing HH Qre. Rsp. at Exhibit 11, Raw Materials Purchase Packages at Appx25581-25587, Appx21772-21775, Appx22199-22202, Appx25728-25731, Appx25739-25742, Appx26295-26298, Appx26531-26534).

### (vi) HH's Export Quantity Versus Cambodian Production Found in the FAOStat Yearbook

Defendant asserts that the published trade data of Cambodian Plywood production from the 2017 FAOStat Yearbook supports CBP's evasion determination against HH because HH "claims to have exported [          ]" in 2017 while the Cambodia produced 27,000 m3 in 2017.  U.S. Rsp. Br. at 37-38.  To be sure, HH never "claimed" to have exported [          ] plywood to the U.S. in 2017; in fact, this number is not supported by HH's own company records which are not on this administrative record because TRLED never asked HH to submit pre-POI U.S. sales data.  *See* Pl.-Inv. R56.2 Br. at 36.

Defendant's brief ignores arguments made by Plaintiffs in their moving brief and in their brief before the agency, including that the trade courts do not condone an agency's refusal to consider conflicting information in its determinations.  *See* Pl. R56.2 Br. at 114-115, citing *SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351 (Fed. Cir. 2020).

Data in the 2017 FAOStat Yearbook is unreliable because it reports Cambodia's total plywood exports to the entire world in 2017 as 4,000m$^3$, whereas the ITC's trade statistics report 20,452m$^3$ for plywood

13

imports from Cambodia just to the United States in 2017. *Compare* CBP Memorandum, Adding Information to the Administrative Record of EAPA Cons. Case 7321, 2017 Forestry Yearbook (Jan. 9, 2020) ("2017 FAOStat YB"), Appx44933, *with* Coalition, Request for an Investigation of U.S. Global Forest (May 10, 2019) at Exhibit 7, USITC Data, Appx01726. Second, the FAOStat online database indicates that plywood production and other trade data for Cambodia are *unofficial* and NOT from the Cambodia Government but rather represent FAO's own estimates. *See* Pl. R56.2 Br. at 113. Third, since parties to the litigation have gained access to confidential version of TRLED's final determination under the Judicial Protective Order ("JPO"), Plaintiff-Intervenors discovered that the FAOStat YB data is more unreliable than they realized. Cambodian export data from the 2017 FAOStat YB has irreconcilable differences with CBP's own import data, i.e., the 2017 FAOStat YB shows Cambodia exported a total of 4,000 m3 of plywood to the <u>entire world</u> in 2017 while the CBP data TRLED placed on the record purportedly shows that HH alone exported approximately

[      ] m3 from Cambodia to the U.S. in 2017. *See* Pl.-Inv. Br. at 34-37.

The Coalition avers that Plaintiffs and Plaintiff-Intervenors do not persuasively explain why access to the complete confidential record would have been crucial to undermining CBP's final determination. *See* Coalition Rsp. Br. at 16.[1]  This is one example demonstrating precisely why it is crucial for interested parties' counsel to gain access to the confidential records.  Had counsel gained access to the unredacted version of TRLED's final determination, it could have flagged it with ORR that TRLED knew that the Cambodian FAOStat YB data was deeply flawed based on CBP's own entry data.  That, coupled with HH's reasoning for why the purchased flooring core/"other plywood" could not have been incorporated in any plywood HH sold to the U.S. during the POI, should have led to ORR's reversal of TRLED's finding that HH likely commingled Chinese-origin plywood with Cambodian-origin

---

[1] HH notes that the Coalition erred in its statement in a footnote that it was "disingenuous" for Plaintiffs and Plaintiff-Intervenors to disclaim any knowledge of what was included in TRLED's September 13 & 16 Memos based on the Public Version.  *See* Coalition Rsp. Br. at 17, footnote 3.

As fully discussed in Plaintiff-Intervenors' brief, Plaintiffs and Plaintiff-Intervenors had no way of knowing what was included in TRLED's September 13 & 16 Memos based on the Public Versions, and they only discovered that CBP significantly misrepresented information included those two documents after gaining access to the confidential documents in Court. *See* Pl.-Inv. R56.2 Br. at 7-8 & 13-16.

plywood, if ORR properly applied the substantial evidence standard in its administrative review.

### (vii) LB and HH's Raw Materials Purchases Do Not Tie To Production Orders/Records.

Defendant claims CBP did not err in requiring that Plaintiff-Intervenors tie their production records to raw material purchases, and it was not for Plaintiffs to determine what CBP requires for its investigation.  U.S. Rsp. Br. at 39-40.  Defendant asserts "CBP reasonably explained, without the requested information, CBP could not ascertain whether the materials were indeed raw materials or whether the production allegedly occurring in Cambodia involves a substantial transformation of the raw materials, …." *Id.* at 40 (citing ORR Decision at 19, Appx01070).  However, it was unreasonable for CBP to require Plaintiff-Intervenors to produce documents that do not exist and which the companies were not required to keep by any appliable regulations, laws, accounting rules, or industry standard. *See* Pl. R56.2 Br. at 100-102, 108-109.

Although CBP has authority to collect "additional information as is necessary to make the determination" pursuant to 19 U.S.C. §

16

1517(c)(2) in an EAPA Investigation, CBP's document-requests must be reasonable and the requested information "necessary". It was unreasonable and unnecessary for CBP to require Plaintiff-Intervenors to trace each one of their *millions* of sheets of veneers to their incorporation in a particular plywood panel, when CBP could have determined whether Plaintiff-Intervenors purchased enough raw materials by knowing the raw materials consumption and consumption ratio yielding finished plywood. *See* Pl. R56.2 Br. at 101, citing *Myland Indus., Ltd. v. United States*, 31 Ct. Int'l Trade 1696, 1697 (2007) and 19 U.S.C. §1677b(f)(1)(A). The records were reasonable for the industry; this was not a food product regulated by the USFDA and required to be traced back with particularity.

## (viii) Other Perceived Discrepancies

Defendant claims that Plaintiffs and Plaintiff-Intervenors' selective discussion of issues does not undermine the overall EAPA determination, but as discussed in APPI and USG's reply brief, "Plaintiffs responded fully to, and rebutted, each of CBP's allegations – many of which were themselves isolated tidbits that CBP presented only in TRLED's final determination and ORR's administrative review

decision *after* CBP concluded its fact-finding phase of the investigation."
*See* APPI&USG Reply Br. at 55-58.  Plaintiff-Intervenors further note

that all issues that Plaintiff-Intervenors and Plaintiffs can reasonably

understand from the Public Version of TRLED's Determination to which

they had access, were addressed in the three ORR Review Requests

filed.  The perceived discrepancies that only became apparent to

Plaintiff-Intervenors after they had access to confidential documents

under the JPO were not fully briefed because, first, certain rebuttal

arguments involve additional facts not on the record, second, the Court

has not decided to conduct a trial *de novo*, and third, Plaintiff-

Intervenors' cannot practically do so within the current word limit.  *See*

Pl.-Inv. R56.2 Br. at 32 (footnote 4) & 36.

## B.   The Court Should Consider Plaintiff-Intervenors' Remaining Arguments.

Defendant alleges that the Court should dismiss certain of

Plaintiff-Intervenors' arguments – (1) that Plaintiff-Intervenors have

somewhat different legitimate interests that were violated by CBP's

actions in conducting the EAPA investigation, (2) they have no

administrative remedies for periodic review of their exports to the

United States, and (3) CBP erred in rejecting their administrative review requests. Defendant argues that these issues impermissibly enlarge the issues raised by Plaintiffs. *See* U.S. Rsp. Br. at 45-46. Defendant's argument has no merit.

Plaintiff-Intervenors' somewhat different legitimate interests is not a new claim. In fact, that is precisely why LB and HH are Plaintiff-Intervenors and not consolidated Plaintiffs in this proceeding. The Court granted LB and HH's motion to intervene as Plaintiff-Intervenors based on Rule 24(a)(2) of this Court. *See* Order (Feb. 18, 2021), ECF No. 23. We note that since then, this Court granted a similar motion filed by a foreign supplier to a U.S. importer subject to another EAPA investigation under USCIT R. 24(a)(2). *See Global Aluminum Distrib. LLC v. United States*, 2021 Ct. Intl. Trade LEXIS 136, Slip Op. 2021-139 (Oct. 7, 2021). Rule 24(a)(2) sets forth two avenues for parties to intervene: the first one is for movants "determined to have entered merchandise through evasion or is the interested party that filed the allegation" in an action brought under the EAPA Statute, specifically 19 U.S.C. § 1517(g); the second avenue is for movants "who 'claims an interest relating to the property or transaction that is the subject of the

action.'" *Id.* at 3-4.  To intervene based on the second avenue, as Plaintiff-Intervenors have done, movant needs to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  USCIT R.24(a)(2).  As such, permitted intervenors must have somewhat different legitimate interests that cannot be adequately represented by plaintiff.  This cannot be treated as an impermissible enlargement of issues.

Defendant also does not explain persuasively why Plaintiff-Intervenors' arguments regarding the lack of review opportunity of their rates or that CBP erred in rejecting Plaintiff-Intervenors' administrative review request impermissibly enlarges the issues raised by Plaintiffs.  *See* U.S. Rsp. Br. at 45-46.

In fact, as Defendant notes, Plaintiffs also complained that CBP inappropriately rejected Plaintiff-Intervenors' brief.  *See id.* at 45, footnote 10. Plaintiffs have constitutional standing to raise the argument against ORR's rejection of Plaintiff-Intervenors' briefs.  For constitutional standing to exist, "a plaintiff must have already suffered or be imminently threatened with a concrete, particularized injury, that

is fairly traceable to the challenged conduct, and that is likely to be redressed by a favorable court ruling." *Shenyang Yuanda Aluminum Industry Engineering Co., v. United States*, 918 F.3d 1355, 1364 (Fed. Cir. 2019) (internal quotation omitted).  It is undisputed that Plaintiffs, the U.S. importers subject to EAPA Inv. 7321, will be concretely harmed by their imports of plywood from Plaintiff-Intervenors in Cambodia being subjected to the AD & CVD Orders' duties because of the challenged ORR Determination herein. *See Id.* at 1364-65 (holding that importers have Article III Standing to challenge Commerce's scope ruling even when "the challenged agency decision pertains to [a different importer's] merchandise only).

Additionally, in the instant case, Plaintiffs' injury is "fairly traceable to the challenged conduct" because ORR's rejection of Plaintiff-Intervenors' ORR briefs contributed to ORR's decision upholding TRLED's final determination.  For instance, one of the factual discrepancies cited by Defendant is IGF's and APPI's emails addressed to [          ] personnel, discussed in sub-section (iii) above. *See also, supra*, sub-section II.A.(iv).  In the ORR Decision, it found the

same facts to be a "discrepancy" without considering LB's explanation provided in its ORR review request.

Thus, Plaintiffs have standing to challenge ORR's mishandling of Plaintiff-Intervenors' review request, and therefore, Plaintiff-Intervenors' contention that CBP erred in rejecting their review request (*See* Pl.-Inv. R56.2 Br. at 39-41) did not enlarge the issues raised by plaintiffs.

## III.  Conclusion

Defendant and the Coalition failed to respond to arguments and analysis provided in Plaintiffs' and Plaintiff-Intervenors' moving briefs that demonstrate TRLED's and ORR's determinations were unsupported by substantial record evidence.  In places, Defendant categorically ignores Plaintiffs' and Plaintiff-Intervenors' arguments or explanations, instead resorting to TRLED's determination and ORR's determination *per se*.  Moreover, as demonstrated above, when TRLED and ORR did not understand Plaintiff-Intervenors' books and records, TRLED and ORR drew unreasonable inferences and speculated that Plaintiff-Intervenors were involved in transshipment of goods, without seeking clarifications.

In light of the foregoing and the legal arguments and positions set forth in the briefs filed by Plaintiffs and Plaintiff-Intervenors in this action, Plaintiff-Intervenors respectfully request the Court to find that CBP conducted EAPA Inv. 7321 based on defective procedures. CBP's determinations are unsupported by record evidence in any event.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
Vivien Jinghui Wang**
DEKIEFFER & HORGAN, PLLC
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff-Intervenors LB Wood Cambodia Co., Ltd. and Cambodian Happy Home Wood Products Co., Ltd.*

Date: February 1, 2022

*Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

**Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (14 point Century font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **3,993** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
DeKieffer & Horgan, PLLC
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff-Intervenors LB Wood Cambodia Co., Ltd. and Cambodian Happy Home Wood Products Co., Ltd.*

1