**PUBLIC VERSION**

**Slip Op. 23-93**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Consol. Ct. No. 20-03914**

AMERICAN PACIFIC PLYWOOD, INC.,
INTERGLOBAL FOREST LLC, and
U.S. GLOBAL FOREST, INC.,

*Plaintiffs*,

and

LB WOOD CAMBODIA CO., LTD., and
CAMBODIAN HAPPY HOME WOOD
PRODUCTS CO, LTD.,

*Plaintiff-Intervenors*,

v.

UNITED STATES,

*Defendant*,

and

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

*Defendant-Intervenor*.

Before: M. Miller Baker, Judge

**OPINION**

[The court sustains Customs's finding of evasion and
enters judgment for Defendant and Defendant-Intervenor.]

**PUBLIC VERSION**

Dated: June 22, 2023

*Gregory S. Menegaz*, deKieffer & Horgan, PLLC, of Washington, DC, argued for Plaintiffs American Pacific and U.S. Global and for Plaintiff-Intervenors. With him on the briefs, except for Plaintiff InterGlobal Forest's reply brief, were *J. Kevin Horgan* and *Alexandra H. Salzman*. *Vivien J. Wang*, deKieffer & Horgan, PLLC, of Washington, DC, presented rebuttal argument for Plaintiffs American Pacific and U.S. Global and for Plaintiff-Intervenors.

*Ignacio J. Lazo*, Cadden & Fuller LLP of Irvine, CA, argued for Plaintiff InterGlobal Forest, LLC. On the reply brief was *Thomas H. Cadden*.

*Hardeep K. Josan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, NY, argued for Defendant. With her on the brief were *Brian M. Boynton*, Acting Assistant Attorney General; *Patricia M. McCarthy*, Director; *Justin R. Miller*, Attorney-in-Charge International Trade Field Office; and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Jennifer Petelle*, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection.

*Maureen E. Thorson*, Wiley Rein LLP of Washington, DC, argued for Defendant-Intervenor. With her on the brief were *Timothy C. Brightbill* and *Stephanie M. Bell*.

**PUBLIC VERSION**

*Baker*, Judge: This sprawling matter involves consolidated cases brought by three U.S. importers, supported by two plaintiff-intervenor Cambodian producers, challenging U.S. Customs and Border Protection's determination that Plaintiffs evaded antidumping and countervailing duties on hardwood plywood from China by misrepresenting it as a product of Cambodia. For the reasons explained below, the court sustains the agency's decision.

I

The Enforce and Protect Act (EAPA) amended the Tariff Act of 1930 by inserting a new section, "Procedures for Investigating Claims of Evasion of Antidumping and Countervailing Duty Orders." *See* Pub. L. No. 114–125, § 421, 130 Stat. 122, 161 (2016), *codified at* 19 U.S.C. § 1517.

EAPA directs Customs to initiate an investigation within 15 days after receiving an allegation that "reasonably suggests" that covered merchandise subject to an antidumping or countervailing duty order has been imported into this country through "evasion." *See* 19 U.S.C. § 1517(a)(3), (b)(1). The statute defines "evasion" as the entry of goods through any false statement or omission that results in the reduction or nonpayment of antidumping or countervailing duties. *See id.* § 1517(a)(5)(A).

**PUBLIC VERSION**

After starting an investigation, Customs has 90 days to decide "if there is a reasonable suspicion" that the goods were imported through evasion. *Id.* § 1517(e). If the agency so finds, it must impose "interim measures," which the statute defines as suspending the liquidation of unliquidated entries that were imported on or after the date the agency started the investigation, extending the period for liquidation as necessary, and taking "such additional measures" as necessary to protect the government's revenue interests, including requiring the posting of additional security. *See id.* § 1517(e)(1)–(3).[1]

"Reasonable suspicion" applies only to the imposition of "interim measures." Customs must then make a final "determination of evasion" within 300 calendar days from the investigation's start and decide, "based on substantial evidence," whether the entries in question were made through evasion. 19 U.S.C. § 1517(c)(1)(A). If the agency finds evasion, it must (1) suspend liquidation of relevant entries made

---

[1] " 'Liquidation' refers to the process by which an importer's liability is fixed based on duties owed upon the date of entry. Upon entry of goods, the importer must deposit estimated duties and fees with Customs. Subsequently, Customs 'liquidates' the entry to make a 'final computation or ascertainment of duties owed' on that entry of merchandise." *ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1347 (CIT 2021) (quoting 19 C.F.R. § 159.1), *aff'd*, 47 F.4th 1370 (Fed. Cir. 2022).

**PUBLIC VERSION**

between the investigation's start and the final determination, *id.* § 1517(d)(1)(A)(i); (2) extend the liquidation period for entries made *before* the investigation started, *id.* § 1517(d)(1)(B)(i); (3) notify the Department of Commerce of the determination and ask it to identify either the applicable antidumping/countervailing duty rates or cash deposit rates for the relevant entries, *id.* § 1517(d)(1)(C)(i)–(ii); and (4) require the posting of cash deposits and assess duties on the relevant entries per Commerce's direction, *id.* § 1517(d)(1)(D).[2]

After the final determination, the statute authorizes an administrative appeal in which the Customs Commissioner conducts a *de novo* review. The appellant may be either "a person determined to have entered such covered merchandise through evasion" or "an interested party that filed an allegation" that sparked the investigation. *Id.* § 1517(f)(1). Those same parties may then "seek judicial review of the determination under subsection (c) [i.e., the final determination] and the review under subsection (f) [i.e., the administrative appeal] in" this court. *Id.* § 1517(g)(1).

---

[2] In addition, Customs may "take such additional enforcement measures as the Commissioner determines appropriate"; the statute gives four examples. *Id.* § 1517(d)(1)(E).

## II

## A

In 2018, Commerce imposed antidumping and countervailing duties on U.S. imports of certain hardwood plywood products from China. *Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504, 504–13 (Dep't Commerce Jan. 4, 2018); *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513, 513–16 (Dep't Commerce Jan. 4, 2018).

The three plaintiffs here—American Pacific Plywood, Inc.; U.S. Global Forest, Inc.; and InterGlobal Forest, LLC, all U.S. importers of hardwood plywood— assert that Chinese plywood manufacturers anticipated the duties and "responded by moving plywood production to Cambodia, beyond the geographic scope of the Orders." ECF 49, at 1–2. For example, they state that in 2017 the company that originally "sold finished plywood products directly to [InterGlobal Forest] and shipped them from China . . . formed and funded a Cambodian company, LB Wood Cambodia Co., Ltd." *Id.* at 2.

LB Wood is a plaintiff-intervenor and is based in the Sihanoukville Special Economic Zone, an area near Cambodia's only deep-water port that was

**PUBLIC VERSION**

established as an "economic and trade cooperation zone constructed by Chinese and Cambodian enterprises." Appx1022. The other plaintiff-intervenor, Cambodian Happy Home Wood Products Co., Ltd., operates in the same zone. Appx1024.

It appears to be undisputed that after Commerce implemented the antidumping and countervailing duty orders, Plaintiffs—and other U.S. hardwood plywood importers—quickly shifted their purchases from Chinese producers to LB Wood and Happy Home. In response, during 2019 the Coalition for Fair Trade in Hardwood Plywood filed an allegation with Customs that Plaintiffs were selling Chinese hardwood plywood that was transshipped through, and mislabeled as originating from, Cambodia.

Customs then investigated, Appx1021, found a reasonable suspicion of evasion, and imposed interim measures under 19 U.S.C. § 1517(e). Appx1028. The measures included suspending liquidation of Plaintiffs' entries of hardwood plywood from Cambodia; adjusting the duty rates so the entries would be subject to the antidumping and countervailing duty orders; requiring cash deposits of 194.53 percent *ad valorem* for all entries unliquidated as of June 5, 2018; and extending suspension for all unliquidated entries. Appx1021, Appx1026–28.

Customs notified Plaintiffs of the investigation and of the interim measures on October 1, 2019, Appx1020

**PUBLIC VERSION**

*et seq.*, and provided them with public versions of the Coalition's allegation letters and the agency's initiation memoranda. Plaintiffs and Plaintiff-Intervenors submitted written arguments and the Coalition responded.

Customs reached a final decision in June 2020. Appx1034. The agency determined that substantial evidence in the administrative record showed that Plaintiffs' imports were entered through evasion, resulting in the avoidance of applicable antidumping or countervailing duty deposits or other security. Appx1038. Along with producer-specific facts, Customs relied on an agency employee's visit to Plaintiff-Intervenors' Cambodian factories before the investigation. The employee noted, among other things, that the types of plywood at the factories are "temperate woods that do not grow well in Cambodia's tropical climate." Appx1039; Appx1044.[3]

B

Customs found that LB Wood's parent company is [[

]]. Appx1035, Appx1038. The agency emphasized that LB Wood

---

[3] Customs could not follow up on that visit because of COVID-related travel disruptions and because [[

]]. Appx1037.

registered as a business in Cambodia only after Commerce's preliminary determination in its antidumping duty investigation.[4] The company sourced "most of its raw materials, [[   ]] percent by value, from [[

                          ]]," and "also sourced some of its raw materials from [[                          ]]," such that "LB Wood sourced raw materials almost exclusively from [[

   ]] . . . ." Appx1039.

The agency concluded that "record evidence shows that not only was LB Wood likely established with a goal to avoid paying AD/CVD duties on Chinese plywood, its location [in the Sihanoukville special zone] helped facilitate such evasion." Appx1038. Sales data also showed that "LB Wood's relationship with American Pacific and InterGlobal began only [[   ]] the January 2018 imposition of the AD/CVD orders on Chinese plywood." Appx1039.

## C

Customs found that Happy Home sourced [[   ]] percent of its raw materials by value from [[

           ]] and that [[   ]] percent by value came from [[                          ]]. Appx1044. "Thus, Happy Home sourced [[                 ]] of its raw

---

[4] Customs found that the parent company registered LB Wood in Cambodia "only [[   ]] days after the preliminary AD determination." Appx1038.

**PUBLIC VERSION**

materials from [[

    ]] . . . ." *Id.* Happy Home's [[    ]]
admitted the company [[    ]],
which Customs construed as "clearly indicat[ing] that
Happy Home purchases Chinese-origin plywood to
some extent and comingles [sic] it with Cambodian-
origin plywood." Appx1045. Customs also identified
various discrepancies in financial data and other
recordkeeping, and noted that key records were writ-
ten in [[    ]]. Appx1046–1048.

Perhaps most significantly, Customs found that
Happy Home's records showed that it exported
[[  ]] plywood to the United States in 2016 and
2017 than Cambodia [[

    ]].[5] Happy Home and U.S. Global
argued that Customs's Cambodian production data
were unreliable and non-contemporaneous, but the
agency found that because the source was a U.N. pub-
lication using data from the Cambodian government,
"the figures are authoritative and reliable for our in-
vestigation's purposes. Further, data from other

---

[5] [[

    ]] despite Cambodia's total plywood production in
those two years being 27,000 m³. Appx1049. Customs also
noted that Happy Home's 2016 figure was probably too low
because Happy Home had reported some of its entries us-
ing [[    ]]. Appx1049
n.134.

**PUBLIC VERSION**

United Nations publications . . . have been considered reliable and have been used in other AD/CVD trade remedy cases." Appx1049.

## D

Following Customs's final determination of evasion, Plaintiffs and Plaintiff-Intervenors took administrative appeals. The agency rejected Plaintiff-Intervenors' appeals because under EAPA regulations they were not "parties to the investigation" and thus were not entitled to seek administrative review. Appx1053 & n.4. The agency's appellate office then affirmed the evasion determination. Appx1073.

Plaintiffs later filed these three separate lawsuits. The court granted the Coalition's motion to intervene as a defendant, Case 20-3914, ECF 16, LB Wood and Happy Home's unopposed motions to intervene as plaintiffs, Case 20-3914, ECF 23,[6] and the parties' motion to consolidate, Case 20-3914, ECF 29. Plaintiffs (ECF 47) and Plaintiff-Intervenors (ECF 50) moved for judgment on the agency record; the government (ECF 56) and the Coalition (ECF 58) opposed.

---

[6] The court expressed doubts about whether Plaintiff-Intervenors qualified for intervention as of right under USCIT R. 24(a)(2). *See* Case 20-3914, ECF 23, at 2–3. Nevertheless, because the motions were unopposed and the issue is not jurisdictional, *id.*, the court granted the motions.

### III

The court has subject-matter jurisdiction under 28 U.S.C. § 1581(c).

Plaintiffs sued under section 517 of the Tariff Act of 1930, 19 U.S.C. § 1517(g)(1). Section 1517(g)(2), in turn, directs that this court

> shall examine—
>
> (A) whether the Commissioner fully complied with all procedures under subsections (c) and (f); and
>
> (B) whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

19 U.S.C. § 1517(g)(2); *see also* 28 U.S.C. § 2640(e) (providing that "[i]n any civil action not specified in this section"—including actions, such as this, commenced under Section 517 of the Tariff Act of 1930, which are not so specified—"the Court of International Trade shall review the matter as provided in section 706 of title 5," i.e., for agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A)).

Plaintiffs contend that the court must also decide whether Customs's decisions were supported by substantial evidence. ECF 49, at 83. The statute requires

the court to determine whether Customs complied with the *procedures* in § 1517(c) and (f).

In turn, § 1517(c)(1)(A) directs Customs to make its final determination "based on substantial evidence," while § 1517(f) directs that the administrative appeal involves de novo review. The question is therefore whether the administrative record shows that Customs applied substantial evidence review—not whether substantial evidence supports the agency's findings. *See Ikadan Sys. USA, Inc. v. United States*, Ct. No. 21-00592, Slip Op. 23-88, at 20, 2023 WL 3962058, at *9 (CIT June 13, 2023) (emphasizing the distinction between "arbitrariness review" and "substantial evidence" review and noting that this court applies the former in EAPA cases).

## IV

Plaintiffs challenge Customs's imposition of interim measures as "invalid" and argue the measures must be rescinded based on multiple theories. They also contend the agency improperly applied the substantial evidence standard in making its final determination and on administrative appeal. For their part, Plaintiff-Intervenors contend that Customs improperly denied them access to administrative remedies.

## A

Plaintiffs' main argument challenges Customs's decision to impose interim measures. Plaintiffs concede,

however, that "[t]he EAPA statute's interim measures
in accordance with 19 U.S.C. § 1517(e), taken by them-
selves, are not problematic . . . ." ECF 49, at 30. Thus,
the court understands Plaintiffs to challenge not spe-
cific interim measures per se, but instead the proce-
dures Customs employed in the initial phase of its in-
vestigation preceding the imposition of those mea-
sures and whether the record allowed for a "reasonable
suspicion" of evasion. Thus, if the court sustains Cus-
toms's procedures and findings, the agency's interim
decision stands.

1

The Coalition argues that "Congress did not pro-
vide for judicial review of decisions to impose interim
measures." ECF 58, at 19 (citing 19 U.S.C.
§ 1517(g)(1)–(2)). The court addresses this threshold
issue first.

The Coalition asserts that in *Diamond Tools Tech-
nology LLC v. United States*, 545 F. Supp. 3d 1324
(CIT 2021), the court "read as purposeful the lack of
any reference to 19 U.S.C. § 1517(e), concerning in-
terim measures, in the EAPA's judicial review provi-
sions." ECF 58, at 19 (citing 545 F. Supp. 3d at 1335).
But *Diamond Tools* undercuts that argument: "The
court's review of Customs' determination as to evasion
may encompass interim decisions subsumed into the
final determination." *Id.* at 1331 (quoting *Vietnam*

**PUBLIC VERSION**

*Finewood Co. v. United States*, 466 F. Supp. 3d 1273, 1284 (CIT 2020)).

   The court finds *Diamond Tools* persuasive. That leaves the question of what standard of review applies. Because the interim decision merges into the final determination, which Customs renders under § 1517(c), the court concludes that as a general matter the appropriate portions of the standard of review prescribed in § 1517(g) apply. Subsection (g) governs review of "whether a determination under subsection (c) . . . is conducted in accordance with [that] subsection[ ]." 19 U.S.C. § 1517(g). As to a final determination, subsection (g) requires that the court determine whether Customs fully complied with all subsection (c) procedures and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(1), (2).

   The subsection (c) procedures, however, do not apply to interim decisions, so that leaves the latter part of the standard—"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Those words also appear in the APA's "scope of review" section, *see* 5 U.S.C. § 706(2)(A), which applies here as the default standard of review. *See* 28 U.S.C. § 2640(e); *see also* 19 U.S.C. § 1517(g)(3) ("Nothing in this subsection shall affect the availability of judicial review to an interested party under any other provision of law.").

PUBLIC VERSION

2

Plaintiffs argue that the "interim measures are invalid because [Customs] neither gave timely notice to Plaintiffs of the ongoing EAPA investigation and impending interim measures nor provided Plaintiffs a timely opportunity to rebut and defend against the evasion allegation and imposition of the interim measures." ECF 49, at 41.

Plaintiffs do not dispute that Customs complied with its regulation governing notice of an EAPA investigation and interim measures. *See* 19 C.F.R. § 165.15(d)(1). Customs opened the investigation here on June 26, 2019, and notified Plaintiffs and the Coalition of the investigation and the imposition of interim measures on October 1, 2019.[7] *See* Appx1020–1021; *see also* ECF 49, at 31.

Plaintiffs acknowledge that the statute "is silent . . . on when [Customs] must give notice of allegations of evasion filed with the agency and [Customs]'s decision to initiate an EAPA investigation." ECF 49, at 31. But they contend that the lack of notice and the opportunity to be heard prior to the imposition of interim

---

[7] While, by the court's math, Customs gave notice one day late, an agency's simple failure to follow a procedural requirement does not void subsequent agency action unless a plaintiff shows substantial prejudice, *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006), which Plaintiffs have not.

measures violated their due process rights. *Id.* at 31–32.

Plaintiffs rely on Supreme Court case law about receiving notice before an adverse action. *See generally id.* at 27–33. They also compare EAPA to the antidumping and countervailing duty statute. *Id.* at 34. They also contend that Customs's EAPA regulations are unenforceable "interpretive rules" for APA purposes. They demand that the court set the regulations aside because the agency published them as "interim regulations" and sought public comments but then "never issued a final rule with its consideration of all comments received."[8] ECF 49, at 35–36. They also contend—without citing the regulations or the Federal Register notice—that Customs "designat[ed] its interim regulations as only interpretive" and therefore cannot use those rules in its investigations because interpretive "rules such as 19 CFR Part 165 do not impose any 'legally binding requirements' on private

---

[8] Customs solicited written comments from interested persons and stated that while it regarded the interim rule as procedural and exempt from notice-and-comment requirements, it had sought comments anyway. *See Investigation of Claims of Evasion of Antidumping and Countervailing Duty Orders*, 81 Fed. Reg. 56,477, 56,481 (Dep't Homeland Sec. and Dep't Treasury Aug. 22, 2016). The extended comment period expired on December 20, 2016, and there is no indication that Customs ever acted on any comments received or issued a final rule.

**PUBLIC VERSION**

parties." *Id.* at 37 (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019)).

In response, the government emphasizes the statute's silence about when Customs must give notice of an investigation or of the imposition of interim measures and further notes that the statute gives the agency "broad discretion to determine the scope and means of the investigation . . . ." ECF 56, at 5. "The statute does not provide importers with any pre-initiation right to comment on whether [Customs] will suspend liquidation or take other action to protect the revenue . . . ." *Id.* at 18. The government contends that Plaintiffs have not identified any protected interest to support a due process claim and notes that they focus on the interim measures' financial effects. *Id.* at 19–20.

> [T]he EAPA statute *expressly authorizes* [Customs] to extend as interim measures the period for liquidating entries made prior to the initiation of the investigation. Thus, the statutorily authorized interim measures imposed by [Customs] do not give rise to a protected interest beyond what the statute contemplates.

*Id.* at 20 (emphasis in original; quotation marks and citations omitted).

**PUBLIC VERSION**

The key principle, according to the government, is that the statute does not prohibit Customs from acting as it did in this case:

> [W]hile plaintiffs may wish to have known about the impending interim measures prior to imposition, there was no requirement under the EAPA statute for [Customs] to provide such notice. In fact, notice may very well have thwarted the investigation. Thus, plaintiffs fail to establish that their due process rights were violated because [Customs] imposed interim measures without prior notification.

*Id.* at 23–24. In other words, the government asserts that Plaintiffs cannot validly demand to be afforded any procedures that EAPA itself does not require, because to impose any such directive would wrongly impinge on Customs's discretion to establish procedures. *Id.* at 29.

a

Plaintiffs cite nothing to support their contention that Customs has "designated" its EAPA regulations "as only interpretive." ECF 49, at 37. They simply rely on their own characterization of the regulations.

The Federal Register notice, however, shows that Customs designated the regulations as "procedural" rather than "interpretive": "[T]his rule amends the

### PUBLIC VERSION

U.S. Customs and Border Protection regulations to set forth procedures for [Customs] to investigate claims of evasion of antidumping and countervailing duty orders." 81 Fed. Reg. at 56,477; *see also id.* at 56,479 (stating that purpose of 19 C.F.R. Part 165 is to set forth "procedures for investigating claims of evasion").

Unless otherwise required by statute, the APA exempts "rules of agency organization, procedure, or practice" from notice and comment requirements applicable to substantive rules. 5 U.S.C. § 553(b)(A). "[A] matter relating to practice or procedure means technical regulation of the form of agency action and proceedings." *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974) (cleaned up).

Plaintiffs' attempt to characterize 19 C.F.R. § 165.15(d)(1) as an invalid interpretive rule fails because the regulation plainly "prescribes order and formality in the transaction of . . . business." *Id.* at 1114. Moreover, "an otherwise-procedural rule does not become a substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 281 (D.C. Cir. 2000) (cleaned up).

### b

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' " *Int'l Custom Prods.,*

**PUBLIC VERSION**

*Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). "[F]or a benefit to warrant the procedural protections of due process, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (cleaned up) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

An importer has no "legitimate claim of entitlement" to the right to engage in international trade, to import merchandise under a specific tariff classification or rate of duty, or to rely on the maintenance of a particular duty rate. *Id.* But there is a distinction between the *future* importation of goods and the importer's interest in the duty rate imposed on goods *already imported*—as to the latter, there might be such an interest. *Diamond Tools*, 545 F. Supp. 3d at 1340–41 (discussing *Nereida Trading Co. v. United States*, 683 F. Supp. 2d 1348, 1355 (CIT 2010)). *Diamond Tools*, however, found it critical that

> [i]nterim measures are temporary. Under the EAPA statute, Customs can extend interim measures only upon a final determination of evasion. If Customs finds in its final determination that no evasion exists, any measures taken in the interim, such as a suspension of liquidation or collection of cash deposits, will be lifted and any additional duties or cash deposits paid will be reimbursed to the importer with interest.

*Id.* at 1341 (cleaned up).

*Diamond Tools* suggested that an importer *might* have a protected interest in the proper assessment of tariffs on goods already imported, but Plaintiffs do not adopt that theory except to a very limited extent (discussed below). Instead, they complain that they had to return plywood that had already been shipped because they could not afford the deposits required by the interim measures. *See* ECF 49, at 45. But those were future importations, so they had no protected interest in the rate of duty.

As to the issue of goods already imported, Plaintiffs contend that Customs could not impose interim measures on covered merchandise entered before Customs notified them of the initiation of the EAPA investigation—October 1, 2019. *Id.* at 47. As support, they cite *Shelter Forest International Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1404 (CIT 2021), a case brought under the anticircumvention statute, 19 U.S.C. § 1677j. They contend that because the court there found that the Department of Commerce acted wrongly by trying to give three days' retroactive effect to its order, Customs necessarily acted wrongly here as well. ECF 49, at 47.

*Shelter Forest* addressed an investigation by a different agency (Commerce there, Customs here) under a different statute (§ 1677j there, § 1517 here) and a different set of administrative regulations (19 C.F.R.

**PUBLIC VERSION**

Part 351 there, 19 C.F.R. Part 165 here), so it is un-
clear how it could apply to this case. More importantly,
EAPA expressly provides that, upon a finding of "rea-
sonable suspicion" of evasion, Customs must "extend
the period for liquidating each unliquidated entry of
such covered merchandise that entered *before the date
of the initiation* of the investigation." 19 U.S.C.
§ 1517(e)(2) (emphasis added).

The regulations, in turn, provide that for unliqui-
dated entries that entered before the investigation's
initiation date, Customs will extend the liquidation pe-
riod and "[t]ake such additional measures as [Cus-
toms] determines necessary to protect the revenue of
the United States, including requiring a single trans-
action bond or additional security or the posting of a
cash deposit with respect to such covered merchandise
. . . ." 19 C.F.R. § 165.24(b)(1)(ii)–(iii).

EAPA and its regulations expressly direct Customs
to extend liquidation for unliquidated entries of cov-
ered merchandise that entered before the investiga-
tion started. Thus, *Shelter Forest*'s reasoning does not
apply here. Customs did what the statute instructed.

Finally, Plaintiffs argue that the government's re-
sponse brief "does not include any analysis of what
Plaintiffs' protected interests might be." ECF 65, at 21.
But they fail to explain why the government needs to
do that. It is their burden to establish a protected in-
terest sufficient to give rise to a due process claim and

**PUBLIC VERSION**

to show how the alleged due process violation works some sort of harm to that interest. *Cf. Diamond Tools*, 545 F. Supp. 3d at 1341 ("The court does not exclude the possibility that a protected interest may exist; rather, DTT USA has failed to establish what any such interest may be in this specific context and the court declines to do counsel's work."). Because they have not done so, the court need not consider their argument that due process entitled them to notice of the EAPA investigation prior to notice of interim measures.[9]

3

EAPA requires Customs to "decide based on the investigation if there is a *reasonable suspicion* that . . . covered merchandise was entered into the customs territory of the United States through evasion" and, if so, to impose interim measures. 19 U.S.C. § 1517(e) (emphasis added).

Plaintiffs argue that a "reasonable suspicion" requires "a particularized and objective basis for suspecting the existence of proscribed behavior, taking into account the totality of the circumstances." ECF 49, at 65 (quoting *AL Tech Specialty Steel Corp. v. United States*, 575 F. Supp. 1277, 1279–80 (CIT

---

[9] In any event, Plaintiffs have failed to identify either the particular date on which they contend they should have received notice or the authority they contend would authorize the court to order Customs to adopt any specific date.

**PUBLIC VERSION**

1983)). Plaintiffs are correct that in a non-EAPA context, when this court has considered the meaning of "reasonable grounds to believe or suspect," we have sometimes borrowed from criminal law cases applying the "reasonable suspicion" standard for searches. *See, e.g.*, *China Nat'l Mach. Imp. & Exp. Corp. v. United States*, 264 F. Supp. 2d 1229, 1239 (CIT 2003); *Hangzhou Spring Washer Co. v. United States*, 387 F. Supp. 2d 1236, 1248 (CIT 2005) (quoting *China Nat'l*, 264 F. Supp. 2d at 1239); *Peer Bearing Co.–Changshan v. United States*, 298 F. Supp. 2d 1328, 1336 (CIT 2003) (citing *China Nat'l*, 264 F. Supp. 2d at 1239, and *AL Tech*, 575 F. Supp. at 1280). *But see CEK Grp. LLC v. United States*, Ct. No. 22-00082, Slip Op. 23-69, at 7–8 & n.1, 2023 WL 3198816, at *3 & n.1 (CIT May 2, 2023) (noting that what level of suspicion is "reasonable" varies from statute to statute and expressing doubt that *Terry v. Ohio*, 392 U.S. 1 (1968), applies in the EAPA context because Fourth Amendment concerns are not present).

The parties cite no Federal Circuit precedent on this issue. Nor do Customs's regulations define the term. *See* 19 C.F.R. §§ 165.24 (using "reasonable suspicion" multiple times without defining it), 165.1 (defining various terms but omitting "reasonable suspicion").

In considering what the phrase means in EAPA, it is crucial to consider the difference between the standard for imposing interim measures—"reasonable

**PUBLIC VERSION**

suspicion" of evasion, 19 U.S.C. § 1517(e)—and the one for final determinations—whether "substantial evidence" shows that covered merchandise entered through evasion, *id.* § 1517(c)(1)(A). Because the standards use different terminology, their meanings presumptively differ, and the court assumes that the standard for an interim decision is less demanding than for a final determination.[10]

Dictionary definitions of "suspicion" include "[i]magination of something (not necessarily evil) as possible or likely; a faint belief that something is the case; a notion, an inkling," 2 *Shorter Oxford English Dictionary* 3128 (5th ed. 2002) (italics removed) (definition #3), and "[a] slight indication or trace, a very small amount, (of something)," *id.* (italics removed) (definition #4). Those definitions align with the one Plaintiffs offer, which also states that a "suspicion" may be *without proof* or based on *slight evidence.*

---

[10] EAPA contains a third standard directing Customs to initiate an investigation if the evasion allegation "reasonably *suggests* that covered merchandise has been entered . . . through evasion." *Id.* § 1517(b)(1) (emphasis added). The standards apply at different stages of the process, and it is reasonable to conclude that Congress meant each ensuing standard to require something more than is needed at the earlier stage(s)—that is, "reasonably suggests" is less demanding than "reasonable suspicion," which in turn is less demanding than "substantial evidence." *Cf. CEK*, Slip Op. 23-69, at 8–9, 2023 WL 3198816, at **3–4 (finding that "reasonably suggests" is a low hurdle).

**PUBLIC VERSION**

ECF 49, at 65 (citing Merriam Webster's Online Dictionary). The court therefore construes the case law cited above, which refers to making the "reasonable suspicion" finding based on the totality of the evidence and requiring "a particularized and objective basis" for that finding, as not imposing a difficult burden on the agency. Moreover, because under the more-demanding "substantial evidence" standard a conclusion may still be supported even if other evidence fairly detracts from the conclusion, the same principle necessarily applies under the less-demanding "reasonable suspicion" standard.

Therefore, as the Coalition correctly notes, *see* ECF 58, at 22, it is inappropriate to flyspeck the evidence piece-by-piece to analyze what each item shows or does not show—the question is what all the evidence at the relevant stage of the investigation showed.

Plaintiffs argue that Customs "had no specific evidence that Plaintiffs were importing Covered Merchandise into the U.S. by means of false statements or documents." ECF 49, at 66. But they then flyspeck the evidence. They dispute the reliability of the trade statistics Customs cited. *Id.* at 67. They argue that Plaintiff-Intervenors' operations in the Sihanoukville Special Economic Zone, that Zone's purpose as an area to facilitate trade with China, and the timing of Plaintiff-Intervenors' establishment "exactly at a time when trade opportunities arose" reflect at most "the dictates of free market economics," which this court has

**PUBLIC VERSION**

recognized as legitimate conduct. *Id.* at 67–68. They contend that it is normal for production and exportation to shift from a country subject to high antidumping duty rates to a country with low duties. *Id.* at 68–69. Finally, they attack the probativity of Customs' internal e-mail communications. *Id.* at 69–72.

While Plaintiffs may be correct about the *independent* significance of particular pieces of evidence, they miss the forest for the trees. The interim decision discussed Plaintiffs' questionnaire responses and noted that InterGlobal provided information consistent with what agency personnel had observed at a prior visit to LB Wood's facility. Appx1026. U.S. Global did not provide all the information requested by Customs nor explain its failure to do so, but the information it did provide was similarly consistent with agency personnel's prior site visit. *Id.* Customs placed the evidence from that visit on the record and noted it showed both that the wood observed at Happy Home's facility was of a type that could not have been harvested in Cambodia's climate and that the LB Wood and Happy Home factories lacked the sophistication to produce the plywood seen there. Appx1027. Critically, Customs also cited an affidavit in which Happy Home's [[



]] *Id.* The agency concluded that "[t]he evidence on the record supports a reasonable suspicion that the [[                    ]]

**PUBLIC VERSION**

plywood may have originated in China and that the '[[                    ]]' label on Happy Home's and LB Wood's products is not accurate." Appx1028.

The totality of the evidence cited by Customs is easily more than the "slight evidence" or "very small amount" needed to support a "reasonable suspicion." Plaintiffs effectively ask the court to re-weigh the evidence. Because "substantial evidence" review does not allow the court to do so, *see, e.g.*, *Celgene Corp. v. Peter*, 931 F.3d 1342, 1352 (Fed. Cir. 2019), it is that much *less* appropriate for the court to re-weigh the evidence when considering an agency's application of the less-demanding "reasonable suspicion" standard. As the Coalition persuasively argues, Plaintiffs and Plaintiff-Intervenors have not established that Customs had to review the evidence in the way they would prefer. *See* ECF 58, at 26. The court therefore concludes that Customs's finding of a "reasonable suspicion" of evasion was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

4

Plaintiffs insist that Customs had to give them access to unredacted confidential information throughout the investigation on the same terms used by the Department of Commerce in antidumping and countervailing duty investigations. *See* ECF 49, at 48–65. Plaintiff-Intervenors also refer to the Commerce and ITC procedures, ECF 52, at 11, and assert that "there

is no legitimate reason for [Customs] to withhold confidential information that was used against interested parties in EAPA Inv. 7321 and not establish an Administrative Protective Order," *id.* at 13.

The government responds that, "as [P]laintiffs acknowledge, there is no statutory authority that requires or authorizes [Customs] to disclose business confidential information under an administrative protective order similar to an antidumping and countervailing duty investigation or safeguards investigation." ECF 56, at 24 (citation to Plaintiffs' brief omitted) (citing, *inter alia*, 19 U.S.C. § 1677f(c)(1)(A), which *requires* Commerce and the ITC to make "business proprietary information" available upon application). The Coalition agrees and further notes that while Customs's regulations do require it to provide a "public summary" of any business confidential information placed on the record, Plaintiffs and Plaintiff-Intervenors make no specific arguments about the inadequacy of particular public summaries. ECF 58, at 14–15.

The court addresses the last point first in view of persuasive case law. In *Royal Brush Manufacturing, Inc. v. United States*, 483 F. Supp. 3d 1294 (CIT 2020), the court remanded an EAPA proceeding because Customs had "failed to ensure that confidential filings were accompanied by the requisite public summaries." *Id.* at 1305. The record also showed the agency had both failed to respond to the plaintiff's request for disclosure of certain photographs and failed to address

the plaintiff's due process arguments in either of its determinations. *Id.* at 1306. The court emphasized Customs's "inattention" to its regulation requiring the submission of public summaries of confidential documents. *Id.* at 1306–07. *Royal Brush*'s conclusion was particularly instructive:

> To be clear, the court does not hold that Royal Brush is entitled to receive access to confidential information. Congress has not mandated that Royal Brush be afforded such access and Royal Brush has not shown that due process requires it. However, Customs must ensure compliance with the public summarization requirements provided in its own regulations.

*Id.* at 1308.

The following year, *Diamond Tools* analyzed *Royal Brush* in considering another plaintiff's complaint that Customs did not allow access to the confidential versions of various record documents. The *Diamond Tools* plaintiff did not "challenge that Customs complied with its regulations to provide public summaries of proprietary information" and did not raise any administrative objections to the use of public summaries. 545 F. Supp. 3d at 1343. The court noted *Royal Brush*'s rejection of the argument that due process requires full access to confidential information and then found the plaintiff failed to show that access to any particular information was necessary. *Id.* "Customs complied

**PUBLIC VERSION**

with its regulation concerning public summarization of confidential information. As such, the court finds that Customs did not violate DTT USA's due process rights." *Id.*

Perhaps aware that the *Diamond Tools* plaintiff did not object to the public summaries, Plaintiffs here argue that "public summaries of confidential information are insufficient to ensure effective rebuttal and defense."[11] ECF 49, at 59 (point heading; title case removed). They fail, however, to address any *particular* public summary, much less explain why they believe it was inadequate—instead, they attack the adequacy of public summaries *in general*, arguing that "[f]or proper agency adjudication that does not violate the

---

[11] Despite joining Plaintiffs' complaints about the use of public summaries, *see* ECF 52, at 37, Plaintiff-Intervenors peculiarly argue that LB Wood "did not keep a full list of products in brochures or catalogs" such that Customs should have accepted a summary chart Plaintiff-Intervenors apparently submitted, ECF 70, at 7–8. It is unclear what that summary is because the brief cites over two thousand pages of record materials (Appx26661–27335 and Appx27788–29302) and then contains the citation "*[s]ee id.* at Exhibit 1, Summary Sheet." In any event, Plaintiff-Intervenors contend that, on the one hand, Customs cannot validly use summary documents but, on the other hand, it should accept the same from parties. "The equitable rule, 'What's sauce for the goose is sauce for the gander,' would therefore appear to be applicable here." *Bethell v. Koch*, 427 F.2d 1372, 1377 n.6 (CCPA 1970).

due process rights of the parties, full disclosure of confidential information is required." ECF 49, at 60–61 (citing *United States v. N.S. Food Prods. Corp.*, 568 F.2d 240, 251 (2d Cir. 1977)). Plaintiffs ask the court to "declare [Customs]'s enforcement measures and conduct of EAPA Inv. 7321 to be null and void" because the agency did not disclose the entire confidential record. *Id.* at 64. But, as the *Royal Brush* court found when that case returned from remand, Customs's "authority to provide public summaries of business proprietary information, rather than the information itself," is "established," and the plaintiff there failed to show "that greater access to confidential information is otherwise constitutionally required." *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1366 (CIT 2021).

The same is true here. The *only* specific argument Plaintiffs advance as to any particular piece of evidence is the following:

> Here, [Customs] relied on a report and photographs of Plaintiffs-Intervenors' premises, which cannot be disclosed to the general public. Also, the third-party data that [Customs] put on the record concerning U.S. importers not parties to EAPA Inv. 7321, but which [Customs] claims support its interim measures against Plaintiffs[,] would also necessarily remain confidential.

**PUBLIC VERSION**

ECF 49, at 62–63.

Plaintiffs do not assert that Customs failed to provide public summaries of the identified materials or that the summaries were inadequate. They also cite nothing in the administrative record showing that they raised any such concerns *to Customs*.[12] *See Diamond Tools*, 545 F. Supp. 3d at 1343 (faulting plaintiff for failing to raise "specific concerns" before Customs); *cf. Royal Brush*, 483 F. Supp. 3d at 1306 (noting that Customs ignored plaintiff's complaints about confidential information). Nor do they argue that they made any effort to produce their own photographs to dispute Customs's characterization of images the agency placed in the record. *See Skyview Cabinet USA, Inc. v. United States*, Ct. No. 22-00080, Slip Op. 23-91, at 32–33, 2023 WL 4073781, at *12 (CIT June 20, 2023) ("In the unique context of photos and videos, nothing Customs did prevented [the plaintiff] from submitting photos and videos of any facility . . . that Plaintiff claimed manufactured the merchandise in question" or from "creat[ing] a video walkthrough demonstrating actual manufacturing . . . . Due process requires notice and an opportunity to be heard by providing evidence at a meaningful point in the proceedings. Plaintiff received that opportunity, and its

---

[12] The joint appendix in this case consists of 23,346 pages spread (in the confidential version) over 35 volumes. If the appendix shows that Plaintiffs raised their concerns before Customs, it was their obligation to cite the relevant pages.

### PUBLIC VERSION

as-applied due process challenge regarding photographic and video evidence must therefore fail.") (cleaned up).

Plaintiffs' and Plaintiff-Intervenors' other argument is, essentially, that because Commerce and the ITC allow access to confidential information under administrative protective orders, Customs must employ the same procedure. But "Commerce's actions are not now before the court." *Royal Brush*, 483 F. Supp. 3d 1308 n.22. More importantly, as noted above, a different statute, with different requirements, governs Commerce and ITC investigations.

Plaintiffs cite no authority permitting this court to order Customs to adopt any particular procedure, much less the one Commerce and the ITC use,[13] and EAPA directs the Secretary of Homeland Security—*not* the Court of International Trade—to "prescribe such regulations as may be necessary to implement the amendments made by this section." Pub. L. No. 114–125, § 421, 130 Stat. 122, 169 (2016); *see generally Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 523–24 (1978) (holding that where agency has not chosen to grant additional

---

[13] Put differently, Plaintiffs have no basis for insisting that the procedure they prefer is the only acceptable one. Plaintiff-Intervenors' complaints about access to confidential information, *see* ECF 52, at 19 (arguing, essentially, "Commerce does it that way"), fail for the same reasons.

procedural rights, courts cannot impose requirements and may not grant procedural rights that neither Congress nor agency saw fit to impose).

\*   \*   \*

In sum, Plaintiffs have not established any protected interest for due process purposes entitling them to any procedures other than what Customs granted them; the totality of the evidence permitted a "reasonable suspicion" that covered merchandise entered the United States via evasion; and Plaintiffs' arguments about access to confidential information lack merit. Customs's imposition of interim measures was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

### B

Plaintiffs argue that Customs "improperly applied the substantial evidence standard in [its] determinations of evasion," ECF 49, at 74, and "improperly applied the substantial evidence standard in its de novo review and final determination," *id.* at 117. The court understands Plaintiffs' theory to be that the agency *misapplied* the standard, not that it erred by citing "substantial evidence" as the applicable standard required by statute.

**PUBLIC VERSION**

1

Plaintiffs contend that Customs defines the "substantial evidence" standard "as an image of its own 'reasonable mind' and whatever [the agency's] mind might consider adequate to support a conclusion." ECF 49, at 80 (citing Appx1038 n.32). The cited footnote in Customs's final determination reads: "Substantial evidence is not defined in the statute. However, the Federal Circuit has stated that 'substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Appx1038 n.32 (quoting *A.L. Patterson, Inc. v. United States*, 585 F. App'x 778, 781–82 (Fed. Cir. 2014)). Despite citing a nonprecedential opinion, the agency stated the correct standard. *Cf. Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (defining substantial evidence as "more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Plaintiffs offer no support for their theory that Customs applied a subjective review, rather than the objective "reasonable mind" standard. Instead, they shift gears and address access to confidential information. *See* ECF 49, at 83. This argument fails for the reasons discussed above.

Plaintiffs then argue that "[t]he agency's failure to put forward, in advance, the potential of adverse

action, any record of any kind, substantial or other-
wise, is a fatal flaw." *Id.* at 84. It is unclear what that
sentence means, but if it means Customs did not rely
on an administrative record, that argument is unavail-
ing.

Plaintiffs also argue that the administrative record
"is devoid of any evidence that Plaintiff-Intervenors
transshipped plywood from China and sold Chinese
plywood to Plaintiffs or that Plaintiffs commingled
Chinese plywood with Cambodian plywood." *Id.* It ap-
pears to the court that Plaintiffs are equating "evi-
dence" with "concrete proof," such that absent hard
proof of transshipment or commingling, they prevail.
But they forget that "substantial evidence" does not re-
quire concrete proof—rather, it asks whether a reason-
able mind might accept the evidence to support a con-
clusion. Here, Customs cited evidence in the adminis-
trative record supporting its conclusion.

Thus, Plaintiffs complain that Customs "speculated
that Plaintiff-Intervenors 'likely' commingled Chinese
plywood with their own plywood manufactured in
Cambodia." *Id.* at 85 (citing Appx1043, Appx1045,
Appx1048, Appx1050). Their objection appears to be to
the word "likely." Elsewhere, however, Customs made
more definitive findings that, in consideration of the
full context, were based on the totality of the evidence.

*See* Appx1043 (LB Wood); Appx1049–1050 (Happy Home).[14]

Customs also devoted several pages to discussing why it found the evidence Plaintiff-Intervenors submitted unconvincing or unreliable. Appx1040–1043 (LB Wood); Appx1043–1049 (Happy Home). Customs rejected arguments from both Plaintiffs and Plaintiff-Intervenors about the reliability (or lack thereof) of the data Customs used to determine Cambodia's total plywood production between 2016 and 2017 and explained why it considered those data authoritative and reliable. Appx1049. That is what the "substantial evidence" standard required Customs to do—it explained the evidence on which it relied and why it found the totality of that evidence supported its conclusion, and it addressed the parties' evidence and explained why it found that unconvincing.

Plaintiffs and Plaintiff-Intervenors, however, contend that they "submitted voluminous evidence for the record" proving their position. ECF 49, at 90–91; *see also* ECF 52, at 23 (referring to number of pages

---

[14] Plaintiffs attack Customs's reference to the June 2018 site visit for various reasons. ECF 49, at 86–87. But again, the question is not what the agency found any one piece of evidence to show, but what the agency found the totality of the evidence to show. The record establishes that Customs treated the June 2018 site visit as but one of many factors it considered in its analysis.

submitted). Indeed it was voluminous: They cite massive blocks of material, some referring to thousands of record pages. *See, e.g.*, ECF 49, at 91 (citing, *inter alia*, Appx21538–33008); ECF 52, at 23 (citing, *inter alia*, Appx33178–44421). A citation to a block of over 11,000 pages is the functional equivalent of citing nothing. "Judges are not like pigs, hunting for truffles buried in briefs" or in administrative records. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

Citing those huge blocks of material, Plaintiffs argue that Customs ignored their "documented proof" of their operations in Cambodia and their documents that "confirm that the companies possessed sufficient manufacturing capacity and quantity to produce all of the merchandise sold to the U.S." ECF 49, at 92–93. But those block citations establish only one thing— that Plaintiffs merely submitted copious filings to Customs.

Plaintiffs then characterize various photographs in the record and argue about what they "appear" to show. *Id.* at 95–96. They apparently contend the photographs could support a different conclusion than Customs reached. But that cannot by itself undercut Customs's finding of "substantial evidence":

> The substantial evidence test . . . does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply

**PUBLIC VERSION**

because the reviewing court would have reached
a different conclusion based on the same record.

*Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed.
Cir. 2007). Moreover, in an EAPA proceeding the court
is to determine whether Customs applied the substan-
tial evidence standard in reaching its final determina-
tion. The court finds that Customs did so here and that
its conclusions are not arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law.

2

In its separate reply, InterGlobal Forest complains
about "the supposition and bias inherent in [Cus-
toms]'s Notice of Determination as to Evasion," i.e.,
Customs's final determination. ECF 68, at 1. If Inter-
Global Forest contends that Customs acted in bad
faith, that argument fails. "[S]howing a government
official acted in bad faith is intended to be very diffi-
cult" in view of the extremely strong presumption that
administrative agency actions are taken in good faith.
*Am-Pro Prot. Agency, Inc. v. United States*, 281 F.3d
1234, 1240 (Fed. Cir. 2002). The company has not
shown clear and convincing evidence of actual bias or
malice by Customs personnel.[15]

---

[15] InterGlobal Forest also complains that its former counsel
allegedly made mistakes and failed to take certain actions,
as to which the company says it "should have the

PUBLIC VERSION

3

Plaintiffs and Plaintiff-Intervenors all requested administrative review. Customs found Plaintiff-Intervenors ineligible to do so: "Although they are considered interested parties as per 19 CFR § 165.1, LB Wood and Happy Home are not considered parties to the investigation. Only parties to the investigation are entitled to file a request for review." Appx1053 (footnotes omitted). Plaintiffs and Plaintiff-Intervenors complain that Customs's appellate office erred by disregarding the latter's submissions. Under the statute, "a person determined to have entered . . . covered merchandise through evasion [here, Plaintiffs] or an interested party that filed an allegation . . . that resulted in the initiation of an investigation [here, the Coalition] . . . may file an appeal . . . ." 19 U.S.C. § 1517(f). While Customs cited its regulations, its rejection of Plaintiff-Intervenors' appeals followed the statute.

Plaintiffs also argue that the statute only limits who can *seek* an administrative review—it does not limit who can then *participate*. Customs's regulations, however, require that a party's brief be part of its request for administrative review. *See* 19 C.F.R. § 165.41. The regulations also provide that only a

_____

opportunity to supplement this record." ECF 68, at 22. InterGlobal cites no authority establishing that ineffective assistance of counsel is a basis for relief in an EAPA proceeding.

**PUBLIC VERSION**

"party to the investigation" may respond to the request(s) for review. *See id.* § 165.42. "The phrase 'parties to the investigation' means the interested party . . . who filed the allegation of evasion [the Coalition] and the importer (or importers . . .) who allegedly engaged in evasion [Plaintiffs]." *Id.* § 165.1.

Plaintiffs argue that "Plaintiff-Intervenors have the right under due process law to defend the integrity of their business operations, books and records, and their business relations with Plaintiffs." ECF 49, at 119–20. But they cite no authority in support of that proposition, nor do they offer authority establishing that Customs had to allow Plaintiff-Intervenors to participate in the administrative appeal or that this court can compel Customs to allow them to so participate. Thus, Customs's preclusion of Plaintiff-Intervenors' participation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Plaintiffs then ask the court to re-weigh the evidence. *See, e.g.*, ECF 49, at 123–24 ("[Customs's appellate office] places inordinate weight on the brief email exchange regarding [Customs]'s June 6, 2018[,] visits to Plaintiff-Intervenors' facilities and the photographs the Agent took at that time."), 127–28 (complaining about the weight Customs gave to its site visit as compared to photographs Plaintiffs submitted). As noted above, the court cannot do that. Plaintiff-Intervenors, in turn, rely on speculation: "[Customs's appellate office] *may not even have reviewed* the underlying record

**PUBLIC VERSION**

. . . ." ECF 52, at 41–42 (emphasis added). It should be obvious that the court cannot overturn an agency decision based on a party's speculative complaints.

The administrative review determination discusses the evidence submitted by Plaintiffs and Plaintiff-Intervenors and addresses why Customs found that evidence flawed or unsupportive of their position. *See, e.g.*, Appx1066. It then states, "We find that the import data, *coupled with* the evaluation of the production capabilities at the factories, discrepancies in record evidence[,] and unsubstantiated production quantities, substantiate [the original] finding of evasion," Appx1072 (emphasis in original), and itemizes the factors Customs found compelling, *id.* Thus, the agency employed substantial evidence review—the statutory standard. The court will not disturb the result.

\*   \*   \*

For the foregoing reasons, the court **DENIES** the motions for judgment on the agency record filed by Plaintiffs (ECF 47) and Plaintiff-Intervenors (ECF 50), **GRANTS** judgment to Defendant and Defendant-Intervenor, *see* USCIT R. 56.2(b), and **SUSTAINS** Customs's final determination after administrative review in EAPA Investigation 7321. The court will enter judgment for the government and the Coalition. *See* USCIT R. 58(a).

Dated:  June 22, 2023          /s/ *M. Miller Baker*
        New York, NY          M. Miller Baker, Judge