**PUBLIC VERSION**

### REMAND REDETERMINATION
*American Pacific Plywood, Inc., et al. v. United States*
Consol. Court No. 20-03914 (Ct. Int'l Trade)
EAPA Cons. Case No. 7321
Remand No. 7970

## I.    SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination pursuant to the order, dated January 26, 2024, issued by the U.S. Court of International Trade (CIT) in *American Pacific Plywood, Inc., et al. v. United States,* Consolidated Court No. 20-03914 (hereinafter, CIT Remand Order).[1]  This remand concerns CBP's affirmative determination as to evasion of the antidumping and countervailing duty orders (AD/CVD Orders) on certain hardwood plywood products from the People's Republic of China (China)[2] against importers American Pacific Plywood, Inc. (APPI); U.S. Global Forest, Inc. (Global Forest); and InterGlobal Forest, LLC (InterGlobal) (collectively, the Importers), under Title IV, Section 421 of the Trade Facilitation and Trade Enforcement Act of 2015, commonly referred to as "the Enforce and Protect Act" or "EAPA," as well as CBP's affirmative administrative review decision.[3]  The CIT previously sustained CBP's

---

[1] *See* Remand Order, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914 (Ct. Int'l Trade Jan. 26, 2024), ECF No. 94 (CIT Remand Order).
[2] *Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504, 504–13 (Dep't of Commerce Jan. 4, 2018) (AD Order); *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513, 513–16 (Dep't of Commerce Jan. 4, 2018) (CVD Order).
[3] *See* Notice of Determination as to Evasion in EAPA Investigation Number (No.) 7321 (June 29, 2020) (Business Confidential (BC) Document (Doc.) Number (No.) 204 and Public (Pub.) Doc. No. 98 (Determination)); *see also* Administrative Review Determination (Nov. 5, 2020) (BC Doc. No. 206 and Pub. Doc. No. 99) (Admin. Review).

determination of evasion.[4]  The Importers, as well as manufacturers LB Wood Cambodia Co., Ltd. (LB Wood) and Cambodian Happy Home Wood Products Co., Ltd. (Happy Home), filed an appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).[5]  However, while the matter was pending before the Federal Circuit, the Government filed a consent motion for voluntary remand.[6]

On January 26, 2024, the Federal Circuit granted the consent motion for a voluntary remand to permit CBP to make a determination based on the complete administrative record in light of the holding in *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) (hereinafter, *Royal Brush*), mandating that importers be provided business confidential information on which CBP relied to make its determination as to evasion.[7]  The Federal Circuit instructed the CIT to remand the matter to CBP for further proceedings, which the CIT did the same day, January 26, 2024.[8]  The CIT gave CBP 120 days to file a remand redetermination.[9]

On remand, CBP issued an administrative protective order (APO) to safeguard business confidential information from inappropriate access and use.  Parties to the investigation were required to submit an application to access the information under the APO to ensure only appropriate parties who were aware of and agreed to the terms of the APO

---

[4] Op., *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade June 22, 2023), ECF. No. 81 (Confidential Version) (Op.).  A public version of the opinion was also published.  *See Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, 2023 WL 4288346 (Ct. Int'l Trade June 2023).
[5] *Am. Pacific Plywood, Inc. v. United States*, Court No. 2023-2322, (Fed. Cir. Aug. 23, 2023), ECF. Nos. 91, 92.
[6] Consent Motion to Voluntarily Remand, *Am. Pacific Plywood, Inc. v. United States*, Court No. 2023-2321, 2023-2322 (Fed. Cir. Nov. 15, 2023) (CBP Motion for Remand), ECF No. 18.
[7] *Am. Pacific Plywood, Inc. v. United States*, Court Nos. 2023-2321, 2023-2322 (Fed. Cir. Jan. 26, 2024) (Federal Circuit Remand Order).
[8] *Id.*
[9] CIT Remand Order at 1.

were granted access.  CBP reopened the administrative record and provided the parties with instructions about how to access business confidential information previously unavailable to them during the original administrative proceedings.  On remand, parties to the investigation were then able to submit rebuttal evidence in response to this business confidential information and were also provided an opportunity to submit written arguments.

As explained below, after considering the administrative record, including the rebuttal evidence and written arguments submitted on remand, CBP continues to find that APPI, Global Forest, and InterGlobal entered covered merchandise into the customs territory of the United States through evasion.

## II.    BACKGROUND

### A.  Investigation and Initial Determination

On June 26, 2019, CBP's Trade Remedy Law Enforcement Directorate (TRLED) initiated an EAPA investigation after it found that allegations submitted by the Coalition for Fair Trade of Hardwood Plywood (Coalition or Alleger) reasonably suggested that the Importers had evaded the AD/CVD Orders on certain hardwood plywood products from China.[10]  Specifically, in its allegations, the Coalition alleged that the Importers had evaded the AD/CVD Orders by transshipping Chinese-origin plywood through Cambodia.[11]  The Alleger explained that since the AD/CVD Orders had been put in place, Chinese exports of the merchandise to the United States decreased while Cambodian exports of the merchandise to the United States increased.[12]  The Coalition provided import and export data to

---

[10] *See* AD Order/CVD Orders; *see also* Notice of Initiation of Investigation and Interim Measures – EAPA Consol. Case 7321 (Oct. 1, 2019) (BC Doc. No. 40 and Pub. Doc. No. 44) (hereafter, "NOI").
[11] *Id*. at 2.
[12] *Id*. at 2-3.

substantiate this representation.[13]  Amongst other considerations in analyzing whether the evidence in the allegation reasonably suggested evasion, TRLED found that "{b}ecause Cambodia has very limited domestic production and consumption of plywood, it seems unlikely that the recent increase in Chinese-origin plywood exports to Cambodia is driven chiefly by Cambodia's consumption or production needs."[14]  Moreover, based on available data that indicated Cambodia's production of plywood was slightly less than its consumption, TRLED reasoned that Cambodia's increased exports of plywood to the United States were not attributed to a surplus of production above the amount of plywood consumed domestically.[15]  Therefore, TRLED found that the evidence reasonably suggested that some Chinese exports of plywood were transshipped through Cambodia to the United States.[16]

CBP issued a Notice of Initiation of Investigation and Interim Measures on October 1, 2019, advising the Importers and the Alleger of the investigation as well as the imposition of interim measures pursuant to 19 C.F.R. § 165.24(b), given that the agency had a reasonable suspicion that the Importers entered covered merchandise into the United States through evasion.[17]  The period of the investigation (POI) began on June 5, 2018, and went through the pendency of the investigation.[18]  Pursuant to the interim measures, CBP suspended the liquidation of the importers' entries entered after the initiation of the investigation on June 26, 2019; extended the period for liquidation for all unliquidated entries that entered before the initiation of the investigation; and required cash deposits for any unliquidated entries.[19]

---

[13] *Id*. at 3.
[14] *Id*. at 6.
[15] *Id*.
[16] *Id*.
[17] *Id*. at 7-9.
[18] *Id*. at 2; *see also* 19 C.F.R. § 165.2.
[19] NOI at 9; *see also* 19 C.F.R. § 165.24.

During the investigation, CBP placed information regarding the entry and production of certain entries of plywood it received from the importers and manufacturers on the record.[20] CBP also placed information on the record concerning CBP site visits to the purported Cambodian manufacturers of the merchandise — LB Wood and Happy Home — that occurred on June 6, 2018.[21] CBP issued its determination as to evasion on June 29, 2020, in which it determined that the Importers had evaded the AD/CVD Orders.[22] Specifically, CBP determined that substantial evidence on the administrative record demonstrated that the Importers had imported Chinese-origin plywood into the United States, which had been transshipped through Cambodia and was declared as Cambodian in origin upon entry to the United States.[23] CBP highlighted several pieces of evidence that served as the basis for its determination, including: the manufacturers' extensive connections to China, CBP personnel's observations during the 2018 site visits to LB Wood's and Happy Home's Cambodian manufacturing facilities, and a multitude of discrepancies and inconsistencies in the documentation that the Importers and manufacturers provided to CBP throughout the investigation.[24]

On November 5, 2020, CBP's Regulations & Rulings Directorate (R&R) issued an administrative review decision based on a *de novo* consideration of the administrative record.[25] R&R explained that "the import data, coupled with the evaluation of the production

---

[20] *See generally* Determination.

[21] Memorandum to the File Adding Certain Documents to the Administrative Record for EAPA Cases 7321, 7323, 7327 (Sept. 12, 2019) (BC Doc. No. 37 and Pub. Doc. No. 38) (CBP Site Visit Memo); *see also* CBP Memorandum to the File Adding Certain Documents to the Administrative Record (Sept. 13, 2019) (BC Doc. No. 38 and Pub. Doc. No. 39) at 83, 91 (Sept. 13, 2019 Memo).

[22] *See* Determination.

[23] *Id*. at 9-10, 16-17.

[24] *Id*.

[25] Admin. Review. The Importers and manufacturers filed requests for administrative review. However, only the Importers' requests were accepted because only parties to the investigation may seek administrative review before R&R. *Id*. at 2; *see also* 19 C.F.R. § 165.41(a).

capabilities at the factories, discrepancies in the record evidence and unsubstantiated production quantities" support a conclusion that LB Wood and Happy Home supplied Chinese-origin plywood to the Importers, "which was falsely designated as made in Cambodia when imported into the United States."[26]

### B.  U.S. Court of International Trade

After the issuance of the administrative review decision, the Importers filed three separate lawsuits at the CIT,[27] which were consolidated.[28]  In a June 22, 2023 opinion, the CIT upheld CBP's determination that the Importers had engaged in evasion.[29]  The CIT found that the Plaintiffs did not establish any protected interest for due process purposes that entitled them to procedures other than what CBP followed during its investigation.[30]  The court further found that the totality of the evidence on the record established a "reasonable suspicion" that covered merchandise was entered into the United States through evasion and that Plaintiffs' arguments about lack of access to business confidential information during the investigation lacked merit.[31]  Correspondingly, the court determined that CBP's implementation of interim measures was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.[32]  Ultimately, the court concluded that CBP applied the correct

---

[26] Admin. Review at 21.
[27] Summons, *Am. Pacific Plywood, Inc. v. United States*, Court No. 20-3914, (Ct. Int'l Trade Dec. 17, 2020), ECF No. 1; Summons, *U.S. Global Forest, Inc. v. United States*, Court No. 20-3915 (Ct. Int'l Trade Dec. 17, 2020), ECF No. 1; Summons, *InterGlobal Forest, LLC v. United States*, Court No. 20-3916 (Ct. Int'l Trade Dec. 17, 2020), ECF No. 1.  These cases were eventually consolidated.  *See Am. Pacific Plywood, Inc., et al. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Feb. 25, 2021), ECF. No. 29 (Consol. Order).  The CIT granted the Coalition's motion to intervene as a defendant in the litigation.  Order, *Am. Pacific Plywood, Inc., et al. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Jan. 20, 2021), ECF. No. 16.  The CIT also granted LB Wood's and Happy Home's unopposed motions to intervene as Plaintiffs.  Order, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Feb. 18, 2021), ECF No. 23.
[28] Consol. Order.
[29] Op. at 44.
[30] *Id*. at 36.
[31] *Id*.
[32] *Id*.

substantial evidence standard and upheld the agency's determination as to evasion and the administrative review decision.[33]

### C.  United States Court of Appeals for the Federal Circuit

On August 18, 2023, the Importers, LB Wood, and Happy Home filed a notice of appeal of the CIT's judgment.[34]  While the appeal was pending, the Federal Circuit issued an opinion in *Royal Brush*, in which the Federal Circuit determined that due process required that importers be provided business confidential information on which CBP relied to make its determination as to evasion.[35]  Thus, in the case at hand, CBP moved for voluntary remand on November 15, 2023, given *Royal Brush*.[36]  CBP acknowledged that "its treatment of confidential business information during the underlying EAPA investigation was inconsistent with" the *Royal Brush* opinion,[37] and therefore requested that the Federal Circuit remand the matter to the CIT.[38]  On January 26, 2024, the Federal Circuit granted the Government's motion and remanded the appeals to the CIT "with instructions to remand to {CBP} for further proceedings consistent with *Royal Brush*."[39]

---

[33] Op. at 44.
[34] Notice of Appeal, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Aug. 18, 2023), ECF No. 88 (APPI, Global Forest, LB Wood, and Happy Home); Notice of Appeal, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Aug. 18, 2023), ECF No. 89 (InterGlobal).  The Federal Circuit docketed the appeals on August 23, 2023.  The Federal Circuit also consolidated the appeals.  *See* Order, *Am. Pacific Plywood, Inc. v. United States*, Court No. 2023-2322 (Fed. Cir. Sept. 8, 2023), No. 9.
[35] *Royal Brush*, 75 F.4th at 1262-63.
[36] CBP Motion for Remand.
[37] CBP Motion for Remand at 3.
[38] *Id.* at 4.
[39] *Id.*; *see also* Federal Circuit Remand Order.

### D. Remand Proceedings

In a consent motion filed on March 1, 2024, the Government requested that the CIT enter a judicial protective order that would cover the remand proceedings or extend the judicial protective order previously in place in the litigation to the remand proceedings.[40]  On March 5, 2024, the CIT denied the agency's request to extend the judicial protective order given that "{t}he court ha{d} no authority to superintend the executive branch's conduct of administrative proceedings."[41]

On March 11, 2024, TRLED informed the parties to the investigation that in compliance with the Remand Order, CBP was reopening the administrative record for a limited time.[42]  The parties were instructed that they would be given access to business confidential information on the administrative record under an APO.[43]  The parties were also informed that any business confidential information filed during the remand proceedings would be filed under the APO.[44]

In a March 11, 2024 message to the parties, CBP invited counsel for the Coalition, APPI, InterGlobal, and Global Forest to submit a request for access to the business confidential information under the APO.  All applicants had to agree to be bound by the

---

[40] *See* Defendant's Consent Motion for Amended Protective Order, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Mar. 1, 2024), ECF No. 95.
[41] Order, *Am. Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-3914, (Ct. Int'l Trade Mar. 5, 2024), ECF No. 96, at 2.
[42] Email from Tobias Vandall, Int'l Trade Analyst, Enforce and Protect Act Investigations, to Parties to the Investigation, Re: EAPA 7970 (Remand 7321) – Opportunity to Submit Additional Evidence under APO, sent Mar. 11, 2024 (CBP Mar. 11, 2024 Email).
[43] *Id.*
[44] *Id.*

terms of the APO to ensure proper use and handling of business confidential information.[45]
The APO was placed on the record on March 11, 2024.[46]

CBP gave the parties until 5 pm Eastern Time (ET) on March 25, 2024, to submit
rebuttal evidence to the business confidential information on the record that was not available
to the parties during the original administrative proceedings.[47]  The parties were required to
comply with filing requirements in 19 C.F.R. § 165.4 and 165.26 in submitting any rebuttal
information, including public summarization of any business confidential information so that
a public version of the record was maintained.[48]  On March 22, 2024, InterGlobal submitted
a 30-day extension request to submit rebuttal evidence.[49]  On that same day, APPI filed a
similar request for a 30-day extension of time to file rebuttal information.[50]

On March 25, 2024, CBP responded to the requests for extensions by granting all
parties a partial extension to submit rebuttal evidence and provided a new deadline of 5 pm

---

[45] *Id.*

[46] Administrative Protective Order for Remand 7321, issued by CBP Mar. 11, 2024.  On March 15, 2024,
counsel for all parties to the investigation filed APO applications.  *See* Letter from APPI and U.S. Global to
CBP, Re: EAPA 7970 (Remand 7321) – Request for Disclosure of Business Information under Administrative
Protective Order, dated Mar. 15, 2024; Letter from the Coalition to CBP, Re: Certain Hardwood Plywood
Products from the People's Republic of China transshipped through Cambodia (Period of Investigation: June 5,
2018 –June 29, 2020: Coalition for Fair Trade of Hardwood Plywood's Application for Disclosure of Business
Confidential Information Under Administrative Protective Order, dated Mar. 15, 2024; Letter from InterGlobal,
Letter Requesting Disclosure of Business Confidential (BC) Information Under Administrative Protective Order
(APO), dated March 15, 2024.  On March 19, 2024, CBP made available a list of the representatives of the
parties to the investigation who were granted access to business confidential information under the APO.  *See*
Public List for Remand 7321, issued by CBP Mar. 19, 2024.  All parties to the investigation had representatives
approved for access to the business confidential information.

[47] CBP Mar. 11, 2024 Email.

[48] *Id.*

[49] Letter from InterGlobal, Re: EAPA 7970 (Remand 7321) – Extension of Time Request CIT 20-03914,
American Pacific Plywood, Inc. v. United States, dated Mar. 22, 2024.  In this letter, InterGlobal additionally
indicated that none of the business confidential information had yet been loaded in the EAPA portal and noted
that CBP had indicated that it would not be serving the business confidential version of the record on CMS.

[50] Letter from APPI, Re: EAPA 7970 (Remand 7321) – Extension of Time Request CIT 20-03914, American
Pacific Plywood, Inc. v. United States, dated Mar. 22, 2024.

Page **9** of 55

ET, April 4, 2024.[51]  InterGlobal responded the same day noting remaining concerns about not being provided the business confidential information via CMS.[52]

On March 27, 2024, CBP responded to InterGlobal's March 25, 2024 letter, indicating that even though the counsel to the parties already have access to the business confidential records by way of having been served the record during the litigation, CBP would place the documents on CMS.[53]  CBP extended the deadline to submit rebuttal evidence to 3 pm ET, April 11, 2024.[54]  On April 10, 2024, InterGlobal submitted rebuttal information which consisted of a declaration of Kurt Winn, Chief Operating Officer of InterGlobal.[55]  On April 11, 2024, InterGlobal submitted written arguments.[56]  On April 12, 2024, InterGlobal filed rebuttal evidence that consisted of a declaration of Fu Wenjie, the General Manager of LB Wood Cambodia Co., LTD.[57]  The Alleger, APPI, and Global Forest did not submit rebuttal

---

[51] CBP Memorandum to the File, "EAPA Remand 7321 – Response to American Pacific Plywood, Inc. and Interglobal Forest, LLC's March 22, 2024, Request for Extension to Submit Rebuttal Information in Remand Proceeding for American Pacific Plywood, Inc., et al., v. United States, Consolidated Court No. 1:20-cv-03914," dated Mar. 25, 2024.

[52] Letter From InterGlobal, Re: EAPA 7970 (Remand 7321) – Failure to provide Business Confidential Information in Compliance with Order to Remand from the U. S. Court of International Trade to Customs and Border Protection in American Pacific Plywood, Inc., et al., v. United States, Consolidated Court No. 1:20-cv-03914, dated January 26, 2024, dated Mar. 25, 2024.  In this letter, InterGlobal stated that it disagreed with CBP not providing the full administrative record via CMS as it "leaves {InterGlobal} to speculate as to what portions of the massive confidential administrative record constitute 'confidential information not available during the investigation' that {CBP} relied upon in making its determination, and thus subject to rebuttal."  InterGlobal also raised the concern that not filing the business confidential information currently protected via the JPO on CMS may make the information not subject to the APO for the remand such that parties could violate the JPO in using the information during the remand.  InterGlobal further requested an additional 30 days to provide rebuttal evidence once the business confidential information was filed via CMS.

[53] CBP Memorandum to the File, "EAPA Remand 7321 – Response to Interglobal Forest, LLC's March 25, 2024, Request for Extension to Submit Rebuttal Information in Remand Proceeding for American Pacific Plywood, Inc., et al., v. United States, Consolidated Court No. 1:20-cv-03914," dated Mar. 27, 2024 (Mar. 27, 2024 CBP Memo).

[54] Id.

[55] Declaration of Kurt Winn (Apr. 10, 2024), filed Apr. 10, 2024. The version filed on April 10, 2024 was deleted after an updated version was filed.

[56] Letter from InterGlobal, Re: EAPA 7970 (Remand 7321) – Respondent Interglobal Forest LLC's Written Arguments And Rebuttal Evidence, dated Apr. 11, 2024.  This document was deleted from the record after an updated version was filed.

[57] Declaration of Fu Wenjie (April 11, 2024), filed April 12, 2024 (Wenjie Declaration).  This document was received after the deadline for rebuttal evidence, and CBP inadvertently accepted it into the record.

evidence.  On April 12, 2024, CBP noted that InterGlobal had placed rebuttal information on the record such that CBP was providing the parties to the investigation an opportunity to submit written arguments addressing that rebuttal information.[58]  CBP provided the parties until 5 pm ET on April 19, 2024, to submit such written arguments.[59]  CBP further advised the parties that no new factual information was to appear in the written argument submissions and noted that the parties would have an opportunity to review the draft remand redetermination and provide comments before that determination was finalized.[60]

On April 19, 2024, the Coalition submitted written arguments.[61]  Amongst other issues raised, the Coalition noted that it appeared that there may have been a violation of the APO.[62]  Consequently, on April 25, 2024, CBP advised counsel for InterGlobal that the declarations of Mr. Winn, submitted on April 10, 2024, and of Mr. Wenjie, submitted on April 12, 2024, contained business confidential information subject to the APO.[63]  CBP requested that counsel explain how the declarants were able to access such information given that these individuals were not on the list of authorized recipients and advised that a response should be submitted by 12 pm ET on April 26, 2024.[64]  On April 26, 2024, CBP advised the parties that certain information was being struck from the administrative record and instructed the parties to file updated versions of certain documents to reflect the information being removed from

---

[58] Email from Tobias Vandall, Int'l Trade Analyst, Enforce and Protect Act Investigations, to Interested Parties, Re: EAPA Remand 7321 – Opportunity to Submit Written Arguments, sent Apr. 12, 2024.

[59] *Id.*

[60] *Id.*

[61] Written Arguments of Coalition for Fair Trade in Hardwood Plywood, dated April 19, 2024.  Only InterGlobal and the Coalition submitted written arguments.

[62] *Id.* at 1-2.

[63] Email from Patricia Tran, Int'l Trade Analyst, Enforce and Protect Act Investigations, to InterGlobal, Re: EAPA 7970 (REMAND 7321) - Remand from the Court of International Trade in American Pacific Plywood, Inc. v. United States, Consol. Ct. No. 20-03914, sent Apr. 25, 2024.

[64] *Id.*

the record.[65]  On April 30, 2024, InterGlobal submitted updated written arguments and an

updated version of the declaration of Mr. Winn.[66]  Finally, on May 1, 2024, the Coalition

submitted updated written arguments.[67]

On May 10, 2024, CBP issued the draft remand redetermination to the parties,

informing them that any comments were due no later than May 17, 2024, at 5 pm ET.[68]

InterGlobal and the Coalition were the only parties to submit written comments by the stated

deadline.[69]

## III.    ISSUES ON REMAND

### A.  *Royal Brush*

As described in the agency's motion for remand, the Federal Circuit held in *Royal*

*Brush* that there "is no legitimate government interest {} in refusing to provide confidential

business information" that it relies upon in making a determination of evasion when any such

"concerns about the necessity of secrecy can be alleviated by issuing a protective order{.}"[70]

The purpose of this remand was to provide the parties with access to the business

confidential information on the administrative record and allow them to submit rebuttal

---

[65] Email from Patricia Tran, Int'l Trade Analyst, Enforce and Protect Act Investigations, to the Coalition, Re: EAPA 7970 (REMAND 7321) - Remand from the Court of International Trade in American Pacific Plywood, Inc. v. United States, Consol. Ct. No. 20-03914, sent Apr. 26, 2024.
[66] *See* Declaration of Kurt Winn (Apr. 30, 2024), filed Apr. 30, 2024 (Winn Declaration); *see* Letter from InterGlobal to CBP, Re: EAPA 7970 (Remand 7321) – Respondent Interglobal Forest LLC's Written Arguments And Rebuttal Evidence, dated Apr. 30, 2024 (InterGlobal Written Arguments).
[67] Written Arguments of Coalition for Fair Trade in Hardwood Plywood, dated May 1, 2024 (Coalition Written Arguments).
[68] *See* Email from Tobias Vandall, Int'l Trade Analyst, Enforce and Protect Act Investigations, to Parties to the Investigation, Re: EAPA Remand 7321 (CMS 7970) – Opportunity to Comment on Draft Remand Redetermination, sent on May 10, 2024 (May 10, 2024 Email).
[69] *See* IGF's Written Comments on Draft Remand Redetermination, dated May 17, 2024 (InterGlobal Comments); *see also* Comments on the Draft Remand Redetermination, Coalition for Fair Trade in Hardwood Plywood, dated May 17, 2024 (Coalition Comments).
[70] *See Royal Brush*, 75 F.4th at 1259.

evidence and written arguments in light of the information that was unavailable to them in the original administrative proceedings.  As described above, on remand, the parties to the investigation were provided access to the business confidential information on which CBP relied to make its initial determination as to evasion and administrative review decision.  The parties were able to submit rebuttal evidence to that business confidential information and were permitted to submit written arguments.

### B.  Evasion Determination

As an initial matter, CBP incorporates by reference the June 29, 2020 determination of evasion where the facts supporting the finding of evasion are discussed in depth and further incorporates by reference the administrative review decision issued November 5, 2020, which similarly discusses the information upon which CBP relied to affirm the determination of evasion.[71]   Below, CBP addresses the rebuttal evidence added to the record as a result of the remand proceedings allowing access to business confidential information on which the agency relied in continuing to find evasion after reviewing both the underlying record from the original administrative proceedings and the remand record documents.  CBP also highlights relevant portions of its prior determination as to evasion and administrative review decision to address the written arguments submitted by the parties on remand, which it also considered as part of the combined administrative record.

### i.  New Rebuttal Evidence

InterGlobal (or Importer herein) was the only importer that submitted rebuttal evidence on remand.  The rebuttal information consisted of a declaration from its Chief

---

[71] *See* Determination; Admin Review.

Operating Officer, Kurt Winn, which included photographic exhibits,[72] and a declaration

from Mr. Fu Wenjie, General Manager of LB Wood.[73]  Mr. Winn's declaration conveys the

relationship between LB Wood and InterGlobal, the history of that relationship, Mr. Winn's

visits to LB Wood's facilities during 2018, and other inspections of LB Wood by [

COMPANY NAME ] and independent, local inspectors.[74]  The pre-remand record already

contained a report from [ COMPANY NAME ] as well as photographs purportedly

evidencing the production equipment and personnel of LB Wood that Mr. Winn took during

his trips to that facility.[75]  As the Coalition points out in its written arguments, Mr. Winn's

declaration is largely duplicative of evidence that was already on the administrative record,

including accounts of visits to LB Wood in 2018 by InterGlobal personnel and corresponding

[    EVENT DESCRIPTION    ][76] and a report by [ COMPANY NAME AND EVENT

DESCRIPTION ].[77]

    CBP finds that the additional information submitted on remand, if anything, supports

the conclusions previously reached by the agency.  For example, the Coalition persuasively

argues that the claim that, for POI entries, a company known as [COMPANY NAME]

provided pricing to InterGlobal for plywood which would be shipped from Cambodia is

---

[72] Winn Declaration.

[73] Wenjie Declaration.

[74] Winn Declaration.

[75] Letter from deKieffer & Horgan, PLLC to CBP, Re: EAPA Con. Case No. 7321 – InterGlobal Forest
Questionnaire Response (Dec. 16, 2019) at Exhibit SQ1-5, (InterGlobal Dec. 16, 2019 Response) (Pub. Doc.
No. 86 and BC Doc. No. 164); Letter from deKieffer & Horgan, PLLC to CBP, Re: EAPA Con. Case No. 7321
– InterGlobal Forest Questionnaire Response (Oct. 28, 2019) at 3-4 and Exhibit 2, (InterGlobal Oct. 28, 2019
Response) (Pub. Doc. No. 61 and BC Doc. No. 50).

[76] *See* Coalition Written Arguments at 4-5; InterGlobal Oct. 28, 2019 Response at 3-4 and Exhibit 2 (Pub. Doc.
No. 86 and BC Doc. No. 164); InterGlobal Dec. 16, 2019 Response at 3-4 (Pub. Doc. No. 61 and BC Doc.
No.50).

[77] *See* Coalition Written Arguments at 8; InterGlobal Dec. 16, 2019 Response at Exhibit SQ1-5 (Pub. Doc. No.
86 and BC Doc. No. 164).

"highly suspicious."[78]  Mr. Winn's declaration divulges that [ COMPANY NAME AND PROCEDURE DECRIPTION ], only decided to invest in LB Wood in December 2017, yet at that same time, [COMPANY NAME] was able to provide Interglobal with pricing for plywood exported from Cambodia.[79]  CBP agrees with the Coalition that the pricing of merchandise to be manufactured at a given facility would require an understanding of the particular factory, its operating expenses, and the required materials and related costs. InterGlobal does not demonstrate that either it or LB Wood had prior experience in the Cambodian market for plywood or manufacturing in that country; thus, they would lack knowledge to accurately price the goods for a potential buyer.  As the Coalition cites in its written arguments, LB Wood's [ DATE AND DOCUMENT TYPE ] reflects that there was no [                        DOCUMENT DESCRIPTIONS                        ] such that it appeared LB Wood would not be able to base its pricing off of production already occurring.[80]  CBP agrees that this information buttresses the conclusion that the POI entries were of goods made not in Cambodia, but in China.

Mr. Winn's declaration provides further corroboration of the close relationship between [COMPANY NAME] and LB Wood, as [ COMPANY POSITION ] sent emails related to LB Wood's operations during [YEAR].[81]  As explained during the investigation, CBP found that LB Wood was [                        COMPANY NAME AND PROCEDURE DESCRIPTION   ].[82]  The agency was not persuaded by LB Wood's claims regarding [COMPANY NAME]'s lack of involvement in the sale or production of its

---

[78] *See* Coalition Written Arguments at 6; Determination at 3.
[79] *See* Coalition Written Arguments at 6; Determination at 3.
[80] *See* Coalition Written Arguments at 6.
[81] *See* Winn Declaration ¶¶ 6-8.
[82] *See* Determination at 7; Admin Review at 14-15.

plywood.[83]  Nothing provided in the declaration on remand convinces CBP to reverse its
determination of evasion.

Mr. Winn references independent, local inspectors hired to review production of
merchandise destined for InterGlobal but does not identify them or other evidence of their
work at LB Wood.  Mr. Winn [ ACTION DESCRIPTION ] but does not clearly describe their
relationship to the purported local inspectors.[84]  According to the Coalition, while such [
DOCUMENT TYPE  ] were submitted during the initial investigation, it does not appear they
were prepared by [ POSITION DESCRIPTION ].[85]  As the Coalition observes, first, the
documents [             SITUATION DESCRIPTION                ]; second, they are all
signed [ POSITION DESCRIPTION ]; third, the records are [ LANGUAGE DESCRIPTION
]; and fourth, the records are included in production documents for goods that were [
PROCEDURE DESCRIPTION       ] despite the inspectors working for InterGlobal.[86]

In its comments on the Draft Remand Redetermination, InterGlobal alleges that "CBP
mistakenly states that Mr. Winn 'cites [          DOCUMENT TYPE AND POSITION
DESCRIPTION      ]'" and objects to this "gross misstatement" of the Winn Declaration.[87]
Instead, Counsel for InterGlobal explained in its comments on the Draft Remand
Redetermination that Mr. Winn's declaration only expressed that "'there was a team of in-
factory inspectors employed by {InterGlobal}' and that if some plywood was rejected then it

---

[83] *See* Determination at 7-8.  *See also* Admin. Review at 15.
[84] Winn Declaration ¶ 37.
[85] Coalition Written Arguments at 7-8.
[86] For these contentions, the Coalition cites: Winn Declaration, ¶¶ 14-15, 37; *see also, e.g.*, LB Wood Dec. 16
Response at Exhibit SQ1-2 ([ DESCRIPTION ]), (Pub. Doc. No. 87 and BC Doc. No. 165).  *Compare* LB Wood
Nov. 8 Response at Exhibit 1, (Pub. Doc. No. 68 and BC Doc. No. 113) ([  EVENT DESCTIPTION  ]) *with* LB
Wood Dec. 16 Response at Exhibit SQ1-2 ([    DOCUMENT DESCRIPTION    ]), (Pub. Doc. No. 87 and BC
Doc. No. 165) *and* [           DOCUMENT DESCRIPTION      ], (Pub. Doc. No. 68 and BC Doc. No. 121).
[87] InterGlobal Comments at 6.

would be reflected on the [ DOCUMENT DESCRIPTION ]."[88]  In its comments on the Draft

Remand Redetermination, Counsel for InterGlobal states that these [DOCUMENT TYPE]

were actually made by LB Wood.[89]  CBP modifies the language in this Remand

Redetermination to indicate that the involvement of the local inspectors in the creation and

completion of such [DOCUMENT TYPE] was unclear based on the language of the

declaration alone.  That said, given that these reports were admittedly made by LB Wood,

they are not persuasive to show that local inspectors were present at LB Wood.  CBP remains

unaware of any documentation produced by the purported local inspectors hired by

InterGlobal that would establish their presence at the manufacturing facility.

      InterGlobal additionally submitted a declaration by Mr. Fu Wenjie, General Manager

of LB Wood, which was inadvertently accepted onto the record despite it being late.[90]  While

normally CBP would have rejected this submission and not considered the document, it is not

of consequence here as it adds no substantive value in that it merely restates information

already placed on the pre-remand administrative record.[91]  Only six paragraphs do not cite to

the underlying investigatory record, specifically paragraphs 2-3, 6, and 12-14.[92]  Of those,

the first two paragraphs, paragraphs 2 and 3, speak to Mr. Wenjie's ability to serve as an

affiant and which information constitutes business confidential information; paragraph 6

provides Mr. Wenjie's opinion about the June 6, 2018 CBP site visit that CBP believes is

outweighed by CBP's own employee's factual observations (that is, the CBP Site Visit

Memo); and, finally, paragraphs 12, 13, and 14 include a notation about Mr. Winn's and two

---

[88] *Id.* at 6-7.
[89]  *Id*. at 7.
[90] Wenjie Declaration.
[91] *Id,* at ¶¶ 4-5, 7-11, 15-24.
[92] *Id.* at ¶¶ 2-3, 6, 12-14.

other individuals' purported visits to LB Wood, an opinion about CBP's observations relative to production capacity and product quality, and the dates that InterGlobal visited LB Wood's Cambodian facilities, respectively.  Thus, for the six paragraphs purportedly providing "new" information on remand, CBP affords no weight to that information, given that it either provides a subjective opinion or offers no new substantive information warranting a reversal of CBP's determination of evasion.

## IV.    WRITTEN ARGUMENTS

Only InterGlobal and the Coalition submitted written arguments.  InterGlobal's written arguments largely mirror arguments it raised during the initial investigation and administrative review as well as arguments raised before the CIT.  As described above, InterGlobal submitted rebuttal information, in the form of a declaration from Mr. Winn, and a declaration from Mr. Wenjie.  CBP responds to InterGlobal's and the Coalition's written arguments below.

While InterGlobal claims that Mr. Winn's declaration is persuasive inasmuch as it purportedly substantiates LB Wood's production process and capacity information, the declaration actually confirms several findings CBP made in its determination of evasion, including: InterGlobal was purchasing Chinese plywood before the AD/CVD Orders were implemented, LB Wood was founded in December 2017, the General Manager of LB Wood was previously employed by [COMPANY NAME], LB Wood operated out of the Sihanoukville Special Economic Zone (SSEZ), and InterGlobal began purchasing plywood from LB Wood around the time the AD/CVD Orders went into effect.[93]  CBP also notes that,

---

[93] Winn Declaration at ¶¶ 4, 6-9, 11, 33.

once again, InterGlobal attempts to pick apart the evidence the agency relied upon and look at it piecemeal rather than view the evidence as a whole; the CIT already determined that such an approach was not appropriate.[94]

InterGlobal states in its written arguments that CBP relied on allegations that InterGlobal was transshipping Chinese plywood through Vietnam per EAPA investigation Number 7252 to conclude that InterGlobal was also transshipping Chinese plywood through Cambodia.[95]  InterGlobal cites to statements on the record contained in CBP's June 26, 2019 Memorandum to File on the Initiation of Investigation for EAPA Case Number 7321, particularly: "In consideration of a potential finding of evasion in {EAPA 7252}, it is a reasonable conclusion that an importer capable of transshipping Chinese-origin hardwood plywood through Vietnam is capable of transshipping Chinese-origin hardwood plywood through its southwestern neighbor Cambodia as well."[96]

InterGlobal misinterprets the weight of the existence of EAPA 7252 on the agency's determination in EAPA 7321.  While CBP mentioned the existence of the other investigation in its Notice of Initiation and Interim Measures, given that the Coalition raised it, CBP did not initiate an investigation or implement interim measures solely based on that investigation.[97]  Notably, the agency's final determination did not even mention EAPA 7252, and the agency's administrative review simply recognized that the proceedings for that case had been temporarily stayed as the result of a covered merchandise referral.[98]  More

---

[94] Op. at p. 27 ("it is inappropriate to flyspeck the evidence piece-by-piece to analyze what each shows or does not show – the question is what all the evidence at the relevant stage of the investigation showed.").
[95] InterGlobal Written Arguments at 11.
[96] *Id.* at 11-12 (quoting June 26, 2019 Memorandum to File: Initiation of Investigation for EAPA Case Number 7321 – Interglobal Forest, LLC at 5, ¶ 3) (BC Doc. No. 35 and Pub. Doc. No. 33).
[97] NOI at 4.
[98] Determination; Admin Review.

specifically, in its administrative review decision, R&R stated that the determination of evasion in EAPA 7252 was not final given a covered merchandise inquiry was sent to the U.S. Department of Commerce to determine whether the merchandise was within the scope of the AD/CVD orders at issue in that case.[99]  In fact, at the time that TRLED issued its determination in this case, the agency had stayed its administrative proceedings in EAPA 7252.[100]  Given the lack of any substantive reference to EAPA 7252 in either the determination or administrative review decision, it cannot be said that CBP relied on the existence of EAPA 7252 to find evasion.  Even then, nothing prevents CBP from placing information obtained from other investigations on the record of the present proceeding.[101] InterGlobal's assertion, on remand, that CBP relied on EAPA 7252 to find evasion in this case is therefore baseless.

InterGlobal further asserts that the trade data contained in the Coalition's allegations, regarding Chinese exports of hardwood plywood to the United States decreasing from 2017 to 2018 and Chinese exports of hardwood plywood to Cambodia as well as exports of the same merchandise from Cambodia to the United States increasing during the same period, is "unreliable and irrelevant."[102]  InterGlobal states that the data was from "years before the relevant Period of Investigation."[103]  InterGlobal cites to the Forestry Customs Yearbook from 2018 as well as UDdata to indicate that plywood production in Cambodia "had a mammoth boom beginning in 2018."[104]  Therefore, according to InterGlobal, CBP's reliance

---

[99] Admin Review at 13.
[100] Id.
[101] 19 U.S.C. § 1517 ("In making a determination under paragraph (1) with respect to covered merchandise, the Commissioner may collect such additional information as is necessary to make the determination through such methods as the Commissioner considers appropriate…").
[102] InterGlobal Written Arguments at 13.
[103] Id.
[104] Id. at 34.

on trade data in the Coalition's allegations to impose interim measures and determine evasion had occurred was improper.[105]  However, such a production boom was not evident when CBP conducted a site visit on June 6, 2018, which occurred contemporaneously with the POI for this matter, as explained below.  Further, CBP relied on the data available to it at the time of interim measures and the determination as to evasion.  LB Wood failed to substantiate its production capacity for the plywood it sold to the United States, and therefore, CBP determined that at least some of the plywood was made in China.[106]

InterGlobal highlights that the same import and export data was utilized in the allegations against all three of the importers, stating the data was "self-contradicting," and "bears no relationship whatsoever to…InterGlobal during the Period of Investigation…."[107] InterGlobal points to case law, which it interprets to mean that export and import data alone is not enough for Commerce to initiate a minor alteration circumvention inquiry.[108]  CBP's EAPA proceedings are wholly separate and apart from a minor alteration circumvention inquiry conducted by Commerce, and therefore, CBP does not believe the case is applicable to this remand proceeding.

In a further attempt to question the reliability of any import or export data, InterGlobal asserts that it is normal for companies to move production and exportation to a company with lower AD/CVD rates.[109]  CBP understands that such a move may, depending

---

[105] *Id*. at 13.
[106] *See* CBP Site Visit Memo; *see also* Determination at 7; Admin Review at 15.
[107] InterGlobal Written Arguments at 30.
[108] *Id.* at 31 (citing *Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283, 1295 (Ct. Int'l Trade 2019) ("The court acknowledges that evidence demonstrate that, since the initiation of the investigation, import volumes of plywood with both veneers of softwood increased drastically compared with plywood with at least one veneer of hardwood.  Although a substitution effect may be indicative of circumvention, it is not a sufficient cause for Commerce to initiate a minor alterations inquiry.")).
[109] *Id.* at 33.

on the specific facts, constitute legitimate activity in the ordinary course of business. However, it does not constitute legitimate activity if the products imported into the United States continue to remain within the scope of an AD or CVD order, but the relevant AD/CVD deposits are not made upon importation into the United States.  As explained throughout this document, CBP believes that the record evidence supports the agency's conclusion that the latter occurred in this case.  As CBP previously explained, LB Wood is located in the SSEZ, the company sourced most of its raw materials from [COUNTRY],[110] and, finally, there was not evidence that these materials underwent manufacturing steps that would render the products exported from LB Wood as no longer subject to the Orders for the entire duration of the POI.[111]  Therefore, regardless of the location of the foreign manufacturing facilities within Cambodia, there is substantial evidence that LB Wood provided Chinese-origin plywood to InterGlobal.

InterGlobal raised the very same concern about the reliability of the trade data at the administrative review stage.[112]  R&R determined that "the import data, coupled with the evaluation of production capabilities at the factories, discrepancies in record evidence and unsubstantiated production quantities, substantiate{d} TRLED's finding of evasion."[113] Therefore, the import and export data was only a piece of the evidence that CBP considered. CBP found that the United Nations' Food and Agriculture Organization (FAO) Yearbook provided the most accurate statistics regarding production figures because it is created using data supplied by the Cambodian Government.[114]  TRLED noted that the 2016 to 2017

---

[110] Determination at 6.
[111] Admin. Review at 19.
[112] InterGlobal Request for Administrative Review, August 10, 2020, at 28-30 (Pub. Doc. No. 101 and BC Doc. No. 207).  Admin. Review at 12.
[113] *Id.* at 21.
[114] *Id.* at 18.

Forestry Yearbook contained the most recently available data regarding Cambodian plywood production at the time, and that period ended only six months before the period of investigation began.[115]  Data from other United Nations publications has been determined to be reliable in other AD/CVD trade remedy cases.[116]  InterGlobal has not submitted any information for CBP to reach a different determination on remand.

InterGlobal argues, as it did at the administrative review stage, that CBP cannot rely on information on the record related to a June 6, 2018 site visit to [COMPANY NAME] and [COMPANY NAME] conducted by agency personnel to support the imposition of interim measures or the determination of evasion.[117]  InterGlobal first argues this point due to the fact that the materials on the record were based on agency personnel's year-old recollection of the visits.[118]  However, Mr. Winn's declaration is based on his six-year-old recollection of visits he purportedly made to the manufacturers, which, if InterGlobal's rationale were to be adopted, would be less reliable given the greater passage of time.[119]

The Importer stresses that the CBP visits were "unrelated" to the instant EAPA investigation.[120]  Further, the Importer refers to [ ACTION DESCRIPTION AND NAME ] regarding an [DESCRIPTION] site visit to [COMPANY NAME] on June 6, 2018, as [ DESCRIPTION ], though the materials are on the administrative record accessible to the parties.[121]  As R&R explained in its administrative review determination, although the CBP site visits were conducted as part of a [ EVENT DESCRIPTION ], the visits were

---

[115] Determination at 16.
[116] *Id.* at 16.
[117] InterGlobal Written Arguments at 13-14.
[118] *Id.* at 14.
[119] Winn Declaration ¶¶ 20-39.
[120] InterGlobal Written Arguments at 18.
[121] *Id.* at 18.

"sufficiently contemporaneous" with the period of investigation and "examined the same types of facts as relevant to this EAPA investigation so as to provide reliable, relevant and substantial evidence for purposes of the instant case."[122]

While information concerning the June 6, 2018 site visits was considered by CBP, this information was not the only information upon which CBP relied, as noted above.[123] Further, under the EAPA statute, as noted above, CBP is permitted to give credit to the observations of its own highly qualified personnel that are based on an [DESCRIPTION] visit near the period of investigation.  [NAME] is a [ POSITION ] for wood products and serves in a position that "carries with it the ability to make authoritative pronouncements pertaining to whether wood products are in or out of scope."[124]  Additionally, as InterGlobal points out in its written arguments, CBP explained its reliance on the statements related to the site visits given the expertise of the personnel in identifying wood products.[125]  InterGlobal also seemingly takes issue with the fact that CBP conducted an [ DESCRIPTION ] site visit to [COMPANY NAME].[126]  CBP conducts [DESCRIPTION] visits to ensure that a manufacturer does not have time to prepare for a visit and that the entity is operating as it normally would during any such visit.

InterGlobal claims that the June 6, 2018 site visit is dubious and that CBP did not substantiate the veracity of the CBP employee's statements but rather simply concluded that the employee possessed the requisite expertise to provide "authoritative pronouncements" on

---

[122] Admin. Review at 16.
[123] Further, InterGlobal raised some similar arguments about CBP's relying on its personnel's site visits before the CIT, and the CIT stated: "Plaintiffs attack Custom's reference to the June 2018 site visit for various reasons . . . . But again, the question is not what the agency found any one piece of evidence to show, but what the agency found the totality of the evidence to show."  Op. at 39.
[124] Determination at note 45; *see also* CBP Site Visit Memo.
[125] Determination at note 45.
[126] InterGlobal Written Arguments at 18.

wood products.[127]  While InterGlobal asserts that such "conclusory remarks" are not

substantial evidence, CBP's determination was not solely based on the observations of the

personnel who conducted the site visits, and CBP provided information underlying the

personnel's observations in those site visits.[128]  InterGlobal posits that it and LB Wood

submitted evidence on the record that established LB Wood purchased raw materials,

obtained machinery, and had employees that were sufficient to produce the quantity of

plywood imported by InterGlobal.[129]

      Contrary to InterGlobal's assertions that CBP merely concluded that its personnel had

the ability to make authoritative pronouncements, CBP did provide actual evidence in the

form of specific observations from the site visits placed on the record that could be rebutted,

and in fact, InterGlobal has tried to rebut the observations in its written arguments and the

declarations.[130]  Information on the record describes specific observations related to LB

Wood's machinery and how it "could not account for the finished plywood seen at the LB

Wood premises;" observations that the LB Wood facility "had a [DESCRIPTION] that was

small, broken up into multiple pieces, and covered with a thick layer of dust;" observations

of packaging of plywood destined for [COMPANY NAME ] with labels stating [LABEL

DESCRIPTION] meaning "it was [LABEL EXPLANATION]," which the CBP personnel

determined meant that any [DESCRIPTION] plywood leaving LB Wood's factory prior to

the June 2018 visit was not [DESCRIPTION] there; along with observations that the wood

---

[127] *Id.* at 19-20; Determination at 6, note 5; *see also* Request for Admin Review.
[128] *See* CBP Site Visit Memo; *see also* Sept. 13, 2019 Memo.
[129] InterGlobal Written Arguments at 20-21.
[130] *See* CBP Site Visit Memo.

present in the factory did not appear to be available in Cambodia based on the climate it in which it would be grown.[131]

InterGlobal claims that [ NAME ] description of the [DESCRIPTION] falsely gives the appearance that it was "a pile of junk" when in fact there were just small gaps between units bridged by plywood being processed and that the thin layer of [LAYER DESCRIPTION] is just residue.[132]  However, this claim misrepresents the intent of [ NAME ] statement, which indicated that the [

SITUATION DESCRIPTION        ]"[133]  Correspondingly, [ NAME ] photographs of the [

SITUATION DESCRIPTION

], both of which indicate that the machine was not operating.[134]  In contrast, a photograph from LB Wood's initial RFI, submitted almost a year and a half after the site visit, showed the [

SITUATION DESCRIPTION ], suggesting that is its appearance when it is in operation.[135]

InterGlobal also asserts that the photographs from InterGlobal of LB Wood's production facilities drastically differ from those TRLED placed on the record and alleged that either [ NAME ] only visited one workshop or only provided photos that supported TRLED's narrative.[136]  This claim is false.  Features from LB Wood's photograph of its [PHOTOGRAPH DESCRIPTION] and the surrounding factory provided in its initial RFI can be matched with the features of the [DESCRIPTION] and surrounding factory in [

---

[131] Admin. Review at 16; Determination at 6.
[132] InterGlobal Written Arguments at 24.
[133] CBP Site Visit Memo at 15.
[134] *Id.* at 16-19.
[135] LB Wood Nov. 8 Response at Exhibit 14, page 15 (BC Doc. No. 122).
[136] InterGlobal Written Arguments at 23.

NAME ] photographs.  First, in both sets of photographs, a [

PHOTOGRAPH DESCRIPTION ].[137]  Both sets of photographs show this [

PHOTGRAPH DESCRIPTION                         ].[138]  Second, both sets of photographs

indicate that the upper parts of the factory walls have the same type of [

PHOTOGRAPH DESCRIPTION          ].[139]  Both sets of photographs show the same [

PHOTOGRAPH DESCRIPTION                              ].[140]  Third, although portrayed

from a different angle, the [ DESCRIPTION ] in LB Wood's RFI has the same shape as the

one in [ NAME ] photographs.[141]  This [ DESCRIPTION ] in both sets of photographs has

[PHOTOGRAPH DESCRIPTION ] coming out of the top of it and ascending into the

previously mentioned [DESCRIPTION].[142]  Fourth, the same [

PHOTOGRAPH DESCRIPTION                       ] in both sets of photographs.[143]  Thus, the

effect of these corresponding features indicate that the facility [ NAME ] toured was in fact

LB Wood's facility and was the same [ DESCRIPTION ] present in LB Wood's photograph.

InterGlobal asserts that it is entitled to "each, every, and all other [DESCRIPTION]"

taken during the site visits conducted by CBP personnel in June of 2018.[144]  However, per 19

C.F.R. § 165.21(a), in relevant part, the administrative record is to contain "materials

obtained and considered by CBP during the course of an investigation."  TRLED placed the

information on the record about the visits that it considered in reaching the determination of

evasion.  In an EAPA investigation, InterGlobal is not entitled to information that is

---

[137] LB Wood Nov. 8 Response at Exhibit 14, page 15; *see also* CBP Site Visit Memo at 16-19.
[138] *Id.*
[139] *Id.*
[140] *Id.*
[141] *Id.*
[142] *Id.*
[143] *Id.*
[144] InterGlobal Written Arguments at 24.

speculated may exist but was not considered by TRLED.  Now having received access to business confidential information subject to an APO as part of the remand proceedings, InterGlobal has had access to all of the information on which CBP has relied, and InterGlobal has been afforded an opportunity to provide rebuttal evidence and make written arguments.

InterGlobal points out that, in its written arguments, the Coalition highlights that manufacturing facilities were located in the SSEZ, a part of China's "Belt and Road" initiative, which the Coalition alleged "was purposefully designed to link Chinese and Cambodian trading partners and facilitate the global dissemination of their products," implying that the manufacturers have ties to Chinese companies and are thus transshipping merchandise.[145]  However, InterGlobal asserts that, as the Coalition included in its allegations, the SSEZ is located nearby Cambodia's only deep-sea port.[146]  This, InterGlobal contends, explains why LB Wood and Happy Home, "export-oriented manufacturers," would be located in that area.[147]  InterGlobal admits there is "overwhelming evidence" that Chinese managers and supervisors were overseeing Cambodian workers at the manufacturing facilities.[148]

The presence of manufacturing facilities in the SSEZ was but one factor that CBP included in its final determination to find that the manufacturers had extensive connections to Chinese companies such that they were well-positioned to conduct transshipping.[149]  Further, the administrative review determination does not focus on this fact.[150]  As stated above,

---

[145] *Id.* at 15, 33.
[146] *Id.* at 33.
[147] *Id.* at 33.
[148] *Id.* at 19.
[149] Determination at 6.
[150] Admin. Review.

CBP's determination as to evasion was based on various pieces of evidence that came together to present a picture of what was occurring, and as the CIT pointed out in its opinion, again, InterGlobal is attempting to "flyspeck" the evidence but "they miss the forest for the trees."[151]

InterGlobal claims that CBP "defines the standard" to make an evasion determination as "its own 'reasonable mind.'"[152]  This is inaccurate.  The footnote InterGlobal cites to support this proposition states in relevant part: "Substantial evidence is not defined in the statute.  However, the Federal Circuit has stated that 'substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[153]  As the CIT explained in its opinion, CBP cited *A.L. Patterson, Inc. v. United States*, 585 Fed. Appx. 778 (Fed. Cir. 2014), which, while a nonprecedential opinion, included the correct standard.[154]  Substantial evidence is "more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[155]  CBP made it clear that its determination as to evasion and administrative review decision were both based on substantial evidence.[156]  The CIT noted that substantial evidence "does

---

[151] Op. at 27-28.

[152] InterGlobal Written Arguments at 16 (quoting Determination at note 32).

[153] Determination at note 32.

[154] *Id.*; Op. at 37.

[155] Op. at 37 (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003)).

[156] *See* Determination at 4-5 ("Under 19 USC 1517(c)(1)(A), to reach a final determination as to evasion in this case, CBP must, 'make a determination, based on substantial evidence, with respect to whether such covered merchandise entered into the customs territory of the United States through evasion.'"); *see, e.g.*, Determination at 5 ("Further, substantial evidence indicates that InterGlobal's, American Pacific's, and U.S. Global's imports were entered through evasion, resulting in the avoidance of applicable AD/CVD deposits or other security.); *see also* Administrative Review at 6-7 ("the Commissioner shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion") (quoting 19 U.S.C. § 1517(c)(1)); Admin. Review at 22 ("Substantial evidence exists that the Importers entered covered merchandise from China into the United States through evasion by failing to list the AD duty order A-570-051 and the CV duty order C-570-052 in the entry documents, and by listing the country of origin as Cambodia.").

not require concrete proof—rather, it asks whether a reasonable mind might accept the evidence to support a conclusion."[157]  CBP continues to apply this standard on remand.

It is also incorrect that "TRLED admitted that it could not show evasion."[158]  This claim is based on the statement in CBP's determination of evasion that the importers "likely" commingled Chinese plywood with Cambodian plywood.[159]  InterGlobal takes this to mean that CBP's determination is mere speculation, particularly given that no specific entry is provided which contained transshipped merchandise.[160]  However, as CBP demonstrated in both its initial determination and the *de novo* administrative review, there was sufficient evidence of evasion.[161]  The CIT explained that the administrative review decision explained the evidence the agency was relying on and also addressed why certain information on the record was unreliable such that the "agency employed substantial evidence review" and would "not disturb the result."[162]  As the CIT already observed, CBP did not engage in mere "speculation."[163]

InterGlobal points out that after filing the allegations, the Coalition has not submitted new facts, comments, or rebuttal to information that the importers have placed on the record.[164]  However, after initiation, it is the agency's responsibility to determine whether evasion occurred through soliciting information from the relevant parties — here, the

---

[157] Op. at 38.
[158] InterGlobal Written Arguments at 18.
[159] *Id.*
[160] *Id.*
[161] Determination; Admin. Review.
[162] Op. at 44.
[163] The CIT already addressed concerns about "likely" comingling noting CBP "made more definitive findings that, in consideration of the full context, were based of the totality of the evidence."  *Id.* at 38.
[164] InterGlobal Written Arguments at 16.

importers and manufacturers.[165]  There is no obligation that the Alleger continuously provide additional information to prove evasion.

InterGlobal argues that there is "{n}o evidence on the record" that "undermines the completeness and accuracy of the factual records that {InterGlobal} submitted."[166] InterGlobal asserts that CBP did not develop "any evidence at all," let alone substantial evidence to support its determination.[167]  Further, InterGlobal argues that TRLED's "presumption of bias and unreliability ignored the documented proof that the companies purchased sufficient raw materials, hired personnel, performed the production process, and packaged the merchandise sufficient to produce the volume of merchandise sold."[168]  Such arguments are without merit as CBP has explained in its determination and its administrative review decision, as well as above, the evidence on which it relied in finding evasion. Moreover, the CIT already recognized that CBP "explained the evidence on which it relied and why it found the totality of that evidence supported its conclusion, and it addressed the parties' evidence and explained why it found it unconvincing."[169]

InterGlobal alleges that CBP has not complied with the requirements of *Royal Brush* as CBP did not provide the importer with the business confidential information on which the determination of evasion is based.[170]  InterGlobal argues that it has been "left to speculate as to what portions of the massive confidential administrative record comprise business confidential information that was not previously available to parties to the investigation. . .

---

[165] 19 U.S.C. § 1517(c)(2).
[166] InterGlobal Written Arguments at 10.
[167] *Id.*
[168] *Id.* at 23.
[169] Op. at 39.
[170] InterGlobal Written Arguments at 48, 50.

.".[171]  InterGlobal accuses CBP of not abiding by the "spirit" of *Royal Brush* as the agency did not "properly identify" the particular business confidential information upon which it relied.[172]  As mentioned above, InterGlobal alleges that "significant business confidential documents" are missing from the record.[173]

The only specific purportedly missing documents InterGlobal references are documents related to the June 2018 site visits by CBP personnel.[174]  The Importer states that CBP relies on "tidbits" of those records throughout the investigation.[175]  InterGlobal alleges that by CBP not providing this business confidential information, importers' due process rights have been violated as they cannot "meaningfully submit rebuttal evidence and arguments. . . ."[176]  However, on March 27, 2024, CBP provided access to all confidential information the agency relied upon when it uploaded the administrative record to CMS,[177] including documents related to the June 2018 site visit conducted by CBP personnel.[178]  The same documents were previously provided as part of the litigation and counsel had access to such documents for purposes of briefing the matter with the CIT.  As noted by the Coalition, it is evident which information was not previously provided during the investigation because it was business confidential information, by comparing the public and confidential versions of the documents.[179]  Also, more simply, business confidential information was bracketed throughout the record and in CBP's decisions.

---

[171] *Id.* at 50.
[172] *Id.*
[173] *Id.* at 51.
[174] *Id.*
[175] *Id.*
[176] *Id.*
[177] *See* Mar. 27, 2024 CBP Memo.
[178] *See* CBP Site Visit Memo.
[179] Coalition Written Arguments at 18.

InterGlobal alleges that TRLED never sought clarification regarding purported inconsistencies in the documentation that InterGlobal submitted and upon which TRLED relied to come to the determination of evasion.[180]  InterGlobal noted that it responded to every discrepancy in its request for administrative review.[181]  To the extent the written arguments cite requests for administrative review submitted by the manufacturers, those arguments are misplaced because manufacturers are not parties to the investigation who can submit requests for review.[182]  EAPA only permits importers or allegers to request *de novo* administrative review of a determination.[183]  Therefore, TRLED and R&R will not now consider the information contained within those documents.[184]

InterGlobal asserts that it is not general industry practice to tie specific purchases of raw materials to specific production runs for a given purchase order.[185]  InterGlobal asserts that LB Wood provided all veneer purchase records, warehouse-in tickets, warehouse-out tickets, and financial statements with raw material costs.[186]  Further, InterGlobal asserts that LB Wood's practices were in accordance with Generally Accepted Accounting Principles (GAAP) and that it was immaterial that CBP could not tie production records to raw material records.[187]

---

[180] InterGlobal Written Arguments at 25.
[181] *Id.*
[182] *Id.* at 25.
[183] 19 U.S.C. § 1517(f)(1).
[184] *See* Admin Review at 2.  InterGlobal specifically points to LB Wood's request for administrative review regarding a reconciliation of current credit amount of the salary payable account in LB Wood's monthly trial balances and a full reconciliation of its payroll sheets to trial balances in an attachment to that request. However, as noted above, the request for administrative review was improper and therefore was not considered by CBP.  InterGlobal also references the improper requests for administrative review to support its contention that it can reconcile LB Wood's veneer consumption with its production volume.
[185] InterGlobal Written Arguments at 26.
[186] *Id.* at 28.
[187] *Id.*

InterGlobal argues that LB Wood's California Air Resources Board (CARB) certification dates did overlap with LB Wood's production dates.[188]  InterGlobal claims each of the certificates bears the production lot number for the certified production run and that LB Wood's production documents for each run match the CARB certificates exactly.[189]  However, regardless of whether the CARB certification dates overlap with LB Wood's production dates, the production lot number on the CARB certificates, the raw material inputs, and production documents did not tie to what LB Wood provided to CBP.  This was noted in the agency's determination as to evasion and administrative review decision.[190]  CBP auditors analyzed raw material inputs and production documents, which resulted in the deficiencies noted in the determination.[191]

As explained in the administrative review decision, LB Wood did not substantiate which merchandise was actually produced in Cambodia.[192]  It was difficult to differentiate within LB Wood's records where it referenced raw materials versus finished merchandise, including that [

SITUATION DESCRIPTION ].[193]  LB Wood acknowledged that it is [

SITUATION DESCRIPTION                                                    ].[194]

Ultimately, the burden is on Importer to be aware of the supply chain of its merchandise and to provide such information to CBP to allow CBP to determine the country of origin and classification of merchandise in an entry.[195]  CBP explained how it reached its determination

---

[188] InterGlobal Written Arguments at 28.
[189] *Id.* at 29.
[190] *See* Determination at 8-10; *see also* Admin. Review at 11-12, 19.
[191] *Id.* at 8-11, 14-15.
[192] *Id.* at 21.
[193] *Id.*
[194] *Id.*
[195] 19 U.S.C. § 1484.

as to evasion and also addressed the insufficiency of documentation submitted by the parties, in CBP's determination of evasion and administrative review decision.

InterGlobal states that CBP's initiation of the investigation and implementation of interim measures "are not supported by reasonable suspicion."[196]  InterGlobal claims that CBP failed to adhere to the reasonable suspicion standard because the agency relied on general import and export statistics and trends in its notice of initiation and interim measures rather than "address any specific allegations against {InterGlobal} in particular."[197] InterGlobal again raises concerns with the fact that CBP relied on a site visit conducted for purposes of [DESCRIPTION] and notes that such a visit had nothing to do with the EAPA investigation.[198]  Finally, InterGlobal describes the substantial evidence standard essentially noting that the standard requires an agency to take into account detracting evidence.[199]

While InterGlobal is correct that interim measures must be supported by evidence establishing a reasonable suspicion of evasion,[200] initiation of an investigation only requires evidence that reasonably suggests evasion.[201]  As the CIT found, "'reasonably suggests' is less demanding than 'reasonable suspicion,' which in turn is less demanding than 'substantial evidence'"[202]  CBP briefly summarized its basis for initiation above, but the NOI describes in detail the basis upon which an investigation was initiated.[203]  Evidence warranting initiation included trade data showing a shift in exportation of plywood from China to the United

---

[196] InterGlobal Written Arguments at 36.
[197] *Id.* at 39.
[198] *Id.*
[199] *Id.*
[200] 19 U.S.C. § 1517(e); 19 C.F.R. § 165.24(c).
[201] 19 U.S.C. § 1517(b)(1); 19 C.F.R. § 165.15(b).
[202] Op. at 26 (citing *CEK*, Slip Op. 23-69, at 8–9, 2023 WL 3198816, at **3–4 (finding that "reasonably suggests" is a low hurdle)).
[203] *See generally* NOI.

States to Cambodia to the United States without a corresponding increase in Cambodian

production; the close connection of the manufacturers to Chinese producers of plywood,

including their location in the SSEZ; and irregularities on InterGlobal's website, which

included failures to reference Cambodia as a location of manufacturing.[204]  The CIT already

held that "[t]he totality of the evidence cited by Customs {in its NOI} is easily more than the

'slight evidence' or 'very small amount' needed to support a reasonable suspicion.'"[205]  CBP

addressed the remaining arguments above as they are duplicative of other sections.

        InterGlobal states that it utilized a third-party inspection service, [ COMPANY

NAME ], to ensure compliance with U.S. regulation.[206]  InterGlobal further claims that it

utilized "local independent inspectors who were physically on-site at LB Wood's production

facility during production runs of {InterGlobal's} products."[207]  These inspectors allegedly

have "expert knowledge of the entire production cycle for plywood ordered by [COMPANY

NAME] from LB Wood."[208]  Yet, as the Coalition notes, no declarations of these individuals,

or their identities, were submitted on the record.[209]  InterGlobal cites to Section 484 of the

Tariff Act and CBP's 2017 reasonable care publication to argue that all that is required in

making entries to the United States is that the importers exercised "reasonable care."[210]

Further, InterGlobal argues that per *Diamond Tools Technology v. United States*, 609 F. Supp.

3d 1378 (Ct. Int'l Trade 2022), culpability is required for a finding of evasion under

EAPA.[211]  InterGlobal appears to make the argument that taking "reasonable care" in making

---

[204] NOI at 6.
[205] Op. at 29.
[206] InterGlobal Written Arguments at 30.
[207] *Id.*
[208] *Id.*
[209] Coalition Written Arguments at 7.
[210] InterGlobal Written Arguments at 40.
[211] *Id.* at 41.

entries would absolve it of any liability regardless of whether the entries were subject to the AD/CVD Orders and were not declared as such upon entry. To support claims of reasonable care, InterGlobal points to Mr. Winn's personally conducted site inspections of LB Wood,[212] the hiring of a third-party inspection service to inspect LB Wood's production,[213] and independent, local inspectors hired by InterGlobal who were on-site during production runs of merchandise destined for InterGlobal.[214]

As the Coalition rightly observed, InterGlobal does not properly apply *Diamond Tools* to the instant matter or acknowledge relevant precedent that followed the *Diamond Tools* decision.[215] In *Ikadan v. United States*, 639 F. Supp. 3d 1339 (Ct. Int'l Trade 2023), the CIT held that "EAPA read as a whole supports CBP's strict liability interpretation of the definition of evasion."[216] In *Diamond Tools*, the court held that the importer did not make material false statements because it was complying with express guidance issued by the U.S. Department of Commerce.[217] That is not analogous to the situation here, where the importer points to no agency guidance upon which it was relying to discern whether its entries were subject to the AD/CVD Orders. Rather, per the CIT's holding in *Ikadan*, no culpability is required on the part of InterGlobal, and all that is required is that covered merchandise be entered without declaring it as subject to AD/CVD orders (and that duties not be paid or deposited as a result).[218]

---

[212] *Id.* at 43.
[213] *Id.* at 45.
[214] *Id.* at 46.
[215] Coalition Written Arguments at 16.
[216] *Ikadan*, 639 F. Supp. 3d at 1349.
[217] *Id.* at 1348.
[218] While the Administrative Review was issued prior to *Diamond Tools* and *Ikadan*, that determination at page 13 to 14 stated: "We further note that the statutory definition of 'evasion' does not require an intentional or purposeful attempt to avoid duties, nor does {19 U.S.C. § 1517} provide for reasonable care as a defense to

InterGlobal indicates at the end of its written arguments, that if the affirmative determination of evasion stands, it may request an administrative review. However, given that this is a remand redetermination completed by both TRLED and R&R, no such administrative review will be available under 19 U.S.C. § 1517(f) and 19 C.F.R. § 165.41. The parties had the opportunity to provide comments on CBP's Draft Remand Redetermination and will have further opportunity to make arguments once this Remand Redetermination is filed with the CIT.[219]

## V.      COMMENTS ON THE DRAFT REMAND REDETERMINATION

As part of the remand proceedings, on May 10, 2024, CBP issued a draft remand redetermination and afforded the parties an opportunity to comment.[220] Only InterGlobal and the Coalition provided comments by the deadline.[221] The Coalition's Comments supported CBP's procedures and findings on remand, while InterGlobal's Comments were largely in opposition.

### *Coalition Comments and CBP Responses Thereto*

The Coalition asserts that CBP's remand proceedings complied with the Remand Order inasmuch as CBP provided the parties to the investigation with an opportunity to review business confidential information previously unavailable during the original administrative proceedings, as well as an opportunity to submit rebuttal evidence and written

---

evasion. Rather, it is sufficient that an importer enters "covered merchandise" into the United States by means of any material false document, statement, act, or omission that results in the reduction or non-payment of antidumping or countervailing duties or deposits thereof, for evasion to occur."
[219] Remand Order at ¶ 4.
[220] *See* May 10, 2024 Email.
[221] *See* InterGlobal Comments; *see also* Coalition Comments.

arguments in response to such information.[222]  In support of the claim that CBP complied with *Royal Brush* and the Remand Order, the Coalition observes that CBP afforded the importers two extensions to submit information as well as an opportunity to comment on the draft redetermination.[223]  Indeed, while CBP initially advised the parties to the investigation that it believed the parties could submit rebuttal evidence and written arguments on the basis of the administrative record filed as part of the litigation, which had already included the business confidential information, the agency nonetheless uploaded all administrative record documents to CMS for the remand and provided an extension for the importers to submit rebuttal information.[224]

The Coalition argues that, contrary to InterGlobal's assertions, CBP is not required to compare business confidential documents to public versions of the same documents to pinpoint precisely which portions of the documents were not previously provided during the original administrative proceedings.[225]  All of the record evidence on which CBP relied in finding evasion, and in conducting its *de novo* administrative review, was made available to InterGlobal as part of this remand proceeding.  The Coalition articulates that to determine what information was not previously provided during the original administrative proceedings, parties need only compare the public and confidential versions of documents.[226]

---

[222] *See* Coalition Comments at 1, 4.  The Coalition agrees with CBP's assessment that the Wenjie Declaration added no substantive value to CBP's determination of evasion.  *Id*. at 3, note 11.  However, the Coalition requests that CBP reject the declaration "to avoid the appearance of a precedent to accept untimely information."  *Id.*  CBP declines to reject the Wenjie Declaration, given that the agency did not realize its advertent error in accepting the untimely information until well after the submission was received and placed on the administrative record.  That said, the agency clarifies that the inadvertent acceptance of an untimely submission in this specific case does not serve as precedent for any other present or future EAPA proceedings in terms of accepting untimely submissions.

[223] *Id*. at 4-5; *see also supra* notes 51 and 53-54.

[224] *Id*.

[225] Coalition Comments at 5-6.

[226] *Id.*  In fact, parties need only look at the business confidential documents and the specific information enclosed in brackets to determine what was treated as business confidential and thus not provided during the original administrative proceedings.

Additionally, the Coalition states that while InterGlobal continues to make arguments about not having access to all information from the CBP site visits to the manufacturers, CBP provided all information upon which it relied to come to its determination and InterGlobal has failed to "identif{y} a single aspect of CBP's evasion determination that relied on information outside of the CBP Visit Memorandum."[227]  Therefore, CBP complied with the Remand Order and *Royal Brush*.

The Coalition also claims that CBP correctly determined that the information submitted by InterGlobal on remand was duplicative of the information submitted during the investigation.[228]  For example, the Coalition points out that Mr. Winn's declaration reiterates the history of InterGlobal's business relationship with LB Wood and that a report issued by [COMPANY NAME] was included on the pre-remand record, as well as photographs ostensibly taken by Mr. Winn during his 2018 site visits to LB Wood's facility.[229]  If anything, the Coalition asserts that CBP is correct that the additional information provided by InterGlobal during the remand, in the form of the two declarations, supports CBP's previous factual findings.[230]  The Coalition highlights certain information that detracts from the reliability of the declarations provided by InterGlobal upon remand.  The Coalition again notes as suspicious [COMPANY NAME] decision to invest in LB Wood in December 2017 and its ability to provide information about product pricing in a new country by a new manufacturer that had not yet used specific materials to produce plywood in that new country.[231]  The Coalition also continues to question InterGlobal's assertion that LB Wood

---

[227] *Id.* at 6.
[228] *Id*. at 7.
[229] *Id.*
[230] *Id.* at 8.
[231] *Id*.

used independent inspectors,[232] and explains that "InterGlobal did not make mention of its alleged on-site inspectors or records that they (rather than LB Wood itself generated)" during the initial investigation.[233]

CBP agrees that it is surprising that InterGlobal did not previously raise this claim about the inspectors, when information from the inspectors would have been relevant to this case, particularly as InterGlobal asserts that part of the inspectors' function was to ensure compliance with U.S. law and to ensure no commingling of "outside plywood of any source" in InterGlobal's orders.[234] Notably, as stated earlier in this determination, the independent inspectors were not identified[235] and statements from them or documentation surrounding their activities was not produced. The agency finds that InterGlobal's assertions about the use of independent inspectors are not credible, which casts a doubt upon the reliability of the declarations as a whole.

The Coalition also emphasizes the importance of CBP's [DESCRIPTION] visit to LB Wood during the POI compared to the [DESCRIPTION] visit described in InterGlobal's rebuttal evidence submitted on remand.[236] CBP fully explained above why it justifiably relies on the observations of its subject matter expert, [          NAME AND POSITION

---

[232] Coalition Comments at 9-11.
[233] Coalition Comments at 13, note 72 (citing Letter from deKieffer & Horgan, PLLC to CBP, Re: *EAPA Con. Case No. 7321 – Refiling InterGlobal Forest CF-28 Response* (Oct. 21, 2019) (BC Doc. No. 42 and Pub. Doc. No. 56) at A-3, A-6, Ex. A-8, and Ex. A-16); and 14, note 73 (citing BC Doc. No. 50 and Pub. Doc. No. 61) at 3-6 and Ex. 2.
[234] InterGlobal Comments at 6, 18.
[235] While InterGlobal argues that at least one of InterGlobal's local inspectors appears in photographs placed on the remand record, there is no way for CBP to establish that any of these individuals are actually local inspectors who performed the tasks that InterGlobal alleges, based on the information currently on the administrative record. *See, e.g.,* InterGlobal Comments at 11 ("This photograph also shows (i) one of {InterGlobal's} local importers…."). This is particularly true given that CBP is unable to establish any documentation or statements made by the local inspectors substantiating their identity or that they worked in the capacities claimed.
[236] Coalition Comments at 11-12.

] over the declaration made by Mr. Winn.[237]  CBP further explained its reasoning why the Winn Declaration does not undermine CBP's determination of evasion,[238] why EAPA 7252 is not applicable,[239] and the value of the import and export data relative to CBP's findings.[240]

Finally, the Coalition questions how InterGlobal frames the applicable legal standard for evasion.[241]  The Coalition properly observes that reasonable care is not a factor in examining whether evasion occurred under EAPA.[242]  Indeed, as CBP explained above, *Diamond Tools* is entirely distinguishable from the instant case.[243]  Moreover, *Ikadan* instructs that CBP is not required to determine culpability in finding evasion.[244]  Even if CBP agreed that InterGlobal engaged in reasonable care in importing Chinese-origin plywood transshipped through Cambodia during the POI, which it does not, CBP must continue to find that the Importers engaged in evasion because EAPA is a strict liability statute.[245]

### InterGlobal Comments and Responses Thereto

InterGlobal concedes that it was provided an opportunity to submit rebuttal evidence and written arguments in response to business confidential information previously withheld during the original administrative proceedings.[246]  However, it continues to assert that CBP failed to provide what InterGlobal claims to be "other relevant business confidential information" in connection with the CBP site visit conducted on June 6, 2018.[247]  More specifically, InterGlobal claims that the agency failed to provide "the full record of the visit,

---

[237] *Supra* at pp. 22-27.
[238] Coalition Comments at 15; *see supra* at pp. 13-17.
[239] Coalition Comments at 16; *see supra* at pp. 19-20.
[240] Coalition Comments at 16; *see supra* at pp. 3-5, 20-22, 35.
[241] Coalition Comments at 17-18.
[242] *Id*. at 17.
[243] *Id*. at 17-18; *see also supra* at pp. 36-37.
[244] *Ikadan*, 639 F. Supp. 3d at 1349.
[245] *Id*.
[246] InterGlobal Comments at 2.
[247] *Id*.

information regarding the length of the visit, who was contacted during the visit, what time was the visit {*sic*}, the purpose for the visit, etc."[248]  InterGlobal claims that these factors "go directly to what weight the evidence should be given when examining the whole record."[249]

CBP disagrees, and reiterates that access to the complete administrative record, consistent with 19 C.F.R. § 165.21, was provided to the parties to the investigation on remand.[250]

InterGlobal claims that "{t}he site visit to LB Wood was made by CBP agency personnel for a completely unrelated reason for which CBP refused to disclose."[251]  This argument is nonsensical given that CBP provided InterGlobal access to confidential information on remand, and in the remand redetermination, of which InterGlobal received a draft, and in which CBP describes the purpose of the visit as [DESCRIPTION].[252] InterGlobal argues that CBP misleadingly indicated that the June 6, 2018 site visit was conducted for purposes of EAPA verification, but the visit was "actually an unrelated site visit and {InterGlobal} requests it be correctly noted as such."[253]

CBP disagrees that the agency was unclear in explaining the significance of this site visit.  CBP clearly indicated that the purpose of the visit was for [DESCRIPTION], but the reason it considered the visit was because the visit occurred contemporaneously with the

---

[248] *Id*. at note 5; *see also* InterGlobal Comments at 13 ("It is unclear what time of day the site visit was made, whether there was a translator present, whether there were additional photos taken that would show the scope of the facility more accurately, etc.").  CBP reiterates that it provided InterGlobal with access to all of the information it relied upon in making its determination of evasion.

[249] *Id*. at note 5.

[250] *Supra* at pp. 13, 27.

[251] InterGlobal Comments at 9.

[252] *Supra* note 121; *see also* Admin. Review at 16.

[253] InterGlobal Comments at 3 (citing Draft Remand Redetermination at 5, note 18).

EAPA POI, and the types of facts at issue sufficiently overlapped between the [DESCRIPTION] and the underlying EAPA proceeding.[254]

InterGlobal asserts that the Winn Declaration – documenting three different visits by InterGlobal personnel in 2018 to LB Wood – should be afforded more weight than the CBP Site Visit Memo.[255] InterGlobal seemingly claims that the Winn Declaration substantiates LB Wood's production capacity to the extent that "Mr. Winn….personally observed over a hundred employees working in LB Wood's factory during each of his three inspection visits, and that he observed these employees manufacturing plywood."[256] But, CBP already explained the value of the [DESCRIPTION]: it was an [DESCRIPTION] visit, for which the manufacturers could not prepare in advance and thereby conceal their true production capacity, and it was conducted by a CBP subject matter expert.[257] Contrary to InterGlobal's assertions about the number of employees, CBP's subject matter expert observed that LB Wood had "few employees" during the agency's [DESCRIPTION] visit.[258]

InterGlobal asserts that the "unrelated site visit" was inadequate and noted that CBP's verification visit to LB Wood was postponed and rescheduled but never realized due to COVID-19 travel restrictions. It further claims that "{c}learly CBP felt a need to verify the information it was evaluating, but it simply gave up and instead used the unrelated site visit data because that was the best information it had."[259]

---

[254] *Supra* note 121; *see also* Admin. Review at 16.
[255] InterGlobal Comments at 10.
[256] InterGlobal Comments at 17-18 (citing Winn Declaration at ¶¶ 20, 25, and 27).
[257] *Supra* at 22. InterGlobal also alleges that since CBP was unable to conduct a verification because of COVID-19, the agency "felt a need to verify the information it was evaluating, but it simply gave up and instead used the unrelated site visit data because that was the best information it had." InterGlobal Comments at 14. Again, CBP has already explained the validity and significance of the CBP Site Visit Memo, above, and reiterates that this memorandum was only one piece of evidence that the agency considered in finding evasion. *See* Op. at note 14.
[258] Determination at 6-7, 10.
[259] InterGlobal Comments at 10.

However, CBP's EAPA determination reflects the confidence CBP had in the voluminous record, that substantial evidence of evasion existed, even without a verification. CBP's regulations state that "{p}rior to making a determination…. CBP *may in its discretion* verify information in the United States or foreign countries collected under § 165.23 as is necessary to make its determination."[260]  Because verifications are discretionary, there is no legal obligation on CBP to conduct such a visit prior to making a determination under EAPA.

Nevertheless, CBP made a *bona fide* effort to conduct a verification.  As noted in the determination, CBP postponed its verification trip on February 11, 2020, due to the developing coronavirus situation in Southeast Asia.[261]  At the time, Southeast Asian countries were beginning to impose traveler restrictions.[262]  Because CBP officials reasonably assumed that the health crisis would abate much sooner than it did, CBP initially postponed the verification instead of cancelling it.[263]  CBP hoped to reschedule verification and, on February 11, 2020, CBP extended the determination deadline by 60 days to extend the verification window.[264]  However, the world travel situation remained very restrictive by the extended June 29, 2020 determination date.[265]  Therefore, CBP had no option but to cancel the travel and did so on May 8, 2020.[266]  Neither LB Wood nor InterGlobal raised objections to the cancellation of the verification and neither entity suggested that verification be rescheduled prior to the issuance of the June 29, 2020 determination.[267]  Moreover, CBP is not required to ignore information it has available and has gathered in its normal course of

---

[260] 19 C.F.R. § 165.25(a) (emphasis added).
[261] *See* Determination at 4.
[262] *Id.*
[263] *Id.*
[264] *Id.*
[265] *Id.*
[266] *Id.*
[267] *See* InterGlobal Written Arguments.

business, such as the [DESCRIPTION], when making a determination of evasion under EAPA.

InterGlobal claims that the agency "bifurcated" its examination of information originally placed on the underlying record from the original administrative proceedings and rebuttal evidence received as part of the remand proceeding.[268]  To support this argument, InterGlobal hangs its hat on CBP's statement in the draft remand redetermination that "as an initial matter CBP incorporates its prior findings as to evasion".[269]  InterGlobal asserts that CBP, in making such a statement, was advising the parties to the investigation that "its mind is already made up" [270] and, therefore, "CBP has failed to proceed as required by *Royal Brush* to reexamine in good faith 'the administrative record, including the rebuttal evidence and written arguments submitted on remand….'"[271]

CBP has complied with *Royal Brush*: CBP provided the Importers' counsel access to the business confidential information on which the agency relied in making a determination pursuant to EAPA and provided an opportunity to rebut this information.[272]  More specifically, as described above, CBP provided InterGlobal's counsel with access to business confidential information and afforded InterGlobal an opportunity to submit rebuttal evidence

---

[268] InterGlobal Comments at 3; *see also id*. at 9 (alleging "CBP's failure to review the administrative record as a whole…").
[269] *Id*. at 4 (citing Draft Remand Redetermination, *American Pacific Plywood, Inc., et al. v. United States* (May 10, 2024) at 13 ("Draft Remand Redetermination")).
[270] InterGlobal Comments at 4.
[271] *Id*. (citing Draft Remand Redetermination at 4); *see also* InterGlobal Comments at 15-16 ("CBP is admitting that it would not matter what rebuttal evidence {InterGlobal} submitted, the decision has already been made. But with new rebuttal evidence the 'totality' of the evidence must be revisited to include" the Winn Declaration and the Wenje Declaration).  Contrary to InterGlobal's assertion that these declarations constitute "compelling testimony," *id*. at 16, the declarations fall short of providing any substantive value.  As explained herein, the declarations either confirmed information already on the record or offered no new substantive information. CBP evaluated all the information – the information placed on the record during the underlying administrative proceedings, as well as that information placed on the record during remand – and thoroughly explained its reasoning in continuing to find evasion; the agency did not "merely 'rubber-stamp{}' its original determination of evasion." *Id*. at 16.
[272] *See Royal Brush*, 75 F.4th at 1260-63.

and written arguments in response to that information.[273]  InterGlobal does not dispute this.[274]  In addition, CBP reviewed the entire administrative record – including the information provided during the original administrative proceedings and the information provided on remand – in affirming its finding of evasion in this remand.

In making the statement, "as an initial matter CBP incorporates its prior findings as to evasion," CBP was simply advising that its determination of evasion and administrative review decision – and most importantly, the *facts* supporting those decisions, which the CIT already determined were sufficient to constitute substantial evidence of evasion – were being incorporated into CBP's remand analysis.[275]  However, to the extent it was unclear to InterGlobal that CBP reviewed the entirety of the administrative record in making its redetermination on remand, CBP has supplied clarifying language in its final remand redetermination.[276]  CBP did not "simply {choose} to examine the rebuttal submission against its prior findings and the administrative decision."[277]  Rather, the agency thoroughly explained why InterGlobal's rebuttal evidence was insufficient for purposes of reversing the determination of evasion.  Although InterGlobal argues that information it placed on the administrative record on remand was not shown to be unreliable,[278] CBP disagrees and has explained the deficiencies with respect to the referenced information.[279]

InterGlobal further claims that CBP failed to comply with *Royal Brush* because CBP summarily concluded that the Winn Declaration, part of the rebuttal evidence submitted by

---

[273] *Supra* notes 42, 27-48, and 56-61.
[274] InterGlobal Comments at 2.
[275] *See* 19 U.S.C. § 1517(c)(1)(A) (a determination of evasion must be based on substantial evidence); *see also* Op. at 38-39, 41, 44.
[276] *See* supra at 13.
[277] InterGlobal Comments at 18.
[278] InterGlobal Comments at 18-19.
[279] *See, e.g.*, Admin. Review at 19-20.

InterGlobal on remand, was duplicative of information placed on the administrative record during the underlying proceedings, and thus, that CBP did not properly weigh it against evidence already on the administrative record.[280]  InterGlobal asserts that the Winn Declaration contained "photographs that directly contradict evidence on the record from CBP personnel's unrelated site visit to [COMPANY NAME AND DECRIPTION]."[281]

Above, CBP has already explained why the photographs submitted on remand are insufficient for the agency to reverse its determination of evasion and why the information contained in the Winn Declaration is unreliable and duplicative of information on the pre-remand administrative record.[282]

InterGlobal alleges that CBP ignored or mischaracterized the Winn Declaration in order to support CBP's prior determination.[283]  In support of this allegation, InterGlobal asserts that CBP improperly discounted [COMPANY NAME] expertise and ability in determining costs and pricing for LB Wood before it was fully operational; InterGlobal further claims that "{i}t should be self-evident that [COMPANY NAME] as an investor with substantial experience in the industry would have the unique ability to determine estimated costs and suggested pricing."[284]

The nature of information considered by CBP includes, among other things, factual information placed on the administrative record.[285]  CBP is not required to rely on a mere assertion by, or an opinion of, an importer, and specifically InterGlobal's assertion that an investor in a foreign manufacturing facility that is not yet fully operational possesses the

---

[280] InterGlobal Comments at 4-5.
[281] InterGlobal Comments at 5.
[282] *Supra* notes 76-77.
[283] *Id.*
[284] InterGlobal Comments at 5.
[285] *See, e.g.,* 19 C.F.R. § 165.21(a)(2).

relevant expertise to provide cost and pricing information.  CBP fully explained above why it did not find such assertions in the Winn Declaration to be credible, given the difficulties in predicting accurate pricing of merchandise before manufacturing of that merchandise commences in a new country.[286]

InterGlobal claims that CBP insisted that [COMPANY NAME] "must not be allowed any contact with {InterGlobal} despite being connected peripherally as an investor to the manufacturing plant."[287]  InterGlobal notes that "LB Wood is allowed to use raw materials, acquire equipment, and hire personnel as it sees fit to successfully run its operations" and that "it does not automatically follow that the plywood it manufactures should be deemed from China."[288]

Contrary to InterGlobal's assertion, CBP did not merely adopt the argument of the Coalition.[289]  Rather, CBP has fully explained in its determination of evasion, its administrative review decision, and its remand redetermination, the agency's rationale for finding evasion, which, among other things, includes discrepancies in responses, an unrelated yet sufficiently contemporaneous site visit to the manufacturing facilities, and an analysis of various import and export data.[290]  CBP's determination is not based on mere contact between [COMPANY] and InterGlobal, and this characterization of CBP's findings and arguments is inaccurate.

InterGlobal also advises that the Winn Declaration did not indicate that the [

EVENT DESCRIPTION                                        ][291]  InterGlobal explains that Mr. Winn

---

[286] *Supra* at pp. 14-15.
[287] InterGlobal Comments at 6.
[288] *Id.*
[289] *Id.*
[290] *Supra* at pp. 5-6, 20-27; *see also* Determination and Admin. Review.
[291] InterGlobal Comments at 6-7 (citing Draft Remand Redetermination at 15).

only indicated that "if some of the plywood was rejected then it would be reflected on the [

DOCUMENT DESCRIPTION          ], not that the inspectors filled out the [DOCUMENT

TYPE] themselves."[292]  InterGlobal requests that CBP's misstatement, i.e., that "Mr. Winn

'cites [ DOCUMENT AND EVENT DESCRIPTION                    ]'" be removed.[293]

CBP appreciates the clarification and has modified that particular language in the

remand redetermination.

InterGlobal also claims that CBP cavalierly dismissed Mr. Wenjie's declaration.[294]

As an initial matter, the Wenjie Declaration was not timely filed.  However, given the

time that elapsed between the filing and the agency's realization that the untimely filed

document had been inadvertently accepted and placed on the administrative record, CBP

exercised its discretion in not rejecting the document.[295]  Because CBP did not reject the

document as untimely filed, the agency did consider the Wenjie Declaration as part of the

collective administrative record, which includes submissions from the remand proceedings.

That said, CBP determined that the Wenjie Declaration provided no substantive value for

purposes of CBP's determination of evasion and clarified its rationale above.[296]

Additionally, certain aspects of the Wenjie Declaration call its reliability into

question.  The Wenjie Declaration stated that "{a}s of the date of CBP's June 6, 2018 visit,

LB Wood had a fully functional operation with the following equipment installed and

running in the factory: [          EQUIPMENT DESCRIPTION               ]."[297]  However,

---

[292] InterGlobal Comments at 7.
[293] InterGlobal Comments at 6-7.
[294] InterGlobal Comments at 7.
[295] *Supra* note 57.
[296] *See supra* at pp. 17-18.
[297] Wenjie Declaration ¶ 8.

this claim appears to inflate LB Wood's production capacity during June 2018.  LB Wood's

initial RFI response explicitly stated that it had "[

          EQUIPMENT DESCRIPTION                             ]."[298]

The Wenjie Declaration also claimed that "{a}t the time of CBP's visit, … LB Wood

had [     NUMBER     ] employees working in its factory."[299]  However, this claim is

questionable.  Regarding LB Wood's staffing during the site visit, [ NAME AND

SITUATION DESCRIPTION ]"[300]  The fact that there were [ SITUATION DESCRIPTION ]

was also reflected in the photographs from the [DESCRIPTION].[301]

Further, the Wenjie Declaration claims that the [DESCRIPTION] was "installed and

running" during the site visit.[302]  This is questionable.  The [DESCRIPTION] pictured in LB

Wood's initial RFI response was [EVENT DESCRIPTION], which indicates it was running

at that time.  In contrast, the [DESCRIPTION] was [ACTION DESCRIPTION] no such

[DESCRIPTION] in the photographs obtained by CBP during the [DESCRIPTION], which,

based on Mr. Wenjie's assertions, would indicate the machine was not running.[303]  Moreover,

[NAME] stated that the [DESCRIPTION] was not running during the site visit.[304]  Finally,

the [DESCRIPTION] also had an [ SITUATION DESRIPTION], which appeared to obstruct

its purported functionality.[305]

---

[298] *See* LB Wood RFI at Exhibit 14.
[299] Wenjie Declaration at ¶ 7.
[300] *See* CBP Site Visit Memo at 14.
[301] *Id.* at 15-21.
[302] Wenjie Declaration at ¶ 8.
[303] *See* CBP Site Visit Memo at 15-21.
[304] *Id.* at 14.
[305] *Id.*

InterGlobal also claims that the rebuttal evidence that it submitted on remand demonstrates that [COMPANY NAME SITUATION DESCRIPTION].[306]

But CBP has already explained why this rebuttal evidence is insufficient for the agency to reverse its finding of evasion.[307]  Likewise, in response to InterGlobal's Comments on the Draft Remand Redetermination concerning LB Wood's capacity to conduct [PROCESS DESCRIPTION], CBP already explained why the [DESCRIPTION] was insufficient to demonstrate full-scale production operations.[308]  Additionally, simply claiming that plywood InterGlobal ordered and was shipped from LB Wood was [PROCESS DESCRIPTION] does not establish that any such [PROCESS DESCRIPTION] was conducted in Cambodia, without more.[309]  InterGlobal explains that the Winn Declaration states he "personally witnessed this hardwood plywood being cured with [DESCRIPTION] by LB Wood on the very [DESCRIPTION] that CBP [ STATUS DESCRIPTION ]"[310]  But again, CBP has explained its reliance on the observations of its personnel during their site visit to the facility and its reliability concerns with the Winn Declaration.

InterGlobal claims that:

Exhibit 3 to the Winn Declaration is a photograph which {Mr. Winn} took on July 6, 2018, during his second inspection visit to LB Wood's factory in Cambodia. Exhibit 3 shows [EQUIPMENT DESCRIPTION] [ DOCUMENT LOCATION DESCRIPTION]  The cannisters of protective fluid which are cured by [ DESCRIPTION ] are clearly visible in Exhibit 3 and in the [ SITUATION DESCRIPTION ].  Significantly, cannisters of [DESCRIPTION] with liquid dripping down the side of the fluid containers attached to the [EQUIPMENT DESCRIPTION] indicate [DESCRIPTION] is operational.[311]

---

[306] InterGlobal Comments at 10-11.
[307] *Supra* at pp. 13-17.
[308] *Supra* notes 129-130.
[309] InterGlobal Comments at 12-13.
[310] *Id.* at 13.
[311] InterGlobal Comments at 12.

No assurance exists that the date below the photograph is legitimate, given that the photograph was not provided during the underlying EAPA investigation.  LB Wood provided another, later photograph during the EAPA investigation.  In its November 8, 2019 RFI response, LB Wood submitted a photograph indicating that the [DESCRIPTION] appeared to be operational at that time.[312]  But some degree of operation by the [DESCRIPTION], after the [DESCRIPTION], does not address merchandise that was produced early on during the POI.

InterGlobal states that CBP "acknowledged that [

PROCESS DESCRIPTION                                           ] and was not required to only utilize what grew in Cambodia."[313]  InterGlobal seemingly argues that even if some raw materials, that is, [WOOD TYPE] veneers, were imported into Cambodia from China, LB Wood's operations substantially transformed these raw materials such that the country of origin would be considered Cambodia and not China.[314]  InterGlobal agrees "with CBP's assertion that [

PROCESS DESCRIPTION

]"[315]  InterGlobal claims that veneers were substantially transformed by LB Wood, resulting in the country of origin being Cambodia.[316]

However, such an argument was previously dismissed by CBP when the agency recognized that LB Wood failed to "[ PROCEDURE DESCRIPTION

---

[312] LB Wood Nov. 8 Response at Exhibit 14.
[313] *Id.*
[314] InterGlobal Comments at 13-14.
[315] InterGlobal Comments at 14 (citing CBP Site Visit Memo at CR 005964).
[316] InterGlobal Comments at 14; *see also* InterGlobal Comments at 15 (discussing Chinese managers and supervisors and Chinese veneers shipped to Cambodia for purported manufacture by a Cambodian workforce to support InterGlobal's claim that "LB Wood was manufacturing the plywood {InterGlobal} purchased, not merely transshipping the product from China."

]…{which} prevents CBP from ascertaining whether the production allegedly occurring in Cambodia involves a substantial transformation of the raw materials, such that the country of origin can be considered Cambodia, and not China."[317]

InterGlobal disputes CBP's assertion that LB Wood "acknowledged that it is [ SITUATION DESCRIPTION

].[318] InterGlobal claims that LB Wood admitted it sourced raw materials from China and that "CBP seems to be inappropriately conflating the evidence from an unrelated manufacturer, Happy Home with LB Wood" and requested correction of this "error."[319]

CBP made no such error – the agency is not confusing LB Wood with another foreign manufacturer. CBP's administrative review decision clearly indicates that "LB Wood admitted that [          PROCUDURE DESCRIPTION                   ]."[320] Further, the administrative review explained that "{a} manufacturer's alleged failure to [ SITUATION DESCRIPTION ]" is "questionable and an unreliable business practice" but also prevents CBP from being able to determine what production was actually occurring at LB Wood and thus what products were being shipped from LB Wood.[321] In addition, LB Wood conceded that it is "[                                        SITUATION DESCRIPTION ]"[322] Given that LB Wood admitted that it both [ PROCEDURE DESCRIPTION      ] and was [               SITUATION  DESCRIPTION ], coupled with the lack of proof of adequate production capacity at the LB Wood facility for the duration of the POI, it is

---

[317] Admin. Review at 19.
[318] InterGlobal Comments at 16 (citing Draft Remand Redetermination at 36).
[319] InterGlobal Comments at 17.
[320] Admin. Review at 21.
[321] Admin Review at 19.
[322] Admin. Review at 21.

reasonable for CBP to conclude that some Chinese-origin plywood was transshipped through Cambodia to the United States.

Finally, InterGlobal again raises that it "took every precaution to ensure

[                PROCEDURE DESCRIPTION                ]… would not happen."[323]

CBP reiterates that EAPA is a strict liability statute.[324]  Therefore, any due diligence conducted by InterGlobal would not absolve it of liability for evasion.

## VI.    CONCLUSION

On remand, CBP provided the Importers and the Alleger with access to confidential business information to which they did not previously have access during the original administrative proceedings and provided these parties with an opportunity to provide rebuttal evidence and provide written arguments.  After considering the entire administrative record, including the information provided on remand, CBP finds that APPI, Global Forest, and InterGlobal entered covered merchandise into the customs territory of the United States through evasion.

/s/ VICTORIA Y CHO
Digitally signed by VICTORIA Y CHO
Date: 2024.05.28 16:38:37 -04'00'

/s/ ALICE A KIPEL
Digitally signed by ALICE A KIPEL
Date: 2024.05.28 17:56:43 -04'00'

Victoria Cho

Director – Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade
U.S. Customs and Border Protection

Alice A. Kipel

Executive Director
Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection

---

[323] InterGlobal Comments at 8.
[324] *Supra* note 215.