UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*,<br><br>    Plaintiffs,<br><br>  and<br><br>LB WOOD CAMBODIA CO., LTD., *et al.*,<br><br>    Plaintiff-Intervenors,<br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br>  and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>    Defendant-Intervenor. | [PROPOSED] ORDER<br><br>Consol. Ct. No. 20-03914<br><br>Before: Judge M. Miller Baker |

## <u>ORDER</u>

Upon consideration of Plaintiff Interglobal Forest LLC's Rule 56.2 Motion for Judgment Upon the Administrative Record, Plaintiff Interglobal Forest, LLC's Written Comments In Opposition To Customs and Border Protection ("CBP")'s Remand Redetermination, and all other supporting documents, papers and proceedings had herein, it is hereby

ORDERED that said motion is GRANTED, and it is further

ORDERED that:

(a) Investigation Number 7321 under the Enforce and Protect Act ("EAPA") prompted by The Coalition For Fair Trade Of Hardwood Plywood (the "Petitioner") did not produce any evidence that Plaintiff Interglobal Forest, LLC evaded antidumping duty order A-570-0512 and countervailing duty order C-570-0523 (collectively, the "Orders") on certain hardwood plywood products from the People's Republic of China by transshipping Chinese hardwood plywood through Cambodia, or that Plaintiff Interglobal Forest, LLC otherwise violated the Orders;

(b) the "Covered Merchandise" (as defined in accordance with 19 U.S.C. § 1517(a)(3)) set forth in the Orders does not encompass (i) the veneers which LB Wood Cambodia Company, Ltd. imported from China and substantially transformed into plywood or (ii) the plywood which incorporates those veneers;

(c) Customs and Border Protection's Final Determination of Evasion dated June 29, 2020 ("Determination of Evasion") against Interglobal Forest, LLC was not supported by substantial evidence;

(d) Customs and Border Protection's Affirmation of Determination of Evasion ("Final Determination of Evasion") after de novo review dated November 5, 2020 against Interglobal Forest, LLC was not supported by substantial evidence;

(e) Customs and Border Protection's Remand Redetermination dated May 28, 2024 ("Remand Redetermination") affirming the Final Determination of Evasion was not supported by substantial evidence;

(f) Customs and Border Protection's analysis of the evidence presented by all parties resulting in the Determination of Evasion, the Final Determination of Evasion and the Remand Redetermination was arbitrary, capricious, and unreasonable;

(g)  The Determination of Evasion is hereby vacated;

(h)  The Final Determination of Evasion is hereby vacated;

(i) The Remand Redetermination is hereby remanded to CBP with instructions that CBP make a finding of no evasion of the Orders by Plaintiff Interglobal Forest, LLC consistent with this Order;

(j)  this matter is further remanded to CBP with instructions to terminate EAPA Consolidated Investigation No. 7321 and order the liquidation of Plaintiff InterGlobal Forest LLC's unliquidated entries without the addition of antidumping and countervailing duties and to grant in full Plaintiff InterGlobal Forest LLC's administrative Protest No. 460120112430 contesting CBP's unlawful premature liquidation of Plaintiff InterGlobal Forest, LLC's entries;

(k)  CBP shall immediately revoke, and thereafter cease and desist from, any other enforcement measures relating to the hardwood plywood Plaintiff InterGlobal Forest, LLC imported and entered from LB Wood Cambodia Company, Ltd.

IT IS SO ORDERED.


DATED: _____                _____
        New York, New York                     Judge M. Miller Baker

UNITED STATES COURT OF INTERNATIONAL TRADE

AMERICAN PACIFIC PLYWOOD, INC., *et al.*,

          Plaintiffs,

    and

LB WOOD CAMBODIA CO., LTD., *et al.*,

          Plaintiff-Intervenors,

    v.

UNITED STATES,

          Defendant,

    and

COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,

          Defendant-Intervenor.

PUBLIC VERSION

Consol. Ct. No. 20-03914

Before: Judge M. Miller Baker

## <u>INTERGLOBAL FOREST, LLC'S WRITTEN COMMENTS IN OPPOSITION TO CBP'S REMAND REDETERMINATION</u>

Thomas H. Cadden, Esq.
Ivan U. Cisneros
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
***Counsel to Plaintiff InterGlobal Forest, LLC***

Dated: September 23, 2024

# <u>TABLE OF CONTENTS</u>

I.    Introduction ........................................................................ 1

II.   CBP's Determination of Evasion Against IGF is
      Not Supported by Substantial Evidence and is
      Unreasonable, Arbitrary, and Capricious ....................................... 1

III.  IGF's Arguments in Opposition to Affirmative
      Redetermination Finding Evasion .................................................. 2

      A.    CBP Improperly Bases Its Finding of Evasion
            on Its Agent's Interpretation of Case Law and
            Statutory Law................................................................ 2

            1.    CBP Seeks this Court to Defer to the Agent's
                  Findings of Law in Violation of USCIT's
                  Ruling in *Far East* ............................................. 3

            2.    CBP Seeks this Court to Defer to the Agent's
                  Findings of Law in Violation of 19 CFR §
                  351.225 and *Loper Bright Enterprises* ...................... 5

      B.    CBP Bases its Finding of Evasion on its Agent's
            Alleged Expertise and Cursory Site Visit to LBW ................. 6

            1.    CBP Seeks this Court to Defer to the Agent's
                  "Expertise" Without Any Evidence as to Said
                  Expertise ...................................................... 6

      C.    IGF Provided Compelling New Testimonial and
            Photographic Rebuttal Evidence Refuting [
            ]'s Assertions Regarding [                    ]............................. 9

i

1.      The Declaration of Kurt Winn Refutes [      ]s
        Assertions That LBW Lacked Production Ca-
        pacity and That Its [      ] Was Not Opera-
        tional .................................................................................. 9

2.      LBW Was Fully Operational on the Day of
        CBP's June 6, 2018, Site Visit ...................................... 14

3.      The Wenjie Declaration Further Refutes
        [                  ]'s Assertion that LBW Lacked
        Production Capability .................................................... 15

4.      CBP's Analysis of LBW's Production
        Capability Is Unreasonable Because It
        Disregards Substantial Evidence and
        Fails to Properly Weigh Relevant
        Production Data .............................................................. 17

5.      A Detailed Reconciliation of LBW's Payroll
        Documents Disproves the Conclusions
        Contained in CBP's September 12, 2019,
        Memo That LBW Lacked Sufficient
        Employees to Produce the Plywood It Sold
        to IGF .............................................................................. 21

6.      Agent  [                    ]  Assertion  That  [
        ]Cannot Be
        Produced in Cambodia Is Wrong ................................. 22

7.      CBP is Required to Consider the Entire
        Record and Refused to Do So ........................................ 23

D.  CBP'S  REDETERMINATION  RELIES  UPON
    CASE LAW THAT HAS BEEN OVERTURNED ................. 24

    1.      There is No Longer a Legitimate Basis to
            Find EAPA is a Strict Liability Statute ..................... 24

2.  Independent Judgment Can Only Lead to the Conclusion that Evasion Under the EAPA Requires Culpability...........................................26

3.  IGF is Not Culpable Because It Exercised Reasonable Care in Confirming Cambodia as the Country of Origin of Its Imports...........................27

4.  IGF Did Not Make Materially False Statements Because It Was Complying with the Express Terms of the Orders.................................30

E.  Trade Data That the Coalition and TRLED Placed on the Record and Upon Which CBP Relied in Its Finding of Evasion is Unreliable and Irrelevant.................31

F.  CBP Refused to Comply with This Court's Remand Order to Provide Business Confidential Documents Used in the Investigation...................................34

G.  LBW's Location in the SSEZ and Its Chinese Connections Are of No Consequence............................................35

IV.  Conclusion...................................................35

# <u>TABLE OF AUTHORITIES</u>

## Cases

*AMS Associates, Inc. v. U.S.*, 881 F.Supp.2d 1374 (2012) ........................2

*American Pacific Plywood, Inc., et al., v. U.S.*,

    Consolidated Court No. 1:20-cv-03914 .................................................35

*Anderson v. U.S.*, 16 CIT 324, 327, 799 F. Supp. 1198 (1992)................31

*Bowen v. Am. Hosp. Asso.*, 476 U.S. 610 (1986) .......................................8

*Burlington Truck Lines v. U.S.*, 370 U.S. 156 (1962) ...........................1, 2

*Chevron, USA, Inc. v. Natural Resources Defense Counsel, Inc.*,

    104 S.Ct. 2778 (1984) ...............................................................24, 25, 26

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) .............8

*Diamond Tools Technology v. U.S.*, 609 F. Supp. 3d 1378 .........26, 30, 31

*Duncan v. Walker*, 533 U.S. 167 (2001) ..................................................26

*Far East American, Inc. et al. v. U.S.*,

    Consolidated Court No. 1:22-cv-00213-MAB ...........3, 4, 5, 6, 20, 30, 31

*Ikadan Systems USA, Inc. v. U.S.*, 639 F.Supp.3d 1339 (2023) ......24, 25

*JSW Steel (USA) Inc. v. U.S.*, 466 F. Supp. 3d 1320 (2020) ...................23

*Loper Bright Enterprises v. Raimondo*,

    144 S. Ct. 2244 (2024) .................................................5, 6, 7, 24, 25, 26

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (2009) ...................17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*,

    463 U.S. 29 (1983) .................................................................................1

*Myland Indus., Ltd. v. U.S.*, 31 Ct. Int'l Trade 1696 (2007)...................22

*Novosteel SA v. U.S.*, 284 F.3d 1261 (2002)..............................................8

*Richardson v. Perales*, 402 U.S. 389 (1971)..............................................32

*Royal Brush Manufacturing, Inc. v. U.S.*, 75 F.4th 1250 (2023)......34, 35

*Shenzhen Xinboda Industrial Co., Ltd. v. U.S.*,

   279 F.Supp.3d 1265 (2017).........................................................8

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ..........................................8

*SolarWorld Ams., Inc. v. U.S.*, 962 F.3d 1351 (2020) .......................33, 34

*Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277 (2005)....................................2

*Tarnove v. Bentsen*, 17 CIT 1324 (1993)............................................31, 32

*U.S. Steel Corp. v. U.S.*, 621 F.3d 1351 .....................................................2

*U.S. v. Dunkel,* 927 F.2d 955 (1991) ..........................................................9

*U.S. v. Mead Corp.*, 533 U.S. 218 (2001) ..................................................8

*Vietnam Finewood Co. Ltd., v. U.S.*, 633 F.Supp.3d 1243 (2023) ...........4

*WelCom Tube Co. v. U.S.*, 865 F.Supp.2d 1340 (2012) ............................2

## Statutes

19 U.S.C. § 1517(b)(4)(A)........................................................................3

19 U.S.C. § 1517(a)(3)..............................................................................4

5 U.S.C. § 556(d) ....................................................................................32

## Regulations

19 CFR § 351.225....................................................................................5, 6

19 CFR § 351.225(l)(1)(2020) ................................................................3

## Other Authorities

8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2022) .................23

UN FAOStat Forestry Yearbook 2016.....................................................33

GLOSSARY OF TERMS

| | |
|---|---|
| APA | Administrative Procedures Act |
| CBP | U.S. Customs and Border Protection |
| Commerce | Department of Commerce |
| EAPA | Enforce and Protect Act |
| FAO | Food and Agricultural Organization |
| GTA | Global Trade Atlas |
| IGF | Interglobal Forest |
| LBW | LB Wood Cambodia Co., LTD. |
| NMFS | National Marine Fisheries Service |
| NOI | Notice of Investigation |
| SSEZ | Sihanoukville Special Economic Zone |
| TRLED | Trade Remedy Law Enforcement Directorate |

## I.    <u>INTRODUCTION</u>

InterGlobal Forest, LLC ("IGF") hereby submits its Written Comments in Opposition to CBP's Remand Redetermination dated 05/28/2024, ECF 97, Appx45373-Appx45427 ("Redetermination"). This Opposition is based on the fact that (1) CBP disregarded new rebuttal evidence, (2) no evidence on the record contradicts the declarations of Kurt Winn and Fu Wenjie regarding IGF's production capacity, (3) CBP relied on caselaw that has been overturned, (4) CBP relied on irrelevant and unreliable trade data, and (5) CBP relied on speculation rather than well-reasoned analysis to support its affirmative evasion determination. IGF requests the Court remand the Redetermination for a finding of no evasion.

## II.    <u>CBP'S REDETERMINATION OF EVASION AGAINST IGF IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS UNREASONABLE, ARBITRARY, AND CAPRICIOUS</u>

Under the arbitrary and capricious standard, CBP "must examine the relevant data and articulate a satisfactory explanation for its action{,} including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins.*

*Co.,* 463 U.S. 29 (1983) (quoting *Burlington Truck Lines v. U.S.*, 370 U.S. 156, 168 (1962)). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence or represent an unreasonable judgment in weighing relevant factors." *AMS Associates, Inc. v. U.S.,* 881 F.Supp.2d 1374 (C.I.T. 2012) citing *Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277 (Fed. Cir. 2005). "*Courts look for a reasoned analysis* or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *WelCom Tube Co. v. U.S.*, 865 F.Supp.2d 1340, 1341 (C.I.T.), citing *U.S. Steel Corp. v. U.S.*, 621 F.3d 1351, 1357 {Emphasis added}.

CBP does not provide a well-reasoned analysis or explanation. The evidence demonstrates that IGF did not transship hardwood plywood from China, but rather purchased plywood from LB Wood ("LBW") which was manufactured in Cambodia.

## III.  IGF'S ARGUMENTS IN OPPOSITION TO AFFIRMATIVE REDETERMINATION FINDING EVASION

### A.  CBP IMPROPERLY BASES ITS FINDING OF EVASION ON ITS AGENT'S INTERPRETATION OF CASE LAW AND STATUTORY LAW

1. <u>CBP Seeks the Court to Defer to the Agent's Findings of Law in Violation of the USCIT's Ruling in *Far East*</u>.

This case is analogous to *Far East American, Inc. et al. v. U.S.*, Consolidated Court No. 1:22-cv-00213-MAB ("*Far East*"), and the Court should rely on that precedent to find no evasion against IGF.

In *Far East*, CBP alleged that IGF transshipped plywood from China through Vietnam and prematurely liquidated [   ] entries of hardwood plywood from manufacturer Vietnam Finewood Company Limited to IGF, in violation of 19 CFR § 351.225(l)(1)(2020). Despite its illegal conduct, CBP refused to re-suspend the entries. IGF filed suit.

On the eve of CBP's statutory deadline for concluding its investigation, CBP abandoned its transshipment theory and adopted a new theory, that two-ply panels imported into Vietnam were "covered merchandise." CBP submitted a covered merchandise referral to the Department of Commerce ("Commerce") pursuant to 19 U.S.C. § 1517(b)(4)(A).[1]

CBP relied on Commerce's affirmative covered merchandise finding to issue its final evasion determination against IGF. Following a court ordered remand to reconsider that finding, Commerce reversed its

_____

[1] Far East Redetermination, Case No. 1:22-cv-00213-MAB, ECF No. 71 at 3.

determination of evasion under protest after finding, consistent with this Court's interpretation of the Orders, that IGF did not import "covered merchandise" under 19 U.S.C.§ 1517(a)(3). Far East Redetermination at 2. Absent the importation of covered merchandise into the U.S., CBP had to issue a negative determination as to IGF. *Id.* at 2, 6.

On April 8, 2024, the Court issued an opinion and final judgment affirming CBP's finding of no evasion. *Far East* Slip Op. 24-40, sustaining CBP's Remand Redetermination. *Far East* ECF 18.

Judge Barnett determined that the scope of the Orders covered plywood that was "*at least three plies*". (Emphasis added).[2] The Court then remanded the matter to Commerce to issue a scope ruling consistent with his findings.

Unfortunately, here CBP has ignored Judge Barnett's binding ruling limiting the scope of the Orders, as well as its own scope ruling after remand, which was made "under protest". In an intentional disregard of binding precedent, here CBP asserts that even Chinese plywood made from <u>single</u> veneers, that is, one-ply sheets, are subject to the Orders.

---

[2] *Vietnam Finewood Co. Ltd., v. U.S.*, 633 F.Supp.3d 1243, 1248 (Ct. Int'l Trade Apr. 20, 2023) at 1262.

This assertion is contrary to this Court's findings in *Far East*. Thus, the Court should find no evasion against IGF.

> 2. <u>CBP Seeks for this Court to Defer to the Agent's Findings of Law in Violation of 19 CFR § 351.225 and *Loper Bright Enterprises*.</u>

In Section IV (Written Arguments) of the Redetermination, CBP asserts that its Agent's position has unfettered authority to determine whether the plywood products are within the scope of the Orders. Redetermination at p. 24, Appx45396. CBP's assertion is wrong and violates federal regulations and controlling case law.

The June 6, 2018 site visit by [

                          ](the "Agent"), was deficient in that (i) it took place a year before CBP initiated its investigation of IGF, (ii) was not part of the investigation of IGF, and (iii) was never confirmed by a follow up visit. *Id.* at 24, Appx45396. Despite the short duration of the unrelated visit, CBP alleges that its Agent's position "*carries with it the ability to make authoritative pronouncements pertaining to whether wood products are in or out of scope,*" yet cites no authority for such assertion. *Id.* In fact, this assertion is wrong pursuant to 19 CFR § 351.225 (when a question arises as to whether a product is covered by the antidumping or

5

countervailing duty order, a scope ruling will be made by the Secretary of Commerce, <u>not</u> CBP or its agents).

CBP routinely requests scope rulings from Commerce because it lacks the authority to make such rulings. Thus, an assertion that the Agent possesses the authority to make scope rulings violates both 19 CFR § 351.225 and the *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), SCOTUS ruling that interpretations of law are reserved to the Courts, not administrative agencies. Although CBP ignores this Court's ruling in *Far East*, the USCIT has <u>already</u> interpreted the scope of the Orders.

### B. CBP BASES ITS FINDING OF EVASION ON ITS AGENT'S ALLEGED EXPERTISE AND CURSORY SITE VISIT TO LBW

#### 1. <u>CBP Seeks this Court to Defer to its Agent's "Expertise" Without Any Record Evidence as to Said Expertise</u>.

In Section IV (Written Arguments) CBP asserts that its degree of reliance upon the Agent's conclusions regarding LBW's production capabilities is based on the "expertise of the {Agent} in identifying wood products," and thus the Court must defer to CBP's findings. Redetermination at p. 24, Appx45396. CBP's assertion is wrong. CBP relies on specious circular reasoning. CBP cites to the Notice of Determination of Evasion

in EAPA Investigation Number (No.) 7321 (June 29, 2020) ("NOI") Appx01033-01050 "at note 45."[3] See Appx01039. However, note 45 of the NOI states [                    ] position carries with it the ability to make authoritative pronouncements pertaining to whether wood products are in or out of scope," citing to yet another document, the "September 12 Memorandum at 14." TRLED, Adding Certain Documents to the Administrative Record (Sep. 12, 2019), Appx07017-07038 ("September 12 Memo").

The September 12 Memo refers to the assertion it purportedly supports, relying solely on the Agent's job title.

In fact, nowhere in the administrative record does CBP describe, detail, list, or summarize the Agent's purported expertise, other than making conclusory statements regarding said expertise: nor does CBP provide a declaration from the Agent regarding [    ] very brief visit to LBW's manufacturing facility;   nor does CBP provide or cite any <u>contemporaneous</u> reports, records, or communications from the Agent regarding LBW other than [                    ] purportedly taken on June 6, 2018, (a year before the investigation was initiated).

---

[3] As discussed above, this assertion by CBP flouts the Supreme Court's recent ruling in *Loper Bright Enterprises*.

With this backdrop, CBP expects this Court to defer to its Redetermination, rather than carefully weighing the evidence and exercising its independent judgment. The SCOTUS has allowed for "a measure of deference proportional to the 'thoroughness evident in {the agency's} consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (quoting *U.S. v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 134 (1944)).

"As the {SCOTUS} noted in *Bowen v. American Hospital Ass'n*, 'agency deference has not come so far that agency action is upheld whenever it is possible to conceive a basis for administrative action.'" *Novosteel SA v. U.S.*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) (citing to *Bowen v. Am. Hosp. Asso.*, 476 U.S. 610, 626 (1986) (Emphasis added); see also, e.g., *Shenzhen Xinboda Industrial Co., Ltd. v. U.S.*, 279 F.Supp.3d 1265 (C.I.T. 2017) (noting that Commerce determinations cannot be based on "mere conjecture or supposition").

## C.  IGF PROVIDED COMPELLING NEW TESTIMONIAL AND PHOTOGRAPHIC REBUTTAL EVIDENCE REFUTING [                    ]'S ASSERTIONS REGARDING [                    ]

1. The Declaration of Kurt Winn Refutes [                    ]'s Assertions That LBW Lacked Production Capacity and That Its [          ] Was [                    ].

CBP, through [          ], asserts that Cambodian factories such as LBW's aren't sophisticated enough to produce the plywood it provided to IGF. Appx07019. CBP's assertion is wrong.

IGF took Judge M. Miller Baker's admonition that the Court was not like a pig hunting for truffles[4] to heart and provided new rebuttal evidence in the declarations of Kurt Winn, chief operating officer of IGF, and Fu Wenjie, manager of LBW's production facility in Cambodia to address IGF's prior dereliction in fully explaining the voluminous [          ]produced in the earlier proceedings.

---

[4] Judge Baker noted that Plaintiffs submitted voluminous evidence ostensibly proving their position but noted that a citation to a block of over 11,000 pages is the equivalent of citing nothing. "Judges are not like pigs, hunting for truffles buried in briefs" or in administrative records. *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) (per curiam). Slip Opinion 23-93 (June 22, 2023) at pp. 39-40.

Those declarations are under penalty of perjury, something that CBP cavalierly dismisses and disregards as biased and untrustworthy. However, these declarations accurately and truthfully detail the [

] in manufacturing the [                    ] products at issue and give context and meaning to the voluminous [                    ] previously produced, as well as providing new testimonial and photographic evidence refuting its Agent's assertions as to [

] and the false assertion that it did not maintain [

].

The Revised Winn Decl. provides unrefuted testimony that in March, July, and December of 2018, Winn conducted site inspections of LBW's production facilities, located in the Sihanoukville Special Economic Zone, 212KM National Road 4, Prey Nop District, Sihanouk Province, Kingdom of Cambodia ("SSEZ"). Revised Winn Decl. at ¶11, Appx45188.

During each of his three inspections of LBW's facilities, Winn witnessed plywood being manufactured on LBW's production line. Revised Winn Decl. ¶12, Appx45188 and ¶39, Appx45196. Winn attested that he observed each of the production machines and processes in operation shown in the photographs marked in the administrative record as [

] which are included in the soft appendix as Production Flow Chart and Photographs, Appx27757-Appx27773. See Revised Winn Decl. ¶¶38,39 Appx 45196.

The Revised Winn Decl. provides further evidence rebutting the [

] false assertion that [                                        ]. Revised Winn Decl. ¶¶29,31, Appx 45193-45194 and photographs of the operating UV line which Winn took on March 17, 2018, attached as Exhibits 1-3, Appx 45199-45204.

These photographs show one of IGF's local inspectors and Mr. Wenjie inspecting the [                                        ] and an LBW employee standing at the final table on the operating UV line with stacks of finished [    ] plywood. Revised Winn Decl. Exhs. 1 and 2, Appx45199-45202.

Exhibit 3 to the Revised Winn Decl., Appx45203-45204 is a photograph which Winn took on July 6, 2018, during his second inspection at LBW's factory in Cambodia. Exhibit 3 shows the fully operational UV line, which is also visible in [                ] Appx07032. The cannisters of protective fluid which are cured by the UV light in the UV line are clearly visible in Exhibit 3 and in [

] Appx07032-Appx07035. Significantly, cannisters of [

] with [

] indicate [

] is operational.[5]

A photograph of the UV line taken by LBW clearly shows that the "gaps" in the UV line are normal in an operational UV line. Revised Winn Decl. ¶ 32, Appx45194 and Exhibit 4 Appx45206. The small gaps between the roller tables are clearly visible. The cannisters of protective fluid which are cured by the UV light in the UV line are clearly visible on the floor feeding into the UV line. Furthermore, virtually every shipment of plywood IGF received from LBW during the period of June 2018 through August 2019 included [                    ] *Id.* Winn witnessed hardwood plywood being cured with UV light by LBW on the UV line. *Id.* at Exh. 1 – 3, [              ] Appx45199-45204.

---

[5] CBP dismisses the probative value of these photographs, stating that no assurance exists that the date below the photograph is legitimate, given that the photo was not provided during the EAPA investigation. Redetermination at 53. This objection lacks merit because the photographs are <u>rebuttal evidence</u> authorized by the Remand Order issued by this Court and deserve full consideration by CBP.

On March 17, 2018, Winn inspected finished [                    ] plywood stacked at the end of the UV line. Winn confirmed that it did not come from China. Revised Winn Decl. ¶ 34, Appx45195. In his visits to LBW in July 2018 and December 2018, Winn again witnessed IGF's plywood being made. Revised Winn Decl. ¶ 35, Appx45195.

The Revised Winn Decl. further rebuts [            ] assertion that LBW was not capable of [              ]. CBP "acknowledged that IGF was permitted to source materials such as the wood that the CBP agent found from other places and was not required to only utilize what grew in Cambodia."[6] The Revised Winn Decl. reflects that [    ] were imported into Cambodia, Revised Winn Decl. ¶ 21, Appx45191, and thereafter LBW's operations substantially transformed these raw materials such that the country of origin would be Cambodia. Revised Winn Decl. ¶ 23, Appx45191-Appx 5192 and ¶ 35, Appx45195

IGF agrees with [          ] assertion that "Veneers are significantly different products from plywood, so, when made into plywood, a

---

[6] LBW Qre Rsp dated November 8, 2019 at 14 Appx30900 and Exhibit 14 Appx27757-Appx27773.

substantial transformation takes place, and where the plywood is made is the country of origin." CBP Site Visit Memo at Appx07019.

    2. <u>LBW Was Fully Operational On The Day Of CBP's June 6, 2018, Site Visit</u>.

As of the Agent's June 6, 2018, visit, LBW had a fully operational factory with the following equipment: [

]    See Wenjie Decl. ¶ 8, Appx45148; see also [

,] Appx27757-27773.

Winn observed these machines manufacturing high-quality [    ] that passed IGF's rigorous inspection standards and were ultimately sold, without complaint, to IGF's domestic customers. Revised Winn Decl. ¶ 39, Appx45196.

Moreover, Winn observed that LBW continued to expand its facilities. In October 2018, LBW set up [

.] Revised Winn Decl. ¶ 39, Appx45196.

LBW also [

] Revised Winn Decl. ¶ 39, Appx45196.

Based on the foregoing, LBW had adequate production capacity throughout the period of the pendency of the EAPA investigation to provide IGF with high quality Cambodian plywood. Revised Winn Decl. ¶ 39, Appx45197.

3. <u>The Wenjie Declaration Further Refutes [                    ]'s Assertions that LBW Lacked Production Capability</u>

Wenjie declares under penalty of perjury that at all times during this case and the underlying investigations, the plywood sold to IGF was produced in Cambodia. Wenjie Decl. ¶4, Appx45147. Additionally, the photographs taken by [            ] during the June 6, 2018 visit do not fully reflect the size and scope of LBW's production facilities. Wenjie Decl. ¶ 6, Appx45147. At the time of CBP's visit, LBW had [   ] employees working in its factory. Wenjie Decl. ¶ 7, Appx45147-Appx 45148.

Wenjie attests that at the time of the June 6th visit, LBW had [

] Wenjie Decl. ¶ 8, Appx45148.

Wenjie specifies that the [

] Wenjie Decl. ¶ 9, Appx45148. Wenjie further

explains that the [

.]Wenjie Decl. ¶ 10, Appx45149.

As LBW continued to bolster its production capacity, {i}n [

]. Wenjie Decl. ¶ 11, Appx45149.

16

LBW also [


] Wenjie Decl. ¶ 11, Appx45149. Therefore, Wenjie attests that LBW

had adequate production capacity at all relevant times. Wenjie Decl. ¶

11, Appx45149.

> ### 4. <u>CBP's Analysis of LBW's Production Capability Is Unreasonable Because It Disregards Substantial Evidence and Fails to Properly Weigh Relevant Production Data</u>.

In Section IV (Written Arguments) of the Redetermination, CBP argues that production documents and other records do not substantiate LBW's alleged production capacity due to various discrepancies. CBP is wrong.

These purported discrepancies in the records are incorrect or irrelevant and do not discredit the overall reliability of LBW's production and sales records. Importantly, TRLED did not find any evidence of transshipment within those records but merely speculates that it must have occurred. "It is well established that speculation does not constitute 'substantial evidence.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009).

IGF and LBW responded to all TRLED's questions thoroughly and truthfully, expecting CBP officials to verify said responses with an on-site verification in Cambodia, of LBW's manufacturing, processes, and equipment as well as the production and sales records.

In its June 29, 2020 Evasion Determination, TRLED commented that it was unable to tie [                                        ]. Final Evasion Determination at 10, Appx01043. However, as set forth below, LBW provided [


                                        ] demonstrating that LBW had sufficient raw materials, including one-ply veneers, to produce the plywood it sold to IGF.

Moreover, the raw material purchases outlined below demonstrate that LBW had existing inventory to go into production, several months before the period of investigation began in June 2018.

LBW [


] Appx26633-26638; [    ] Appx26639-26643. For raw materials imported into Cambodia from [                    ] LBW submitted [

] Appx26633-26638. LBW also provided [

] Appx44357-44358 [

] Appx33178-33385. For veneers sourced locally, LBW submitted [

].

As [                                        ] Appx26633-26638 reflects,

[

[7],                                                      ]. Only a

portion of those veneers were sufficient to manufacture the plywood

which LBW sold to IGF during the period June 10, 2018, to September

26, 2019. [

] Appx33178-33385, Appx44363.

---

[7] Birch plywood is made using a single birch veneer as a finished face sheet over a
core made of single sheets of poplar veneer.

To further document that LBW had a sufficient supply of one-ply ve-
neers to produce the plywood it sold to IGF, LBW submitted [

] Appx33178-33385, [

] Appx26639-26643. LBW [                                  ]
veneers. Revised Winn Decl., ¶21, Appx45191.

The July 26, 2019, email exchange between [                    ] and
[                          ] confirms that "veneers are significantly different
products {from plywood}, and, so, when the logs are changed into veneers,
a substantial transformation takes place." [

] Appx07019.

Since the production documents in this case show LBW imported only
one-ply-veneer from China, and not finished plywood or three-ply panels,
the Court's holding in *Far East* is controlling in this case as well. Only
two or more layers or plies of wood veneers and a core, i.e., at least three
plies, are covered merchandise." *Id*. at 1262.

Therefore, the Court must find that there was no evasion by IGF.

20

5. <u>A Detailed Reconciliation of LBW's Payroll Documents Disproves the Conclusions Contained in CBP's Sept. 12, 2019, Memo that LBW Lacked Sufficient Employees to Produce the Plywood It Sold to IGF</u>.

CBP asserts LBW did not have sufficient employees to produce the plywood it sold to IGF. CBP's assertion is rebutted by the administrative record. A detailed reconciliation of the wages recorded on [                    ] for employees engaged in plywood manufacturing at its Cambodian factory and the [                                    ] on LBW's [

       ] is accurate to less than one percent, primarily due to rounding errors or prepaid employee salaries. See [




] Appx44498-44539.

TRLED fails to consider normal manufacturing practices. For operations such as LBW, an exact match of raw material purchases to specific production runs is not possible because manufacturers maintain inventory of most raw materials since their customers normally order generic products that share common raw materials. LBW imports a large portion of its raw materials, and LBW cannot plan raw material purchases only after receiving each order and still guarantee a timely delivery. LBW

maintains inventory of its raw materials, and the company has no means of tying each production run to specific raw material purchases. This is common in the manufacturing industry unless the purchase order concerns a highly customized product. In antidumping proceedings, Commerce regularly accepts a reasonable allocation methodology of raw materials to subject merchandise. *Myland Indus., Ltd. v. U.S.*, 31 Ct. Int'l Trade 1696, 1703 (U.S. 2007).



      6.  [               ] Assertion That [                        ]
           Cannot Be Produced in Cambodia Is Wrong.

[            ] asserts that Cambodian factories cannot produce [      ] and [        ] plywood that is "even, without veneer overlaps, gaps, and voids," because Cambodian factories are not sophisticated enough. [

              ] Appx07019. [         ] also asserts that Cambodian factories cannot manufacture quality plywood because "[

] and [

              ] are temperate woods that do not grow well in [             ]'s tropical climate. Ibid. [         ] is wrong. Based on these unfounded and unsupported conclusions, the Agent determined that the plywood [      ] saw at LBW was made in China because it was made from temperate

wood and had no veneer overlaps, gaps, and voids. *Ibid.* However, as set forth in the Winn and Wenjie declarations, LBW could and did indeed produce high quality [      ] and [      ] plywood.

    7. <u>CBP is Required to Consider the Entire Record and Refused To Do So.</u>

In Section IV (Written Arguments), CBP asserts that it considered all the evidence as "a whole." Redetermination at p. 19. CBP's assertion is wrong. CBP admitted to disregarding the Wenjie Declaration outright, flippantly stating that the Wenjie declaration is of no consequence. Redetermination at p. 17. When considering a substantial evidence issue, the court evaluates whether the challenged agency action "was reasonable given the circumstances presented by the circumstances of the *whole* record." [Emphasis added.] 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2022). Here, rather than carefully considering the entirety of the rebuttal evidence, CBP capriciously dismissed the declarations and new photographic evidence in the Winn and Wenjie Declarations. CBP ignores the fact that a determination must be based on the whole record. *JSW Steel (USA) Inc. v. U.S.*, 466 F. Supp. 3d 1320, 1328–29 (Ct. Int'l Trade 2020). Thus, CBP failed to meet its obligations to consider the entire file on remand.

### D. CBP'S REDETERMINATION RELIES UPON CASE LAW THAT HAS BEEN OVERTURNED

1. <u>There Is No Longer a Legitimate Basis to Find EAPA is a Strict Liability Statute.</u>

In Section IV (Written Arguments) of the Redetermination, CBP accepted the Coalition's argument that EAPA is a strict liability statute. CBP was wrong. CBP cited to *Ikadan Systems USA, Inc. v. U.S.*, 639 F.Supp. 3d 1339 (CIT 2023) in support of this finding. CBP asserts that the "EAPA read as a whole supports [a] strict liability interpretation of the definition of evasion." Redetermination at pp. 36, 37. *Ikadan* relied on the deference standard of *Chevron, USA, Inc. v. Natural Resources Defense Counsel, Inc.*, 104 S.Ct. 2778 (1984), which was overruled by the SCOTUS in *Loper*, leaving no basis to find that EAPA is a strict liability statute.

In *Ikadan*, importers challenged an evasion determination. The importers argued that the "plain meaning of the term 'evasion' in EAPA requires at least some level of culpability." 639 F. Supp. 3d at 1347.[8] CBP

---

[8] EAPA defines evasion as entering covered merchandise into the U.S. "by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material . . ."

made no finding as to the importers' culpability. CIT noted that the question before it was whether EAPA's definition of "evasion" required CBP to find culpability. The court relied on *Chevron's two-step* analysis. <u>Step 1</u> - determine whether the statutory language is clear or ambiguous. The court held: "the plain language of the statutory definition of evasion does not express clear Congressional intent to establish a culpability requirement." *Id*. With no clear Congressional intent, the court turned to - <u>Step 2</u>: whether the agency's answer "is based upon a permissible construction of the statute." Noting that a "permissible" interpretation is one that is reasonable, the court found CBP's determination was reasonable and held that EAPA was a strict liability statute.

In *Loper,* the SCOTUS overturned *Chevron,* holding that a court may not give deference to an agency's determination but must exercise its own independent judgment. That case involved the interpretation of the Magnuson-Stevens Fishery and Conservation and Management Act by the National Marine Fisheries Service ("NMFS"), a Commerce agency. A group of fishing boat operators challenged NMFS's power to require them to pay for onboard observers to monitor their vessels' fishing operations. The D.C. Circuit, relying on *Chevron*, held that the statute was

25

ambiguous, and that NMFS offered a reasonable interpretation of the statute. The SCOTUS granted cert and disagreed with the D.C. Circuit. The SCOTUS ruled that courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority. Given that the SCOTUS has overruled *Chevron*, the Redetermination should be reversed. EAPA is not a strict liability statute and requires culpability.

>    2.  <u>Independent Judgment Can Only Lead To The Conclusion That Evasion Under the EAPA Requires Culpability</u>.

*Loper* held that courts must use independent judgment in determining whether an agency has acted within its authority. Here, independent judgment requires the conclusion that "evasion" under the EAPA requires culpability. As stated in *Diamond Tools Technology v. U.S.*, 609 F. Supp. 3d 1378, statutory construction requires EAPA to be read with a degree of culpability. The application of CBP's construction would render the provision "material and false statement or omission" a "nullity," thereby violating a core principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* at 1386 *citing Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Section 484 of the Tariff Act supports this and provides that an "importer of record" shall, "using reasonable care," make entry of merchandise into the U.S. by filing such documentation necessary to enable CBP to determine whether legal requirements have been met – including whether the "country of origin" is accurate.

### 3. IGF is Not Culpable Because It Exercised Reasonable Care in Confirming Cambodia as The Country Of Origin Of Its Imports.

The Revised Winn Decl, Appx45184- Appx45206, illustrates the extreme care that IGF took to confirm that the country of origin of its plywood was Cambodia.

When LBW was formed and began manufacturing plywood in Cambodia, IGF pivoted to purchasing plywood from LBW in Cambodia to comply with the AD/CVD Orders. *Id.* at ¶6, Appx45186-Appx45187.

IGF conducted comprehensive due diligence itself and through an independent inspector, [                          ]. *Id.* at ¶9, Appx45187, ¶13, Appx45188 ¶¶40, 41, Appx45197. This demonstrates the extreme care IGF took to ensure that the plywood was manufactured in Cambodia. In March, July, and December of 2018, Winn conducted site inspections of LBW's production facilities in Cambodia. *Id.* at ¶11, Appx45188. During

27

each of those three inspections, Winn witnessed plywood being manufactured on LBW's production line. *Id.* at ¶12, Appx45188. Winn never saw commingling, substitution, or replacement of any finished plywood purchased by IGF from LBW. *Id.* at ¶17, Appx45190.

Winn's visits to LBW's manufacturing facilities in March, July, and December of 2018 were not only to inspect the manufacturing facilities, but to confirm that LBW's production quality and capability was sufficient to meet IGF's needs. *Id.* at ¶18, Appx45190. On March 17, 2018, Winn observed LBW's production facilities and the types of plywood being produced. *Id.* at ¶20. Appx45190. During the March visit, Winn took several photographs showing the processing of large quantities of raw materials to manufacture plywood. *Id.* at ¶24, Appx45192.

Winn visited the LBW factory again in July 2018. He observed a large number of employees and took more photographs of the production processes and plywood in various stages of production. *Id.* at ¶25-26, Appx45192. Winn then visited the facilities in December 2018. He witnessed many employees and again took multiple photographs showing the employees, the processes and materials being produced. *Id.* at ¶27-28, Appx45193. During his visits in July 2018 and December 2018, he

watched IGF's plywood being made and was satisfied with the high quality of that plywood. *Id.* at ¶35, Appx45195. This high-quality plywood was based on Wenjie's meticulous operation of LBW's production processes and IGF's vigorous quality control program. *Id.* at ¶36 Appx45195. Given Winn's extensive experience in the industry, Winn's site visits demonstrate the extreme measures that IGF took to confirm that the plywood it was importing was manufactured in Cambodia. In addition to Winn's site visits, IGF hired local independent inspectors who were onsite at LBW's production facility during production runs of IGF's products. *Id.* at ¶14, Appx45189. Those inspectors had expert knowledge of the production cycle and conducted comprehensive inspections of LBW's entire production cycle for plywood ordered by IGF. *Id.* at ¶14, Appx45189.

Considering all of IGF's due diligence, Winn has no doubt that all of the hardwood plywood purchased from LBW was produced in Cambodia with no commingling of Chinese plywood or any other source. *Id.* at ¶42, Appx45198. The extreme measures that IGF took demonstrate that it cannot be held culpable for evasion under the EAPA statute.

### 4. IGF Did Not Make Materially False Statements Because It was Complying with the Express Terms of the Orders

In the Redetermination, CBP argues that IGF did not properly apply *Diamond Tools*. CBP notes that the *Diamond Tools* court held that the importer did not make materially false statements because it was complying with express guidance issued by Commerce. Redetermination at pp. 36-37. CBP argues that IGF was not following express guidance and that *Diamond Tools* is not analogous. CBP is wrong. Analogous to the importer in *Diamond Tools*, IGF was complying with the plain and unambiguous language of the Orders. These Orders do not prohibit a manufacturer's use of one-ply veneers and two-ply cores. The meaning of this plain language was recently affirmed in *Far East*. The *Far East* Scope Opinion interpreted the "unambiguous" language of the scope of covered merchandise to exclude raw materials imported from China such as two-ply cores. The court then held that the scope is unambiguous insofar as it "covers hardwood plywood and certain veneered panels that, for purposes of the underlying proceeding, and from the second scope sentence onward, are collectively described as hardwood plywood 'consisting of two or more layers or plies of wood veneers and a core,' i.e., at least three plies." *Id.* at 1262.

Given that IGF was complying with express guidance in the Orders, the case of *Diamond Tools* is analogous. The holding there is equally applicable here. IGF is not culpable of making materially false statements because it was complying with the "unambiguous" terms of the Orders, as set forth in *Far East*.

### E. TRADE DATA THAT THE COALITION AND TRLED PLACED ON THE RECORD AND UPON WHICH CBP RELIED IN ITS FINDING OF EVASION IS UNRELIABLE AND IRRELEVANT

In Section IV (Written Arguments) of the Redetermination, CBP asserts that its reliance on unreliable and unrelated trade data is proper.[9] CBP's assertion is wrong. In initiating its investigation and implementing interim measures against IGF, CBP improperly relied on the Coalition's submission of import and export data which was unreliable.[10]

Evidence in proceedings before federal agencies is admitted in accordance with the APA. *Anderson v. U.S.*, 16 CIT 324, 327, 799 F. Supp. 1198, 1202 (1992); *Tarnove v. Bentsen*, 17 CIT 1324, 1326 (1993). Under the APA, "[a]ny oral or documentary evidence may be received, but the

---

[9] Redetermination at pp. 22, 23.
[10] See CBP Initiation Memo on IGF at 2 Appx01008 and 5 Appx01011 (June 26, 2019) ("Initiation Memo re IGF").

agency as a matter of policy shall provide for the exclusion of *irrelevant, immaterial*, or unduly repetitive evidence." (Emphasis added) 5 U.S.C. §556(d). The APA empowers those presiding over administrative hearings to "rule on offers of proof and receive *relevant evidence*." (Emphasis added) *Id.* § 556(c)(3). Hearsay evidence in administrative proceedings is "admissible *up to the point of relevancy*." *Richardson v. Perales*,402 U.S. 389, 410 (1971) (Emphasis added). If evidence meets this standard, it may be considered "in light of its truthfulness, reasonableness, and credibility."

Here, the data considered is from the Forestry Yearbook regarding Chinese and Cambodian plywood production and exportation from *2016, two years prior* to the Orders. IGF imported the plywood in question from Cambodia in 2018 and 2019. TRLED claimed that import/export trends in China, Cambodia, and the U.S. reasonably suggested that some Chinese exports of plywood pass through Cambodia by transshipment. NOI, Appx01021-01022, Appx01025.

But while a "reasonable suggestion" may be grounds to initiate an investigation, CBP cannot rely on this contradictory data as substantial evidence of evasion. CBP fails to reconcile the conflicting data from its

own cited sources. For example, based on the Forestry Yearbook, in 2017, Cambodia's total plywood exports to the world is only 4,000 cubic meters, but the U.S. alone imported 20,452 cubic meters according to the ITC data. See Coalition Request for an Investigation of Interglobal Forest LLC Under the Enforce and Protect Act (May 1, 2019)(the "Coalition Request") at Ex. 2 (UN FAOStat Forestry Yearbook 2016, Appx01499-Appx01507). Further, the purported Chinese Export Statistics show that China exported 106,267 cubic meters of plywood to Cambodia in 2017, while the total Cambodian imports of plywood from the whole world were only 70,000 cubic meters. See Coalition Request at Ex. 3 (Chinese Export Statistics, Appx01508-Appx01512); and Ex. 4, (USITC Data, Appx01513-Appx01514).

With respect to the 2018 data, the Coalition's Exhibit 3 shows that China exported 1,137,071 cubic meters of plywood to the U.S., while the Coalition's Exhibit 4 shows the U.S. only imported 181,288 cubic meters of plywood from China.

Courts do not condone an agencies' refusal to consider conflicting information in its evasion determinations, and specifically disapprove when an agency fails and refuses to reconcile conflicting trade data. In

33

*SolarWorld Ams., Inc. v. U.S.*, 962 F.3d 1351 (Fed. Cir. 2020), the U.S. Court of Appeals for the Federal Circuit overturned Commerce's anti-dumping administrative review decision in Crystalline Silicon Photovoltaic Cells from China, where Commerce failed to reconcile the inconsistency between Thai import data published by the Global Trade Atlas (GTA) with conflicting data from the U.S. International Trade Commission's ("ITC") Dataweb website. The Court held that contradictory trade data cannot simply be cherry-picked by an agency to support a finding of evasion.

Here, there are even more reasons to strike CBP's reliance on its cited trade data. Among other things, the data does not directly relate to IGF, is for an irrelevant period, offers absolutely no probative value, and is highly prejudicial and unreliable. The data does not meet the evidentiary requirements of the APA or the Courts and should be excluded.

### F.  CBP REFUSED TO COMPLY WITH THIS COURT'S REMAND ORDER TO PROVIDE BUSINESS CONFIDENTIAL DOCUMENTS USED IN THE INVESTIGATION

CBP asserts that it complied with this Court's Remand Order in providing access to business confidential documents. CBP's assertion is

wrong. On or about January 26, 2024, this Court issued an Order specifically instructing CBP "to reconsider or further explain its evasion determination in light of a recent decision issued by {the} Court in *Royal Brush Manufacturing, Inc. v. U.S.*, 75 F.4th 1250 (Fed. Cir. 2023) regarding access to business confidential information during EAPA investigations."[11]

CBP failed and refused to identify specific "confidential" information that was not provided during the investigation, and which was considered in CBP's evasion determination. CBP has refused to identify and provide any communications, reports, and any other related writings and information that [                    ] produced or generated before, during and after [   ] site visit to LBW. CBP has failed to provide a list of the people [   ] spoke to both during [   ] visit and internally after [   ] returned from [      ] visit. CBP has failed to provide a full list (if any) of production documents that [   ] gathered, viewed, or considered during [   ] visit.  And CBP has refused to   disclose  any  communications issues

_____

[11] Order to Remand from the U. S. Court of International Trade to Customs and Border Protection in *American Pacific Plywood, Inc., et al., v. U.S.*, Consolidated Court No. 1:20-cv-03914, dated January 26, 2024, remanding U.S. Customs and Border Protection's (CBP) affirmative determination as to evasion and the administrative review decision in EAPA Consolidated Case No. 7321, ECF 94.

the CBP Agent encountered as there is no information on the record that the Agent speaks Cambodian or had a translator present.

Based on the foregoing, clearly CBP has not fully complied with the Court's Order and continues to refuse to show deference to this Court.

## G. LBW'S LOCATION IN THE [SSEZ] AND ITS CHINESE CONNECTIONS ARE OF NO CONSEQUENCE

After basically dismissing IGF's rebuttal evidence, CBP continues to confuse the issues by belaboring the non-issues that (1) IGF purchased Chinese plywood before the Orders were in effect, (2) LBW was founded in December 2017 and its general manager used to work for [        ], and (3) LBW operated out of the Sihanoukville Special Economic Zone (SSEZ). Moreover, even though they are two completely unrelated companies, CBP continues to impute Happy Home's deficiencies to LBW.

## IV.    CONCLUSION

For the reasons set forth above, the Court should find that CBP has not met its burden to establish, based on substantial evidence and considering all that detracts from that evidence, that IGF evaded the Hardwood Plywood AD/CVD orders by transshipping covered merchandise to

the U.S. through Cambodia. Therefore, the Court should remand the Redetermination of evasion to CBP for a finding of no evasion.

                    Cadden & Fuller LLP

                    /s/ Thomas H. Cadden
                    Thomas H. Cadden, Esq.
                    Ivan U. Cisneros, Esq.
                    CADDEN & FULLER LLP
                    2050 Main Street
                    Suite 260
                    Irvine, CA 92614
                    (949) 788-0827
                    Email: tcadden@caddenfuller.com;
                    icisneros@caddenfuller.com
                    ***Counsel to Plaintiff***
                    ***InterGlobal Forest, LLC***

Dated: September 23, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

*American Plywood, Inc., et al. v. United States*
*Consol. Court No.* 20-03914 (Ct. Int'l Trade)
EAPA Cons. Case No. 7321
Remand No. 7970

Consolidated Plaintiff InterGlobal Forest, LLC's Written Comments in Opposition to U.S. Customs and Border Protection's (CBP) Remand Redetermination Affirmative Finding of Evasion. These Written Comments comply with the word limitation of 7,000 words set forth in the Scheduling Order (June 26, 2024). Doc. No. 104. At the time of filing the Written Comments consisted of 6,400 words.

Cadden & Fuller LLP

/s/ Thomas H. Cadden
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
Email: tcadden@caddenfuller.com
Attorneys for Plaintiff
InterGlobal Forest, LLC