NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

AMERICAN PACIFIC PLYWOOD, INC., *et al.*,

                Plaintiffs,

    and

LB WOOD CAMBODIA CO., LTD., *et al.*,

                Plaintiff-Intervenors,

    v.

UNITED STATES,

                Defendant,

    and

COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,

                Defendant-Intervenor.

Before: Hon. M. Miller Baker, Judge

Consol. Court No. 20-03914

NON-CONFIDENTIAL VERSION

Business Proprietary Information Removed from Pages 8, 9, 19-21

## COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD'S COMMENTS IN SUPPORT OF CBP'S REMAND DETERMINATION

Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Stephen A. Morrison, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202)719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

Dated: December 30, 2024

Consol. Ct. No. 20-03914                  NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 1

      A.   The Enforce and Protect Act ................................ 1

      B.   CBP's Remand Proceedings ................................. 4

III.  SUMMARY OF ARGUMENT ................................... 10

IV.   ARGUMENT ................................................................ 12

      A.   CBP Complied with CAFC's Mandate and this
           Court's Remand Order ......................................... 12

      B.   CBP's Determination is Otherwise Lawful ......... 14

           1.   CBP May Determine Whether Merchandise
                is Covered by the EAPA Investigation ........ 15

           2.   CBP's Remand Redetermination is
                Supported by Substantial Evidence ............ 18

           3.   EAPA is a Strict Liability Statute ............... 24

V.    CONCLUSION ........................................................... 28

Consol. Ct. No. 20-03914                           NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Pac. Plywood Inc. v. United States*,
2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) ................... 5, 18, 23

*Am. Pac. Plywood v. United States*,
2024 WL 302393 (Fed. Cir. Jan 26, 2024) ........................................... 5

*Boomerang Tube LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017) ........................................................... 12

*Cleo Inc. v. United States*,
501 F.3d 1291 (Fed. Cir. 2007) ......................................................... 23

*Diamond Tools Technology LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ...................................... 26

*Diamond Tools Technology LLC v. United States*,
609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ................................ 26, 27

*Ikadan Sys. USA v. United States*,
639 F. Supp. 3d 1339 (Ct. Int'l Trade 2023) ........................... 24, 25, 26

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024) ................................................................ 17, 25

*Royal Brush Manufacturing, Inc. v. United States*,
75 F.4th 1250 (Fed. Cir. 2023) .................................................. *passim*

*Russello v. United States*,
464 U.S. 16 (1983) ............................................................................ 25

## Statutes

19 U.S.C. § 1517 ................................................................................. 2

19 U.S.C. § 1517(a)(3) ....................................................................... 16

Consol. Ct. No. 20-03914                          NON-CONFIDENTIAL VERSION

19 U.S.C. § 1517(b)(4)(A) ............................................................... 16, 17

19 U.S.C. § 1517(c)(1)(A) ...................................................................... 3

19 U.S.C. § 1517(c)(2) ............................................................................ 2

19 U.S.C. § 1517(f)(1) ............................................................................ 3

19 U.S.C. § 1517(g)(1) ........................................................................... 3

19 U.S.C. § 1517(g)(2) ........................................................................... 3

19 U.S.C. § 1592 .................................................................................. 25

28 U.S.C. § 1581(c) .............................................................................. 12

28 U.S.C. § 2637(d) .............................................................................. 12

Trade Facilitation and Trade Enforcement Act of 2015,
    Pub. L. No. 114-125, 130 Stat. 122 (2016) ........................................ 1

**Regulations**

19 C.F.R. § 165.4(a) ............................................................................... 3

19 C.F.R. § 165.4(f) ............................................................................... 3

19 C.F.R. § 165.16(a) ........................................................................... 18

19 C.F.R. § 351.225(m)(1) .................................................................... 17

**Other Authorities**

Oxford English Dictionary Online, available at:
    https://www.oed.com/dictionary/false_adj?tl=true ............................ 27

Consol. Ct. No. 20-03914                    NON-CONFIDENTIAL VERSION

# <u>GLOSSARY</u>

**APO**
Administrative Protective Order

**EAPA**
Enforce and Protect Act

NON-CONFIDENTIAL VERSION

## I.    INTRODUCTION

On behalf of the Coalition for Fair Trade in Hardwood Plywood ("Coalition"), we respectfully submit the following comments in support of the remand redetermination issued by U.S. Customs and Border Protection ("CBP") regarding Enforce and Protect Act ("EAPA") Case Number 7321.  *See* Remand Determination (May 28, 2024), ECF No. 97, Appx45373–Appx45427 ("Remand Determination").

The Coalition adopts the arguments made in the United States' December 13, 2024 comments.  Confid. Def.'s Resp. to Interglobal Forest, LLC's Comments in Opp'n to Remand Determination (Dec. 13, 2024), ECF No. 112 ("Defendant's Cmts.").  In this brief, the Coalition provides additional context and arguments to aid the Court's understanding of the issues in this appeal.

## II.    BACKGROUND

Below, the Coalition lays out legal and factual background pertinent to this appeal.

### A.    The Enforce and Protect Act

EAPA was passed as part of the Trade Facilitation and Trade Enforcement Act of 2015. *See* Trade Facilitation and Trade

NON-CONFIDENTIAL VERSION

Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122, 155

(2016). EAPA directs CBP to investigate allegations of evasion of

antidumping and countervailing duties.  *See* 19 U.S.C. § 1517.  EAPA

defines evasion as:

> {E}ntering covered merchandise into the customs territory of
> the United States by means of any document or
> electronically transmitted data or information, written or
> oral statement, or act that is material and false, or any
> omission that is material, and that results in any cash
> deposit or other security or any amount of applicable
> antidumping or countervailing duties being reduced or not
> being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).

During its investigation, CBP may collect and verify information

through questionnaires and other methods that it finds appropriate.  *Id.*

§ 1517(c)(2).  Pursuant to CBP's current regulations, where any party to

an investigation properly claims business proprietary status for

information placed on the record, CBP will issue an administrative

protective order ("APO") to allow parties' representatives with access to

that business confidential information ("BCI").  *See* 19 C.F.R.
§§ 165.4(a) & (f).[1]

Once CBP makes a final decision, any party that filed an allegation
or that was found to have entered goods covered by a trade remedy
order through evasion may file an administrative appeal.  19 U.S.C.
§ 1517(f)(1).  After the administrative appeal is concluded, these parties
may seek judicial review of CBP's final evasion determination and
administrative review determination.  *Id.* § 1517(g)(1).  Judicial review
is limited to determining whether CBP complied with the procedures
required by 19 U.S.C. §§ 1517(c) & (f) and whether CBP's
determinations under these sections of the statute are "arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance with
law."  *Id.* § 1517(g)(2).  In this regard, 19 U.S.C. § 1517(c)(1)(A) requires
CBP's final determinations to be "based on substantial evidence."  *Id.*
§ 1517(c)(1)(A).

---

[1]    CBP amended its regulations to provide for an APO in the wake of
*Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed.
Cir. 2023) ("*Royal Brush*").

### B.  CBP's Remand Proceedings

The remand proceeding at issue arises from an investigation conducted under EAPA.  On April 12, 2019, the Coalition filed allegations that American Pacific Plywood, Inc., U.S. Global Forest, Inc., and InterGlobal Forest, LLC ("Interglobal") had imported plywood into the United States that was transshipped from China through Cambodia without paying appropriate antidumping and countervailing duties.  *See, e.g.*, Letter from Wiley Rein LLP to Troy P. Riley, re: *Certain Hardwood Plywood Products from the People's Republic of China, Request for an Investigation Under the Enforce and Protect Act* (Apr. 12, 2019) at 1, Appx01076.  CBP subsequently initiated an investigation, imposed interim measures, made a determination of evasion, and, ultimately, affirmed that determination after internal administrative review.  *See, e.g.*, Letter from CBP to Interested Parties, re: *Enforce and Protect Act ("EAPA") Case Number 7321* (Nov. 5, 2020), Appx01051–01074; Letter from CBP to Interested Parties, re: *Notice of Determination as to Evasion* (June 29, 2020), Appx01033–01050.

Certain respondent parties and foreign manufacturers then appealed to the U.S. Court of International Trade ("CIT"), which affirmed CBP's

evasion determination. *Am. Pac. Plywood Inc. v. United States*, 2023 WL 4288346 (Ct. Int'l Trade June 22, 2023). The case was then further appealed to the U.S. Court of Appeals for the Federal Circuit ("CAFC"), which granted Defendant United States' motion to voluntarily remand the proceedings given the due process concerns raised in *Royal Brush*. *See Am. Pac. Plywood v. United States*, 2024 WL 302393 (Fed. Cir. Jan 26, 2024). Specifically, CBP's regulations in effect at the time of the original agency proceedings did not provide for APOs or the release of confidential information under such orders. But the *Royal Brush* court found that CBP was required to make the confidential information upon which it relied in making EAPA determinations available through an APO, so that interested parties would have an opportunity to rebut and otherwise address such evidence. *Royal Brush*, 75 F.4th at 1257–63.

After the CIT issued an order implementing the CAFC's mandate and remanding the case to CBP, the agency issued an APO, invited counsel for interested parties to apply for access to confidential information, and provided parties with the opportunity to submit information to rebut the confidential information that was not made available to parties' counsel during the original investigation. *See*

Email from Tobias A. Vandall to Interested Parties, re: *EAPA 7970 (Remand 7321) – Opportunity to Submit Additional Evidence under APO* (Mar. 11, 2024) ("Opportunity to Submit Additional Evidence"), Appx45435–45436; Mem. to the File from EAPA Investigations, re: *EAPA Remand 7321 – Resp. to Interglobal Forest, LLC's March 25, 2024, Req. for Ext. to Submit Rebuttal Information in Remand Proceeding for Am. Pacific Plywood, Inc., et al., v. United States, Consolidated Ct. No. 1:20-cv-03914* (Mar. 27, 2024) ("March 27, 2024 Deadline Extension"), Appx45519–45520.

Interglobal submitted rebuttal evidence in the form of a declaration from Kurt Winn, its Chief Operating Officer, with accompanying photographs ("Winn Declaration"), and a declaration from Fu Wenjie ("Wenjie Declaration"), the general manager of LB Wood Cambodia Co., Ltd. ("LB Wood"). *See* Letter from Cadden & Fuller LLP to Tobias Vandall, re: *EAPA 7970 (Remand 7321) – Declaration of Fu Wenjie* (Apr. 12, 2024), Appx45143–45155 ("Wenjie Decl."); *Revised Declaration of Kurt Winn* (Apr. 29, 2024), Appx45185–45206. No other interested parties submitted any rebuttal evidence.

On May 10, 2024, CBP issued its Draft Remand Determination. Draft Remand Redetermination Pursuant to Court Remand, *American Pacific Plywood, Inc. v. United States*, Consol. Court No. 20-03914 (Ct. Int'l Trade Jan. 26, 2024) (May 10, 2024) ("Draft Remand Determination"), Appx45291–45326. The Draft Remand Determination addressed two issues: (1) whether the remand proceedings complied with *Royal Brush* and (2) whether the administrative record, including the new rebuttal evidence placed on the record by Interglobal, supported an affirmative evasion determination. *See* Draft Remand Redetermination at 12–16, Appx45302–45306.

With respect to the first issue, CBP found that the remand proceedings complied with *Royal Brush* as interested parties were provided access to the confidential information that CBP relied on when making its initial evasion and administrative review decisions, and were further given the opportunity to submit evidence and argument rebutting that information. Draft Remand Determination at 12–13, Appx45302–45303. With respect to the second issue, CBP determined that the record continued to support an affirmative evasion determination. Draft Remand Determination at 36, Appx45326.

Specifically, CBP found that Interglobal's rebuttal evidence was insufficient to overturn the initial determination and, if anything, supported that determination. Draft Remand Determination at 14–18, Appx45304–45308.

CBP observed that the Winn Declaration, which described the relationship and history between LB Wood and Interglobal, site visits by Mr. Winn to LB Wood's facilities, and inspections of LB Wood's facilities by third party inspectors, was largely duplicative of information already on the record. *See* Draft Remand Determination at 14, Appx45304. Specifically, CBP noted that the pre-remand record already contained a report regarding an inspection undertaken by [                              ], as well as photographs purportedly evidencing LB Wood's production equipment and personnel. *See* Draft Remand Determination at 14, Appx45304. CBP further found that other information in the Winn Declaration supported its evasion determination. For example, the Winn Declaration indicated that a [

                    ], set up LB Wood in December 2017, the same time at which [          ] provided Interglobal with pricing for plywood

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Consol. Ct. No. 20-03914                                    NON-CONFIDENTIAL VERSION

exported from Cambodia.  *See* Draft Remand Determination at 14, Appx45304.  CBP noted that the record did not demonstrate that either [           ] or LB Wood had any experience in the Cambodian plywood market at the time, and thus, would lack knowledge to accurately price Cambodian-made goods for a potential buyer.  *See* Draft Remand Determination at 14, Appx45304.  CBP also found that the Wenjie Declaration added "no substantive value" as it was duplicative of information on the pre-remand administrative record and in the Winn Declaration.  Draft Remand Determination at 16, Appx45306.

On May 28, 2024, after inviting the parties to submit written comments on the Draft Remand Determination and considering comments filed by Interglobal, CBP issued its Remand Redetermination.  *See* Remand Determination, Appx45373–Appx45427. CBP again reached an affirmative evasion determination in its final Remand Redetermination, relying on its analysis in the Draft Remand Determination.  *See id.* at 12–18, 55, Appx45384–Appx45390, Appx45427.

NON-CONFIDENTIAL VERSION

## III.  SUMMARY OF ARGUMENT

This court should affirm CBP's redetermination.  This court has
previously sustained CBP's affirmative evasion determination as
supported by substantial evidence.  Thus, on remand the court must
determine the answer to two questions:

1. Whether CBP's remand proceedings complied with the CAFC's
   mandate, this court's remand order, and *Royal Brush*; and

2. Whether substantial evidence supports CBP's affirmative
   determination of evasion on remand.

As the Coalition demonstrates below, the answer to both these
questions is yes.  CBP issued an APO on remand, allowing interested
parties the opportunity to view the confidential data on which CBP
relied in its original evasion determination, and gave parties the
opportunity to provide evidence and arguments rebutting that
information.  CBP has thus addressed any due process concerns that
were at issue in the initial administrative proceeding.

CBP's evasion determination on remand continues to be supported
by substantial evidence.  In reaching its determination, CBP
incorporated by reference its initial evasion determination and

10

addressed the new rebuttal evidence placed on the record by Interglobal. That new evidence was substantively minimal, consisting only of declarations from Interglobal's CEO (with accompanying photographs) and LB Wood's General Manager. As detailed below, CBP appropriately found this evidence was largely duplicative of information already on the record and, if anything, lent further support to CBP's initial determination. In short, in the context of the entire administrative record, Interglobal failed to place any evidence on the record that would cause a reasonable mind to reverse CBP's initial evasion determination, let alone show that a negative evasion determination was the only reasonable outcome.

Additionally, Interglobal's contention that EAPA is not a strict liability statute is meritless. Both the plain language of the statute and the overall statutory context demonstrate that Congress did not intend to require culpability on the part of an importer as a prerequisite to an affirmative finding of evasion.

## IV.  ARGUMENT

### A.  CBP Complied with CAFC's Mandate and this Court's Remand Order

Interglobal argues that CBP did not satisfy due process requirements on remand, and thus failed to comply with the CAFC mandate and the court's remand order.  Specifically, Interglobal contends that CBP "refused to identify and provide any communications, reports, and any other related writings and information" that a CBP officer that visited LB Wood's facilities produced before, during, and after the visit, beyond the information that was included in the pre-remand record. *Interglobal Forest, LLC's Written Comments in Opp'n to CBP's Remand Redetermination* (Sept. 13, 2024) at 35, ECF No. 103 ("Interglobal Cmts.").  Interglobal's argument is without merit.

As an initial matter, although CBP expressly invited the parties to comment on its Draft Remand Redetermination, Interglobal failed to raise this issue in its comments.  Letter from Cadden & Fuller LLP to Tobias Vandall, re: *IGF's Written Comments on Draft Remand Redetermination* (May 17, 2024), Appx45352–45371 ("Interglobal's Written Comments").  EAPA appeals arise under 28 U.S.C. § 1581(c), and are thus subject to 28 U.S.C. § 2637(d).  In *Boomerang Tube LLC v.*

*United States*, 856 F.3d 908 (Fed. Cir. 2017), the CAFC found in the context of a trade remedy case governed by the same provisions that plaintiffs may not raise issues on appeal unless they first exhaust their administrative remedies.  By declining to make this argument in its comments on the Draft Remand Redetermination, Interglobal failed to exhaust its administrative remedies and has waived the argument on appeal.[2]

But even if the exhaustion requirement did not apply here, *Royal Brush,* and thus the CAFC's mandate and this Court's remand order, requires only that CBP provide parties with the confidential information that it relied on in reaching its determination and the opportunity to rebut that information.  *See* 75 F.4th at 1262–63.  CBP did exactly that, issuing an APO, inviting parties to apply for access to the confidential record, and providing parties with the opportunity to submit rebuttal evidence and argument with respect to that

---

[2]     Interglobal raised this issue in a filing made prior to the release of the Draft Remand Redetermination, but did not carry the argument forward into its comments on the Draft Remand Redetermination itself. *Compare* Letter from Cadden & Fuller LLP to Tobias Vandall, re: *EAPA 7970 (Remand 7321) – Respondent Interglobal Forest LLC's Written Arguments and Rebuttal Evidence* (Apr. 30, 2024) at 48–52, Appx45260–45264 ("April 30 Submission") *with* Interglobal's Written Comments, Appx45352–45371.

information. *See* Opportunity to Submit Additional Evidence, Appx45435–45436; March 27, 2024 Deadline Extension, Appx45519–45520.

While Interglobal appears to believe that there exist confidential documents/evidence that the agency decisionmakers considered, this belief does not appear to have any reasonable basis. Instead, it rests on Interglobal's speculation. But those speculative assertions are insufficient to establish that Commerce failed to comply with *Royal Brush*, the CAFC's mandate or this court's remand order.

## B. CBP's Determination is Otherwise Lawful

Beyond its flawed due process claim, Interglobal argues that CBP's remand redetermination is unlawful for three reasons. First, Interglobal argues that the agency improperly relied on a CBP officer's determination as to whether Interglobal's merchandise was subject to trade remedy orders on Chinese hardwood plywood (the "Orders"). Interglobal Cmts. at 3–6. Second, Interglobal argues that the rebuttal information it submitted on remand renders CBP's redetermination unsupported by substantial evidence. *Id.* at 7–23, 31–34, 36. Third, Interglobal argues that EAPA is not a strict liability statute, such that

it cannot be found to have evaded the Orders absent some level of culpability (negligence, etc.) on its part. *Id.* at 24–31. As explained below and in the Defendant's comments, these claims are unpersuasive.

### 1. CBP May Determine Whether Merchandise is Covered by the EAPA Investigation

Interglobal asserts that CBP lacked both basis and authority to determine that its goods were within the scope of the Orders, due to the products' number of plies. *Id.* at 3–8. But Interglobal failed to argue, either before or after remand, that its goods lacked the physical characteristics of subject merchandise, Interglobal's Written Comments, Appx45352–45371; Letter from DeKieffer & Horgan, PLLC to U.S. Customs and Border Protection, re: *EAPA Con. Case No. 7321 – Request for Administrative Review* (Aug. 10, 2020), Appx44461–44497, and has thus waived this claim by failing to exhaust its administrative remedies, *see supra* pp. 12–13 & n.2.

But even if Interglobal had exhausted its claims, its arguments would fail. Interglobal first avers that, in making its remand redetermination, CBP ignored the results of litigation arising from a separate EAPA investigation involving plywood manufactured in Vietnam through the addition of face and back veneers to two-ply

panels exported to Vietnam from China.  Interglobal Cmts. at 3–5.

Interglobal characterizes the final and conclusive results of that

litigation as establishing that the Orders cover only goods with "at least

three plies."  *Id.* at 4.  It then implies that its products do not meet this

standard, though it points to no record evidence on the issue.  *Id.*[3]

Interglobal therefore argues that the Court should direct CBP to

reverse its remand redetermination.  *Id.* at 4–5.

Interglobal is wrong.  The separate litigation involved a scope ruling

issued by the U.S. Department of Commerce ("Commerce") in

conjunction with a covered merchandise referral.[4]  Commerce expressly

---

[3]    In its April 30 Submission, Interglobal briefly referred to the
EAPA investigation involving Vietnam in arguing that CBP imposed
interim measures in the case at bar without appropriate support.  *See*
Letter from Cadden & Fuller LLP to Tobias Vandall, re: *EAPA 7970
(Remand 7321) – Respondent Interglobal Forest LLC's Written
Arguments and Rebuttal Evidence* (Apr. 30, 2024) at 13, Appx45225.
However, Interglobal did not challenge CBP's finding that its
merchandise was in-scope in this investigation, or even assert that it
shipped goods of fewer than three plies.  *Id.* at 11–13, Appx45223–
45225.

[4]    If, after receiving an allegation of evasion, CBP is unable to
determine whether the merchandise at issue is "covered merchandise,"
*i.e.*, merchandise subject to a trade remedy order, it shall refer the
matter to Commerce to determine whether the merchandise under
investigation is covered merchandise.  19 U.S.C. §§ 1517(a)(3) &
(b)(4)(A).

limited the ruling to plywood exported by a company other than LB Wood "that was produced using two-ply panels imported to Vietnam from China." *See* Final Results of Redetermination Pursuant to Court Remand, *Far East Am., Inc. v. United States*, Consol. Ct. No. 22-00049, (Ct. Int'l Trade Aug. 22, 2023), ECF No. 62-1 at 2; *see also* 19 C.F.R. § 351.225(m)(1). By its terms, that ruling does not apply to Chinese plywood that LB Wood exported from Cambodia. For that matter, no one in this case – including Interglobal – raised any scope issues to CBP. Nor did CBP make a covered merchandise referral or Commerce issue a scope ruling with respect LB Wood's merchandise.

Interglobal next argues that CBP lacked authority under EAPA to determine whether the goods that a CBP official observed at LB Wood's facilities were likely Chinese, and thus in-scope. Interglobal Cmts. at 5–6 (citing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024)). This is patently incorrect. EAPA's plain language demonstrates that CBP has the authority to determine whether merchandise under investigation is covered by an existing trade remedy order. Specifically, 19 U.S.C. § 1517(b)(4)(A) states that, if, *and only if,* CBP cannot determine whether merchandise at issue is subject to an

order, CBP shall refer the issue to Commerce for a scope determination.
*See also* 19 C.F.R. § 165.16(a) (requiring a covered merchandise referral
only if "CBP cannot determine whether the merchandise described in an
allegation is properly with the scope of an {order}").  Nor, as Interglobal
suggests, did CBP unlawfully usurp Commerce's authority to issue
formal scope rulings by finding that LB Wood's merchandise was in-
scope.  Instead, CBP simply relied on its internal expertise in assessing
wood products to find that plywood observed on-site in LB Wood's
facilities was likely Chinese, and thus in-scope.  Remand Determination
at 24, Appx45396.

### 2.  CBP's Remand Redetermination is Supported by Substantial Evidence

This court previously held that CBP's affirmative evasion
determination was supported by substantial evidence, *Am. Pac.
Plywood Inc.*, 2023 WL 4288346 at *15, but remanded to CBP to ensure
that the agency's proceedings complied with due process.  After its
counsel were provided access to the entire confidential record on
remand, Interglobal submitted only two rebuttal items for the record,
the Winn Declaration and Wenjie Declaration.  Remand Determination
at 10–11, Appx 45382–45383.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

The Remand Determination addressed both declarations, explaining why they did not disturb CBP's original finding of evasion. CBP noted that the Winn Declaration and accompanying photographic exhibits were duplicative of evidence already on the record. *Id.* at 14, Appx45386.  Specifically, the record already contained evidence of Interglobal's relationship with LB Wood, accounts of visits to LB Wood made by Interglobal personnel, [                                    ], and a report by [                        ]. *Id.*

Indeed, CBP noted that the Winn Declaration actually *supported* its original determination.  For example, it confirmed that [                    ] provided Interglobal with pricing for plywood exported for Cambodia in December 2017, the same month in which [                    ] LB Wood. *Id.* at 15, Appx45387.  As neither [                        ] had any manufacturing experience in Cambodia at the time, CBP reasonably found they could not leverage such experience to rationally price goods based on Cambodian production operations. *See id.*  Indeed, LB Wood's [                    ] reflected no [                        ]. *Id.*

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

CBP also noted that the Winn Declaration corroborated the "close relationship" between [            ] and LB Wood.  *Id.*  It confirmed that prior to the imposition of the Orders, Interglobal purchased plywood from [            ], that LB Wood's general manager [            ], and that Interglobal began purchasing from LB Wood only after the orders were imposed.  *See* Winn Decl. ¶¶ 4, 7–9, 33, Appx45186–45187, Appx45194.  These statements are all consistent with CBP's original determination, in which it found that LB Wood [


].  *See* Remand Determination at 15, Appx45387.

The Remand Determination also explained that the Winn Declaration contained unsupported and suspect claims regarding LB Wood's ability to produce in Cambodia all of the plywood that it exported.  In particular, the Winn Declaration states that Interglobal hired local, independent inspectors to be physically present at LB Wood's facility during production of goods for Interglobal.  *See* Winn Decl. ¶ 14, Appx45189.  But as CBP observed, Interglobal failed to identify those inspectors, provide any declarations from these

Consol. Ct. No. 20-03914                                    NON-CONFIDENTIAL VERSION

inspectors, provide any record of their presence at LB Wood's facilities,

or point to *any* record evidence supporting Mr. Winn's assertions that

Interglobal hired these inspectors. *See* Remand Determination at 16,

41, Appx45388, Appx45413.

Indeed, while the Winn Declaration characterized certain

documents in the pre-remand record as having been prepared by these

local inspectors, the documents were [

], were signed [

], were [                              ], and related in part to goods that

were [                                          ], notwithstanding the

claim that the documents were produced by inspectors working for

Interglobal. Remand Determination at 16, Appx45388. If this were not

enough, counsel for Interglobal admitted that [

]. *Id.* at 17,

Appx45389. As such, CBP was reasonably unpersuaded that the Winn

Declaration confirmed the presence of independent, local inspectors

hired by Interglobal at LB Wood. For that matter, CBP found it

"surprising" that Interglobal made no claim during the initial

administrative proceedings that it had hired on-site, independent

inspectors to ensure that LB Wood was producing in Cambodia all of the merchandise that Interglobal purchased, further casting doubt on that claim on remand. *Id.* at 41, Appx45413.

Similarly, CBP explained that the Wenjie Declaration added nothing substantive to the record, as it mainly recapitulated pre-remand record evidence. *Id.* at 17, Appx45389. CBP reasonably afforded "no weight" to the limited new information in the declaration, as it consisted of subjective opinion rather than new facts or factual assertions. *Id.* at 18, Appx45390. Of the six paragraphs containing new information, the first two merely spoke to the declarant's ability to serve as an affiant and briefly summarized the basis upon which certain information in the declaration was being claimed as BCI. *See* Wenjie Decl. ¶¶ 2–3, Appx45146–45147. Two further paragraphs simply stated the declarant's opinion that photographs taken during CBP's site visit "did not fully reflect the size and scope of LB Wood's production facilities," *id.* ¶ 6, Appx45147, and that the record "clearly shows" that many customers and inspection services verified LB Wood's production capacity, *id.* ¶ 13, Appx45149–45150. The last two paragraphs simply identified Interglobal personnel that visited LB Wood and took

photographs of its machinery, with approximate dates for the visits.
*See id.* ¶¶ 12, 14, Appx45149–45150.  The Wenjie Declaration thus
added almost no new factual information to the record, and the scant
new factual information added nothing of substance.  Thus, CBP's
determination that this information did not warrant reversal of its
original determination is supported by substantial evidence.

Nonetheless, Interglobal argues that these two declarations refute
certain evidence that CBP relied upon and compel a negative evasion
determination.  Interglobal Cmts. at 9–17.  But CBP's determination
was made on the entirety of the record, and not only the individual
documents that Interglobal believes to be of particular importance.  And
as this court has stated, the fact that certain evidence could support a
different conclusion than the agency reached does not mean that the
agency's conclusion is unsupported by substantial evidence.  *See Am.*
*Pac. Plywood*, 2023 WL 4288346 at * 13; *see also Cleo Inc. v. United*
*States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (noting that the substantial
evidence test "does not require that there be an absence of evidence
detracting from the agency's conclusion").  Here, CBP explained that
the two declarations did not detract from its original determination

because the information within them was either already on the record, was not substantive, or corroborated evidence that CBP relied on in making an affirmative determination. *See* Remand Determination at 13–18, Appx45385–45390.

In sum, CBP reasonably found that Interglobal's "new" evidence was either duplicative of information on the pre-remand record, added nothing substantive to the record, or helped corroborate evidence supporting its original affirmative evasion determination. CBP's affirmative evasion determination on remand is thus supported by substantial evidence.

### 3. EAPA is a Strict Liability Statute

Finally, Interglobal unpersuasively argues that EAPA is not a "strict liability" statute, such that Interglobal cannot be found to have evaded the order absent evidence of culpability on its part. Interglobal particularly challenges CBP's reliance on *Ikadan Sys. USA v. United States*, 639 F. Supp. 3d 1339 (Ct. Int'l Trade 2023), in which the court advanced a strict liability interpretation of EAPA, as the case was decided under the now overturned *Chevron* framework. Interglobal Cmts. at 24–31.

As Interglobal correctly states, *Loper Bright* requires the court to exercise its own independent judgment in interpreting a statute. In *Ikadan*, however, the CIT did just that, finding that EAPA's plain language supported the conclusion that it is a strict liability statute. As the *Ikadan* court noted, Congress included no reference to culpability in its statutory definition of "evasion," while simultaneously including language regarding culpability in another portion of the statute. *See* 639 F. Supp. 3d at 1349; *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("{W}here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). The court also contrasted the absence of any reference to culpability in the definition of evasion with CBP's civil penalty statute, 19 U.S.C. § 1592, which explicitly incorporates three levels of culpability. *Ikadan*, 639 F. Supp. 3d at 1349. Finally, the court noted that CBP's lack of subpoena power under EAPA (in contrast with the civil penalty statute) bolstered the conclusion that Congress intended that EAPA operate as a strict liability statute. *See id.* at 1349–50.

NON-CONFIDENTIAL VERSION

Interglobal argues that *Diamond Tools Technology LLC v. United States*, 609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ("*Diamond Tools II*") requires EAPA to be read as requiring a certain degree of culpability. Interglobal Cmts. at 26. Specifically, Interglobal contends that the inclusion of the phrase "material and false" in statutory definition of evasion presumes intent on the evader's part. But not only did the *Ikadan* court disagree, it noted that the *Diamond Tools II* litigation did not resolve the question of whether the statute has a culpability requirement, given its unusual fact pattern. *Ikadan*, 639 F. Supp. 3d at 1348–50. In particular, the plaintiff in the *Diamond Tools* case declared the origin of its goods in conformity with Commerce's express guidance. *See Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324, 1330 (Ct. Int'l Trade 2021). While Commerce later altered that guidance, the Court found that the importer could not rationally be considered to have made a "false" statement by declaring goods consistently with official guidance in effect at the time of importation. *Diamond Tools II*, 609 F. Supp. 3d at 1391.

Interglobal does not otherwise persuade that 19 U.S.C. § 1517(a)(5)(A)'s reference to "material and false" acts, documents, or

NON-CONFIDENTIAL VERSION

statements means that EAPA requires some level of culpability on an importer's part.  The common definition of the word "false" is "contrary to what is true, erroneous."  *See* Oxford English Dictionary Online, available at: https://www.oed.com/dictionary/false_adj?tl=true. Whether or not something is false requires no culpability.  If Interglobal said that 1+1=3, its statement would be false regardless of whether it intended to convey untrue information.  This understanding also comports with the decision in *Diamond Tools II*.  That is, under the facts of that case, the importer's statements were not false because, *at the time of importation*, those statements were consistent with Commerce's express guidance.  *Diamond Tools II*, 609 F. Supp. 3d at 1391.  There is thus no reason for the court to find that CBP was required to determine that Interglobal was culpable in making an evasion determination.

Consol. Ct. No. 20-03914                    NON-CONFIDENTIAL VERSION

## V.    CONCLUSION

For the reasons discussed above and in the Defendant's comments,

this Court should affirm CBP's affirmative redetermination of evasion.

Respectfully submitted:

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Stephen A. Morrison, Esq.

WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to the Coalition for Fair*
*Trade in Hardwood Plywood*

Dated: December 30, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Coalition for Fair Trade in Hardwood Plywood's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,913 words.


_/s/ Timothy C. Brightbill_
(Signature of Attorney)

_Timothy C. Brightbill_
(Name of Attorney)

_Coalition for Fair Trade in Hardwood Plywood_
(Representative Of)

_December 30, 2024_
(Date)

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

AMERICAN PACIFIC PLYWOOD, INC., *et al.*,

        Plaintiffs,

    and

LB WOOD CAMBODIA CO., LTD., *et al.*,

        Plaintiff-Intervenors,

    v.

UNITED STATES,

        Defendant,

    and

COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,

        Defendant-Intervenor.

Before: Hon. M. Miller Baker, Judge

Consol. Court No. 20-03914

## PROPOSED ORDER

Upon consideration of the plaintiff's comments on the agency's remand redetermination, defendant and defendant-intervenor's responses, and all other pertinent papers, it is hereby

ORDERED that that the remand redetermination of U.S. Customs and Border Protection regarding Enforce and Protect Act Case Number 7321, ECF No. 97, is sustained in its entirety, and it is further

ORDERED that judgment is entered in favor of the United States.

SO ORDERED.

Date: _____,2024       _____
       New York, New York                              Hon. M. Miller Baker, Judge