UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*, | PUBLIC VERSION |
| Plaintiffs, and | [Business Proprietary Information has been redacted inside the brackets on pp. 6, 7 and on Exhibit A at pp. 23-26] |
| LB WOOD CAMBODIA CO., LTD., *et al.*, | |
| Plaintiff-Intervenors, | Consol. Ct. No. 20-03914 |
| v. | |
| UNITED STATES, | |
| Defendant, and | Before: |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | Judge M. Miller Baker |
| Defendant-Intervenor. | |

**PLAINTIFF INTERGLOBAL FOREST, LLC'S REPLY TO DEFENDANT UNITED STATES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORAL ARGUMENT AND OTHER RELIEF AND REQUEST FOR JUDICIAL NOTICE**

Table of Contents

I. INTRODUCTION ........................................................................................ 1

II. THE LAW FAVORS IGF AND PLAINTIFF-INTERVENOR LB

WOOD ....................................................................................................... 2

III. THE COURT MAY ADMIT THE ITEMS REQUESTED FOR

JUDICIAL NOTICE ................................................................. 18

IV. CONCLUSION ........................................................................................ 21

Table of Authorities

## Cases

*Allen v. McCurry*, 449 U.S. 90, (1980) ................................................. 3,11

*Ammex, Inc. v. United States*, 334 F.3d 1052 (Fed. Cir. 2003)............. 3,5

*Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374* (2009), .......... 20

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, (2015) .... 3,11

*Boltex v. United States*, 140 F. Supp.2d ................................................. 1

*Garg Tube Exp. LLP v. United States*, 740 F.Supp. 3d 1955 CIT (2024) ................................................................................................ 3,20

*Gulfstream Aerospace Corp. v. United States,* 981 F. Supp 654 (CIT 1997) ................................................................................................ 3

*Heartland By-Prods., IncA. v. United States*, 26 C.I.T. 268, (2002) 2,3,18

*Int'l Air Response v. United States,* 324 F. 3d 1376 (Fed. Cir. 2003) ... 11

*Jarvis Clark Co. v. United States*, 733 F.2d 873, (Fed. Cir. 1984)........... 2

*Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, (Fed.Cir.2000) ........... 4

*Jinko Solar Imp. & Exp. Co. Ltd. v. United States,* 701 F.Supp. 3d 1367 CIT 2024 ............................................................................. 18, 19, 20

*Kroy IP Holdings, LLC v. Groupon, Inc.,* 127 F. 4th 1376 (Fed. Cir. 2025) ...................................................................................... 11

*Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d (1984) ................................................................ 4

*New Hampshire v. Maine*, 532 U.S. 742, (2001) .............................. 14, 16

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d (1979) .............................................................................. 4, 12

*Richmond Int'l Forest Products, LLC v. United States,* Court No. 21-00178 ................................................................. passim

*Richmond Int'l Forest Products, LLC v. United States,* Consol. Court No. 21-00318 ......................................................... passim

*Saget v. Trump,* 375 F. Supp. 3d 280 (E.D.N.Y. 2019)................  19

*SecurityPoint Holdings, Inc. v. United States,* 138 Fed. Cir. 101, (2018) ................................................................. 12,14

*Sherman Williams Co. v. PPG Industries, Inc.* No. 2022-2059, 2024 WL 3534113  Fed. Cir 2024) ................................................. 16, 17

*Shah Bros., Inc. v. U.S.*, 9 F. Supp. 3d 1402 (2014)........................ 1, 2, 15

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, (Fed. Cir. 2010)................................................ 15

*United States v. Stauffer Chem. Co.*, 464 U.S. (1984) .......................... 12

*United States v. Stone & Downer*, 274 U.S. 225 (1927) .......................... 2

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966)......3,5

*cf. United States v. Mendoza*, 464 U.S. 154 (1983)...........................11

*U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592 (Fed. Cir. 1995)...........................................................................17

## I. **INTRODUCTION**

As stated by this Court in *Heartland By-Prods., Inc. v. United States*, 26 C.I.T. 268, 281 (2002),

> implicit in the Government's brief is the idea that Customs law, and therefore the Customs Service, is subject to distinct laws and rules, which render normal litigation practice inapplicable. To some extent this is true. In certain circumstances it is possible for the Customs Service to limit (but not abrogate) a decision of this court. *See Boltex v. United States,* 140 F.Supp.2d at 1346; 19 C.F.R. § 177.10(d) (1998). However, this is not a wholesale waiver, but an exception. Once the judiciary has spoken to a law, in the absence of congressional action, parties to the dispute are bound by the court's decision. The fact that one of the parties to this litigation is the government does not exempt it from complying with the law as interpreted by the judicial branch. It is the purpose of this court to adjudicate and settle disputes between private individuals and our government.

The Government's Response (ECF 132, "Response") in no more than conclusory fashion asserts that the birch plywood manufactured by Plaintiff-intervenor LB Wood in Cambodia between August 2018 and November 2019 for IGF was manufactured in China whilst the birch plywood manufactured by Plaintiff-intervenor LB Wood in Cambodia between August 2018 and November 2019 for Richmond was manufactured in Cambodia.

In an analogous case the court held the Government's changed position was unjustified, see *Shah Bros., Inc. v. U.S.*, 9 F.Supp.3d 1402 (2014). *Shah Bros.* involved two protests and requests for reclassification. To the protest on the first entry, the Government eventually conceded

that the imported goods should be properly classified as chewing tobacco, not snuff. However, the Government maintained that another entry from Shah Bros. for materially-identical merchandise imported by the same importer was snuff, not tobacco. Shah Bros. protested again, and the Government ultimately conceded in Shah Bros. favor. The court found "the Government had already agreed that such merchandise should indeed be reclassified as chewing tobacco", and was unjustified in its subsequent position. *Id.*, at 1408 (attorney's fees were awarded against the Government).

## II.    THE LAW FAVORS IGF AND PLAINTIFF-INTERVENOR LB WOOD

The law is overwhelmingly clear that Government's position in the Stipulated Judgment on Agreed Statement of Facts precludes it from changing its position, and prevents the Court from reaching a different result in this case. See *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (Remand may not always be the appropriate means for finding the right answer; however, whether the court remands, conducts its own hearing, or simply examines the law and the tariff schedules on its own initiative, it is required to reach a *correct* result.).

### A. Res Judicata

The Government's reliance on *United States v. Stone & Downer*, 274 U.S. 225 (1997)(see ECF 132, Response, at p. 6, ¶ 2) is misplaced because "there has been significant subsequent narrowing of the principle by statute and caselaw." *Heartland By-Prods., Inc. v. United States*, 26 C.I.T. 268, 277 (2002). "[C]ontrary to the government's

2

assertion, the rule that each new entry is a new cause of action does not apply in all Customs cases." *Id.,* 278; *Gulfstream Aerospace Corp. v. United States*, 981 F. Supp. 654, 664 (Ct. Int'l Trade 1997) ("To ensure equal treatment to Aviall, Gulfstream and all importers, the Court finds that the validity issue adjudicated in *Aviall* must be preclusive against the Customs Service…. The Court finds that the considerations which caution against the use of collateral estoppel are clearly outweighed by the facts and setting of this case, and that Gulfstream has met all the requirements necessary to apply collateral estoppel against Customs.").

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). "The doctrine is properly applied to the final judgment of an administrative agency, such as a board of contract appeals, that "is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966).

As stated by the court in *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003),

Under the doctrine of *res judicata* (or claim preclusion), "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." [Citation] (stating that this court would adopt the transactional approach advocated by the Restatement (Second) of Judgments); Restatement (Second) of Judgments § 18 (1982). Over the years, the doctrine has come to incorporate common law concepts of merger and bar, and will thus also bar a second suit raising claims based on the same set of transactional facts. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar."). Accordingly, to prevail on a claim of *res judicata,* the party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1362 (Fed.Cir.2000).

### i. The parties are identical or in privity.

Plaintiff-intervenor LB Wood was in privity with Richmond, party to the first action in which Richmond successfully challenged the Government's position that LB Wood's plywood originated from China. LB Wood is a party to this action and is challenging the Government's position that its plywood originated from China.

### ii. The first suit proceeded to a final judgment on the merits.

Obviously. (1:21-cv-00318-JAL, ECF 64, Stipulated Judgment on Agreed Statement of Facts).

### iii. The second claim is based on the same set of transactional facts as the first.

The Government disingenuously asserts *ipse dixit* the transactional facts in this case are different from those in *Richmond*. (Response, p. 5). The record here proves otherwise.

As stated by the court in *Ammex, Inc. v. United States*, 334 F.3d 1052, 1056 (Fed. Cir. 2003),

> The Restatement notes that a common set of transactional facts is to be identified "pragmatically." [Citation]. Seeking to bring additional clarity to this standard, courts have defined "transaction" in terms of a "core of operative facts," the "same operative facts," or the "same nucleus of operative facts," and "based on the same, or nearly the same factual allegations." [Citations] (requiring courts to first determine whether the "same cause of action" is being sued upon); [Citation] ("[A] prior judgment is res judicata only as to suits involving the same cause of action."); [Citation] ("One of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other.").

The transactional facts for both claims are the origin of LB Wood's birch plywood in 2018 – 2019. (*Ibid*; Appx. 07017-07038). And ***the Redetermination explicitly agrees that plywood manufactured by LB***

*Wood for Richmond and IGF are the same*. (See November 5, 2020, Redetermination, Appx01051-01074 at Appx01067 (p. 16 of 23), in which the June 6, 2018, inspection cited as evidence of evasion in both Richmond and IGF "was sufficiently contemporaneous and examined the same types of facts …. relevant and substantial evidence for purposes of the instant case…. Goods are necessarily produced and shipped before they enter the United States. Thus, entries into the United States at the beginning part of the POI would have included products allegedly produced by and originating from LB Wood at or around the time of CBP's site visit.")

In the Confidential Appendix, Confidential Document No. [subject to protective order] there are a number of photographs of [subject to Protective Order] and [subject to protective order] showing a multitude of [photographs subject to protective order] sitting next to each other. (E.g., [subject to protective order]. The Government's admittedly baseless conclusion has been that LB Wood could not possibly have ever made birch plywood at this factory for anyone in 2018 and 2019 because the production lines were non-functional (despite the Government's photos showing [photographs subject to protective order] and [photographs subject to protective order] The Government confessed to judgment in 2022 on the basis that its evidence did not support its position. (1:21-cv-00178, ECF 22, 28). The other *Richmond* cases resolved after years of litigation (because the Government stonewalled discovery) via a Stipulated Judgment on Agreed Statement of Facts on January 17, 2025, the parties agreeing that the birch plywood manufactured by Plaintiff-

intervenor LB Wood in Cambodia between August 2018 and November 2019 for Richmond was manufactured in Cambodia.

Moreover, before recanting its allegations of transshipment against LB Wood, **the Government cited to the instant case as proof of Richmond's alleged evasion.** (*E.g.*, 1:21-cv-00318-JAL, ECF 36-2, Government's Responses to Richmond's First Set of Interrogatories, Interrogatory No. 4, pp 9-11 ["EAPA Inv. No. 7321 Determination of Evasion"]).

To wit, Richmond's Interrogatory/Request for Production Nos. 2 and 4, sought all facts upon which the Government supported its contention that LB Wood's plywood originated in China. (1:21-cv-00318, ECF 36-2, p. 9 *et seq.*), and the Government's response identified EAPA Investigation No. 7321, and **documents which are in this case's record**:

- 7/18/2019 Email from L. Duvall to K. Campbell *et al.* Re LB Wood Photos (GOV0009988–GOV0009995).
  - **Here,** this is [subject to protective order] and [subject to protective order]
- Photos of LB Wood from the June 2018 Site Visit (GOV0002749–GOV0002758; GOV0009988–GOV0009995; GOV00010032–GOV0010035).
  - **Here,** this is [photographs subject to protective order].
- LB Wood Photos (GOV0002759–GOV0002760).
- August 14, 2018 Report of Investigation: Factory Site/Inspection on June 6 & 7, 2018 (GOV0010083–GOV0010087).

7

- o **Here, this was not included in Remand Appendix because the Government hid this from IGF in *flagrant violation* of the Court's remand order.**

- Public Administrative Record from EAPA Investigation No. 7321 (GOV0000001–GOV0002638).

  - o **Here,** this is part of the public court record filed on February 26, 2021, USCIT Ct. No. 1:20-cv-03914-MMB, as ECF document 30 and exhibits thereto titled Public Administrative Record for US Customs and Border Protection filed by Corey Michael Celt of U.S. Customs and Border Protection on behalf of United States. (Attachments: # 1 Declaration of Tobias Vandall, # 2 Exhibit 1-7, # 3 Exhibit 8- 10, # 4 Exhibit 11, # 5 Exhibit 12-13, # 6 Exhibit 14-74, # 7 Exhibit 75-99)

- 4/12/2019 Email from R. Bekalarski to L. Duvall Re LB Wood (GOV0010006–GOV0010007).

  - o **Here, this was not included in Remand Appendix because the Government hid this from IGF in *flagrant violation* of the Court's remand order.**

- 4/12/2019 Email from R. Bekalarski to L. Duvall Re LB Wood (GOV0010008–GOV0010011).

  - o **Here, this was not included in Remand Appendix because the Government hid this from IGF in *flagrant violation* of the Court's remand order.**

  - o **Further,** Re: The two April 2019 Bekalarski emails referenced above, These appear to be emails from Bob Bekalarski, Assistant Center Director for CBP's "CEE", in

preparation for a meeting with RIFP to explain the basis for claiming the LB Wood plywood was actually of Chinese origin, rather than manufactured in Cambodia. The April 17, 2019 meeting between Bekalarski and RIFP is alleged in RIFP's May 5, 2022 complaint against defendant United States in USCIT case no. 1:21-cv-00318-JAL which provides, in pertinent part:

¶ 23. On April 17, 2019, RIFP and its counsel met with Bob Bekalarski, Assistant Center Director for the Industrial & Manufacturing Materials Center for Excellence and Expertise ("CEE"), in order to try to understand the basis for the rejection of the 23 entries covered by Protest No. 460121125036, among other entries.

¶ 24. During this meeting, CBP, despite RIFP's counsel's requests, refused to provide any facts in support of its conclusion that the merchandise on the 23 entries covered by Protest No. 460121125036 was actually manufactured in China or its conclusion that only minor processing of that merchandise occurred in Cambodia.  See Case 1:21-cv-00318-JAL Document 13 Filed 05/05/22 Page 6 of 21 at paragraphs 23 and 24

- 5/21/2019 Email from R. Bekalarski to L. Duvall Re LB Wood Followup (GOV0010012– GOV0010015).

- o Here, this was not included in Remand Appendix because the Government hid this from IGF in *flagrant violation* of the Court's remand order.
- LB Wood Video (GOV0010209).
  - o Here, this was not included in Remand Appendix because the Government hid this from IGF in *flagrant violation* of the Court's remand order.
- EAPA Inv. No. 7321 Determination of Evasion (June 29, 2020) (Public Version) (GOV0010040–GOV0010056).
  - o Here, this is Appx01033-01050, public document 98.
- EAPA Inv. No. 7321 Final Administrative Determination (Nov. 5, 2020) (Public Version) (GOV00100057–GOV0010079).
  - o Here, this is Appx01051-01074, public document 99.

*A Fortiori*, by comparing side by side the Government's summary of evidence upon which it based its determination in *Richmond* that LB Wood's plywood came from China (1:21-cv-00318, ECF 36-2, Response to Interrogatory No. 5, at p. 11-13) with the Determination of Evasion in the case at bar it is plain to see the Government merely cut and paste its allegations between the cases and that the transactional facts for all cases are the same. (See the comparison at **Exhibit A**).

As set forth, the parties were in privity, the first suit proceeded to a final judgment on the merits, and the claim here is based on the same set of transactional facts as the first case against LB Wood, *Richmond*. Therefore, *res judicata* applies.

10

**B. Collateral Estoppel Applies.**

Plaintiff-intervenor LB Wood is party to this lawsuit and was in privity with Richmond in the *Richmond* lawsuits, the first of which resulted in a Confession of Judgment (on opposed motion of the Government), and the second of which resulted in a Stipulated Judgment on Agreed Statement of Facts. Both judgments ruled that LB Wood's plywood was manufactured in Cambodia. Here, however, the Government's position is that LB Wood's plywood was manufactured in China, despite the fact the merchandise is materially identical and was produced and imported in the same timeframe.

"Collateral estoppel applies when (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1380 (Fed. Cir. 2025); *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Int'l Air Response v. United States*, 324 F.3d 1376, 1378–79 (Fed. Cir. 2003).

"Both this Court's cases and the Restatement make clear that issue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015); *cf. United States v. Mendoza*, 464 U.S. 154, 158 (1983) ("[N]onmutual offensive collateral estoppel is not to be extended to the United States."). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues

by merely "switching adversaries."" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979).

In the case *United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984), the doctrine of mutual defensive collateral estoppel was applicable against the Government to preclude relitigation of the issue of whether private contractors were "authorized representatives" under the Clean Air Act for purposes of conducting inspections of premises subject to regulations under that Act where that issue was already litigated against the same party in another case involving virtually identical facts. Held: The doctrine of mutual defensive collateral estoppel is applicable against the Government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts. *Ibid.* "The doctrine's purpose [is] protecting litigants from burdensome relitigation and of promoting judicial economy." *Ibid.*

### i. The identical issue was previously adjudicated.

The issue in this matter is whether the plywood from LB Wood was manufactured in Cambodia or China. The issue in the previous matters were identical, and resulted in final binding judgments.

### ii. The issue was actually litigated.

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. Restatement (Second) of Judgments § 27 comment d (1982)." *SecurityPoint Holdings, Inc. v. United States*, 138 Fed. Cl. 101, 108 (2018). "This requirement is

generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it." *Ibid.*

Here, the Government raised the contested issue (country of origin for LB Wood's plywood), and the court decided it in its final judgment after years of litigation proceedings.

### iii.  The previous determination was necessary to the decision.

The issue of whether the plywood from LB Wood originated in Cambodia or China was determinative of whether LB Wood's plywood was subject to the antidumping and anticircumvention duties imposed on plywood originating in China.

### iv.  The party being precluded from relitigating the issue was fully represented in the prior action.

The Government, as the party to be precluded, was unquestionably fully represented.

Therefore, all elements of collateral estoppel are satisfied, and it must apply.

### C. Judicial Estoppel Applies.

The Government's prior court adopted position that the birch plywood manufactured by LB Wood originates from Cambodian cannot in this present litigation allow the Government to maintain a contrary position, and the Government is estopped from adducing evidence in support of any contradictory position.

As stated in *SecurityPoint Holdings, Inc. v. United States*, 138 Fed. Cl. 101, 109 (2018),

> Judicial estoppel is aimed at preserving the integrity of the judicial process by preventing parties from taking contradictory positions in different suits. Once a party has taken a position during litigation, it can be estopped from taking a contradictory one in a later suit. [Citation]. The Supreme Court recognized that the doctrine is not reducible to a simple test, but stated that certain factors are normally considered. [Citation]. They are: 1) the party's current position must be clearly inconsistent with its prior position; 2) whether the earlier court's acceptance of a party's prior position would give the impression that the court then or now was misled; and 3) whether the party taking the inconsistent position would gain an unfair advantage or "impose an unfair detriment on the opposing party." [Citation]. The decision of the trial court whether to invoke the doctrine is discretionary. [Citation].

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Additionally, the Government's Response fails to provide a good explanation as to why it should be allowed to change its position (using vague, generalized assertions without citing the record.) "[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by

pursuing an incompatible theory." *Ibid.* "[J]udicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage." *Id.,* at 751 (Position regarding definition taken in earlier joint motion for entry of consent decree could not be contradicted in later dispute.) "The [judicial estoppel] doctrine also applies to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding." *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).

### i. The Government's current position is clearly inconsistent with its prior position.

Here, the Government's current position is that LB Wood's plywood originated from China, not Cambodia. The Government's prior position was that LB Wood's plywood originated in Cambodia, not China. These two positions are complete opposites.

Further, the Government's prior position was not based on inadvertence or mistake, nor is there new information which significantly changes the facts. *Sherwin-Williams Co., supra*, at *8 (Fed. Cir. July 25, 2024). Therefore, there is no justification for the Government's change in position. See, ante, discussion of *Shah Bros., Inc. v. U.S.*, 9 F.Supp.3d 1402 (2014).

### ii. The earlier court's acceptance of the Government's prior position would give the impression that the court then or now was misled.

As set forth herein, the evidence that supported the Government's prior position is the same evidence that supports the Government's current position. By taking two contradictory positions and ultimate conclusions based upon identical evidence in these proceedings, there is a deafeningly strong impression that the Government is or was misleading the court.

### iii.  The Government's Position is incorrect.

The Government argues judicial estoppel does not apply because it was unsuccessful in the earlier actions, and that the Stipulated Judgment on Agreed Statement of Facts (Case 1:21-cv-00319-JAL, ECF 32) and the Confession of Judgment (Case 1:21-cv-00178-MMB) were not in its favor: "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations." *New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (citing *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 258 (5th Cir. 1991) (applying state, not federal, law).

However, that is an erroneous conclusion premised on an incomplete statement of the law. As set forth herein, "success" simply means the court accepted the party's position, not that they obtained favorable judgment. *Supra* Wright & Miller, § 4477.2; *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2022-2059, 2024 WL 3534113, at *9 (Fed. Cir. July 25, 2024). "***Judicial estoppel may apply because a court accepted the party's position, even though the party lost the judgment***." Wright & Miller, § 4477.2. Judicial estoppel may lie when '[e]ven though [the party]

16

did not prevail on the appeal as a whole, he did prevail on the subsidiary question of what issues were to be decided by the court." *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed. Cir. 1995).

Because the court accepted the Government's position that LB Wood's plywood originated from Cambodia, not China, the Government achieved success on this issue.

### iv. The Government would gain an unfair advantage or "impose an unfair detriment on the opposing party."

There is a multi-million dollar detriment to be imposed upon LB Wood and IGF which will result if the court accepts the Government's contradictory position that the plywood produced by LB Wood originated from China. It is manifestly unfair and a perversion of justice that contradictory rulings arise from the same set of material facts.

Indeed, merely having to litigate this issue that was already resolved is prejudicial to IGF and LB Wood. *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2022-2059, 2024 WL 3534113, at *9 (Fed. Cir. July 25, 2024) ("The district court found that "PPG would be prejudiced simply by having to litigate an issue that was resolved by Sherwin's admission before the USPTO."").

### D. Stare Decisis Applies.

As stated by the court in *Heartland By-Prods., Inc. v. United States*, 26 C.I.T. 268, 279 (2002),

In addition to the collateral estoppel cases, the court has consistently applied the principle of stare decisis to previously litigated legal issues, even in classification cases. Under stare decisis courts refuse to examine legal issues previously decided in another case. In *Schott Optical Glass, Inc. v. United States,* the Federal Circuit confirmed the validity of stare decisis as applied in a classification case, as well as the exception that a party can challenge a previous decision if it is clearly erroneous. [Citation]. When read together with the collateral estoppel cases, *Schott Optical Glass* establishes that decisions of this court are binding on Customs, and the contention that every new entry is a new cause of action is narrowly applied.

Here the facts of where Plaintiff-intervenor LB Wood's plywood originated from were determined *twice* to be Cambodia. Any contradictory finding here is necessarily arbitrary, capricious, and not in accordance with the law.

## III.   THE COURT MAY ADMIT THE ITEMS REQUESTED FOR JUDICIAL NOTICE

The Government contends that the Court must blind itself to the Government's Stipulated Judgment on Agreed Facts because it is not in the administrative record, relying on *Jinko Solar Import and Export Co., Ltd. v. United States*, 701 F. Supp. 3d 1367 (Ct. Int'l Trade 2024). Not so.

First, the Government agrees that RJN # 2 is noticeable. (Response, ECF 132, p 15, ¶ 2, "the Government does not challenge the Court's ability to consider Attachment 2 in the motion for judgment on the agency record.").

Second, "to constrain judicial review in such a way and to adopt the Government's view is inapposite to the Court's responsibility to "smoke out" unconstitutional government conduct under the doctrine." *Saget v. Trump*, 375 F. Supp. 3d 280, 368 (E.D.N.Y. 2019) (Court was permitted to consider extra-record evidence in reviewing decision to terminate Temporary Protected Status (TPS) for Haiti based on allegations that bad faith or improper behavior infected Government's decision making process).

Further, *Jinko* is distinguishable. Here, unlike in *Jinko*, the **Stipulated Judgment did not exist and could not have possibly been part of the administrative record.** Further, *Jinko* indicates that a court can go outside the administrative record when there is a strong showing of bad faith or improper behavior, both of which are present here as set forth above *passim. Id.*, 1380, citing *Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Lab.*, 812 F.3d 843, 875 (11th Cir. 2016) (disfavoring the ability of a court to "go outside the administrative record" unless the requesting party makes a "strong showing of bad faith or improper behavior").

Moreover, according to the Restatement (widely relied on by the Federal Circuit), "[e]xtrinsic evidence may also be admitted to show that the record in the prior action does not accurately indicate what issues, if any, were litigated and determined." (Restatement (Second) of Judgments § 27f (1982).

Furthermore, the Government's statement that "extra-record evidence cannot factor into CBP's determination when that evidence was

not before the agency" (Response, p 14) ignores the fact that the
Government was at all times in possession of all the evidence, and
information, and that it is the Government's own flagrant violations of
the Remand order by suppressing evidence that has led to this issue in
the first place (discussed ante).

Lastly, where "the omission of extra-record evidence precludes
effective judicial review" the record must be supplemented. See *Axiom
Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).

## A. Adverse Inference Against the Government is Appropriate.

The Government's cited authority, *Jinko*, *supra*, swiftly received
negative treatment in *Garg Tube Exp. LLP v. United States*, 740 F. Supp.
3d 1355, 1361 (Ct. Int'l Trade 2024) and further highlights why the
Government, here, cannot be allowed to maintain its position: the
Government failed to cooperate by not acting to the best of its ability to
comply with a request for information and the disclosure requirements of
the remand order.

> Where "an interested party has failed to cooperate by not
> acting to the best of its ability to comply with a request for
> information," however, the statute permits Commerce to
> apply "an inference that is adverse to the interests of the party
> in selecting among the facts otherwise available." 19 U.S.C. §
> 1677e(b); [Citation] (holding that Commerce may apply an
> adverse inference where an interested party has failed to
> cooperate). A party acts to the 'best of its ability' when it puts
> forth "its maximum effort to provide Commerce with full and
> complete answers to all inquiries in an investigation."
> [Citation]. The purpose of 19 U.S.C. § 1677e(b) is to

"encourage future cooperation by 'ensuring that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.' " [Citations] ("Congress intended for Commerce to use [adverse inferences] to induce cooperation with its antidumping investigations").

As set forth above, the Government suppressed evidence, and refused to produce evidence and information that it based its conclusion of evasion on. The Government's bad faith requires an adverse inference.

## IV.   <u>CONCLUSION</u>

The Government should not be allowed to alter its stance that the plywood produced by LB Wood originates from Cambodia. Such a reversal would be quintessentially arbitrary and capricious. For the reasons set forth above, we respectfully request that the Court grant Plaintiff's request for judicial notice and find that the plywood produced by LB Wood originated in Cambodia.

Respectfully submitted,

Cadden & Fuller LLP
<u>/s/ Thomas H. Cadden</u>
Thomas H. Cadden, Esq.
Ivan U. Cisneros, Esq.
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
Email: <u>tcadden@caddenfuller.com</u>;
<u>icisneros@caddenfuller.com</u>
***Counsel to Plaintiff***
***InterGlobal Forest, LLC***

Dated: April 10, 2025

21

# EXHIBIT A

This is a comparison of the Government's summary of evidence upon which it based its determination in *Richmond* that LB Wood's plywood came from China, as set forth in USCIT Ct. No. 1:21-cv-00318, ECF 36-2, Defendant [United States'] Objections and Responses to Plaintiff [Richmond]'s First Set of Interrogatories and Requests for Production, Response to Interrogatory No. 5, at pp. 11-13 ("Response to Int. 5") with the Notice of Determination of Evasion dated June 29, 2020, Appx01033-Appx01050 in the case at bar (the "IGF Determination"), which was incorporated by reference into the Remand Determination dated May 28, 2024 (see Appx45385, ¶ 2).

The cited text from ECF 36-2 in *Richmond* below is plain text, while cited text from the IGF Determination is underlined with a citation to the Appx Bates stamp number in the Confidential Remand Appendix. Citations in the text to footnotes are omitted.

> Based on the information that we currently have in our possession, LB Wood (Cambodia) Co., Ltd ("LB Wood"), the alleged manufacturer of the subject merchandise, did not have the capacity to manufacture the entire quantity of merchandise included in the subject entries at its factory in Cambodia. CBP officials visited LB Wood's factory in Cambodia on June 6, 2018. During the visit, LB Wood's factory managers were not cooperative, and they were unwilling to provide CBP officials with details of LB Wood's

operations. CBP officials nevertheless observed that the factory had few employees on site and minimal manufacturing activity. In addition, they noted that, while LB Wood appeared to possess machinery capable of producing some amount of plywood in Cambodia, the manufacturing equipment was not fully operational. In particular, one of the manufacturing lines necessary to complete a finished product was found to be small, broken into multiple pieces, and covered in a thick layer of dust. CBP's National Import Specialist for wood products also observed that the plywood at LB Wood's factory contained temperate wood that does not grow well in Cambodia's tropical climate, and that the plywood had no veneer overlaps, gaps, or voids typical of plywood produced by Cambodian factories. While LB Wood's factory contained multiple pallets of finished plywood, based on the information known to us, the merchandise could not have been made there.  See Response to Int. 5(b), ¶1 at p. 12.

On June 6, 2018, CBP's [subject to protective order] for wood products, [subject to protective order], visited LB Wood's factory in the Sihanoukville SEZ. [Subject to protective order] stated that she observed [subject to protective order] plywood at LB Wood's factory and noted that [subject to protective order] and [subject to protective order] are temperate woods that do not grow well in Cambodia's tropical climate.  She further stated that Cambodian factories could produce plywood from raw materials composed of these temperate

23

woods; however, the Cambodian factories lack the sophistication to produce plywood that is even, without veneer overlaps, gaps, and voids. She noted that she believed the plywood she observed at LB Wood's facility in Cambodia was made in China because it was made from a temperate wood, [subject to protective order], and had no veneer overlaps, gaps, and voids. In addition, LB Wood's factory had few employees and not much manufacturing at the time of her visit, an additional indication of that the plywood was not produced in that factory. Furthermore, photographs from the June 2018 visit showed multiple pallets of [subject to protective order] plywood. However, [Subject to protective order] noted that LB Wood's [subject to protective order] "was small, broken into multiple pieces, and covered in a thick layer of dust," indicating that any [subject to protective order] plywood leaving LB Wood's factory prior to the June 2018 visit was not [subject to protective order] there. (IGF Determination, p. 6, ¶ 3 to p. 7, ¶ 1, Appx01039 to Appx01040).

The documents that plaintiff provided to CBP regarding the alleged manufacture of the subject merchandise by LB Wood fail to substantiate that all the subject merchandise was manufactured by LB Wood in Cambodia, and they contain numerous inconsistencies that cast doubt on their reliability. For example, there are several discrepancies between the Benchmark Report, purchase orders, and the Certificates of Conformance provided by plaintiff with respect to the

purported manufacturing dates of the subject merchandise. See Response to Int. 5(b), ¶2 at p. 12.

…the record evidence, including LB Wood's lack of a functioning [subject to protective order] and the inconsistencies of its production records, shows that its machinery likely could not produce the entire quantity of plywood that it claimed. LB Wood's production manager provided calculations of its machinery's production capacity. Due to the significant incentive for bias, machinery production figures are unreliable when they originate from company personnel estimates and lack substantiating evidence. (IGF Determination, p. 7, ¶ 2, Appx01040). Moreover, LB Wood's record statements and documentation contain various inconsistencies that cast doubt on their overall reliability. (IGF Determination, p. 7, ¶ 3, Appx01040).

In Enforce and Protect Act ("EAPA") Investigation 7321, CBP determined that the record supported a conclusion that LB Wood supplied Chinese-origin plywood to two importers, which was falsely designated as made in Cambodia when imported into the United States. See EAPA Inv. No. 7321 Determination of Evasion (June 29, 2020) (Public Version) (GOV0010040–GOV0010056) and EAPA Inv. No. 7321 Final Administrative Determination (Nov. 5, 2020) (Public Version) (GOV00100057–GOV0010079), which are incorporated by reference. See Response to Int. 5(b), ¶3 at pp. 12-13.

Overall, CBP finds that record evidence including the magnitude of the AD/CVD duties placed on merchandise from [subject to protective order]; the timeline of its establishment; CBP officials' observations of a lack of employees, minimal production, and [subject to protective order] plywood at LB Wood's factory without a functional [subject to protective order] machine to [subject to protective order]; the various discrepancies in record evidence; and the unsubstantiated production quantities-indicates that LB Wood could not have produced all the plywood it claimed to have produced in Cambodia. (IGF Determination, p. 10, ¶ 3, Appx01043).

## <u>CERTIFICATE OF COMPLIANCE</u>

*American Plywood, Inc., et al. v. United States*
*Consol. Court No.* 20-03914 (Ct. Int'l Trade)
Remand No. 7970

Plaintiff InterGlobal Forest, LLC's foregoing reply brief complies with the word limitation of 7,000 words set forth in the Scheduling Order (June 26, 2024) and the Rules of this Court in that it contains 5,940 words, including text, footnotes, headings and exhibits.

/s/ Thomas H. Cadden
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
Email: tcadden@caddenfuller.com
Attorneys for Plaintiff
InterGlobal Forest, LLC

27