## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN PACIFIC PLYWOOD, INC., *et al.*, | |
| Plaintiffs, | |
| and | Consol. Ct. No. 20-03914 |
| LB WOOD CAMBODIA CO., LTD., *et al.*, | |
| Plaintiff-Intervenors, | Before: Judge M. Miller Baker |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | |
| Defendant-Intervenor. | |

## PLAINTIFF INTERGLOBAL FOREST, LLC'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Thomas H. Cadden, Esq.
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
*Counsel to Plaintiff*
*InterGlobal Forest, LLC*

Dated: January 2, 2026

## TABLE OF CONTENTS

ARGUMENT ............................................................................ 1

I.   IGF HAS SATISFIED THE STANDARD FOR
RECONSIDERATION ..................................................... 1

II.   THE LAW FAVORS, AND THE COURT HAS DISCRETION,
TO ALLOW IGF'S REPLY BRIEF ................................... 3

III.   THE COURT COMMITTED ERRORS OF LAW AND FACT
THAT WARRANT RECONSIDERATION...............................4

    A. IGF's Out Of Scope Arguments Are Valid And Have Not
Been Waived………………………………………………….4

      1.  IGF's Out Of Scope Arguments Were Presented In
Written Arguments To CBP And Have Not Been
Waived………………………………………………....4

      2.  IGF's Written Scope Arguments To CBP
Relied On The Rulings In The Vietnam Finewood
Case…………………………………………………….5

      3.  IGF Further Objected To The Scope Determination
In A Request For Administrative Review To CBP And
Those Scope Objections Have Not Been
Waived………………………………………………....6

4. IGF's Out Of Scope Argument Was Presented In Written Arguments To The Court And Has Not Been Waived………………………………………..…...6

B. The Court Incorrectly Rejected Taking Judicial Notice Of Two Separate CIT Actions Which Require Application Of Judicial Estoppel In This Case…………………………….....7

1. The Government Succeeded In Persuading A Court To Accept Its Earlier Position In Richmond…………8

2. The Government Used Intentional Self-contradiction To Obtain An Unfair Advantage So Judicial Estoppel Applies………………...…………10

3. The Government Admitted That The Exact Factual And Legal Matters At Issue In The Richmond Cases Are Identical To The Factual And Legal Matters At Issue In The Instant Litigation With IGF…………...12

4. CBP 'Succeeded In Persuading A Court' To Accept Its Earlier Position In Richmond Thus Judicial Acceptance Of An Inconsistent Position In This Case Creates The Perception That Either The First Or The Second Court Was Misled……………...13

5. The Government Would Impose An Unfair Detriment On IGF Absent The Application Of Judicial Estoppel………………………………………...15

6. The Court May Look Outside The Record Because There Is A Showing Of Bad Faith Or Improper Behavior By CBP………………………………………16

7.  The Court's Denial Of Judicial Notice Was Clear
    Error...................................................................17

8.  The APA Requires That The Record Must Be
    Complete Or The Remand Redetermination, And
    The Court's Affirmation Of It, Are Meaningless......18

C.  Res Judicata And Collateral Estoppel Do Apply In This
    Case.....................................................................19

    1.  Res Judicata Precludes The Government From
        Relitigating The COO Of LB Wood's Plywood
        Imported By IGF And Richmond...........................20

    2.  The Benefit Of Collateral Estoppel, Or Issue
        Preclusion, Is Available To IGF............................22

D.  Stare Decisis Does Apply To This Case...........................23

E.  Adverse Inference Must Be Taken Against The Government
    Because It Has Concealed Relevant Information And
    Refused To Complete The Administrative Record............24

F.  There Is Clear Manifest Injustice In Allowing The
    Government To Hold Two Mutually Exclusive Positions,
    To The Detriment Of IGF...........................................25

CONCLUSION..................................................................26

# TABLE OF AUTHORITIES

*Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, (D.D.C. 2002)…18

*Am. Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970)…….3

*Consolidated Bearings Co. v. United States*, 348 F.3d 997
(Fed. Cir. 2003)………………………………………………………2

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281, 284 (1974)……………………………………………17

*Changzhou Wujin Fine Chemical Factory Co. v. United States*,
701 F.3d 1367, 1377 (Fed. Cir. 2012)……………………………....…17

*Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)…….17

*Fort Sill Apache Tribe v. Nat. Indian Gaming Com'n*,
345 F. Supp. 3d (2018)…………………………………………………...18

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)………..3

*Loper Bright Enterprises, et al. v. Raimondo, Secretary of Commerce*,
603 US 369 (2024)…………………………………….....………………6

*Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139-40 (D.D.C. 2002)...17

*New Hampshire v. Maine*, 532 U.S. 742 (2001)……………………..……8, 14

*Portland Audubon Soc'y v. Endangered Species Comm.*,

    984 F.2d 1534 (9th Cir. 1993)……………..…………………………………18

*Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400 (6th Cir. 2016)…..........18

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551 (9th Cir. 1989)………..18

*Vietnam Finewood Co. Ltd., v. U.S.*, 633 F.Supp.3d 1243 (2023)……….5

*Worthington v. Robbins*, 139 U.S. 337, 341 (1891) …………………….…2

## Statutes

U.S. Court of Int. Trade Rule 7(d) ….........................................................3
U.S. Court of Int. Trade Rule 7(g) ….........................................................3
U.S. Court of Int. Trade Rule 59….......................................................... 2, 26

## Other Authorities

Administrative Procedure Act 5 U.S.C. §706(2)(A)………………………17

# ARGUMENT

## I.    IGF HAS SATISFIED THE STANDARD FOR RECONSIDERATION

Defendant United States ("Government")'s Opposition ignores Plaintiff InterGlobal Forest, LLC ("IGF")'s substantive arguments that the Government is required to complete the administrative record, which alone satisfies the standard for reconsideration. Just as significantly, the Government fails to refute IGF's argument that there has been a manifest injustice in this case. See Opposition, ECF 150, Section I, pp.6-8; Motion, ECF 139 at pp. 29-31. This failure forms a second basis for reconsideration.

The simplest explanation for the manifest injustice in this case is that two importers of identical product from the same manufacturer during the same time periods were charged for duties differently after the Government had stipulated that the identical products are out of scope. Specifically, the Government stipulated to a judgment that the hardwood plywood produced by LB Wood Cambodia Co., Ltd. ("LB Wood") and sold to Richmond International ("Richmond") was manufactured by LB Wood with a country of origin ("COO") of Cambodia but in the present case U.S. Customs and Border Protection's ("CBP") determined the COO for LB Wood plywood was China.

There is no doubt that CBP admitted the products in the Richmond case and the present case were identical. According to CBP's own admission, "the exact factual and legal matters at issue in [Richmond's Protest] are pending in litigation before the CIT." See Richmond International

1

Forest Products v. United States, Case 1:21-cv-00318-JAL, ECF 13, Richmond's Compl. ¶60, filed 05/05/22; ECF 27, Government's Ans. ¶60 filed 08/04/22. The pending litigation referenced is this case. Id. at Compl. ¶32.

The Government argues that IGF failed to provide any basis for relief under Rule 59 and reargues points previously made. See Opposition, ECF 150 at p. 2, ¶3. But it is the Government, not IGF, that is seeking to relitigate the COO of plywood manufactured by LB Wood, an issue definitively settled by the January 16, 2025 Stipulated Judgment on Agreed Statement of Facts in the case titled Richmond International Forest Products v. United States.[1]

The Court has long rejected administering the antidumping laws in a manner that treats identical merchandise differently based solely on importer identity. It is a well-settled tenet of customs law that "[i]n order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." Worthington v. Robbins, 139 U.S. 337, 341 (1891). An agency determination is arbitrary and capricious if the agency has treated similarly situated parties or products differently "without reasonable explanation." Consol. Bearings Co. v. United States, 348 F.3d 997, 1007 (Fed. Cir. 2003) at *1007.

Despite the Government's attempts to conceal evidence that it should have added to complete the administrative record, it is "the court's

---

[1] 1:21-cv-00318-JAL, Consol. Ct. No. 21-00318 (cited as "Richmond II" in IGF's motion for reconsideration).

duty to find the correct result, by whatever procedure is best suited to the case at hand." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

## II. THE LAW FAVORS, AND THE COURT HAS DISCRETION, TO ALLOW IGF'S REPLY BRIEF

In addition to the arguments and authorities set forth in IGF's motion for reconsideration, and the principle that the court is obligated to arrive at a correct decision, case law favors allowing the Court to accept and consider IGF's reply brief. In Am. Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 538, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), the Supreme Court cited the general principle that "[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it...."

The Court converted IGF's motion for oral argument into a supplemental brief on the merits. The Government's argument that "Rule 7 does not govern this Court's review" (Opp. at 9) sidesteps a critical issue: Rule 7(g) explicitly defines dispositive motions to include "motions for judgment on an agency record." When the Court treated IGF's submission as a "supplemental merits brief" and ordered the Government to respond, it effectively triggered Rule 7(d)'s reply provision.

Moreover, according to information contained in Richmond's public filings the Government acted in bad faith to conceal evidence which it considered to determine that LB Wood's plywood products were manufactured in Cambodia, not China, specifically so the Government could

gain an unfair advantage over IGF in the instant matter. The Government's concealment and failure to complete the administrative record also denied IGF due process. Therefore, in the interests of justice it is imperative that the Court consider IGF's reply brief to the Government's opposition to that supplemental brief on the merits.

## III. THE COURT COMMITTED ERRORS OF LAW AND FACT THAT WARRANT RECONSIDERATION

### A. IGF's Out Of Scope Arguments Are Valid And Have Not Been Waived.

1. IGF's Out Of Scope Arguments Were Presented In Written Arguments To CBP And Have Not Been Waived.

The Court asserts that IGF waived the out-of-scope argument because it never objected that its merchandise was not covered merchandise. Decision, ECF 136, at 10. The Government likewise asserts in its Opposition that IGF did not present its claim to CBP for consideration that the merchandise was not "covered merchandise" and was therefore out of scope. Opposition, ECF 150 at pp. 12-13. Both assertions are incorrect.  IGF's argument has always been that the manufactured three-ply and larger products (plywood) imported from LB Wood were produced in Cambodia, not China. Motion, ECF 139 at 7.

Specifically, IGF's Written Arguments And Rebuttal Evidence filed April 30, 2024 (collectively APPX45213-APPX45265) in EAPA 7970 (Remand 7321) (the underlying EAPA investigation) argue that the merchandise which IGF purchased from LB Wood was not covered merchandise, and thus out-of-scope, because LB Wood did not use three-ply (covered merchandise) in manufacturing its plywood for sale to IGF.

2. <u>IGF's Written Scope Arguments To CBP Relied On The Rulings
In The Vietnam Finewood Case.</u>

IGF's reliance on Vietnam Finewood Co. Ltd. v. United States, 633
F. Supp. 3d 1243, 1262 (Ct. Int'l Trade 2023) is significant because the
underlying EAPA investigation in this case began with several false al-
legations filed by domestic producers of hardwood plywood, the Coalition
for Fair Trade of Hardwood Plywood (the "Coalition"), alleging that IGF
and other U.S. importers had imported "covered merchandise," i.e., hard-
wood plywood subject to the Antidumping Order A570-051, and Counter-
vailing Duty Order, C570-052 of Hardwood Plywood from China. (see
Appx01075-01076, Appx01093 for April 12, 2019 allegations and
Appx01473-01474, Appx01483-01486, Appx01498-01514 for May 1, 2019
updated allegations and exhibits). The Coalition falsely asserted that
IGF was transshipping Chinese plywood through Vietnam (which gave
rise to the Vietnam Finewood USCIT litigation) as a basis for concluding
that IGF must also be transshipping Chinese plywood through Cambo-
dia, resulting in the instant litigation.

CBP adopted this circular reasoning and stated as follows: "Moreo-
ver, InterGlobal has been under investigation for transshipping hard-
wood plywood through Cambodia's neighbor Vietnam. In consideration of
a potential finding of evasion in that case, it is a reasonable conclusion
that an importer capable of transshipping Chinese-origin hardwood ply-
wood through Vietnam is capable of transshipping Chinese-origin hard-
wood plywood through its southwestern neighbor Cambodia as well." See
June 26, 2019 Memorandum to File Initiation of Investigation for EAPA
Case Number 7321 – InterGlobal Forest, LLC Appx01011. IGF objected

when CBP adopted this circular reasoning (see Appx45223-APPX45224). Significantly, and fatal to the Coalition's credibility, this allegation was completely specious because IGF prevailed in its USCIT complaint against the Government in the Vietnam Finewood case.

### 3. IGF Further Objected To The Scope Determination In A Request For Administrative Review And Those Scope Objections Have Not Been Waived.

IGF further made its argument that the merchandise it purchased from LB Wood was out of scope in a written request to CBP for an administrative review. IGF objected that the CBP Agent's conclusory remarks taken by the agency as substantial evidence as to whether merchandise is in or out of scope was unacceptable and questioned the Agent's ability to make a scope determination from a brief visual inspection visit to an LB Wood factory. See Letter from DeKieffer & Horgan, PLLC to U.S. Customs and Border Protection, re: EAPA Con. Case No. 7321 – Request for Administrative Review (Aug. 10, 2020) at Appx44485.

### 4. IGF's Out Of Scope Argument Was Presented In Written Arguments To The Court And Has Not Been Waived.

IGF further objected to this same scope determination in this Court, arguing that CBP improperly relied on the CBP Agent's determinations of law regarding the scope of the Orders, which determinations of law are prohibited by the U.S. Supreme Court decision in *Loper Bright Enterprises, et al. v. Raimondo, Secretary of Commerce, et al.*, No. 22-451 and also in violation of 19 CFR § 351.225. In IGF's Written Comments In Opposition To CBP's Remand Redetermination filed September 13, 2024,

ECF Document 103 ("IGF Opp. to Remand Redetermination"), IGF objected to CBP's assertion that its Agent had special knowledge and experience and served in a position that carries with it the ability to make authoritative pronouncements pertaining to whether wood products are in or out of scope. See Id. at pp. 5-6.

As set forth at length in IGF's Motion for Reconsideration, the Court misconstrues IGF's argument that no three-ply or covered merchandise imported by LB Wood into Cambodia from China was used by LB Wood in its production processes and mis-states that fact as an assertion that IGF did not import three-ply products (plywood) from LB Wood, which of course it did. The three-ply products (plywood) IGF imported from LB Wood were produced in Cambodia and were therefore out-of-scope.

## B. The Court Incorrectly Rejected Taking Judicial Notice Of Two Separate CIT Actions Which Require Application Of Judicial Estoppel In This Case.

The Government contends in its Opposition that the Court correctly declined taking judicial notice of the stipulated judgment and motion for entry of confession of judgment in two separate CIT cases (*Richmond Int'l Forest Prods., LLC v. United States*, Consol. Court No. 21-00318 and Court No. 21-00178 "Richmond Cases"), effectively preventing IGF from asserting a claim of judicial estoppel. Opposition, ECF 150 at 14.[2] IGF contends that the Government and Court are incorrect and that the Richmond Cases do form the basis for judicial estoppel.

---

[2] The Court denied IGF's motion for judicial notice "without prejudice as unnecessary to resolve" because it found judicial estoppel did not fit. (Decision, ECF 136 at 26).

As the Government points out in its Opposition, the Court focused on three non-exclusive factors that inform whether judicial estoppel can be invoked by IGF: (1) whether the party's later position is "clearly inconsistent" with the prior one; (2) whether it has 'succeeded in persuading a court' to accept its earlier position; and (3) whether its assertion of an inconsistent position would give it an unfair advantage over the opposing party absent estoppel." Decision, ECF 136 at 26 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). The Government asserts that the Court, "applying these factors" found judicial estoppel did not apply. Opposition, ECF 150 at 15-16. For the reasons set forth below, and in clear error the Court did not apply the factors correctly and judicial estoppel does apply.

## 1. The Government Succeeded In Persuading A Court To Accept Its Earlier Position In Richmond.

In its Opposition the Government agrees with the Court that judicial estoppel "does not fit here because Customs did not "succeed" in persuading the court of anything in the Richmond Cases." Opposition, ECF 150 at 15; Decision, ECF 136 at pp. 26-27. The crux of the Government and Court's reasoning is that when CBP entered into a confession of judgment and stipulated judgments in the Richmond Cases, reversing its original position of the COO for LB Wood from China to Cambodia, it did not "succeed" in advancing a position directly inconsistent with its position in this case, it simply chose not to pursue the Richmond Cases. Opposition, ECF 150 at 15; Decision, ECF 136 at 26.

8

The Government and Court argue that CBP maintained its position that LB Wood could not manufacture all the plywood exported, for both Richmond and IGF, and in the Richmond Cases it simply "gave up" or "capitulated" to a position that it opposed when it confessed error and stipulated to facts in direct opposition to the initial "factual" determinations by CBP.

The Government and the Court insist that the CBPs position in the Richmond Cases and the present case are consistent and the fact that the Government chose to "surrender" in the Richmond Cases but fight on against IGF, paradoxically does not mean the Government has "'succeeded" in advancing a position "directly inconsistent" with its theory here." Opposition, ECF 150 at 15. Decision, ECF 136 at 27. The main problem with the Government and Court depicting the confession of judgment as a "settlement" is that Richmond never wanted to settle and never agreed to the confession of judgment – it was filed unilaterally by the Government and never agreed to by Richmond. How can the confession of judgment be called a "surrender" if Richmond never asked for or agreed to it?

The Government and Court do not deny that in the Richmond Cases the CPB determination of the COO was changed from China to Cambodia. They simply assert, in part, that the change in position does not equal "success." The Government chose not to address IGF's clear and detailed summary of the law which provides: that "success" simply means the court accepted a party's position, not that they obtained favorable judgment. Motion, ECF 139 at 9; that a stipulated judgment on an agreed statement of facts has the same force and effect as a judgment entered

9

after a trial on the merits; and that judicial estoppel may apply because a court accepted the party's position, even though the party lost the judgment. Id. at 13.

The law is clear than when the court accepted CBP's position in the Richmond Cases that LB Wood's plywood originated in Cambodia, the Government "succeeded in persuading a court" to accept its position, even if that position was unfavorable to it. The Government achieved success on this issue and should be estopped from taking an inconsistent position with IGF.

### 2. The Government Used Intentional Self-contradiction To Obtain An Unfair Advantage So Judicial Estoppel Applies

The Court noted that "At least as far as judicial estoppel is concerned, litigants that settle or confess error should be permitted to live and fight another day ***absent any showing of some unfair advantage thereby obtained***." Decision, ECF 136 at 28. (emphasis added). The Government also asserts there was "no intentional self-contradiction to obtain an unfair advantage." Opposition, ECF 150 at 15. As the Court noted, the First Circuit has explained that judicial estoppel "should be employed when a litigant is 'playing fast and loose with the courts,' and when ' intentional self-contradiction is being used as a means of obtaining unfair advantage'" which in turn "generally requires that a party have succeeded previously with a position directly inconsistent with the one it currently espouses." Decision, ECF 136 at 26. (citation omitted).

In the first of the two Richmond Cases the Government unilaterally moved for entry of a confession of judgment in favor of Richmond.

Notably, despite Richmond welcoming "the fact that [government] now agrees with [Richmond's] claim that the goods covered by this case are of Cambodian origin" Richmond **never consented to and actually opposed** the motion "due to [Richmond's] belief that [the Government is] employing a strategy of delay in this litigation." In Plaintiff Richmond's Opposition to Defendant United States Motion for Confession of Judgment dated June 29, 2022, 1:21-cv-00178-MMB ECF 26 Richmond stated:

> This delay is presumably **to shield Defendant's conduct from judicial review** while Defendant also litigates issues in a separate ongoing court case challenging U.S. Customs and Border Protection's affirmative Enforce and Protect Act ("EAPA").[referencing *Am. Pac. Plywood, Inc. v. United States,* Consol. Ct. No 20-03914] Specifically, in the EAPA case that Defendant presumably relied on to liquidate Plaintiff's entries as having an origin of China rather than Cambodia (Am. Pac. Plywood v. United States), CBP found evasion with respect to three unrelated importers. In this case Plaintiff can only speculate that Plaintiff  has requested information from Defendant that may be prejudicial to Defendant in the EAPA litigation. Defendant's decision to request confession of judgment is not based on any new information provided by Plaintiff during this litigation. Id at pp. 1,2(emphasis added).

From Richmond's objection it is clear that the government's motion for confession of judgment was an "intentional self-contradiction to obtain an unfair advantage" and that CBP was playing "fast and loose" with the courts. When CBP refused to change the COO to Cambodia in the remaining Richmond Cases which related to the same manufacturer, merchandise, and time period, Richmond was forced to litigate and CBP continuously delayed and refused to respond to discovery requests. After its successful "strategy of delay," the government finally proposed entry of stipulated judgments, again reversing its position for LB Wood's

plywood COO from China to Cambodia, but only after the determination of evasion in the present case was completed.

The biggest unfair advantage the CBP obtained in taking an inconsistent position regarding the COO for LB Wood plywood via entry of a confession for judgment was that its conduct was shielded from judicial review. Common sense suggests that the Government should not be allowed to stipulate that LB Wood manufactured its plywood in Cambodia and then walk to the courtroom next door and claim LB Wood was not producing the same plywood at all, it was transshipping plywood from China. Judicial estoppel fits here because CBP clearly used intentional self-contradiction as a means of obtaining an unfair advantage having successfully asserted a position in Richmond directly inconsistent with its position in the present case.

### 3. The Government Admitted That The Exact Factual And Legal Matters At Issue In The Richmond Cases Are Identical To The Factual And Legal Matters At Issue In The Instant Litigation With IGF

In its Opposition, the Government asserts that the different nature of the cases for Richmond and IGF dictate the review and relief that can be affected by the Court. Opposition, ECF 150 at 16. IGF acknowledges the Richmond Cases involved circumvention as distinguished from evasion cases but asserts that because examination of the same "exact factual and legal matters at issue" in Richmond and the present case is necessary to determine if assessment of AD/CVD's is required, the doctrine of judicial estoppel applies.

The Richmond Cases involved the challenge of CBP's assessment of AD/CVD's on entries of plywood manufactured by LB Wood determined by CBP to have a COO of China. In January 2021, Richmond filed a timely protest in which it provided thousands of pages of documentation to CBP, including the identical production records provided by LB Wood to both Richmond and IGF in this case, "showing every stage of production of the plywood . . . from the initial stage of taking the veneers out of inventory through each stage of production until the merchandise was packed for shipment." Richmond International Forest Products v. United States, Case 1:21-cv-00318-JAL, ECF 13 Compl. ¶38, Filed 05/05/22.

After its protest was denied in February 2021, Richmond filed a request for further review which was also denied, according to CBP's own admission, on the basis that "**the exact factual and legal matters at issue in [Richmond's Protest] are pending in litigation before the CIT**." Id. at Richmond's Compl., Case 1:21-cv-00318-JAL ECF 13 filed 05/05/22 ¶60, and  Government's Ans., Case 1:21-cv-00318-JAL ECF 27 filed 08/04/22,  ¶60 (emphasis added). Because the referenced "pending in litigation" is the instant matter, CBP **by its own admission** clearly planned on treating the legal and factual determinations in the present case as controlling of the determination in the Richmond Cases. Accordingly, the judicial notice and estoppel arguments IGF seeks to advance here are valid and do not "fall flat" as the Government concludes. Opposition, ECF 150 at 17.

tran

<u>4. CBP 'Succeeded In Persuading A Court' To Accept Its Earlier Position In Richmond Thus Judicial Acceptance Of An Inconsistent Position In This Case Creates The Perception That Either The First Or The Second Court Was Misled.</u>

In its Opposition the Government claims that IGF asserts that the Court ignored the second factor of judicial estoppel and then simply makes a conclusory statement that the Court did address the second factor and the fact "that IGF does not agree with the Court's decision is not grounds for reconsideration." Id. This is a gross distortion of IGF's multiple grounds for reconsideration, not the least of which is the fact that the Government completely ignores the issue raised by IGF that the Court did not adequately, or at all, address whether the "judicial acceptance of an inconsistent position" between Richmond and IGF would create "the perception that either the first or second court was misled." The second factor for consideration of whether judicial estoppel applies is as follows:

> Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, **so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled**." *New Hampshire* at 750 (emphasis added).

Because the Government acknowledged that the same "exact factual and legal matters" were at issue in both Richmond and the present case, the Richmond court's acceptance of LB Wood plywood's COO as Cambodia for Richmond and this Court's acceptance of LB Wood plywood's COO as China for IGF creates "the perception that either the first or the second

court was misled." This situation is exactly what qualifies as a justification for allowing the application of judicial estoppel and the Court erred in neglecting to consider this portion of the second factor in its opinion.

5. <u>The Government Would Impose An Unfair Detriment On IGF Absent The Application Of Judicial Estoppel</u>

The Government in its Opposition summarily dismisses IGF's contention that in applying the third factor for judicial estoppel the Court did not consider if the Government would have an unfair advantage over IGF subjecting it to an unfair detriment. Opposition, ECF 150 at 17. The Government's reasoning for this is that it did not take an inconsistent position, it has always maintained there is evidence of evasion, and that LB Wood could not manufacture all the exported plywood. Id. at 18. Additionally, the Government states that IGF asserts an unfair detriment because its outcome is different from the Richmond Cases outcome. These arguments completely mischaracterize IGF's contentions and fail to substantively address the third factor.

First, the Government clearly took an inconsistent position when it changed the COO in the Richmond Cases for LB Wood plywood from China to Cambodia as discussed above. The fact that CBP refused to correct the COO for identical plywood products manufactured during the same production runs using the same assembly line and same raw materials as in the present case is exactly the assertion of an inconsistent position meant to be addressed by the third factor in reviewing the availability of judicial estoppel. CBP "succeeded" in persuading a court to accept its position that LB Wood plywood properly had a COO in Cambodia

and CBP obtained multiple benefits from taking that changed position.

Second, IGF was very clear that there is a 12+ million liability detriment and litigation costs that are detrimental to IGF. CBP clearly gains an unfair advantage over IGF by being permitted to advance inconsistent positions for LB Woods COO as between Richmond (Cambodia origin country) and IGF (China origin country).

6. <u>The Court May Look Outside The Record Because There Is A Showing Of Bad Faith Or Improper Behavior By CBP</u>

Normally in an evasion case the Court reviews the record compiled before the agency and no other evidence is permitted. IGF argues in its Motion that the Court may look outside the record if there is a showing of bad faith or improper behavior. The Government does not object to that statement of the law. Opposition, ECF 150 at 18. What the Government says is it did not act improperly or in bad faith and that IGF does not present a strong showing of bad faith. Opposition, ECF 150 at 18. Contrary to the Governments unsupported blanket statements, IGF has shown that CBP engaged in intentional self-contradiction to gain an unfair advantage. Richmond exposed CBP's bad behavior in its litigation documents.

Additionally, by first delaying and then summarily "capitulating," or "surrendering," as the Court characterized the Government's actions in Richmond, CBP effectively prevented IGF from obtaining access to relevant information that likely would have negatively impacted CBP's determination of evasion in the present case and allowed IGF to attack or rebut CBP's findings. Similarly, the fact that for two and half  years CBP refused to

reverse its position for the Richmond protests, that plywood manufactured by LB Wood was from Cambodia and not China, until the present determination of evasion was finalized smacks of bad faith and unfair advantage.

### 7. The Court's Denial Of Judicial Notice Was Clear Error.

Arguing that the Court's denial of judicial notice should remain intact, the Government incorrectly claims IGF rejects the proposition that a court reviews the record compiled before the agency and no other evidence is permitted. Opposition, ECF 150 at 18. What IGF actually argues is that in cases where there is a showing of bad faith or improper behavior, a court may look outside the record. Id.

The Government claims it did not act improperly or in bad faith, and further claims that IGF does not present a "strong showing of bad faith." Id. But based on the limited public information in the Richmond Cases, including the unsolicited condemnation of CBP by Richmond in its opposition to the first consent judgment, there is a valid issue in the present case regarding the improper behavior of CBP in withholding from the record multiple documents considered by it in its determination of evasion. In other words, neither IGF nor the Court had access to the whole record that was before CBP when it made its determination of evasion.

This is in direct contravention of the standards established under the Administrative Procedure Act (APA). Federal courts have recognized that the standard of review for international trade cases also encompasses the standards established under the APA, 5 U.S.C. §706(2)(A). Changzhou Wujin Fine Chemical Factory Co. v. United States, 701 F.3d

1367, 1377 (Fed. Cir. 2012) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 284 (1974)).

8. The APA Requires That The Record Must Be Complete Or The Remand Redetermination, And The Court's Affirmation Of It, Are Meaningless.

A review of relevant cases addressing the standards established by the APA that also apply in the present case shows that "if the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1548 (9th Cir. 1993). A whole record under the APA consists of "all materials that were before the agency when it made the challenged decision." Sherwood v. Tenn. Valley Auth., 842 F.3d 400, 407 (6th Cir. 2016). This means "all documents and materials **directly or indirectly considered by the agency**," Bar MK Ranches, 994 F.2d at 739, (emphasis added) including "evidence contrary to the agency's position," Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989) (quoting Exxon Corp. v. Dep't of Energy, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (Higginbotham, J.)). To be complete, the record must include all materials that might have influenced the agency's decision, and not merely those on which the agency relied." Fort Sill, 345 F. Supp. 3d at 6 (quotation omitted); see Ad Hoc Metals Coal. v. Whitman, 227 F. Supp. 2d 134, 139-40 (D.D.C. 2002).

Once IGF became aware of the inconsistent position that CBP took in the Richmond Cases, IGF reviewed the Richmond public documents and ascertained that evidence and information had been withheld by CBP from

the administrative record in this case. IGF delineated the information in possession of CBP and the differences in what was furnished to Richmond versus IGF in its Motion for Reconsideration. Motion, ECF 139 at 19-22.

Upon discovery of the Richmond Cases, IGF immediately made a motion for the Court to take judicial notice of the information that would demonstrate the Government did not provide a full record in the present case. It was impermissible for CBP to withhold information from the IGF record. IGF has made a strong showing of improper or bad faith action on the part of the Government.

## C. Res Judicata And Collateral Estoppel Do Apply In This Case

The Government in its Opposition claims the Court should not consider IGF's arguments that the doctrines of res judicata and collateral estoppel should apply as bases for relief before the Court. Opposition, ECF 150 at 19. The Government's primary objections are that IGF's arguments are waived because they were not raised "during the proceedings before the Court" but instead in a "reply" to IGF's motion for oral argument that was stricken from the docket. Id. at 19-20. The Government ignores that IGF was not and could not have been aware of the Richmond Cases until long after the initial proceedings before the Court. Only upon discovering that CBP had another importer (Richmond) of LB Woods plywood being reviewed and evaluated for the imposition of AD/CVD duties did IGF's claims for res judicata and collateral estoppel arise.

19

## 1. Res Judicata Precludes The Government From Relitigating The COO Of LB Wood's Plywood Imported By IGF And Richmond

The Government points out that the entries at issue in the Richmond Cases were not part of the EAPA investigation in this case. Opposition, ECF 150 at 21. But CBP admitted the basis for its original determination in the Richmond Cases was the administrative record for the present EAPA case. The overlap of relevant information collected by CBP is because the manufacturer of the imported plywood, LB Wood, was the same for both the Richmond circumvention case and the present EAPA evasion case.

The Government insists that because the present case's main inquiry is whether there is substantial evidence in the record to support a finding of evasion, the Court is not allowed to consider another administrative action with the same core transactional facts, especially in determining if CBP acted arbitrarily and capricious. This despite making an early admission that "the exact factual and legal matters at issue in [Richmond's Protest] are pending in litigation before the CIT" which is the present case.

CBP's investigation of LB Wood to determine if the plywood it manufactured was of Cambodian or Chinese origin, eventually identified for Richmond a complete record of the information it considered, but for IGF only identified a subset of the record which should have been produced. As discussed, ante, the Government by adopting the position that LB Wood plywood originated in Cambodia, should be precluded from relitigating the issue in the present case. IGF's motion for reconsideration due

to this issue should be granted because this case meets the requirements necessary to invoke res judicata as listed by the Government in its Opposition and as shown in IGF's Motion. Opposition, ECF 150 at 21; Motion, ECF 139 at pp.15-23.

The Government argues the operative facts and issue in the instant matter is limited to whether there was substantial evidence in the record to support a finding of evasion against IGF. But if that were true, no Court could ever review a challenge and correct error where an agency demonstrably withholds relevant information from the record. The Government's position is untenable and categorically false as evidenced by the exhaustive list in IGF's motion for reconsideration detailing that a common set of transactional or core operative facts is to be identified pragmatically and that they should be based on the same or nearly all the same factual allegations. The redetermination explicitly agrees that the plywood manufactured by LB Wood for Richmond and IGF are the same based on the inspection cited as evidence of evasion in both Richmond Cases and the present case noting it was sufficiently contemporaneous and examined the same types of facts. Motion, ECF 139 at 18-23. Res Judicata applies in the present case because the parties were in privity, the first suit proceeded to a final judgment on the merits, and the claim here is based on the same set of transactional facts as the first case against LB Wood.

2. The Benefit Of Collateral Estoppel, Or Issue Preclusion, Is Available To IGF

The Government in its Opposition identifies the proper analysis for a claim of collateral estoppel which is the same analysis IGF used to determine the doctrine is available to it for relief. However, once again, the Government insists that the issue in the "Richmond matters is not identical to the one here, as required. Opposition, ECF 150 at 24. Again, the Government is focused on how Richmond involved covered entries made by an importer and the present case involves a review of whether there is substantial evidence in the record to support a finding of evasion by importers. Id. This thinking denies the reality that  it is precisely the record that must be reviewed and if it is shown that the record was insufficient, lacking, willfully manipulated, etc., the Court should make a finding of CBP actions as arbitrary and capricious in failing to forthrightly provide an accurate and complete record of all information considered, whether relied upon or not. Otherwise, CBP could continually designate only the information in its favor on the record to support its determination, whether relied upon or not.

Second, the Government in its Opposition reiterates its position that a stipulated judgment and a confession of judgment do not involve litigating the merits of the issue. But the Government incorrectly disregards the fact that here, the government raised the contested issue (COO for LB Wood's plywood), and the court decided it in its final judgment after years of litigation proceedings including filing a complaint, propounding discovery, filing a motion to compel, etc.

The Government does not bother to address the additional issues necessary for collateral estoppel that the previous determination was

necessary to the decision and that the party being precluded from reliti-
gating the issue was fully represented in the prior action. In the present
case, the issue of whether the plywood from LB Wood originated in Cam-
bodia or China was determinative to whether LB Wood's plywood was
subject to AD/AVD duties and the Government, as the party to be pre-
cluded was fully represented in the prior action. Because all of the re-
quirements for application of collateral estoppel are met, it must apply.

## D. Stare Decisis Does Apply To This Case

The Government in its Opposition claims there was no clear error in
the Court failing to consider the principle of *stare decisis*.  Opposition,
ECF 150 at 25. Its primary objection is two-fold, that the prior stipulated
judgements were not prior precedential holdings and that the principle
of *stare decisis* applies only to "legal determinations."  Id at 25-26.  How-
ever, in EAPA cases, the determination of a product's COO is a fact-in-
tensive process based on CBP regulations and judicial precedent and ul-
timately is treated as a legal decision by the agency.

In Richmond, where the COO of LB Wood's plywood was twice de-
termined to be Cambodia. Those findings were based on, as admitted by
the Government in the Richmond Cases, the exact same factual and legal
matters at issue in the Government's determination of evasion for IGF.
CBP and the Court's contradictory and inconsistent position that LB
Wood in the present case, for the same plywood, same facility capacity,
same raw materials suppliers, same employees, etc. has a different COO
ruling of China, is necessarily arbitrary, capricious, and not in accord-
ance with the law, and is thus precluded by the doctrine of stare decisis.

## E. Adverse Inference Must Be Taken Against The Government Because It Has Concealed Relevant Information And Refused To Complete The Administrative Record.

The Government asserts that it committed no impropriety and has not improperly concealed information from IGF which is relevant to the underlying EAPA case and the instant lawsuit. Opposition, ECF 150 at pp. 26-27. The Government's assertion is incorrect. The Government stipulated in the Richmond Cases that LB Wood's plywood **is** manufactured in Cambodia but seeks to relitigate this issue and is objecting to completing the administrative record in this case. The Government asserts that the Richmond and IGF cases have a "…different statutory framework, involving entries that are not IGF's. In any event, defendant did not stipulate to any fact applicable to this EAPA proceeding, and stipulations entered in a different proceeding and not on the record of this EAPA proceeding are irrelevant." Id. at 14 .

The Government's assertion that the Government did not stipulate to any fact applicable to this EAPA proceeding is nonsensical; of course, stipulating that LB Wood was producing birch plywood for Richmond at the same time and at the same facility where it was producing identical plywood for IGF is applicable. Moreover, this assertion directly contradicts the Government's earlier willingness to complete the administrative record with information from related investigations that is helpful to the Government. As the Government set forth in the Remand Redetermination:

> "Even then, nothing prevents CBP from placing information obtained from other investigations on the record of the present proceeding. 19 U.S.C. § 1517 (Footnote 1: "In making

a determination under paragraph (1) with respect to covered merchandise, the Commissioner may collect such additional information as is necessary to make the determination through such methods as the Commissioner considers appropriate…”).” (See Remand Redetermination at APPX45392).]

The Government must base its determinations on substantial evidence and apply its standards consistently. The Court will not defer to determinations that rely on speculation, shifting evidentiary standards, or importer-specific outcomes untethered to the merchandise or record evidence.

While prior determinations may not be formally preclusive, the Federal Circuit has made clear that the Government must acknowledge and explain departures from prior decisions involving materially identical facts. *Royal Brush*, 483 F.3d at 1334; *Nucor Corp.*, 927 F.3d at 1252. An unexplained departure from prior agency practice constitutes arbitrary and capricious action under the APA. *State Farm*, 463 U.S. at 57.

Finally, the Government's assertion that these records have been available to IGF is disingenuous, as the vast majority of the records in the Richmond Cases remain under seal and thus unavailable to IGF. For these reasons, the Court should draw an adverse interest against Defendant United States.

**F. There Is Clear Manifest Injustice In Allowing The Government To Hold Two Mutually Exclusive Positions, To The Detriment Of IGF**

There is a $12+ million detriment to be imposed upon LB Wood and IGF which will result if the court accepts the Government's contradictory position that the plywood produced by LB Wood originated from Cambodia rather than China when it was sold to Richmond, but originated in China when it was sold to IGF. It is manifestly unfair and a perversion of justice that contradictory rulings arise from the same set of material facts.

## CONCLUSION

The Court's procedural and substantive legal and factual mistakes require correction under Rule 59. IGF was denied its right to be heard through improper striking of its reply brief, and the Court's decision unlawfully permits the Government to take contradictory positions on identical facts in violation of judicial estoppel, *res judicata*, and basic fairness principles.

Therefore, IGF respectfully requests that the Court:

1. Grant this motion for rehearing and to open judgment;
2. Vacate the prior judgment and opinion;
3. Consider IGF's improperly stricken reply brief;
4. Apply controlling legal doctrines that preclude the Government's contradictory position; and
5. Enter judgment in favor of IGF and LB Wood.

26

The Court's correction of these errors is necessary to ensure equal justice under law and maintain the integrity of the judicial process.

Cadden & Fuller LLP

/s/ Thomas H. Cadden
Thomas H. Cadden, Esq.
CADDEN & FULLER LLP
2050 Main Street, Suite 260
Irvine, CA 92614
(949) 788-0827
Email: tcadden@caddenfuller.com;
icisneros@caddenfuller.com
*Counsel to Plaintiff*
*InterGlobal Forest, LLC*

Dated: January 2, 2026

27

## <u>CERTIFICATE OF COMPLIANCE WITH</u>
## <u>WORD COUNT LIMITATION</u>

*American Plywood, Inc., et al. v. United States*
*Consol. Court No.* 20-03914 (Ct. Int'l Trade)
EAPA Cons. Case No. 7321
Remand No. 7970

I, Thomas H. Cadden, of Cadden & Fuller LLP, am responsible for filing the foregoing motion, Plaintiff InterGlobal Forest, LLC's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration (the "Reply") and, relying upon the Microsoft Word-Count feature of the word processing system used to prepare the Reply, certify that this Reply complies with the word count limitation of the U.S. Court of International Trade Standard Chamber Procedures and contains 6701 words.

Dated: January 2, 2026

Cadden & Fuller LLP

/s/ Thomas H. Cadden
CADDEN & FULLER LLP
2050 Main Street
Suite 260
Irvine, CA 92614
(949) 788-0827
Email: tcadden@caddenfuller.com
Attorneys for Plaintiff
InterGlobal Forest, LLC