**Slip Op. 26-23**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

**Consol. Ct. No. 20-03914**

AMERICAN PACIFIC PLYWOOD, INC.;
INTERGLOBAL FOREST, LLC; and
U.S. GLOBAL FOREST, INC.,

*Plaintiffs*,

and

LB WOOD CAMBODIA CO., LTD., and
CAMBODIAN HAPPY HOME WOOD
PRODUCTS CO, LTD.,

*Plaintiff-Intervenors*,

v.

UNITED STATES,

*Defendant*,

and

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

*Defendant-Intervenor*.

Before: M. Miller Baker, Judge

# OPINION

[Granting a motion for reconsideration of the court's decision sustaining Customs's redetermination in an EAPA proceeding.]

Dated: February 27, 2026

*Thomas H. Cadden* and *Ivan U. Cisneros*, Cadden &
Fuller LLP, Irvine, CA, on the briefs for Plaintiff In-
terGlobal Forest, LLC.

*Aimee Lee*, Assistant Director, and *Monica P. Triana*,
Senior Trial Counsel, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S.
Department of Justice, New York, NY, on the briefs for
Defendant. Of counsel on the briefs was *Tamari J.
Lagvilava*, Office of the Chief Counsel, U.S. Customs
and Border Protection.

*Baker*, Judge: Plaintiff InterGlobal Forest LLC
moves for reconsideration of the court's decision sus-
taining U.S. Customs and Border Protection's redeter-
mination that the company evaded antidumping and
countervailing duties by falsely describing imported
plywood from China as a product of Cambodia. *See* Slip
Op. 25-87, 791 F. Supp. 3d 1348 (2025) (*Am. Pac. Ply-
wood II*). For the reasons explained below, the court
grants reconsideration, vacates the judgment in Case
20-3916 brought by InterGlobal, and remands for fur-
ther proceedings consistent with this opinion.[1]

---

[1] In Cases 20-3914 and 20-3915, no party moved for recon-
sideration, and therefore the judgments in those cases re-
main intact. In consolidated litigation such as this, "con-
stituent cases remain[ ] independent when it [comes] to

(footnote continues on next page)

## I

Three importers, including InterGlobal, brought these consolidated suits challenging the finding by Customs under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, that their ostensibly "Cambodian-origin" plywood came from China.[2] Their Cambodian suppliers, including LB Wood Cambodia Co., Ltd., intervened as plaintiffs. The Coalition intervened on the side of the government. The court then sustained the agency's decision. *See* Slip Op. 23-93, 2023 WL 4288346 (2023) (*Am. Pac. Plywood I*).

The importers appealed. Thereafter, the government sought, and the Federal Circuit allowed, a voluntary remand. In due course, Customs filed its redetermination sticking with its original finding. *See* ECF 98. The court set a schedule for comments. *See* ECF 102. After briefing was completed, the matter was submitted for decision. ECF 123.

---

judgments and appeals." *Hall v. Hall*, 584 U.S. 59, 66 (2018); *see also Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Slip Op. 26-13, at 19 n.11, 2026 WL 497882, at *7 n.11 (CIT 2026) (explaining the necessity under Federal Rule of Civil Procedure 58—and by extension USCIT R. 58—for the entry of separate judgments as individual actions become final in consolidated litigation).

[2] Customs undertook the investigation at the behest of the Coalition for Fair Trade in Hardwood Plywood, a group of domestic producers.

Two weeks later, InterGlobal filed a "motion for oral argument and other relief" that included merits argument. ECF 124. The importer stated that "after it already submitted its" comments, *id.* at 5, it learned that in two related classification cases the government had acknowledged that entries of identical plywood exported by LB Wood in the same relevant time frame were *not* of Chinese origin and thus not subject to antidumping and countervailing duties. *See id.* at 4 (citing *Richmond Int'l Forest Prods. LLC v. United States*, Case 21-178 (*Richmond I*), ECF 22 (confession of judgment in July 2022)); *id.* at 2 (citing *Richmond Int'l Forest Prods. LLC v. United States*, Consol. Case 21-318 (*Richmond II*), ECF 64, ¶¶ 2, 4 (stipulated judgment in January 2025)).[3] According to the company, judicial estoppel precluded the government from now contradicting the factual position it took in those two cases. *See id.* at 5–7.

The court denied the motion for oral argument without prejudice and treated InterGlobal's filing as a supplemental merits brief. ECF 127. It also directed the government to respond. *Id.* Shortly afterwards, the

---

[3] Jurisdiction in those cases was based on 28 U.S.C. § 1581(a). Richmond challenged Customs's denial of its protests of the agency's classification of its ostensibly Cambodian plywood imports as of Chinese origin. Unlike this EAPA action, where the court role's is limited to arbitrariness review, *see Am. Pac. Plywood II*, Slip Op. 25-87, at 7-9, 791 F. Supp. 3d at 1354–55, in § 1581(a) cases the court is the factfinder.

importer moved that the court take judicial notice of
the *Richmond I* and *II* judgments as well as the gov-
ernment's discovery responses in the latter case.[4] *See*
ECF 129.

The government filed a combined response to these
submissions. *See* ECF 132. InterGlobal filed a reply,
*see* ECF 134, which the court promptly struck as "un-
authorized under the rules." ECF 135.

The court then issued *American Pacific Plywood II*
sustaining Customs's redetermination. In so doing, it
declined to apply judicial estoppel. *See* Slip Op. 25-87,
at 25–28, 791 F. Supp. 3d at 1361–63. The court also
entered judgment. ECF 137.

InterGlobal timely moved for reconsideration un-
der USCIT R. 59. *See* ECF 140. That motion is now
fully briefed and ripe for decision.

---

[4] In those responses, the government produced the public
administrative record from this case as facts supporting its
contention that LB Wood did not have the capacity to man-
ufacture the relevant plywood entries. Case 21-318,
ECF 36-2, at 12–13. The responses were attached to the
*Richmond II* plaintiff's motion to compel production of cer-
tain withheld material, including the confidential adminis-
trative record from this case. *See id.*, ECF 36. The court
granted the motion, subject to a protective order. *See id.*,
ECF 51.

## II

In a nonjury matter, the court may grant rehearing "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." USCIT R. 59(a)(1)(B). In general, such reasons are a "manifest error of law or mistake of fact." 11 Wright & Miller, *Federal Practice & Procedure* § 2804 (3d ed. Sept. 2025 update); *see also Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (a trial court, "in its discretion, may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice").

## A

InterGlobal first argues that striking its reply was "manifestly erroneous" because USCIT Rule 7(d) permits such a filing. ECF 140, at 3. It observes that the rule allows a moving party "21 days after service of the response *to a dispositive motion* to serve a reply." *Id.* (emphasis added) (quoting USCIT R. 7(d)). It adds that the rule defines dispositive motions to include "motions for judgment on an agency record" and "any other motion for a final determination of an action." *Id.* (quoting USCIT R. 7(g)). The importer contends that because the court treated its motion for oral argument as a merits brief, the "court's conclusion that the reply was 'unauthorized under the rules' directly contradicts

Rule 7(d)'s plain language." *Id.* at 4 (boldface removed).

InterGlobal's argument fails because Rule 7(d) has no bearing here. As the company brought this case under 28 U.S.C. § 1581(c), the applicable provision governing merits briefing following remand is Rule 56.2(h). It authorizes comments opposing the remand redetermination, then responsive comments in support, and finally a remand appendix. USCIT R. 56.2(h)(2)–(4). It then says, "*No other comments or papers are allowed*, except by leave of court." USCIT R. 56.2(h)(5) (emphasis added). Consistent with the rule, the post-remand scheduling order here allowed InterGlobal and the other plaintiffs to file comments opposing the remand results, the government and the Coalition to respond with supporting comments, and the plaintiffs to file a remand appendix. *See* ECF 102. It did not allow for any further briefing.

By treating the motion for oral argument—which contained merits argument—as a "supplemental brief," the court implicitly permitted *that* filing *nunc pro tunc*. But it authorized no further filings by InterGlobal, and the importer did not seek leave to file a reply. Rule 56.2(h)(5) thus barred its filing that the court struck. The importer's assertion that it could make that submission as of right is unfounded.

## B

InterGlobal also contends that by striking its reply, the court violated its "fundamental right to be heard under the Due Process Clause of the Constitution." ECF 140, at 4 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). It argues that its "substantial financial interest" made it imperative that the court allow its reply. *Id.* at 5.

"A prerequisite for due process protection is some interest worthy of protecting[:] 'We must look to see if the interest is within the [Constitution's] protection of liberty and property.'" *Am. Ass'n of Exps. & Imps.–Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985) (second alteration in original) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972)). "Those seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations." *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)). Crucially, "[a] protectable interest must be more than a 'unilateral expectation.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

The discussion above establishes that InterGlobal's interest in filing a reply brief was based on a "unilateral expectation." Rule 56.2(h)(5)'s limits on briefing after an agency redetermination are not new. Under those limits, the importer had no "legitimate claim of entitlement" to file a reply to a response to a supple-

mental brief. Thus, striking the company's submission did not implicate due process concerns.[5]

C

In sustaining Customs's redetermination in *American Pacific Plywood II*, the court observed that Inter-Global "*appears* to contend that its imports contained fewer than three plies and thus were out-of-scope." Slip Op. 25-87, at 9, 791 F. Supp. 3d at 1355 (emphasis

---

[5] The court also observes that InterGlobal admits that it omitted the bulk of its theories from its oral argument motion (which the court treated as a supplemental brief) because it planned to develop the points in a reply or at argument. *See* ECF 140, at 2. In other words, the importer presumptuously *assumed* that the court would grant its motion for oral argument or at least allow a reply.

InterGlobal's admission that its intent was to fully develop its arguments on reply or at oral argument reflects a misunderstanding of how litigation works. "An argument is waived if it is not developed in a party's opening brief; inclusion in the complaint, reply briefs, or oral argument does not suffice." *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, Slip Op. 25-131, at 26, 2025 WL 2828840, at *13 (CIT 2025); *see also Braun v. Dep't of Health & Hum. Servs.*, 983 F.3d 1295, 1305 (Fed. Cir. 2020) ("For reasons of fairness to appellees and of judicial efficiency, we generally refuse to consider an appellant's challenge to particular rulings in a decision under review unless the challenge was raised and properly developed in the appellant's opening brief—for which the reply brief and oral argument are not adequate substitutes.").

added).[6] The court rejected this argument as doubly waived because the company failed both to point to record evidence and to preserve this issue before the agency. *See* Slip Op. 25-87, at 9–10, 791 F. Supp. 3d at 1355–56.

In moving for reconsideration, InterGlobal clarifies its argument—what it meant is that "*LB Wood* did not use three-ply (covered merchandise) in manufacturing its plywood for sale to InterGlobal." ECF 140, at 6–7 (emphasis added). Instead, "substantial transformation" of Chinese-made one-ply and two-ply veneers "into three-ply or larger plywood took place in LB Wood's Cambodian factory." *Id*. at 7.[7]

But Customs, weighing the evidence as was its prerogative, concluded that "LB Wood failed to substantiate its production capacity for the plywood it sold to the United States." Appx45393. As the court explained, in reaching that conclusion the agency complied with the substantial-evidence standard and

---

[6] The antidumping and countervailing duty orders in question only cover Chinese-made plywood containing "at least three plies." *Vietnam Finewood Co. v. United States*, 633 F. Supp. 3d 1243, 1262 (CIT 2023).

[7] When a producer in one country uses inputs made in another country covered by an antidumping or countervailing duty order, the former nation is deemed the country of origin if the inputs were "substantial[ly] transform[ed]" there. *Bell Supply Co. v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018).

refrained from arbitrary decision making. *See* Slip Op. 25-87, at 13–15, 791 F. Supp. 3d at 1357–58. Inter-Global's clarification of its argument is unavailing.

D

InterGlobal contends that the court erred in declining to apply judicial estoppel against Customs for taking a position here—that LB Wood could not manufacture the imported three-ply plywood—when the agency conceded the exact opposite (albeit as to different entries) by its capitulation in the *Richmond* cases. It argues that "[j]udicial estoppel may apply because a court accepted the party's position, even though the party lost the judgment." ECF 140, at 13 (quoting 18B Wright & Miller, *Federal Practice & Procedure* § 4477.2 (3d ed. Sept. 2025 update)).

But in the *Richmond* cases, it was the *importers'* position regarding what LB Wood could produce, not the agency's, that the court accepted. "The doctrine of judicial estoppel is that where a party *successfully* urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1262 (Fed. Cir. 2003) (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996)) (emphasis by the *RF Delaware* court). Thus, a litigant that makes a concession and does "not succeed in urging its position" is not later judicially estopped from taking a position inconsistent with that concession. *Id*. That's

because a concession does not induce reliance by the court to accept the party's position, which "judicial estoppel requires." Wright & Miller, § 4477.2.

Customs was *unsuccessful* in advancing its position in the *Richmond* litigation, and the position it takes here is entirely consistent with that (unsuccessful) position. Its interests remain unchanged; its only inconsistency here is with its concessions that produced defeat in those cases. A concession that results in the court's rejection of a litigant's position cannot support judicial estoppel.

And for good reason. As the court explained in *American Pacific Plywood II*, "[t]o hold otherwise would discourage parties from ever settling or confessing error." Slip Op. 25-87, at 27, 791 F. Supp. 3d at 1362–63. Settlements and concessions reduce litigation, and for that reason should be promoted, not deterred. *See id*. The court accordingly declines to reconsider its refusal to apply judicial estoppel.

E

InterGlobal argues at length that both res judicata (claim preclusion) and collateral estoppel (issue preclusion) stemming from the *Richmond I* confessed judgment and the *Richmond II* stipulated judgment bar Customs from contending that LB Wood could not produce the plywood at issue here. *See* ECF 140, at 9–10, 15–26.

Consol. Ct. No. 20-03914                               Page 13

Neither of these theories has any merit for the simple reason that classification adjudications do not have claim or issue preclusive effects as to different entries of the same merchandise. *See Schott Optical Glass, Inc. v. United States*, 750 F.2d 62, 64 (Fed. Cir. 1984) ("[A] determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties.") (citing *United States v. Stone & Downer Co.*, 274 U.S. 225, 236 (1927)); *Avenues in Leather, Inc. v. United States*, 317 F.3d 1399, 1403 (Fed. Cir. 2003) ("[T]he doctrine of issue preclusion does not hold sway over classification disputes under U.S. Customs law.") (citing *Stone & Downer*, 274 U.S. at 234).

But even if classification adjudications could have preclusive effects in non-classification cases (such as this EAPA action) involving different entries of the same merchandise, InterGlobal's argument would still fail. Under claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)). The court need not examine each of these elements because InterGlobal was neither a party to the *Richmond* cases nor in privity with the private plaintiffs in those actions.

The importer contends that it can avoid this impediment because exporter LB Wood, a plaintiff-interve-

nor in this case, *is* in privity with the *Richmond* plaintiffs. *See* ECF 140, at 17. In other words, InterGlobal asserts that it stands under LB Wood's claim preclusion umbrella. The court disagrees. To begin with, LB Wood has not participated in the remand proceedings, and so has waived any such protection it might have had. And even if it had not done so, any success it enjoyed would not extend to InterGlobal, a bystander. For claim preclusion purposes, "[t]he bare fact that one plaintiff is joined with others who were parties and who can properly be bound by a prior proceeding does not justify [binding] the nonparty plaintiff as well." 18A Wright & Miller § 4449 (3d ed. Sept. 2025 update).

InterGlobal's issue preclusion argument is equally flimsy. That doctrine applies when "(1) a prior action presents an identical issue; (2) the prior action actually litigated and adjudged that issue; (3) the judgment in that prior action necessarily required determination of the identical issue; and (4) the prior action featured full representation of the estopped party." *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640, 644 (Fed. Cir. 2012).

Although the relevant issue in the *Richmond* cases is identical to the one here—whether LB Wood could manufacture the plywood it exported during the period of review—it was not actually litigated in *Richmond I*'s confessed judgment and *Richmond II*'s stipulated judgment. *See Restatement (Second) of Judgments* § 27 (1982) ("In the case of a judgment entered

by confession, consent, or default, none of the issues is actually litigated."); *see also* 18A Wright & Miller § 4443 (3d ed. Sept. 2025 update) ("[S]ettlement agreements and consent judgments ordinarily support claim preclusion but not issue preclusion."). Thus, Inter-Global's issue preclusion argument fails as well.[8]

---

[8] InterGlobal also asserts that because of the *Richmond* judgments, "the doctrine of *stare decisis*" somehow "preclude[s]" Customs from finding that LB Wood's plywood is of Chinese origin. ECF 140, at 25–26. That doctrine cannot attach here because those judgments are not judicial *rulings*. *See Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995) ("The way in which a consent judgment or consent decree resolves, between the parties, a dispute over a legal issue is not a ruling *on the merits* of the legal issue that . . . becomes precedent applicable to any other proceedings under the law of *stare decisis* . . . .") (emphasis in original). Moreover, stare decisis only applies to legal questions decided in precedential decisions. *See Deckers Corp. v. United States*, 752 F.3d 949, 956 (Fed. Cir. 2014) ("*Stare decisis*, therefore, is limited to only the legal determinations made *in a prior precedential opinion* and does not apply to either issues of fact, such as classification of specific goods within a construed tariff provision, or issues of law that were not part of a holding in a prior decision.") (emphasis added). The country-of-origin determination reflected in the *Richmond* judgments is a question of fact, and it is axiomatic that trial court decisions (adjudicated or otherwise) are not precedential. *Cf. Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 513 n.4 (Fed. Cir. 2019) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 469 n.10 (1996)

(footnote continues on next page)

### F

After wildly flailing about, InterGlobal finally lands a punch. It argues that Customs's finding that LB Wood could not produce the plywood it sold to Inter-Global is arbitrary and capricious given the agency's contrary concessions in the *Richmond* litigation. *See* ECF 140, at 26, 30.

The government responds that "the issues in the *Richmond* cases and those here are not identical." ECF 150, at 29. Although not literally identical, those actions and this case did substantially overlap in material respects, including as to the critical factual question of whether LB Wood had the capability—during the same relevant time frame—to manufacture its plywood exports to this country. As to that question, the agency's concession in the *Richmond* cases flatly contradicts its position in this case. Making the contradiction all the more glaring, in *Richmond II* Customs cited—before its surrender—the administrative record

---

("[I]f there is a federal district court standard, it must be from the Court of Appeals, not from the [many] district court judges in [each district], each of whom sits alone and renders decisions not binding on the others.")) (brackets in *Larose*).).

in this case as evidence that LB Wood had no such capacity.[9]

An agency's factual determination "'may be supported by substantial evidence,' yet 'nonetheless reflect arbitrary and capricious action.'" *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1323 (Fed. Cir. 2017) (quoting *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)). "The touchstone" for such review is "rationality," *Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1209 (Fed. Cir. 1990), which includes the "agency's responsibility to behave" in a "reasonably consistent" manner, *Am. Fed'n of Gov't Emps. v. Fed. Labor Rels. Auth.*, 777 F.2d 751, 760 (D.C. Cir. 1985) (Scalia, J., concurring).

"[N]ot every instance of an agency reaching inconsistent outcomes in similar, related cases will necessarily be erroneous." *Vicor*, 869 F.3d at 1322. But where it "simultaneously issues opinions on the same technical issue between the same parties on the same record, and reaches opposite results without explana-

---

[9] The court may take judicial notice of *the fact of* Customs's concessions in the *Richmond* cases and of its reliance in *Richmond II* on the administrative record from this case because those facts are not subject to dispute and can be readily determined from public records. *See Tri Union Frozen Prods., Inc. v. United States*, 161 F. Supp. 3d 1333, 1339 (CIT 2016).

tion, . . . the best course is to vacate and remand these findings for further consideration." *Id*.

Although the importers in the *Richmond* actions are not involved here, the dispositive factual issue—whether LB Wood had the capability to produce the plywood at issue during the relevant time frame—is the same. So are the record facts bearing on that question. Given this stark inconsistency and the absence of any justification for it, the court must vacate its judgment in Case 20-3916 and return that matter to the agency.[10]

On remand, Customs must provide a reasoned explanation of why it found in this proceeding that LB Wood could not produce its plywood exports when it conceded precisely the opposite in the *Richmond* actions. *Cf. Vicor*, 869 F.3d at 1323 ("On remand, the [agency] must at least provide some reasoned basis for its opposite holdings, if it chooses to maintain those same, opposing results.").

---

[10] As the case had been submitted when InterGlobal discovered the contradiction in the agency's position, the court finds that the company did not have an adequate opportunity to fully present this potentially outcome-determinative issue. *Cf.* 11 Wright & Miller § 2805 (3d ed. Sept. 2025) ("The court has the power and duty to" grant Rule 59 relief "whenever, in its judgment, this action is required in order to prevent injustice.").

## G

In its comments opposing the agency's redetermination, InterGlobal "hypothesize[d]" that it had been denied access to "a laundry list of secret materials bearing on Customs's decision." *Am. Pac. Plywood II*, Slip Op. 25-87, at 22, 791 F. Supp. 3d at 1361. The court concluded that "[e]ven assuming the existence of this supposed data trove," it was of no moment because the company made "no specific citations to where [the agency] *relied on* this information in its determination of evasion." *Id.* at 22–23, 791 F. Supp. 3d at 1361 (emphasis and brackets in original) (quoting *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1259 n.10 (Fed. Cir. 2023)).[11]

It turns out there *is* a secret agency data trove after all. InterGlobal's motion for reconsideration points to the government's discovery responses in *Richmond II*. *See* ECF 140, at 20–22. There, Customs produced not only the public administrative record from this case, but also certain *additional* materials related to its investigation of LB Wood, including a near-contemporaneous site-visit report conspicuously missing from the

---

[11] In *Royal Brush*, the Federal Circuit "held that Customs's refusal to allow importers accused of evasion to review and address 'information on which the agency relied in reaching its decision' violated procedural due process." *Id.* at 6, 791 F. Supp. 3d at 1354 (quoting *Royal Brush*, 75 F.4th at 1262).

public and confidential record here.[12] *See Richmond II*, Case 21-318, ECF 36-2, at 6–7.

Having stumbled across a smoking gun, the importer nearly turns the weapon on itself. It frivolously asserts that the court should apply an "adverse inference" against the government under 19 U.S.C. § 1677e(b).[13] *See* ECF 140, at 28–29. But it recovers by more plausibly contending that "the record must be supplemented" with this missing material. *See id.* at 28 (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)).

The government cagily avoids directly responding to InterGlobal's charge that Customs withheld secret documents. It contends that "in the event" these materials—all of which were in the *agency's* possession—are missing from the record, it's *InterGlobal's* fault for not adding them. *See* ECF 150, at 28. In the face of this

---

[12] InterGlobal's comments contesting the redetermination bitterly complained that the record lacked any "contemporaneous reports, records, or communications by the [investigator], save for eight photographs taken during" the site visit. *Am. Pac. Plywood II*, Slip Op. 25-87, at 11, 791 F. Supp. 3d at 1356. The agency's evasion finding largely rested on its investigator's emails written over a year after that visit. *See id.* at 12, 791 F. Supp. 3d at 1356.

[13] By its plain language, § 1677e(b) only authorizes the Department of Commerce and the International Trade Commission to take such action in antidumping and countervailing duty investigations. It has no bearing in this EAPA context and it does not empower the *court* in any setting.

dissembling, the court ordered the government to forthrightly state whether the agency included in the administrative record the additional materials produced in *Richmond II* related to the investigation of LB Wood. *See* ECF 155.

The jig being up, the government filed a declaration by Tobias Vandall, the agency's lead analyst in its EAPA investigation. *See* ECF 156-2. He states that the materials in question "are not on the administrative record, including the remand record, of" this case. *Id.* ¶ 5. He further states that his requests for "any reports regarding the site visit *were unanswered*." *Id.* ¶ 13 (emphasis added). Nor was he provided with the other materials, notwithstanding that he "specifically asked for any photos and reports obtained during or generated after the visit." *Id.* ¶ 10.

"Review on the administrative record, the so-called 'record rule,' is a common, well-established limitation placed on judicial review of agency decisions." *Euzebio v. McDonough*, 989 F.3d 1305, 1322 (Fed. Cir. 2021) (citing *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1379 (Fed. Cir. 2011)). "The record rule, however, is not without exceptions." *Id.* (cleaned up). Under one such exception, "a reviewing court is not precluded under the record rule from considering events that occurred between the date of an agency decision and the date of decision on appeal." *Id.* (cleaned up) (citing *Borlem S.A.-Empreedimentos Industrias v. United States*, 913 F.2d 933, 939 (Fed. Cir. 1990)).

Indeed, "[w]here such intervening events are properly brought to the attention of the reviewing court, that court may rely on that occurrence and typically will remand for consideration by the decision-maker." *Borlem*, 913 F.2d at 939.

That is precisely the situation presented here. Customs's Mr. Vandall states that he specifically asked his colleagues to provide him with any "reports that were generated following" the site visit to LB Wood, ECF 156-2, ¶ 9, and any "photos or reports obtained during or generated after the visit," *id.* ¶ 10, but they did not do so, *id.* ¶¶ 9–10. Thus, this case presents a situation where "intervening events" have made it clear that Customs employees *prevented their own agency* from considering materials that the relevant decisionmakers wanted to see.

"Just because review is confined to the record does not mean that an agency may deliberately or negligently exclude from its record documents that may have been adverse to its decision." *Gilmore ex rel. Est. of Insinga v. Comm'r of Internal Revenue*, 149 F.4th 709, 722 (D.C. Cir. 2025) (cleaned up) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)). Here, Customs admits that its employees negligently excluded from the decisionmakers' consideration (and thus the record) materials that the latter group wanted to see and that may have been adverse to its determination. This is an independent basis for vacating the judgment in Case 20-3916 under Rule 59.

Consol. Ct. No. 20-03914                               **Page 23**

The court therefore remands that action for reconsideration in light of this new information, which must be added to the record.[14]

*    *    *

The court grants InterGlobal's motion for reconsideration, vacates the judgment entered in Case 20-3916, and remands that action for further proceedings consistent with this opinion.

Dated:  February 27, 2026          /s/ *M. Miller Baker*
        New York, NY               Judge

---

[14] Although the secret data trove kept hidden from agency decisionmakers is of no moment under *Royal Brush*—after all, they could hardly rely on data they were unaware of, *see* note 11—it matters under the Administrative Procedure Act given Mr. Vandall's admission that the relevant officials *wanted* to consider this information. By definition, such material is an "important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).